# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | Hon. Kevin McNulty |
| | Crim. No. 19-cr-120 (KM-MAH) |
| GORDON J. COBURN and STEVEN E. SCHWARTZ | |

# REPLY IN SUPPORT OF DEFENDANT
# GORDON J. COBURN'S MOTIONS TO
# DISMISS AND FOR BILL OF PARTICULARS

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...................................................................... ii

PRELIMINARY STATEMENT ...............................................................1

ARGUMENT ...........................................................................................2

I.     The Court Should Grant Mr. Coburn's Motion to Dismiss...........................2

     A.     The Government Fails to Address Mr. Coburn's
           Multiplicity Arguments .......................................................3

     B.     Count Twelve Should Be Dismissed as Repugnant...........................11

II.     The Court Should Grant Mr. Coburn's Motion for a Bill of
      Particulars ........................................................................14

     A.     The Identities of the Foreign Officials and Intermediaries
           are Central Facts that Should Be Disclosed .......................................14

     B.     The Court Should Require the Government to Identify
           the Unindicted Co-Conspirators and "Others"...................................18

     C.     The Government Should Be Required to Identify the
           Alleged Misrepresentations and Omissions .......................................21

     D.     The Government Should Identify Whether Mr. Coburn Is
           Charged as an Accomplice or as a Principal, the Identities of
           any Alleged Principals, and Which Corporate Entity
           "Cognizant" Denotes ..........................................................22

     E.     Mr. Coburn Cannot Adequately Prepare His Defense Without
           Notice of the Particular Subsection or Subsections of
           15 U.S.C. § 78dd-1 the Government Alleges Mr. Coburn
           Violated in Counts Two Through Four.............................................24

CONCLUSION ......................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Cohen v. Wilhelm*,
   63 F.2d 543 (3d Cir. 1933) .................................................................................13

*Hagner v. United States*,
   285 U.S. 427 (1932).........................................................................................13

*Rewis v. United States*,
   401 U.S. 808 (1971)...........................................................................................7

*Sanabria v. United States*,
   437 U.S. 54 (1978)...........................................................................................4

*SEC v. Jackson*,
   908 F. Supp. 2d 834 (S.D. Tex. 2012) ...............................................................17

*SEC v. Patel*,
   No. 07-cv-39, 2009 WL 3151143 (D.N.H. Sept. 30, 2009) ..............................12

*SEC v. Straub*,
   921 F. Supp. 2d 244 (S.D.N.Y. 2013) ......................................................5, 8, 17

*Tavarez v. Klingensmith*,
   372 F.3d 188 (3d Cir. 2004) ..............................................................................4

*United States v. Austin*,
   462 F.2d 724 (10th Cir. 1972) ...........................................................................6

*United States v. Bin Laden*,
   92 F. Supp. 2d 225 (S.D.N.Y. 2000) ................................................................18

*United States v. Carson*,
No. 8:09-cr-00077 (C.D. Cal. May 18, 2009)..................................................14, 16

*United States v. Cisneros*,
   26 F. Supp. 2d 24 (D.D.C. 1998)......................................................................11

*United States v. Gordon*,
   875 F.3d 26 (1st Cir. 2017)...........................................................................6, 7

*United States v. Haddy*,
   134 F.3d 542 (3d Cir. 1998) ..........................................................................3, 7

*United States v. Hedgepeth*,
   434 F.3d 609 (3d Cir. 2006) .............................................................................20

# TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*United States v. Hoskins*,
902 F.3d 69 (2d Cir. 2018) ........................................................................22, 23

*United States v. Kay*,
359 F.3d 738 (5th Cir. 2004) ............................................................10, 15, 16

*United States v. Kay*,
513 F.3d 432 (5th Cir. 2007) ........................................................................8, 9

*United States v. Langford*,
946 F.2d 798 (11th Cir. 1991) ..................................................................3, 4, 5

*United States v. Manetti*,
323 F. Supp. 683 (D. Del. 1971)........................................................................18

*United States v. Nguyen*,
No. 2:08-cr-00522 (E.D. Pa. Dec. 3, 2009)......................................................16

*United States v. Pollen*,
978 F.2d 78 (3d Cir. 1992) ................................................................................4

*United States v. Roberson*,
6 F.3d 1088 (5th Cir. 1993) ..............................................................................8

*United States v. Rosa*,
891 F.2d 1063 (3d Cir. 1989) ..................................................................19, 24

*United States v. Ruffin*,
613 F.2d 408 (2d Cir. 1979) ............................................................................23

*United States v. Smith*,
789 F.2d 196 (3d Cir. 1986) ..............................................................................8

*United States v. Trie*,
21 F. Supp. 2d 7 (D.D.C. 1998)........................................................................21

*United States v. Wolff*,
No. 11-719, 2013 WL 646204 (D.N.J. Feb. 20, 2013).....................................19

*United States v. Wozniak*,
No. 8:07-cr-297, 2007 WL 2904184 (D. Neb. Oct. 3, 2007) ...........................24

**STATUTES**

15 U.S.C. § 77q.......................................................................................................6

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

15 U.S.C. § 78dd-1.................................................................................*passim*

15 U.S.C. § 78j..............................................................................................6

15 U.S.C. § 78m..............................................................................11, 12, 13

18 U.S.C. § 1952............................................................................................7


**OTHER AUTHORITIES**

U.S. Dep't of Justice & SEC, *A Resource Guide to the U.S. Foreign
    Corrupt Practices Act* (Nov. 14, 2012) ...........................................11

Fed. R. Crim. P. 7..............................................................................17, 20, 25

H.R. Rep. No. 95-640 (1977)......................................................................10

H.R. Rep. No. 95-831 (1977) (Conf. Rep.) .............................................10

S. Rep. No. 95-114 (1977) .........................................................................10

## PRELIMINARY STATEMENT

Defendant Gordon Coburn respectfully submits this reply in response to the government's Brief in Opposition to Defendants' Motions to Dismiss and for a Bill of Particulars, ECF No. 61 ("Gov. Br.").

In its opposition brief, the government fails to directly address the arguments made in Mr. Coburn's motion to dismiss and instead, rebuts straw man arguments and mischaracterizes and misapplies the law.  The government also concedes several fundamental flaws in its case against Mr. Coburn.  These flaws underscore the need for Mr. Coburn's requested bill of particulars.  For example, the government does not know the identity of any government official involved in the alleged scheme, whether a bribe was actually paid to a government official, how much money, if any, was paid to a government official, and the identities of any third parties that may have facilitated the bribe, if one was actually paid.  After a lengthy investigation aided by Cognizant and its outside counsel, the government filed serious charges against Mr. Coburn apparently without knowing some of the key facts that are central to any corruption prosecution.  These revelations further illustrate why Mr. Coburn's requested remedies are necessary and appropriate.

## ARGUMENT

I.   <u>The Court Should Grant Mr. Coburn's Motion to Dismiss.</u>

The government has charged Mr. Coburn with three violations of the
FCPA's anti-bribery provisions based on three emails allegedly sent in furtherance
of a single authorization for a corrupt payment to an unidentified foreign official,
who is apparently unknown even to the government.  *See* Indictment Counts 2–4,
ECF No. 1 ("Indict."); Gov. Br. 47–52.  Mr. Coburn moved to dismiss two of these
three counts as multiplicitous on the ground that the unit of prosecution of the
FCPA's anti-bribery provisions is the corrupt "offer, payment, promise to pay, or
authorization of" a payment to a foreign official, not the "use of the mails or any
means or instrumentalities of interstate commerce."  The use of interstate
commerce is a jurisdictional element, as it is in numerous other federal statutes.
*See* Def. Coburn's Mem. Supp. Mot. to Dismiss 3–4.

Mr. Coburn also moved to dismiss Count Twelve on the ground that the
Count is internally inconsistent for alleging that Mr. Coburn simultaneously failed
to implement a system of internal accounting controls, and circumvented that
same, now implemented, system.  *See* Indict. Count 12.  The mutual inconsistency
renders Count Twelve repugnant under the law, and Count Twelve should be
dismissed.  *See* Def. Coburn's Mem. Supp. Mot. to Dismiss 8–10.

2

A.    The Government Fails to Address Mr. Coburn's Multiplicity
       Arguments.

Rather than address why the essence of the FCPA's anti-bribery provision is not the "offer, payment, promise to pay, or authorization of [a bribe]," the government fixates on the phrase "in furtherance of" as if that phrase transforms the jurisdictional element of the "use of the mails or any means or instrumentalities of interstate commerce" into the unit of prosecution. *See* Gov. Br. 24–28. It does no such thing. The "in furtherance of" language merely defines the scope of the jurisdictional element as similar language does in other statutes. Tellingly, the government cites no cases holding that the FCPA's jurisdictional element is also its unit of prosecution.

The government's argument conflates the elements of the offense with the unit of prosecution (*i.e.*, per the government, because it must prove the jurisdictional element, it must be the unit of prosecution). *See* Gov. Br. 25.[1] But the law is clear that not all elements of an offense form the allowable unit of prosecution. *See e.g.*, *United States v. Haddy*, 134 F.3d 542, 544–49 (3d Cir. 1998); *United States v. Langford*, 946 F.2d 798, 803 & n.20 (11th Cir. 1991).

---

[1] Indeed, if the government's position were taken to its logical end, the unit of prosecution for every federal crime based on Congress's Commerce Clause power would turn on each discrete use of the instrumentalities of interstate commerce.

3

To determine whether the jurisdictional element is also the allowable unit of prosecution, the Court must identify the "essence" or "gist" of the offense created by Congress.  *See Sanabria v. United States*, 437 U.S. 54, 74 (1978) (analyzing the allowable unit of prosecution for Double Jeopardy purposes);  *Langford*, 946 F.2d at 803 & n.20 (holding that separate mailings do not give rise to multiple securities fraud counts).  The first step of that process is an analysis of the statutory language itself.  *See United States v. Pollen*, 978 F.2d 78, 84 (3d Cir. 1992).

One of the canons of statutory construction requires that a statute must be construed as a whole.  *See Tavarez v. Klingensmith*, 372 F.3d 188, 190 (3d Cir. 2004).  The government fails to address this point.  The use of the mails or instrumentalities of interstate commerce cannot be the essence of the FCPA's anti-bribery provision because it need not even be proven to constitute a violation.  *See* 15 U.S.C. § 78dd-1(g).  The FCPA's "[a]lternative jurisdiction" provision explicitly omits the phrase "use of the mails or any means or instrumentalities of interstate commerce," and replaces that language with an alternative basis for jurisdiction, which is "do[ing] any act outside the United States . . . irrespective of whether [the party] . . . makes use of the mails or any means or instrumentality of interstate commerce."  *See id.*

Moreover, the *mens rea* element of "corruptly" in the FCPA modifies not the use of the mails or the means of interstate commerce, the language of which

immediately precedes the *mens rea* element. "Corruptly" modifies the "offer, payment, promise to pay, or authorization of [payment]." *See SEC v. Straub*, 921 F. Supp. 2d 244, 262–63 (S.D.N.Y. 2013) ("[T]he legislative history reveals that, although Congress intended to make an 'intent' or *mens rea* requirement for the underlying bribery, it expressed no corresponding intent to make such a requirement for the 'make use of . . . any means or instrumentality of interstate commerce' element."). The reason for this statutory construction is clear. In passing the FCPA, Congress was undeniably focused on curbing improper payments to foreign officials (i.e., the "supply side" of foreign corruption), not the misuse of the mails and instrumentalities of commerce, which were addressed by other statutes on the books before the FCPA, namely the Wire Fraud, Mail Fraud and the Travel Act statutes.[2] The government's position to the contrary—that an optional jurisdictional element to which the *mens rea* does not even attach is the appropriate unit of prosecution for an anti-bribery statute— is without merit.

The government fails to address the analogous interstate commerce language of the Title 15 securities fraud statutes, which courts of appeals have found to be merely jurisdictional rather than the unit of prosecution. *See Langford*, 946 F.2d at 803 (multiple mailings in furtherance of securities fraud scheme could not form the

---

[2] Notably, the government relegates its entire discussion of the Mail and Wire Fraud statutes to a short footnote. *See* Gov. Br. 25 n.3. But that cursory discussion fails to answer the comparative analysis with the FCPA in Mr. Coburn's opening memorandum. *See* Def. Coburn's Mem. Supp. Mot. to Dismiss 6 & n.4.

basis of separate counts because the unit of prosecution was not each separate mailing but rather the manipulative device or contrivance); *United States v. Austin*, 462 F.2d 724, 738 n.6 (10th Cir. 1972) (noting that use of the mails is "the gist" of mail fraud, but is "only incidental and jurisdictional" to securities fraud); *see also United States v. Gordon*, 875 F.3d 26, 36 (1st Cir. 2017) ("Some statutes, such as the Securities Act, 15 U.S.C. § 77q(a), feature the familiar 'interstate commerce' language, yet have units of prosecution that are distinct from those embodied in the mail and wire fraud statutes.").[3]

The securities fraud statutes are further instructive.  Section 10(b) of the Securities Exchange Act requires the government to prove that the manipulative device or contrivance at issue was employed *in connection with* the purchase or sale of a security.  This statutory language is similar to the "in furtherance of"

---

[3] Title 15, United States Code, Section 77q(a), titled "Use of interstate commerce for purpose of fraud or deceit," provides that:

It shall be unlawful for any person in the offer or sale of any securities (including security-based swaps) or any security-based swap agreement (as defined in section 78c(a)(78) of this title) *by the use of any means or instruments of transportation or communication in interstate commerce or by use of the mails, directly or indirectly*

(1) to employ any device, scheme, or artifice to defraud, or

(2) to obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

(3) to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser.

15 U.S.C. § 77q(a) (emphasis added).

language of the FCPA's anti-bribery provision relied on by the government here.

But the Third Circuit held that the purchase or sale of a security was not the unit of

prosecution in *United States v. Haddy*.  The Court stated:

> The clear wording of the statute and the rule thus
> emphasize the use of manipulative devices in describing
> the offense.  The phrase 'in connection with the purchase
> or sale of securities' positions the illegal activity within
> the framework of the Securities Exchange Act; it does
> not describe the prohibited conduct. . . . We thus
> conclude that the individual purchase or sale was not the
> appropriate unit of prosecution here; these retail events
> were only a step in the advancement of the scheme as a
> whole.

*Haddy*, 134 F.3d at 544–49 (but declining to set an inflexible rule regarding the

allowable unit of prosecution).  The analogous securities fraud cases, which the

government simply ignores, directly contravene the government's argument.

Instead, the government relies on inapposite Travel Act cases, Gov. Br. 30–

31, which "is [like] comparing plums to pomegranates."  *Gordon*, 875 F.3d at 36.

Unlike the FCPA, the Travel Act does not contain an "alternative jurisdiction"

provision that does not require the government to prove interstate travel or use of a

facility of interstate commerce.  *See* 18 U.S.C. § 1952.  The legislative history of

the Travel Act reveals why such an alternative jurisdiction provision would make

no sense.  The Travel Act was aimed primarily "at persons who reside in one State

while operating or managing illegal activities located in another."  *Rewis v. United

States*, 401 U.S. 808, 811 (1971).  Unsurprisingly, the "essence" of the Travel Act

therefore includes the element of interstate travel and the use of any facility of interstate commerce.  That this element is not merely jurisdictional is made plain by the statute's *mens rea* element, which applies to the travel or use of the facility of interstate commerce.  *See United States v. Smith*, 789 F.2d 196, 204 (3d Cir. 1986) (a Travel Act violation "requires proof that the individual used the facility of interstate commerce with the specific intent to promote, manage, establish or carry on an unlawful activity" (internal quotation marks omitted)).  To plead a violation of the Travel Act, the government must allege that the accused travelled in interstate commerce or used facilities thereof with the specific intent to engage in or facilitate certain prohibited conduct in furtherance of a criminal business enterprise.  *United States v. Roberson*, 6 F.3d 1088, 1094 (5th Cir. 1993).  As discussed *supra*, the *mens rea* element of "corruptly" does not apply to the FCPA's jurisdictional element.  *See Straub*, 921 F. Supp. 2d at 262–63.

The government's reliance on *United States v. Kay*, 513 F.3d 432 (5th Cir. 2007), is likewise misplaced.  The court in *Kay* addressed the issue that "the indictment arguably failed to allege that Defendants sent any money for their bribes through interstate commerce."  *Id.* at 453.  The government spills much ink for the undisputed proposition that the FCPA's anti-bribery provisions extend beyond the transmission of corrupt payments in interstate commerce.  *See* Gov. Br.

26–27.[4]  There is no dispute that mailings or the use of interstate commerce in furtherance of any offers, payments, promises or authorizations, not just the actual transmission of corrupt payments, would suffice to meet the jurisdictional element of the anti-bribery provision.

Moreover, unlike the present case, the government in *Kay* alleged that the defendants paid and authorized the payment of *multiple* bribes to induce customs officials in Haiti to accept false shipping documents, which understated the value of rice imported by defendants to reduce the amount of customs duties owed.  *See* Second Superseding Indict. at ¶¶ 3–5, *United States v. Kay*, No. 4:01-914 (S.D. Tex. July 15, 2004), ECF No. 93.  The amounts of the multiple bribes were calculated "as a percentage of the value of the rice not reported" in each set of shipment documents, and defendants paid the bribes in the form of "monthly retainers to Haitian officials."  *Id.* ¶¶ 4–8.  These multiple bribes and authorizations could undoubtedly give rise to separate counts.  But because *Kay* does not address the FCPA's unit of prosecution, the case is not helpful to the government's position.  In fact, the government does not cite to a single case holding that the unit of prosecution for the FCPA anti-bribery provision is the mailing or use of interstate commerce, because there is none.

---

[4] The government avers, without citation, that Mr. Coburn "tried to portray the false shipping documents" in *Kay* "as a product of the bribes, rather than documents that were transmitted through interstate commerce in furtherance of the bribes."  Gov. Br. 27.  We have no idea as to what the government is referring, but we made no such argument.

Legislative history is of no help to the government. It is clear that Congress enacted the FCPA in 1977 in response to "widespread bribery of foreign officials by United States business interests." *United States v. Kay*, 359 F.3d 738, 746 (5th Cir. 2004).[5] The 95th Congress focused on the problems caused by foreign corrupt payments. There is no indication Congress even considered the notion that the FCPA was needed to protect the integrity of the mails and instrumentalities of commerce.

In fact, the mails and instrumentalities of commerce are mentioned in the legislative record only in passing, without explanation, and in reference to the jurisdictional requirements of the proposed law. *See, e.g.*, S. Rep. No. 95-114, at 11, 17; H.R. Rep. No. 95-640, at 4, 7, 18; H.R. Rep. No. 95-831, at 11, 12 (1977) (Conf. Rep.). In its brief, the government erroneously relies on this limited discussion regarding the scope of the jurisdictional element as proof that the jurisdictional element is the unit of prosecution. Gov. Br. 27–28. Any reading of

---

[5] As described in our opening brief, the legislative record is replete with references to the many ways in which foreign bribery harmed the nation's interests. Such bribery was "fundamentally destructive" of the free-market principle that products are sold on the basis of "price, quality, and service." S. Rep. No. 95-114, at 4 (1977); *see* H.R. Rep. No. 95-640, at 4 (1977) (foreign bribery "erodes public confidence in the integrity of the free market system"). It was "counter to the moral expectations and values of the American public." H.R. Rep. No. 95-640, at 4; *see* S. Rep. No. 95-114, at 4 (paying foreign bribes is "morally repugnant"). And it had "severe adverse effects" on United States foreign policy. S. Rep. No. 95-114, at 3; *see* H.R. Rep. No. 95-640, at 5 (providing examples of corporate bribes creating "severe foreign policy problems for the United States"). Perceiving a "clear consensus that foreign bribery is a reprehensible activity," H.R. Rep. No. 95-640, at 6, Congress determined to "end[ ] corrupt foreign payments" by passing the FCPA, S. Rep. No. 95-114, at 10.

the statutory history of the FCPA makes plain that Congress was focused on prohibiting corrupt offers of things of value to foreign officials to obtain or retain business, not the jurisdictional element of the use of wires in furtherance of such offers.[6]

The plain language of the FCPA, its legislative history, and cases construing the analogous statutes all support the conclusion that the unit of prosecution under the FCPA anti-bribery provision is the "offer, payment, promise to pay, or authorization of" a payment to a foreign official, not the "use of the mails or any means or instrumentalities of interstate commerce."

B.      Count Twelve Should Be Dismissed as Repugnant.

Count Twelve alleges Mr. Coburn both "circumvented" and "failed to implement" a "system of internal accounting controls."  Indict. Count 12.  These allegations, which are simply a recitation of 15 U.S.C. § 78m(b)(5) without any factual details supporting the elements, are internally inconsistent and thus "repugnant" under the law.  *United States v. Cisneros*, 26 F. Supp. 2d 24, 52

---

[6] The government's own FCPA Resource Guide, which describes the "historical background" of the FCPA, confirms the point.  It states: "Congress enacted the [FCPA] in 1977 in response to revelations of widespread bribery of foreign officials by U.S. companies. . . .  [T]he anti-bribery provisions . . . prohibit individuals and business from bribing foreign government officials in order to obtain or retain business."  U.S. Dep't of Justice & SEC, *A Resource Guide to the U.S. Foreign Corrupt Practices Act* 2, 10 (Nov. 14, 2012), https://www.justice.gov/sites/default/files/criminal-fraud/legacy/2015/01/16/guide.pdf.  The first mention of the use of mails or means or instrumentalities of interstate commerce in the Resource Guide appears under the heading, "What Jurisdictional Conduct Triggers the Anti-Bribery Provisions?"  *Id.* at 11.

(D.D.C. 1998).  This is true regardless of whether § 78m(b)(5) is a divisible statute or merely alternative means of committing the same offense.

The language of § 78m(b)(5) refers to a *single* "system of internal accounting controls."  Under the statute, the system is intended to operate as a unified whole and must "provide reasonable assurances" that various accounting procedures will be followed, such as requirements that "transactions are executed in accordance with management's general or specific authorization" and that "access to assets is permitted only in accordance with management's general or specific authorization."  *Id.* § 78m(b)(2)(B).  These examples refer to specific "controls" that should be implemented as *part of* the "system."  The statute makes clear they compose the singular system; they do not delineate different systems. Thus, under the plain language of the statute, a defendant cannot both "circumvent" *and* "fail to implement" the same system.  *See SEC v. Patel*, No. 07-cv-39, 2009 WL 3151143, at *27 (D.N.H. Sept. 30, 2009) (dismissing count to extent "it asserts claims based on either circumvention of accounting controls or failure to implement them" because "[i]t cannot be both").

The government completely ignores the statutory text.  Indeed, in explaining why its allegations in Count Twelve are permissible, it states that "[a] defendant may knowingly and willfully fail to implement some internal accounting *controls*, but not others, and circumvent those other internal accounting *controls* that are

implemented."  Gov. Br. 33 (emphasis added).  That is the wrong focus—the key question is whether a defendant implemented or circumvented a *system*.  The government goes further in proving Mr. Coburn's point when it tries to explain its theory in saying that "a defendant may implement all of the internal accounting controls, but not in a way sufficient to provide 'reasonable assurances' of the requirements outlined in Section 78m."  *Id.*  That set of factual allegations only supports a theory of failure to implement.  15 U.S.C. § 78m(b)(2)(B).

Finally, the government rests its argument on the right to plead in the conjunctive and prove in the disjunctive.  That may be so when the two are not mutually exclusive.  But here both sets of material allegations cannot be true.  *See Cohen v. Wilhelm*, 63 F.2d 543, 545 (3d Cir. 1933) ("Repugnancy in a pleading is an inconsistency or disagreement between statements of material facts.").  And since the allegations at issue are inconsistent and material, the Court should dismiss Count Twelve as repugnant.

In the alternative, the Court should, at a minimum, require the government to specify in a bill of particulars which theory of liability it intends to pursue.  *See Hagner v. United States*, 285 U.S. 427, 431 (1932) (acknowledging that, although modern criminal practice permits non-prejudicial pleading defects, the indictment must still "sufficiently apprise[ ] the defendant of what he must be prepared to

meet" at trial and allow him to "plead a former acquittal or conviction" (internal

quotation marks omitted)).

II.   The Court Should Grant Mr. Coburn's Motion for a Bill of Particulars.

Although the Indictment is centered on a single alleged "scheme to bribe one

or more government officials in India," Indict. Count 1 ¶¶ 3, 12, it lacks the most

basic information about that offense.  Among other missing information, the

Indictment does not identify the government official who allegedly received the

bribe, the payer of the alleged bribe, the intermediaries involved in paying the

alleged bribe, or certain co-conspirators and "others" involved in the alleged bribe.

A bill of particulars on the discrete issues raised in our opening brief and herein is

necessary to apprise Mr. Coburn of the matters he must be prepared to defend at

trial.

      A.    The Identities of the Foreign Officials and Intermediaries Are Central
               Facts that Should Be Disclosed.

As the government admits, a bill of particulars is warranted when an

indictment lacks "the central facts" such that the defendant cannot "understand the

accusations against him."  Gov. Br. 38.  In an FCPA prosecution, "the bribes are at

the heart of th[e] case."  *See* Minutes of Motion Hearing at 3, *United States v.*

*Carson*, No. 8:09-cr-00077 (C.D. Cal. May 18, 2009), ECF No. 75 ("*Carson*

Order").  Here, the nucleus of the alleged FCPA violations in Counts One through

Four is a single bribe paid to one or more government officials in India.  But the

Indictment does not identify or describe the official (or officials) who received the alleged bribe, the person (or persons) who paid the bribe, or the person (or persons) who facilitated the bribe.  These are the "central facts" of the charged FCPA counts in the Indictment, and Mr. Coburn needs this information to adequately prepare his defense.  Indeed, conclusory allegations that merely track the statutory language are simply insufficient because the missing facts go "to the very *core of criminality*" under the FCPA.  *See Kay*, 359 F.3d at 757.

The government responds that it does not need to prove the identities of any of the above actors at trial, and thus it should not be required to provide that information to Mr. Coburn.[7]  Moreover, it readily concedes that it "presently lacks" any of that information.  Gov. Br. 47–52.  The government is wrong about the law and, if it cannot provide this basic information, or at least information sufficient to describe the duties and responsibilities of the foreign official who forms the basis of the alleged offenses, the government should seriously consider moving to dismiss Counts One through Four.

The FCPA prohibits an issuer from making "an offer, payment, promise to pay, or authorization of the payment of any money, or offer, gift, promise to give, or authorization of the giving of anything of value" to "any foreign official," a

---

[7] The government conflates the issue of whether it must prove that the defendant knew the identity of the official at the time of the offense with the statutory requirement that the bribe recipient, or intended recipient, was actually a "foreign official" covered by the statute.

statutorily defined term.  15 U.S.C. § 78dd-1(a), (f)(1)(A).  Indeed, that the bribe was made to a "foreign official" goes to the core of criminality of an FCPA violation, and thus the government *must* prove at trial the identity of the "foreign official."  *See Kay*, 359 F.3d at 760 (explaining that an FCPA indictment must allege "at least minimally sufficient facts that, if proved, will meet the other elements of a violation of the FCPA" including "the identity of the foreign country and of the officials to whom the suspect payments are made").  But Mr. Coburn cannot adequately prepare his defense or conduct a "reasonably focused investigation" unless the government identifies the purported recipient or intended recipient now.  Mr. Coburn requires this information to investigate whether he or she qualifies as a "foreign official" or was acting in an "official capacity" as defined under the statute.  *See* 15 U.S.C. § 78dd-1(f)(1)(A).  At a minimum, the government should be required to describe that official's duties, which is necessary to determine if the alleged bribe was actually a permissible "facilitating" payment. *See id.* § 78dd-1(b).  Because this information is essential to a defendant's preparation, other courts have required the government to turn over this information about the foreign official in a bill of particulars.  *See Carson* Order at 4; Order, *United States v. Nguyen*, No. 2:08-cr-00522 (E.D. Pa. Dec. 3, 2009), ECF No. 130.

16

The government cites two cases for the proposition that the defendant's knowledge of the identity of the foreign official is irrelevant for FCPA prosecutions and that it thus need not provide that information to Mr. Coburn.  *See* Gov.  Br. 49–50 (citing *Straub*, 921 F. Supp. 2d at 265 and *SEC v. Jackson*, 908 F. Supp. 2d 834, 849–50 (S.D. Tex. 2012)).  As an initial matter, both of those cases involved the sufficiency of the broad notice pleading requirements under the Federal Rules of Civil Procedure, not the constitutional notice requirements that Federal Rule of Criminal Procedure 7 is designed to protect.

Moreover, in both cases relied on by the government, the government provided much more information about the foreign officials than provided here.  In *Straub*, while not identifying the foreign officials by name, the SEC's allegations described the officials' positions and their powers and duties, and how they violated their official duties in connection with the corrupt scheme.  *Straub*, 921 F. Supp. 2d at 265.  In *Jackson*, in addition to other information, the SEC alleged the specific government agencies that received payments.  *Jackson*, 908 F. Supp. 2d at 852.  That level of specificity is absent from the present indictment which alleges only that the foreign officials were Indian.  Indict. Count 1 ¶ 2.

The Indictment is equally silent on the identities of the intermediaries that paid and facilitated the alleged bribe, information that should be provided so Mr. Coburn can adequately defend himself.  Mr. Coburn cannot conduct a "reasonably

focused investigation" in defense of the charges unless these individuals are identified. *United States v. Bin Laden*, 92 F. Supp. 2d 225, 239 (S.D.N.Y. 2000). For example, he cannot adequately investigate whether the payment was actually made, who instructed the intermediary (or intermediaries) to act, and the content of the instructions. *See United States v. Manetti*, 323 F. Supp. 683, 696 (D. Del. 1971) ("[A] defendant is ordinarily entitled to the name of the participants in a . . . transaction central to the charge.").

Furthermore, the government's document production of over 800,000 pages of discovery does not remedy the absence of adequate notice as to the identities of these intermediaries.  It only heightens the need for a bill of particulars in this case. *Bin Laden*, 92 F. Supp. 2d at 234.  Because Mr. Coburn cannot adequately prepare his defense without this information and faces prejudicial surprise at trial, the government should be ordered to identify the intermediaries who are alleged to have facilitated the alleged bribery payments.

B.    The Court Should Require the Government to Identify the Unindicted Co-Conspirators and "Others."

The government defends its refusal to provide Mr. Coburn with the names of the unindicted other "co-conspirators" and "others" involved in the conspiracy on the ground that it has already identified "CC#1, CC#2, and CC#3"; that its "fulsome discovery" informs who the remaining unnamed "others" might be; and that any additional clarification would detrimentally "freeze" its evidence at trial.

18

Gov. Br. 36–47.  This response does not adequately address Mr. Coburn's inability to prepare for trial in the absence of essential information about *with whom* he allegedly conspired to violate the FCPA.

Identifying only a small portion of a potentially large group of "others" (CC#1, CC#2, CC#3) does not assist Mr. Coburn in conducting a meaningful investigation before trial.  *See United States v. Rosa*, 891 F.2d 1063, 1066 (3d Cir. 1989).  The government tries to distinguish the cases cited by Defendants that ordered a bill of particulars to identify uncharged co-conspirators, on the ground that those cases involved complex conspiracies with multiple defendants.  So too here.  There are at least five alleged co-conspirators and, without identifying who the "others" might be, the pool of co-conspirators is impossible to discern.  Worse yet, the Indictment alleges that this conspiracy spanned at least two years with numerous intermediaries located around the world.  Mr. Coburn almost certainly never met these "others" who were likely based in India, further hampering his ability to guess as to who they might be.

Moreover, this case is nothing like the fraud scheme at issue in *United States v. Wolff*, No. 11-719, 2013 WL 646204 (D.N.J. Feb. 20, 2013), upon which the government relies.  Gov. Br. 45.  There, the former chief executive officer at a consulting firm personally directed employees to inflate bills submitted to the federal government.  *Id.* at *2.  Importantly, when denying the motion for bill of

particulars identifying all co-conspirators, the district court found it relevant that the government had "provided a show-and-tell" to the defendant that included "highlights of most of its witnesses' anticipated testimony." *Id.* (internal quotation marks omitted).  Nothing of the sort has occurred here.  Indeed, the government complains that any further identification of the unnamed co-conspirators will amount to "an unfair tactical advantage at trial."  Gov. Br. 43.  But it is not an unfair advantage for Mr. Coburn to know the nature and scope of the charges that he faces.  Rule 7 and the constitutional due process require that much.

Finally, if the Court determines that disclosure of the unnamed co-conspirators is not appropriate, Mr. Coburn respectfully requests that the Court strike "others" from the Indictment as surplusage.  *See* Fed. R. Crim. P. 7(d).  It is both immaterial and prejudicial by implying that the conspiracy is more vast than what the government will attempt to prove at trial.[8]  *United States v. Hedgepeth*, 434 F.3d 609, 612 (3d Cir. 2006).  If the government desired to introduce evidence of other unindicted co-conspirators, it could have identified them as "CC#4" and so forth.  But, as alleged now, it permits the jury to speculate and wrongly assume a scope far beyond what is relevant to the evidence that will be introduced at trial.  Moreover, waiting to strike the language after evaluating the trial evidence, as the

---

[8] The government asserts that Mr. Coburn cited cases that applied the pre-*Hedgepeth* standard, *see* Gov. Br. 47 n.8, but those cases relied on Rule 7(d), which remains the governing procedural rule.  Moreover, as explained above, Mr. Coburn's objections satisfy the *Hedgepeth* standard because "others" is *both* immaterial and prejudicial.

government suggests, is an empty remedy after the jury has seen or read the Indictment. *See* Gov. Br. 47 n.8.

      C.      The Government Should Be Required to Identify the Alleged Misrepresentations and Omissions.

Counts Six, Eight, Ten, and Eleven allege that Mr. Coburn "made false, fraudulent, and misleading misrepresentations and omissions" in two Sarbanes-Oxley Quarterly Global 302 Certifications and two Annual Report on Form 10-K and Proxy Statement Disclosure Questionnaires. *See* Indict. Counts 1 ¶ 29(g)(ii)–(iii), 6, 8, 10, 11. The government attempts to distinguish this Indictment from other cases where courts have granted a bill of particulars and to absolve itself from needing to provide this information by referring to its "expansive discovery." *See* Gov. Br. 61-68. But the government never addresses the pertinent issue that Mr. Coburn should not be forced "to waste precious pre-trial preparation time guessing which statements" or omissions are at issue when "the government knows precisely the statements on which it intends to rely." *United States v. Trie*, 21 F. Supp. 2d 7, 21 (D.D.C. 1998). The unfair surprise is all the more likely here when the government intends to rely on omissions, including ones not even alluded to in the Indictment. *See* Indict. Count 1 ¶ 29(g)(ii)–(iii) (including a limitless caveat that the enumerated examples were merely illustrative). Identification of the alleged misstatements and omissions, moreover, does not amount to a revelation of

the government's trial theory—it simply informs Mr. Coburn how to prepare a defense for what he allegedly failed to include in those documents.

   D.   The Government Should Identify Whether Mr. Coburn Is Charged as an Accomplice or as a Principal, the Identities of any Alleged Principals, and Which Corporate Entity "Cognizant" Denotes.

   The Court should require the government to specify (1) whether Mr. Coburn is being charged as a principal, accomplice, or both for each of the substantive offenses that include accomplice liability; (2) the identities of any alleged principals; and (3) whether references to "Cognizant" denote Cognizant Technology Solutions Corporation ("Cognizant") or Cognizant Technology Solutions India Private Limited ("Cognizant India"), its Indian subsidiary.

   The government fails to address the key concern for this bill of particulars request, namely, that FCPA liability was "created with surgical precision to limit its jurisdictional reach." *United States v. Hoskins*, 902 F.3d 69, 84 (2d Cir. 2018). In addition to the general need to know whether one is being charged as a principal or accomplice to prepare a defense for any charge, *see* Def. Coburn's Mem. Supp. Bill of Particulars at 20–22, ECF No. 59-1, the FCPA's circumscribed scope of liability mandates that the government inform a defendant whether he is being charged as a principal or accomplice for substantive anti-bribery counts.  Here, Mr. Coburn cannot be held liable for aiding and abetting Counts Two through Four unless the principal had legal capacity to commit the substantive crimes.  And

because the FCPA limits principal liability to American citizens or residents, American companies and their agents, and foreign persons while present in the United States, *see Hoskins*, 902 F.3d at 85, Mr. Coburn must know *who* the alleged principals are.

The government retorts that Mr. Coburn and Mr. Schwartz "fail to acknowledge that they are themselves covered by the statute."  Gov. Br. 60.  That is a non sequitur.  Mr. Coburn's liability as an accomplice does not turn on his ability to be charged as a principal—it turns on the alleged principal's potential liability under the FCPA.  Here, the government alleges (and discovery reveals) that many "others" worked on the KITS project and were involved in the alleged substantive anti-bribery offenses, including individuals located abroad in India without ties to a U.S. company.  Mr. Coburn must know if they are considered principals, and the basis for such designation, in order to evaluate whether they are one of the enumerated covered persons under the FCPA.  If they are not, then he cannot be held liable as an accomplice.  *See, e.g.*, *United States v. Ruffin*, 613 F.2d 408, 412 (2d Cir. 1979) (explaining that it is "hornbook law" that an aider and abettor cannot be convicted absent "proof that the crime was actually committed").

For similar reasons, Mr. Coburn cannot prepare for trial unless he knows which corporate entity "Cognizant" denotes.  A foreign subsidiary of an American company is not necessarily an agent of a U.S. issuer for FCPA purposes, and thus

agents of a foreign company may not be agents of a U.S. issuer so as to be within the scope of FCPA liability. These are highly intensive fact questions, and the government's bare allegation that Cognizant India is an "issuer" skims over this significant legal determination. Which corporate entity is being referred to throughout the Indictment as "Cognizant" is the exact kind of "factual or legal information" that Mr. Coburn needs "to prepare his defense," *Rosa*, 891 F.2d at 1066, and the government should be ordered to disaggregate its references to Cognizant and Cognizant India.

> E.      Mr. Coburn Cannot Adequately Prepare His Defense Without Notice of the Particular Subsection or Subsections of 15 U.S.C. § 78dd-1 the Government Alleges Mr. Coburn Violated in Counts Two Through Four.

The Indictment charges Mr. Coburn with violating 15 U.S.C. § 78dd-1 of the FCPA but does not specify the subsection or subsections of Section 78dd-1 that apply to Mr. Coburn's alleged conduct. *See* Indict. Counts 2–4. Because that statute provides "a wide range of unlawful activity that is punishable," Mr. Coburn "should not have to guess what unlawful activity the government has in mind to prove at trial and to be able to protect himself from former jeopardy." *United States v. Wozniak*, No. 8:07-cr-297, 2007 WL 2904184, at *2 (D. Neb. Oct. 3, 2007) (ordering the government to provide a bill of particulars specifying the particular subsections of the criminal statutes at issue). The government argues

that it is not required to provide this information at this time, but the government's failure to do so prejudicially harms Mr. Coburn in contravention of Rule 7.

## CONCLUSION

The Court should enter an order requiring the government to elect one count among Counts Two through Four on which to proceed and dismiss the other two counts along with Count Twelve.  The Court should also enter an order requiring the government to provide a bill of particulars specifying (i) the identities of the one or more foreign officials and third party consultants allegedly involved in the bribery scheme; (ii) the identities of the unidentified, unindicted co-conspirators and "others"; (iii) if the Court does not dismiss Count Twelve, whether the government is alleging that Mr. Coburn circumvented or failed to implement internal controls and the related underlying factual basis; (iv) the misrepresentations and omissions alleged in Counts Six, Eight, Ten, and Eleven; (v) whether Mr. Coburn is charged as an accomplice or as a principal, the identities of any alleged principals, and whether references to "Cognizant" denote Cognizant Technology Solutions Corporation or its Indian subsidiary; and (vi) the particular subsection or subsections of 15 U.S.C. § 78dd-1 the government alleges Mr. Coburn violated in Counts Two through Four.  As set forth in our opening brief, we join in the bill of particulars motion filed by Mr. Schwartz.

Dated: January 10, 2020                    Respectfully submitted,


                                           /s/ James P. Loonam
                                           _____
                                           Henry Klehm III
                                           Harold B. Walther
                                           James P. Loonam
                                           Sarah D. Efronson
                                           JONES DAY
                                           250 Vesey Street
                                           New York, NY 10281
                                           Tel. (212) 326-3939
                                           Fax: (212) 755-7306
                                           Attorneys for Defendant Gordon J.
                                           Coburn