**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>**v.**<br><br>**GORDON J. COBURN and**<br>**STEVEN SCHWARTZ,**<br><br>            **Defendants.** | Crim. No. 19-120 (KM)<br><br><br>**MEMORANDUM and ORDER**<br>(Motions, DE 57, 58, 59) |

This Indictment arises from allegations that the defendants engaged in a scheme to bribe officials of a foreign government on behalf of Cognizant Technology Solutions Corporation ("Cognizant"). Defendant Gordon J. Coburn, formerly the President and CFO of Cognizant, and Steven Schwartz, formerly Cognizant's Executive Vice President and Chief Legal and Corporate Affairs Officer, allegedly conspired to pay a $2 million bribe to obtain a permit to open an office facility in India. They are charged in a twelve-count Indictment:

Count 1      Conspiracy to violate the anti-bribery provisions of the Foreign Corrupt Practices Act ("FCPA"), 18 U.S.C. § 371

Count 2–4    Violations of the anti-bribery provisions of the FCPA, 15 U.S.C. § 78dd-1 & 78ff(c)(2)(A).[1]

Counts 5–11  Falsification of Cognizant's books and records, 15 U.S.C. §§ 78m(b)(2)(A), 78m(b)(5), 78ff(a).

Count 12     Circumvention of and failure to maintain internal accounting controls, 15 U.S.C. §§ 78m(b)(2)(B), 78m(b)(5), 78fcf(a).

All substantive counts, as is common, cite 18 U.S.C. § 2, as well.

---

[1]      There is a dispute as to whether defendant Schwartz is charged in Counts 3 and 4. *See infra.*

Before the Court are motions by Defendant Coburn (DE 58, 59) and Defendant Schwartz (DE 57) to dismiss certain counts of the Indictment, for a bill of particulars, and for miscellaneous or alternative relief. The government has filed a consolidated response (DE 61) and the Defendants have filed replies (DE 65, 66). The Court heard oral argument on the motions on January 28, 2020. I decide them as follows.

## I.    Motion to Dismiss Counts 2, 3, 4, and 12

The era of technical pleading is long past (and was already long past when now-aging jurists began their legal careers). It is worth returning to first principles and reminding ourselves of the simple requirement of Rule 7(c)(1), Fed. R. Crim. P., that the Indictment "be a plain, concise, and definite written statement of the essential facts constituting the offense charged."[2] Accordingly, an indictment is sufficient if it (1) contains the elements of the offense charged, (2) sufficiently apprises the defendant of what he must be prepared to meet, and (3) allows the defendant to later plead a former acquittal or conviction in the event of a subsequent prosecution. *United States v. Kemp*, 500 F.3d 257, 280 (3d Cir. 2007). Defendants are correct that the meaning of those factors may vary with the complexity of the case, but not to the point that the factors undermine or defeat themselves. "[N]o greater specificity than the statutory language is required so long as there is sufficient factual orientation to permit the defendant to prepare his defense and to invoke double jeopardy in the

---

[2]    (c) Nature and Contents.

(1) In General. The indictment or information must be a plain, concise, and definite written statement of the essential facts constituting the offense charged and must be signed by an attorney for the government. It need not contain a formal introduction or conclusion. A count may incorporate by reference an allegation made in another count. A count may allege that the means by which the defendant committed the offense are unknown or that the defendant committed it by one or more specified means. For each count, the indictment or information must give the official or customary citation of the statute, rule, regulation, or other provision of law that the defendant is alleged to have violated. . . .

Fed. R. Crim. P. 7(c)(1).

event of a subsequent prosecution." *Id.* (quoting *United States v. Rankin*, 870 F.2d 109, 112 (3d Cir. 1989)).[3]

### A. Schwartz Motion to Dismiss Counts 3 & 4

Defendant Schwartz asserts that the face of the Indictment does not clearly charge him in Counts 3 and 4, leading him to suspect that the grand jury may not have charged him.[4] The issue, as he sees it, arises from a chart at the end of paragraph 2:

| COUNT | APPROXIMATE DATE | MEANS AND INSTRUMENTALITIES OF INTERSTATE AND INTERNATIONAL COMMERCE |
|---|---|---|
| Two | April 21, 2014 | COBURN email to SCHWARTZ, CC#1, and CC#2 requesting a call the next morning to follow up from their discussion in their April 21, 2014 call. |
| Three | May 20, 2014 | COBURN email to CC#1 and others instructing CC# 1 to continue to freeze certain payments to the Construction Company. |

---

[3]      Still, an indictment may be dismissed if its allegations simply fall outside the scope of the relevant criminal statute as a matter of law. *See United States v. Panarella*, 277 F.3d 678, 685 (3d Cir. 2002) ("a charging document fails to state an offense if the specific facts alleged in the charging document fall beyond the scope of the relevant criminal statute, as a matter of statutory interpretation."). In *United States v. Porter*, 933 F.3d 226, 229 (3d Cir. 2019), the Third Circuit recognized that *Panarella* had been abrogated on other grounds by *Skilling v. United States*, 561 U.S. 358, 410, 130 S. Ct. 2896 (2010).

[4]      Schwartz moves in the alternative for disclosure of grand jury transcripts relevant to these counts. I have denied that motion for failure to make the threshold showing of "compelling necessity" to overcome the presumptive rule of grand jury secrecy in Fed. R. Civ. P. 6(e). *United States v. McDowell*, 888 F.2d 285, 289 (3d Cir. 1989). *See Douglas Oil Co. v. Petrol Stops Northwest*, 441 U.S. 211, 222 (1979).

I have rejected the reading of the face of the Indictment that is the foundation of defendant Schwartz's suspicion that the grand jury did not indict him in these counts. Nevertheless, in an abundance of caution, I required the government to furnish a copy of the relevant portion of the grand jury transcript *in camera*. The transcripts are consistent with the face of the Indictment.

| Four | March 13, 2015 | COBURN email to CC#1 and others authorizing Cognizant to pay the Construction Company for certain false change order requests in connection with the KITS Campus. |

In violation of Title 15, United States Code, Sections 78dd-1 and 78ff(c)(2)(A), and Title 18, United States Code, Section 2. (Indictment at 20.) All of this, says Schwartz, fails to clarify what *he* is charged with. Schwartz's name appears in the chart as a party to the email referenced in Count 2, but only Coburn's name appears in the emails referenced in Counts 3 and 4.

The Indictment, I find, is clear enough. There is more to it than the chart.

Paragraph 2, the charging language of Counts 2–4, is a single, extended sentence that concludes with the chart. That single sentence begins as follows, charging *both* defendants:

> 2.  On or about the dates set forth below, in the District of New Jersey and elsewhere, the defendants,

> **GORDON J. COBURN**

> **and**

> **STEVEN SCHWARTZ,**

. . . .

(Indictment at 19.) The listing of full names, capitalized, in bold type, and set off from the other text, is consistent with drafting conventions in this District. It signifies that those named are the charged defendants. That impression is confirmed by the punctuation. The names Gordon J. Coburn and Steven Schwartz appear between commas, immediately following the words "the defendants." Grammatically, this is an appositive, like "our first President, George Washington, . . . ." The two noun phrases (NP) "the defendants" and "Gordon J. Coburn and Steven Schwartz" are thus presented as equivalents. All of this is not wholly inconsistent with Schwartz's contentions (they could

4

both be defendants, but not in every count), but it does establish that both are charged, unless some strong contrary indication should appear.

Following the names of Coburn and Schwartz, paragraph 2 alleges "each being an officer, director" (etc.) of an issuer, "did willfully use the mails and means and instrumentalities of interstate commerce corruptly in furtherance of" a bribe to a foreign official. That language, quoted only in part here, tracks the language of the FCPA.

Coburn and Schwartz, then, are the subject of the verb phrase (VP) "did willfully use . . . ." The inclusion of "each" tends to emphasize or clarify that what follows applies to both defendants, not to just one.[5] Thus the essential charging language alleges that "each" of the two defendants "did willfully use the mails and means and instrumentalities of interstate commerce." Whether Mr. Schwartz actually did so, of course, will only be revealed by the evidence; it is charged, however, that he did.

The chart, then, does not undermine the initial language of Paragraph 2—clearly charging both defendants—that precedes it. Rather, the chart

(a) fulfills the placeholder promise of Paragraph 2 that the "dates" on which the two named defendants used the means of interstate commerce would be "set forth below" (Indictment at 19 line 3), and

(b) gives content to the statement that Coburn *and* Schwartz conducted the bribery scheme "as follows." (*Id.* at 20 line 6.)[6]

---

[5]     Considered as a pronoun, "each" can only have both Coburn and Schwartz as its antecedent. Considered as a determiner in relation to an implied noun ("each [one]"), it conveys the same sense by ellipsis. Further exploration of linguistic subtleties does not advance the argument.

[6]     Mr. Schwartz argues that his uncertainty is compounded by the presence, in Counts 5–11, of a chart that is similar but distinct. (Indictment at 21–22.) He has a point, though not a dispositive one.

Counts 5–11, Paragraph 2 begins identically to the one we have already seen: It charges "the defendants, GORDON J. COBURN and STEVEN SCHWARTZ, . . . ." (Indictment at 21.) Just as before, the names are followed by the charging words of the statute, here, ". . . falsified books, records, and accounts." The sentence concludes with the allegations that the defendants did so "as set forth below" in a chart. That chart (by contrast with the Counts 2–5 chart) has an additional column: "DEFENDANT." Under Counts 5, 6, 8, 10, and 11, the "DEFENDANT" is specified as

The chart uses the defendants' names only in connection with identifying a relevant email. There is no column for "DEFENDANT," as in Counts 5–11. *See* n.6, *supra*. Coburn's name is used adjectivally ("COBURN email"); Schwartz is named as an email recipient ("to SCHWARTZ"). This is not charging language as such; it simply specifies the particular emails to which the charging language applies.

All of that said, we arrive at the nub of Schwartz's argument. In the chart, Schwartz is alleged to have personally been a party only to the email in Count 2, and not to those in Counts 3 and 4. The chart is thus allegedly incompatible with—or at least confusing in relation to—the theory that both defendants are charged in all three counts.

Considered against the relevant legal background, however, the allegations of the chart are clear enough. The government soundly argues that "use" of the means of interstate commerce encompasses participation in a bribery scheme where it is reasonably foreseeable that interstate emails would be used—what may be called the *Pereira* foreseeability rule.[7] Even from the

---

COBURN; under Counts 7 and 9 the "DEFENDANT" is specified as SCHWARTZ. In each instance, the date and the particular falsified record on which the count is based are described in adjoining columns. (Indictment at 22.) Mr. Schwartz suggests that there is some tension between the initial designation of both defendants together, and the chart's designation of one defendant per count. But if there is not, he suggests, then this mode of interpretation casts doubt on the meaning of Counts 2–5, in which the initial citation of both defendants is distributed over all three counts in the chart.

The significance of the DEFENDANT column in Counts 5–11 is that its entries specify the particular defendant charged in that particular count. I find that the chart, in context, is sufficiently clear. An alternative method of drafting such counts might be to substitute an incorporation by reference (*e.g.,* "the defendant named below") for the names of the defendants ("GORDON J. COBURN and STEVEN SCHWARTZ")—just as was done with the dates and the descriptions of the falsified documents. Still, the defendant's challenge is to Counts 2–5, not to Counts 5–11, and the issue is not whether the Court can think of a different or better drafting strategy.

I believe the Indictment is sufficiently clear, and I find no defect. To remove all doubt, I will require that the government file a formal bill of particulars confirming the defendant(s) charged in each of Counts 2 through 11.

[7]    That foreseeability rule, with respect to mail fraud, dates back at least to the venerable case of *Pereira v. United States*, 347 U.S. 1, 8–9, 74 S. Ct. 358 (1954) ("Where one does an act with knowledge that the use of the mails will follow in the

facts alleged in the conspiracy count (which are incorporated in Counts 2–4, see ¶ 1), such foreseeability may easily be inferred—if nothing else, it is clearly alleged that these defendants, from within the United States, were directing acts to be performed in India. Thus "use" presents an issue of fact, not of the Indictment's validity.

In addition, Counts 2–4 cite 18 U.S.C. § 2, which criminalizes an accomplice's participation by means of aiding, abetting, counseling, commanding, inducing, procuring, or causing the commission of an offense. Any such accomplice stands in the shoes of a principal as a matter of law.[8]

---

ordinary course of business, or where such use can reasonably be foreseen, even though not actually intended, then he 'causes' the mails to be used.")). It is well established in the context of both wire and mail fraud. *See United States v. Andrews*, 681 F.3d 509, 529 (3d Cir. 2012) (wire fraud); *United States v. Tiller*, 302 F.3d 98, 101 (3d Cir. 2002) (mail fraud). The FCPA, like mail and wire fraud, generally involves mail or interstate communications in furtherance of a scheme. It is natural, then, to extend the *Pereira* foreseeability rule to the FCPA.

The FCPA case law is very sparse, but favorable to the government's position. *SEC v. Straub*, Civ. No. 11-9645, 2016 WL 5793398 (S.D.N.Y. Sept. 30, 2016), a civil enforcement action under the anti-bribery provisions of the FCPA, held squarely that the *Pereira* foreseeability rule applies to the FCPA. *Id.* at *12. *Straub* reasoned that courts have interpreted the interstate-transmission element "liberally in other contexts and have held that, in addition to direct use, it is sufficient if the defendant merely 'act[s] 'with knowledge that" the use of an instrumentality of interstate commerce 'will follow in the ordinary course of business,' or that 'such use can reasonably be foreseen, even though not actually intended.'" *Id.* at 11 (quoting *United States v. Reifler*, 446 F.3d 65, 96 (2d Cir. 2006) (wire fraud case)). *Straub* noted that in an analogous context, the Second Circuit long ago applied the *Pereira* foreseeability standard to the interstate element of § 5 of the Securities Act of 1933, 15 U.S.C. § 77(e) (use of mails or communication in interstate commerce to sell or deliver unregistered security). *Id.* at 783–84 (citing *United States v. Wolfson*, 405 F.2d 779 (2d Cir. 1968)).

It is in light of the foregoing that Mr. Schwartz has partially withdrawn his motion to dismiss Counts 3 and 4 insofar as it argues that the Indictment fails to allege that he personally sent the emails. (DE 67; *see also* Schwartz Br. at 13 (citing *Straub*).)

[8]    (a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.

(b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.

In addition, Schwartz, alleged to be a conspirator in Count 1, may be held responsible for his coconspirator Coburn's acts in furtherance of the conspiracy. *See* 3d Cir. Model Jury Instructions (Criminal) 6.18.371K; *see also Salinas v. United States*, 522 U.S. 52, 63–64, 118 S. Ct. 469, 477 (1997). Indeed, that quasi-agency doctrine may extend so far as to impose substantive liability for coconspirators' crimes. *Id.* 7.03; *see generally Pinkerton v. United States*, 328 U.S. 640 (1946) (liability for substantive offense committed by coconspirator in furtherance of conspiracy if reasonably foreseeable).

These are principles of law that govern any indictment. Indeed, an indictment need not even cite 18 U.S.C. § 2 (let alone *Pinkerton*). Its operation, as a matter of law, is one for instruction of the jury. *See United States v. Frorup*, 963 F.2d 41, 52 n.1 (3d Cir. 1992) (aiding and abetting is implied in every indictment for a substantive offense); *United States v. Donahue*, 885 F.2d 45, 48 n.10 (3d Cir. 1989).

For all of these reasons, the Indictment adequately sets forth an offense against defendant Schwartz, and is sufficiently clear in charging Mr. Schwartz in Counts 3 and 4. The motion of defendant Schwartz to dismiss Counts 3 and 4 is therefore denied.

### B. Coburn Motion Based on Multiplicity (Counts 2–4)

Defendant Coburn asserts that Counts 2, 3, and 4, are multiplicitous— *i.e.,* that a single offense is dispersed among three separate counts. Two of the three, he argues, must be dismissed.

The issue comes down to the appropriate "unit of prosecution." An impermissibly multiplicitous indictment is one that "charges the same offense in two or more counts and [therefore] may lead to multiple sentences for a single violation." *United States v. Pollen*, 978 F.2d 78, 84 (3d Cir. 1992). What constitutes the "same offense" (or a "single violation") for these purposes, however, depends on the nature of the legislative enactment. Multiple

---

18 U.S.C. § 2. *See also* 3d Cir. Model Jury Instructions (Criminal) 7.02 (aiding and abetting), 7.05 (causing); *Rosemond v. United States*, 572 U.S. 65, 134 S. Ct. 1240 (2014).

punishments are not impermissible *per se*; "a defendant may be subject to multiple prosecutions for the same conduct if Congress intended to impose multiple punishments for that conduct." *United States v. Rigas*, 605 F.3d 194, 204 (3d Cir. 2010). "Congressional intent dictates the proper unit of prosecution." *United States v. Haddy*, 134 F.3d 542, 548 (3d Cir. 1998).

Thus, Congress could pass a single statute carrying a maximum sentence of ten years; alternatively, it could pass two statutes covering some or all of the same conduct, each carrying a maximum sentence of five years. Multiplicity is not so much a limit on what Congress *could* do as it is a matter of discerning what Congress *did* do. That requires a commonsense look at the nature of the prohibition to discern what was intended as the unit of prosecution. Homespun examples abound in the case law. *See United States v. Chagra*, 653 F.2d 26, 30 (1st Cir. 1981) (discussing, as example, that "the man who steals $100 from a billfold can be prosecuted once for the $100 theft and not ten times for ten $10 thefts"); *United States v. Greenspan*, No. CR 16-114 (WHW), 2016 WL 4402822, at *17 (D.N.J. Aug. 16, 2016) (suggesting that a baker who bakes four loaves of bread on the sabbath has violated the blue laws once, not four times). *See also United States v. Lacy*, 446 F.3d 448, 456–57 (3d Cir. 2006).

So the issue is one of legislative intent. The starting point—and usually the ending point—is the statutory language. Counts 2–4 charge violations of the anti-bribery provisions of the FCPA. The relevant section reads as follows:

> (a) Prohibition. It shall be unlawful for any issuer which has a class of securities registered pursuant to section 78l of this title or which is required to file reports under section 78o(d) of this title, or for any officer, director, employee, or agent of such issuer or any stockholder thereof acting on behalf of such issuer, to make use of the mails or any means or instrumentality of interstate commerce corruptly in furtherance of an offer, payment, promise to pay, or authorization of the payment of any money, or offer, gift, promise to give, or authorization of the giving of anything of value to—
>
> (1) any foreign official for purposes of—

9

(A)

(i) influencing any act or decision of such foreign official in his official capacity, (ii) inducing such foreign official to do or omit to do any act in violation of the lawful duty of such official, or (iii) securing any improper advantage; or

(B) inducing such foreign official to use his influence with a foreign government or instrumentality thereof to affect or influence any act or decision of such government or instrumentality,

in order to assist such issuer in obtaining or retaining business for or with, or directing business to, any person . . . .

15 U.S.C. § 78dd-1(a) ("Section 1(a)").[9]

Section 1(a) has been schematized as follows: It shall be unlawful for a certain class of actor (here, an officer of a securities "issuer") to

(1) "willfully;"

(2) "make use of the mails or any means or instrumentality of interstate commerce;"

(3) "corruptly;"

(4) "in furtherance of an offer, payment, promise to pay, or authorization of the payment of any money, or offer, gift, promise to give, or authorization of the giving of anything of value to;"

(5) "any foreign official;"

(6) "for purposes of [either] influencing any act or decision of such foreign official in his official capacity [or] inducing such foreign official to do or omit to do any act in violation of the lawful duty of such official [or] securing any improper advantage;"

(7) "in order to assist such [corporation] in obtaining or retaining business for or with, or directing business to, any person."

---

9    Also cited in the Indictment is 15 U.S.C. § 78ff(c)(2)(A), which prescribes penalties for violations. It is not directly relevant here.

*United States v. Kay*, 513 F.3d 432, 439–40 (5th Cir. 2007) (line breaks added; numbers, punctuation, and [bracketed] insertions as in the original).

The government proffers that the "unit of prosecution"—the precise act a defendant is prohibited from performing—is (2) to "make use of" interstate commerce facilities, such as email. Thus Counts 2, 3, and 4 of the Indictment permissibly charge as separate offenses the sending of three interstate emails in furtherance of the same bribery arrangement. The remaining elements, in the government's view, further define the purpose and surrounding circumstances of the emails.

Defendants respond that this statute is aimed to punish, not the use of email, but the bribery of foreign officials. In identifying the unit of prosecution, they stress, the court must look to the "essence" or "gist" of the offense. *See Sanabria v. United States*, 437 U.S. 54, 74 (1978). Thus, in their view, the appropriate unit of prosecution would be (4) the "payment of" a bribe (defined to include an offer, promise, or authorization of payment) to a foreign official. It is irrelevant, they say, that multiple emails were sent in furtherance of the same bribe. The interstate emails, according to defendants, do no more than furnish a federal jurisdictional basis for this bribery offense.

Absent from either side's presentation is any notion that the use of interstate commerce or the mails may serve more than one function. The reason for their presence in the statute may present a question of degree—Congress going as far as it could to proscribe conduct deemed wrongful. I will analyze these requirements, however, as they bear on the unit-of-prosecution issue.

Here, "[i]t shall be unlawful" for any covered person "to make use of" interstate facilities such as email. To be sure, the statute contains many other requirements. But "to make use of" is the operative verb (or verb phrase); using the interstate emails is literally the proscribed act. It is the verb that has the "issuer" (or its "officer") as its subject. Now, the Third Circuit has warned against any simplistic adoption of the "operative verb" test to identify the unit of prosecution. *See United States v. Diaz*, 592 F.3d 467, 473 (3d Cir. 2010)

11

(citing *United States v. Anderson*, 59 F.3d 1323, 1338 (D.C. Cir. 1995) (Ginsburg, J., dissenting, relying on operative verb of statute)). Still, the grammatical structure—the very manner in which the statute is worded—cannot be ignored.

If not dispositive, then, the structure of the drafting is surely relevant. Consider, for example, a hypothetical statute providing that "it shall be unlawful to pay a bribe," and providing in a separate section that the federal courts shall have jurisdiction where such bribery involves interstate communication (or a federally insured bank). Better still, consider a hypothetical federal statute containing a Congressional finding that bribery by its nature affects commerce, and then proscribing bribery *simpliciter*.[10] Either would present a stronger case for the proposition that the bribe itself is the unit of prosecution, and the connection to interstate commerce a mere jurisdictional hook.

Defendants suggest that an alternative jurisdiction provision found elsewhere in the FCPA, 15 U.S.C. § 78dd-1(g) ("Section 1(g)"), undermines the government's analysis. Section 1(g) provides as follows:

**(g) Alternative jurisdiction**

(1) It shall also be unlawful for any issuer organized under the laws of the United States, or a State, territory, possession, or commonwealth of the United States or a political subdivision thereof and which has a class of securities registered pursuant to section 78l of this title or which is required to file reports under section 78o(d) of this title, or for any United States person that is an officer, director, employee, or agent of such issuer or a stockholder thereof acting on behalf of such issuer, to corruptly do any act outside the United States in furtherance of an offer, payment, promise to pay, or authorization of the payment of any money, or offer, gift, promise to give, or authorization of the giving

---

[10]  The Title 21 narcotics offenses, for example, are preceded by such a finding. *See* 21 U.S.C. § 801 (finding, *inter alia,* that even local trafficking inherently affects interstate commerce). The associated criminal provisions simply proscribe, *e.g.*, distribution of an illegal narcotic, *see* 21 U.S.C. § 841(a)(1), and do not require any proof of an interstate commerce nexus in an individual case.

of anything of value to any of the persons or entities set forth in paragraphs (1), (2), and (3) of subsection (a) of this section for the purposes set forth therein, irrespective of whether such issuer or such officer, director, employee, agent, or stockholder makes use of the mails or any means or instrumentality of interstate commerce in furtherance of such offer, gift, payment, promise, or authorization.

15 U.S.C. § 78dd-1-(g).

It is true, as defendants state, that Section 1(g) in many respects "tracks the language of Section 78dd-1(a)." The evident design is to provide a backstop for certain cases of bribery in which the use of the mails or interstate commerce is absent. *Id.* (". . . irrespective of whether such issuer or such officer . . . makes use of the mails or any means or instrumentality of interstate commerce . . . .") Like Section 1(a) (and unusually for a mere jurisdictional provision), Section 1(g) begins with the words "It shall be unlawful," and it defines the illegal conduct, in part verbatim and in part by reference to Section 1(a). The covered class of "issuers" and their agents is similar, except that Section 1(g) specifies a U.S. entity.[11] The definition of bribery of a foreign official is the same. The purposes for which the payment is offered or made are the same. The recipient or intended recipient is the same. What is different about Section 1(g) is this: "It shall be unlawful," not to use interstate commerce in furtherance of a bribe, but instead to "corruptly do any act outside the United States in furtherance" of just such a bribe.

I am not persuaded that swapping an "act outside the United States" for the use of the mail or emails affects the analysis of the unit of prosecution. Of course, bribery is the overall subject matter, whether of Section 1(a) or 1(g); and the email, the mailing, or the foreign corrupt "act" must be done in furtherance of the bribe in order to be criminal. I do not, however, wholly

---

[11]     The stronger connection to the U.S. is perhaps what the legislature had in mind when it expanded the scope of the prohibition to all corrupt acts, not just use of the mails or interstate commerce—another example of Congress simply going as far as it could to reach wrongful conduct.

accept defendants' argument by implication. To the drafters, the deletion of interstate commerce seemingly required the substitution of an act deemed "corrupt." That the corruptly-performed foreign "act" substitutes for the interstate communication suggests that they may function similarly in the statute—as a definition of conduct deemed wrongful. And it might plausibly be argued that if jurisdiction exists with or without interstate commerce, then the interstate communication, whatever its jurisdictional significance, may not be "merely" jurisdictional.[12] For present purposes, however, that is not really the point.

The point is that the alternative jurisdictional provision leaves us with the same question regarding the unit of prosecution: Is *each* "act outside the United States" a separate offense? The answer, whether under Section 1(a) or Section 1(g), may turn out to be the *same* answer. But what is the answer?

The Third Circuit has not spoken on the issue of the unit of prosecution under the FCPA.[13] Nor does either side direct the Court to any on-point

---

[12]    The Section 1(a) mail and interstate commerce elements, Mr. Coburn argues, cannot constitute the "essence" of the offense because it can be proven without them, *i.e.,* by means of the alternative jurisdiction provision, Section 1(g). The same argument, I suppose, applies *within* the primary provision, Section 1(a); use of the mails suffices without interstate communications, and vice versa. And, under 1(g), an act abroad suffices without either. But it cannot be said that *none* of the alternatives is essential just because only *one* is required in an individual case.

[13]    The Fifth Circuit case of *United States v. Kay,* cited by the government, is no more than generally suggestive. 513 F.3d 432 (5th Cir. 1977). The issue there was whether certain interstate transmissions were "in furtherance" of the bribes, or merely incidental to, or a product of, such bribes. The court did not address the issue of charging each transmission as a separate offense. The court did hold, however, that the "business nexus" requirement of the FCPA (*see* element (7), *supra*) was not so vague as to deprive the defendants of fair notice, and that it was not being applied to criminalize conduct outside the scope of the statute.

The government suggests that the "in furtherance of" requirement, discussed in *Kay,* tends to confirm that the interstate communication is part and parcel of the offense, and not a mere jurisdictional appendage. It would be remarkable, of course, if the statute extended to anyone who, for any purpose, had ever sent a letter or an email. That the communication must relate to or further the bribery arrangement does not, for me, help in resolving the unit of prosecution issue.

authority. I therefore look to analogous criminal statutes as a guide to interpretation.

I first consider the mail fraud and wire fraud statutes, 18 U.S.C §§ 1341 and 1343. Both provide that "[w]hoever, having devised a scheme or artifice to defraud . . . for the purpose of executing such scheme or artifice . . ." either (a) "places in any post office or authorized depository for mail matter, any matter or thing," or (b) "transmits or causes to be transmitted by means of wire . . . in interstate or foreign commerce" virtually any sort of material shall be guilty of an offense. It has long been settled that *each* such mailing or wire transmission, even if in furtherance of the same scheme to defraud, may be indicted as a separate count. *See Badders v. United States*, 240 U.S. 391, 394, 36 S. Ct. 367, 368 (1916).[14] "Courts have consistently held that each mailing constitutes a separate offense and that the counts of an indictment charging separate and distinct mailing offenses involving the same scheme to defraud cannot be dismissed as multiplicitous." *United States v. Schall*, 371 F.Supp. 912 (W.D. Pa.) (citing cases), *aff'd*, 503 F.2d 1399, 1400 (3d Cir. 1974).

Mail and wire fraud (like FCPA) are addressed to the use of the mails or interstate communications "in furtherance of" a defined illicit activity. Like the FCPA, they are both expressed in terms of a prohibition on use of the mails or interstate commerce for the prohibited purpose. "[T]he grammatical structure

---

[14]     Court of Appeals case law is in accord. *See United States v. Benmuhar*, 658 F.2d 14 (1st Cir. 1981) (mail and wire fraud); *United States v. Bush*, 522 F.2d 641, 649 (7th Cir. 1975) (mail fraud); *United States v. Williams*, 424 F.2d 344, 351 (5th Cir. 1970) (mailing is "gist" of mail fraud and each mailing may be charged separately), *overruled on other grounds on rehearing,* 447 F.2d 1285 (5th Cir. 1971); *United States v. Eskow*, 422 F.2d 1060, 1064 (2d Cir. 1970) (mail fraud); *Atkinson v. United States*, 418 F.2d 1311, 1313 (8th Cir. 1969) (mail fraud); *Hanrahan v. United States*, 348 F.2d 363 (D.C. Cir. 1965) (mail fraud).

This District Court and others within the Third Circuit agree. *See United States v. Parkin*, No. CR 04-162 (GEB), 2005 WL 8159189, at *8 (D.N.J. June 7, 2005) (mail fraud), *aff'd*, 319 F. App'x 101 (3d Cir. 2009); *Kronfeld v. First Jersey Nat. Bank*, 638 F. Supp. 1454, 1472 (D.N.J. 1986) (mail and wire fraud); *United States v. Tiche*, 424 F. Supp. 996, 1003 (W.D. Pa. 1977) (mail fraud); *United States v. Bloom*, 78 F.R.D. 591, 604 (E.D. Pa. 1977) (mail fraud).

of the statute suggests the supremacy of the 'means' element—the use of the mails or wires—and the correspondingly subordinate nature of the 'substantive offense' element—the scheme or artifice to defraud." *United States v. Gordon*, 875 F.3d 26, 37 (1st Cir. 2017). The FCPA shares that "grammatical structure." It is true that, just as the FCPA is aimed at bribery, these statutes are aimed at fraud, not at punishing mail or interstate communication as such. The scheme to defraud itself could thus plausibly be viewed as the "gist" of the offense. Yet it is well-settled that each mailing or wire communication is separately indictable.

The analogy to the FCPA is powerful, then, unless some peculiar distinguishing feature of mail or wire fraud can be identified. There is one candidate. The original version of the mail fraud statute was enacted in 1872 "[t]o safeguard the integrity of the postal system," and culpability "was to be based not so much on the degree of the fraud as on the degree of misuse of the mails." *Gordon*, 875 F.3d at 36 (quoting [future District Judge] Jed S. Rakoff, *The Federal Mail Fraud Statute (Part I)*, 18 Duq. L. Rev. 771, 784 (1980)). The objective—to keep the U.S. mail stream running clean and pure—may sound quaint to modern ears, but the origin and purpose of the statute remain relevant to its interpretation.[15]

The goal of preserving governmental integrity does not apply in the same way to the wire fraud statute; wire communications, for example, have not traditionally been a federal function, like the delivery of mail. Yet the rule that each communication constitutes a separate offense has been extended from mail fraud to wire fraud with little discussion or controversy. *See, e.g., United States v. Fermin Castillo*, 829 F.2d 1194, 1199 (1st Cir. 1987) ("It is well

---

[15]    *Compare Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 647, 128 S. Ct. 2131, 2138 (2008) ("The gravamen of the offense is the scheme to defraud . . . ."), *with United States v. Dreer*, 457 F.2d 31, 33 (3d Cir. 1972) (in mail fraud prosecution it is not necessary to name the victim, because the crime "is not to defraud any person or persons, but to use the mails in carrying out a scheme to defraud . . . .") (quoting *United States v. Marrin*, 159 F. 767, 774 (E.D. Pa. 1908), *aff'd*, 167 F. 951, 955–56 (3rd Cir. 1909)).

established that each use of the wires constitutes a separate crime under 18 U.S.C. § 1343, even if the several uses are in pursuance of but one criminal enterprise."); *Benmuhar, supra; Kronfeld, supra*. That extension from mail fraud to wire fraud might suggest that the separate-offense rule does *not* rest on some unique feature of the mails. The explanation, however unsatisfactory, may simply be that the mail and wire fraud statutes, because their wording is so similar, have always been construed *in pari materia. See, e.g., McLendon v. Cont'l Grp., Inc.*, 602 F. Supp. 1492, 1507 (D.N.J. 1985) (citing *United States v. Giovengo*, 637 F.2d 941, 944 (3d Cir. 1980) (wire fraud statute interpreted *in pari materia* with mail fraud statute)).

The upshot, in my view, is that mail and wire fraud provide a suggestive comparison, but not an inexorable command.

For further guidance, I turn next to the Travel Act, 18 U.S.C. § 1952:

(a) Whoever travels in interstate or foreign commerce or uses the mail or any facility in interstate or foreign commerce, with intent to—

> (1) distribute the proceeds of any unlawful activity; or

> (2) commit any crime of violence to further any unlawful activity; or

> (3) otherwise promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of any unlawful activity,

and thereafter performs or attempts to perform—

> (A) an act described in paragraph (1) or (3) shall be fined under this title, imprisoned not more than 5 years, or both; or

> (B) an act described in paragraph (2) shall be fined under this title, imprisoned for not more than 20 years, or both, and if death results shall be imprisoned for any term of years or for life.

18 U.S.C. § 1952(a). The Act then defines "unlawful activity" with reference to specified violations of federal and state substantive criminal law.

The Travel Act shares some relevant features with the FCPA. It provides that a person who travels in interstate commerce, or uses the mails or facilities of interstate commerce, with intent to promote or further certain unlawful activity, and who then does or attempts to do what was intended, is guilty of an offense. The Travel Act shares with the FCPA a grammatical structure that places the "operative verb," *i.e.,* to travel in or use interstate commerce, front and center. Like the FCPA, the Travel Act is phrased in terms of acting in interstate commerce, with the purpose of facilitating wrongful activity, and it adds the requirement of actually committing or attempting to commit such activity (just as the bribe under the FCPA must be paid, or at least authorized or offered).

The unit of prosecution under the Travel Act is the act of interstate travel or use of facilities of interstate commerce. Each may be the subject of a criminal charge, even if all are done to promote or facilitate a single unlawful activity. *See, e.g., United States v. Pollizzi*, 500 F.2d 856, 897–98 (9th Cir. 1974) (rejecting multiplicity challenge to indictment that separately charged acts of travel to promote the same illegal gambling enterprise); *United States v. Alsobrook*, 620 F.2d 139, 142 (6th Cir. 1980); *United States v. Brown*, Crim. No. 90–144, 1991 WL 7378, at *2 (E.D. Pa. Jan. 22, 1991). Defendants do not dispute that this is well-settled law; rather, they suggest a distinction.

The interstate connection may be treated as the "gist" of the Travel Act offense, say Defendants, because the Travel Act was originally designed to reach criminals who evaded law enforcement by residing in one state while carrying on their activities in another. *See Rewis v. United States*, 401 U.S. 808, 811 n.6 (1971) (citing legislative history to the effect that only the federal government was in a position to reach criminals who "live far from the scene and, therefore, remain immune from the local officials.") The proffered distinction is not a strong one; indeed, it suggests a further analogy. The FCPA, too, was enacted to reach corrupt conduct, formerly untouched by the criminal law because it took place beyond borders. A defendant's use of emails sent

18

from the United States to advance bribery activities abroad would appear to be highly analogous to the conduct at which the Travel Act is directed. It is not merely jurisdictional, but wrongful, in the same way.

To my mind, then, the unit-of-prosecution case law under the Travel Act reinforces the analogy suggested by the mail and wire fraud statutes.

To fill out the discussion, I consider Defendants' strongest example of a statute that does not adopt the use of mails or interstate commerce as the unit of prosecution: the murder-for-hire statute, 18 U.S.C. § 1958(a). I say "strongest" because the murder-for-hire statute, though interpreted differently, is otherwise quite similar to the Travel Act. It provides that "[w]hoever travels in . . . interstate or foreign commerce, or uses . . . the mail or any facility of interstate or foreign commerce, with intent that a murder be committed" in return for pay, is guilty of an offense. *Id.* The operative verbs, as in the Travel Act, are to "travel[]" interstate or to "use[]" the mails. Nevertheless, it has been held—contrary to the interpretation of the Travel Act—that the murder-for-hire statute's unit of prosecution is *not* each incident of interstate travel or use of interstate facilities, but rather "a single plot to murder a single individual." *United States v. Gordon*, 875 F.3d 26, 37 (1st Cir. 2016). The *Gordon* court's rationale, however, was firmly rooted in the peculiarities of this "clumsily drafted statute." *Id.* at 32. It provides an object lesson in the principle that the "operative verb" test, however useful, may be overcome by other factors. *United States v. Diaz*, 592 F.3d at 473.

The *Gordon* court's analysis rested on two key factors:

The first was the legislative history of 18 U.S.C. § 1958, indicating that Congress meant to do no more than exert federal power over particular instances of an existing state offense, while leaving the majority of such cases to the states—*i.e.,* to focus on "a murder plot that had a federal nexus, not the federal nexus itself." *Gordon*, 875 F.3d at 34. Such federalism concerns are not implicated by the FCPA. It was enacted, not to federally adopt the prosecution of a select few state-law bribes, but rather to extend the reach of the law to

19

foreign bribes that were previously untouched, whether by federal or local criminal law.

The second factor was the murder-for-hire statute's tiered penalty structure of graduated maximum punishments (10 years, 20 years, or life), based on the level of harm to the victim. *Id.* at 33. To adopt each event of interstate travel or communication as the unit of prosecution would, *Gordon* reasoned, make a hash of that "victim-centric" scheme. Thus, a defendant who made three phone calls in furtherance of the lowest-tier, 10-year offense would nevertheless face a 30-year maximum. Such victim-based, graduated-punishment factors are not present to anything like the same degree in the FCPA.[16]

---

[16]    Somewhat farther afield in their phrasing are certain of the securities laws cited by Defendants:

> *Gordon, supra,* observed in dictum that "[s]ome statutes, such as the Securities Act, 15 U.S.C. § 77q(a), feature the familiar 'interstate commerce' language, yet have units of prosecution that are distinct from those embodied in the mail and wire fraud statutes." 875 F.3d at 36 (citing *United States v. Waldman*, 579 F.2d 649, 654 (1st Cir. 1978) (establishing appropriate unit of prosecution for securities fraud under section 77q(a) as each "separate transaction[ ] accompanied by use of the mails")). But section 77q, by contrast with the FCPA, does not provide that it shall be unlawful for a person to use the mails or interstate commerce in pursuit of some unlawful purpose. It is phrased the other way around, making it unlawful, in connection with a sale of securities and by means of interstate commerce, to perform certain fraudulent acts:

> > It shall be unlawful for any person in the offer or sale of any securities . . . by the use of any means or instruments of transportation or communication in interstate commerce or by use of the mails, directly or indirectly—

> > (1) to employ any device, scheme, or artifice to defraud, or

> > (2) to obtain money or property by means of any untrue statement of a material fact . . .; or

> > (3)  to engage in any transaction, practice, or court of business which operates or would operate as a fraud or deceit upon the purchaser.

15 U.S.C. § 77q(a). As noted above, the "operative verb" test cannot be applied simplistically or indiscriminately. Still, it is significant that under this statute, the action it is "unlawful" to do is to "employ," "obtain," or "engage." The use of interstate commerce, like the offer or sale of securities, is stated not as an unlawful act in itself, but a condition under which the prohibited acts must be done. So if the prohibited act, as embodied in the verb, is the unit of prosecution, that is probably sufficient explanation.

I conclude from the foregoing that the interstate emails cited in Counts 2, 3, 4 are permissible, if not inevitable, units of prosecution. The grammatical structure and language of the FCPA suggest as much. The operative verb test, while not dispositive, is highly suggestive. The domestic use of international communications as a means of accomplishing foreign bribery by remote control bears enough earmarks of wrongfulness to suggest that it is central to the offense, and not a mere jurisdictional appendage. The most analogous statutes support the conclusion that each communication is a unit of prosecution. The motion to dismiss Counts 2, 3, or 4 of the Indictment on these grounds is therefore denied.[17]

### C. Motion to Dismiss Count 12 on Grounds of Repugnance

Defendants move to dismiss Count 12 on grounds of "repugnance"—*i.e.,* the alleged mutual inconsistency of its allegations. Count 12 charges that the defendants "circumvented and caused to be circumvented, and failed to implement, a system of internal accounting controls of Cognizant . . ." in violation of 15 U.S.C. § 78m(b)(5).[18] "[I]f a person has failed to implement a

---

The same reasoning applies to Section 10(b) of the Securities Exchange Act, 15 U.S.C. § 78j(b), which is phrased in the same manner. With regard to Section 10(b), the Third Circuit "declined to adopt an inflexible rule," suggesting that different kinds of violations might entail different units of prosecution. *See United States v. Haddy*, 134 F.3d 542, 548–49 (3d Cir. 1998). Considering a duplicity challenge, *Haddy* held that each multipart scheme to manipulate the price of a single company's stock was the unit of prosecution—not each purchase and sale of stock, which were not themselves necessarily fraudulent except insofar as they advanced the scheme. *Haddy* approvingly cited *United States v. Langford*, 946 F.2d 798, 803 (11th Cir. 1991), which held that the unit of prosecution under section 10(b) could consist of each false statement, but not each individual mailing.

[17]    I make no ruling as to whether overcharging of a large number of communications (as opposed to the three here) could confuse a jury or otherwise prejudice a defendant. I will, if requested, instruct the jury that they should not draw any untoward conclusions from the presence of three counts, rather than one, in connection with a single bribe. And, should convictions be obtained on more than one of these counts, the Court will ensure that multiple punishments are not inflicted for the same scheme.

[18]    (5) No person shall knowingly circumvent or knowingly fail to implement a system of internal accounting controls or knowingly falsify any book, record, or account described in paragraph (2).

system, there *is* no system, and a person cannot circumvent something that is non-existent." (Coburn MTD Br. at 9–10.) Thus, according to Defendants, Count 12 contains "repugnant" theories and must be dismissed.

The government may charge alternative means of violation that are spelled out in a criminal statute. Criminal statutes generally separate these means with the disjunctive "or"; thus, for example, a statute may brand as a criminal "[w]hoever embezzles, steals, or unlawfully takes, carries away, or conceals . . ." things being shipped interstate. 18 U.S.C. § 666. An indictment will typically parrot those statutory verbs. Typically, however, an indictment will charge them with the conjunctive "and," rather than the disjunctive "or." Nevertheless, a conviction may rest on proof of just one, not all, of the alternatives. *See United States v. Niederberger*, 580 F.2d 63, 68 (3d Cir. 1978) ("it is settled law that where a statute denounces an offense disjunctively, the offense may be charged conjunctively in the indictment . . . . Moreover, guilt

---

15 U.S.C. § 78m(b)(5).

    The portion of the cross-referenced paragraph (2) cited in the Indictment reads as follows:

> (2) Every issuer which has a class of securities registered pursuant to section 78l of this title and every issuer which is required to file reports pursuant to section 78o(d) of this title shall—
>
> (B) devise and maintain a system of internal accounting controls sufficient to provide reasonable assurances that—
>
>> (i) transactions are executed in accordance with management's general or specific authorization;
>>
>> (ii) transactions are recorded as necessary (I) to permit preparation of financial statements in conformity with generally accepted accounting principles or any other criteria applicable to such statements, and (II) to maintain accountability for assets;
>>
>> (iii) access to assets is permitted only in accordance with management's general or specific authorization; and
>>
>> (iv) the recorded accountability for assets is compared with the existing assets at reasonable intervals and appropriate action is taken with respect to any differences . . . .

15 U.S.C. § 78m(b)(2).

may be established by proof of any one act named disjunctively in the statute.")[19]

The mere presence of alternative verbs in a single count, then, is unobjectionable. To warrant dismissal, as defendants recognize, these alternatives must be so inconsistent as to be mutually repugnant, depriving the defendant of fair notice and confusing the jury. *United States v. Cisneros*, 26 F. Supp. 2d 24, 52 (D.D.C. 1998); *United States v. Palo*, No. 1:16CR23, 2017 WL 6594196, at *3 (W.D. Pa. Dec. 26, 2017). Examples of dismissal, or even forced election, are rare, however. None of the cases cited involve an indictment's mere parroting of a statutory laundry list of verbs, signifying means of commission of the offense.[20] Rather, they involve stark contradictions, generally factual in nature—allegations that an event both did and did not occur, or that two different people committed a one-person act. *See, e.g., United States v. Rajarantnam*, No. 13-cr-00211, 2014 WL 1554078 (S.D.N.Y. Apr. 17, 2014) (in complex securities case, indictment attributes the same purchase of shares to two different co-defendants).

No such repugnance is asserted here. Count 12 does no more than quote the actual wording of the statute, as indictments are generally required to do. *See United States v. Kemp*, 500 F.3d at 280 (generally, "no greater specificity than the statutory language is required . . . .") Defendants' repugnancy argument rests on a false either/or dichotomy. I mean this: These defendants, as high-ranking officers and executives of the company, could have instituted internal controls which, taken collectively, failed to meet the standards of 15 U.S.C. § 78m(b)(2). If so, that shortfall might satisfy one of the alternatives of § 78m(b)(5), *i.e.*, that they "failed to institute" a reasonable set of controls. It does

---

[19]    In *Niederberger*, the defendant argued that a count of the indictment was duplicitous because, by reciting the statutory verbs, it charged three offenses in one: *i.e.,* that he did illegally "accept, receive *and* agree to receive a thing of value," and receive a "fee, compensation *and* reward." *Id.* at 37 (emphasis added). The court rejected that contention.

[20]    Indeed, an indictment may charge that the means by which an offense was committed are unknown. *See* Fed. R. Crim. P. 7(c).

not follow that the company therefore had *no* accounting controls. (*See* Coburn MTD Br. at 9–10 ("a person cannot circumvent something that is non-existent.").) Nor can I draw from the statutory wording any Congressional intent to excuse evasion of oversight in any company whose controls do not rise to the required level. A defect in accounting controls does not preclude an allegation that defendants circumvented such controls as were in effect. There is no fundamental repugnance, and these allegations are not so inconsistent that they cannot both be alleged as alternatives in the same count or indictment.

The motion to dismiss Count 12 is therefore denied.

## II.    Bill of Particulars

The defendants move for a bill of particulars as to various facts and theories.

Rule 7(f), Fed. R. Crim. P., grants the court the authority to order a bill of particulars. A bill of particulars will be required where "an indictment's failure to provide factual or legal information significantly impairs the defendant's ability to prepare his defense or is likely to lead to prejudicial surprise at trial." *United States v. Rosa*, 891 F.2d 1063, 1066 (3d Cir. 1989). It is well settled that a bill of particulars "is not intended to be a discovery device." *United States v. DePaoli*, 41 F. App'x 543, 546 (3d Cir. 2002) (quoting *United States v. Smith*, 776 F.2d 1104, 1111 (3d Cir. 1985)). Rather, a bill of particulars may be required "when the indictment itself is too vague and indefinite" to fulfill the essential purposes of Criminal Rule 7(c) (discussed at Section I, *supra*).

On its face, this Indictment is sufficient to fulfill the purposes of Rule 7(c). It identifies the offenses, quotes the statutory language, gives the relevant dates, and specifies both the bribe and the corporate purpose for which it was sought. Count 1, the conspiracy count, in particular relates many of the relevant underlying facts. At paragraphs 1–26, covering 11 pages, it lays out the essential events, civil-complaint style. Paragraphs 28 and 29(a)–(h) set forth the goals and manner and means of the conspiracy. And paragraphs 30(a)–(g)

specify overt acts by the defendants in furtherance of it. These factual allegations are incorporated by reference in the substantive counts. It cannot be maintained that the Defendants are in the dark about what they are accused of, or that, if later accused in relation to the same bribe, they could not raise this prosecution as a bar.

The motions here contain requests for clarification or narrowing which are in the nature of contention interrogatories in a civil case. They also contain requests for specification of particular facts or transactions, or the evidence supporting them, which are in the nature of discovery requests in a civil case. It is clear, however, that the defendants have already received discovery far in excess of what is required by Rule 16 or the case law. In addition, they have received or will receive in due course such items as reports of prior statements of government witnesses. The government attorneys seem to have been cooperative in responding to reasonable queries. As noted at oral argument, it is not much of an exaggeration to say that Defendants know, or at least have available to them, most or all of what the government knows. A motion for a bill of particulars cannot be used to compel the government to organize the discovery by topic or to "weave the information at its command into the warp of a fully integrated trial theory for the benefit of the defendants." *United States v. Addonizio*, 451 F.2d 49, 64 (3d Cir. 1972). If there are gaps in the discovery information, those gaps may or may not point to a potential weakness in the government's case. That, however, is a matter for trial, not for a bill of particulars.

For the reasons stated on the record, as supplemented herein, I decide the requests for a bill of particulars as follows:

a.      *Identification of coconspirators and "others."* Particularly where discovery, as in this case, has been extensive, identification of coconspirators is not required. *See United States v. Torres,* 901 F.2d 205, 233–34 (2d Cir. 1990). I would require the disclosure of the persons named in the Indictment as CC #1, CC #2, and CC #3, but the government represents that it has already disclosed their identities. To avoid unfair surprise or delays at trial, however, I

will require the following: At least 20 days before trial, the government shall disclose the identities of the declarants of any statements it plans to introduce in evidence *via* Fed. R. Evid. 801(d)(2)(E). In addition, I will entertain an application to strike the words "and others" from the Indictment before it is published to the jury, if those words appear to serve no further purpose.

      b.    *Identification of bribed foreign officials or third-party consultants.* In general, I would be receptive to a request that the government, if accusing someone of bribery, state the identity of the person who was bribed. The government argues that, under the FCPA, identification of specific individuals is not an essential element. (Gov't Br. at 49–50 (citing, *inter alia, Straub*, 921 F. Supp. 2d at 265).) More fundamental, however, is the government's representation that it "does not possess evidence sufficient to identify the specific foreign official or third-party consultant involved in the bribe payment . . . ." (*Id.* at 51.) If that turns out to be a weakness in the government's case, so be it. But because the government has "no additional information to give the Defendants" (*id.*), the motion for a bill of particulars on this point must be denied as moot.

      c.    *Identification of payments.* The government, in its brief and at oral argument, represented they already turned over documents on the payments in discovery. Defense counsel responded that they have expended reasonable efforts, but were unable to segregate records that relate to the payments from those that did not. I agree that the government is not required to perform a forensic accounting for defendants' benefit. Nevertheless, I directed the government attorneys to point the defense to records sufficient to identify the relevant payments, and the AUSA at oral argument represented that they would do so. To that extent, the motion is granted.

      d.    *"And elsewhere."* Indictments routinely allege that acts occurred in the relevant venue "and elsewhere," and this is no exception. The government represents that discovery, as well as the factual allegations of the conspiracy count, are sufficient to avoid prejudice. I agree; to fulfill its function, this

Indictment does not require a bill of particulars listing all locations that might be involved. True, certain of these locations are abroad, and not so readily accessible as domestic ones. Nevertheless, the discovery should be sufficient to give the allegations some geographic focus, and the defendants may tailor their pretrial investigation and defenses accordingly.[21]

       e.    *Aiding and abetting.* As noted above, aiding and abetting is one of several means by which a participant in an offense may attain the status of a principal under 18 U.S.C. § 2. Defense counsel argues essentially that A cannot "aid and abet" B's commission of an offense, if B lacks the legal ability to commit the offense. *See Failla v. City of Passaic*, 146 F.3d 149, 159 (3d Cir. 1998). Certain nonresident foreign nationals, for example, are not eligible defendants under the FCPA. *See United States v. Hoskins*, 902 F.3d 69, 84 (2d Cir. 2018).[22] Therefore, the argument runs, the government should be forced to

---

[21]    To anticipate an argument, I see no basis to strike this language from the Indictment. There can be no prejudice, as everyone agrees that acts are alleged to have occurred, not only in New Jersey, but elsewhere.

[22]    More specifically, the FCPA excludes "nonresident foreign nationals outside American territory without an agency relationship with a U.S. person, and who are not officers, directors, employees, or stockholders of American companies." *Hoskins*, 902 F.3d at 84. The persons and entities covered by the FCPA encompass "every other possible combination of nationality, location, and agency relation" (*id.*);

    First, the statute prohibits a company issuing securities regulated by federal law (an "issuer") from using interstate commerce in connection with certain types of corrupt payments to foreign officials. 15 U.S.C. § 78dd–1(a). The same prohibitions apply to any "domestic concern." 15 U.S.C. § 78dd–2(a). "Domestic concern" is a broad term that covers "any individual who is a citizen, national, or resident of the United States," 15 U.S.C. § 78dd–2(h)(1)(A), wherever such a person happens to be in the world. It also covers most businesses—including partnerships, sole proprietorships, and unincorporated organizations—that are organized under state or federal law or have principal places of business in the United States. 15 U.S.C. § 78dd–2(h)(1)(B).

    Second, the statute prohibits "any person other than an issuer ... or a domestic concern" from using interstate commerce in furtherance of corrupt payments to foreign officials, but only while the person is "in the territory of the United States." 15 U.S.C. § 78dd-3(a). A "person" is "any natural person other than a national of the United States," as well as any business organized under foreign law. 15 U.S.C. § 78dd-3(f)(1).

supply a bill of particulars disclosing whether it relies on an aiding and abetting theory, because if it does, and if B turns out to be a person who cannot commit the offense, then the defense could move to dismiss; a bill of particulars is required, says Schwartz, to "allow for this inquiry." (Schwartz MTD Br. at 32.)

There is no indication of potential error in the *Hoskins* sense—*i.e.,* a charge brought, directly or indirectly, against someone who is not potentially liable under the FCPA. Defendants Coburn and Schwartz, officers and executives of an issuer in the United States, had the legal ability to commit this FCPA offense as charged—*i.e.,* by engaging in interstate emails to further a bribery arrangement in India. A bill of particulars is not required simply because a defendant wishes to make "inquiry" into a speculative legal issue. As noted above, *see* Section 1.A & n.8, *supra,* 18 U.S.C. § 2 covers a panoply of direct and indirect means of causing an offense to be committed. One may, as defendant states, aid the efforts of the primary offender. Or one may oneself be a principal, but "cause" the offense to occur through another principal, or even

---

In sum, these provisions provide jurisdiction over the following persons, in the following scenarios:

(1) American citizens, nationals, and residents, regardless of whether they violate the FCPA domestically or abroad;

(2) most American companies, regardless of whether they violate the FCPA domestically or abroad;

(3) agents, employees, officers, directors, and shareholders of most American companies, when they act on the company's behalf, regardless of whether they violate the FCPA domestically or abroad;

(4) foreign persons (including foreign nationals and most foreign companies) not within any of the aforementioned categories who violate the FCPA while present in the United States.

The single, obvious omission is jurisdiction over a foreign national who acts outside the United States, but not on behalf of an American person or company as an officer, director, employee, agent, or stockholder.

*Id.* at 84–85.

a wholly innocent intermediary. *United States v. Gumbs*, 283 F.3d 128, 134 (3d Cir. 2002).[23] The evidence will establish how these offenses were or were not committed. The evidence will be sufficient, or it will not, and the relevant counts will or will not be dismissable at the close of the evidence. *See* Fed. R. Crim. P. 29(a). Disclosure of theories and subtheories—particularly ones that need not even be alleged at all, but arise by operation of law—is not the proper function of a bill of particulars, which is designed to supplement or remedy the shortcomings of an indictment.

        f.     *Particular misstatements in securities filings.* These requests focus on Counts 6–11, which allege falsification of books and records which were required to accurately reflect the transactions and dispositions of the assets of Cognizant. The particular record is specified with respect to each count:

| COUNT | APPROXIMATE DATE | DEFENDANT | FALSIFIED RECORD |
|---|---|---|---|
| Five | March 11, 2015 | COBURN | Spreadsheet and related approvals containing and incorporating false change order requests in connection with the KITS Campus. |
| Six | July 24, 2014 | COBURN | Sarbanes-Oxley Quarterly Global 302 Certification for the Quarter Ended June 30, 2014. |
| Seven | August 1, 2014 | SCHWARTZ | Sarbanes-Oxley Quarterly Global 302 Certification for the Quarter Ended June 30, 2014. |
| Eight | April 21, 2015 | COBURN | Sarbanes-Oxley Quarterly Global 302 Certification for the Quarter Ended March 31, 2015. |
| Nine | February 2, 2015 | SCHWARTZ | Annual Report on Form 10-K and Proxy Statement Disclosure Questionnaire for the Year Ended December 31, 2014. |

---

[23]    Courts do have a tendency, however, to use the term "aiding and abetting" indiscriminately to refer to liability under 18 U.S.C. § 2. *See United States v. Wasserson*, 418 F.3d 225, 234 (3d Cir. 2005).

| Ten | February 9, 2015 | COBURN | COBURN Annual Report on Form 10-K and Proxy Statement Disclosure Questionnaire for the Year Ended December 31, 2014. |
| Eleven | February 6, 2015 | COBURN | Annual Report on Form 10-K and Proxy Statement Disclosure Questionnaire for the Year Ended December 31, 2015. |

If the Indictment simply waved in the direction of some massive SEC filing and alleged that it was false, defendants would have a point. As things stand, however, I see no need for a bill of particulars. These Counts, as pled, particularly in the context of the allegations incorporated from the conspiracy count and the discovery provided, require no amplification to fulfill the proper purposes of an indictment and permit the preparation of a defense.

The records involved are not lengthy. They have, moreover, been identified with particularity and turned over in discovery. Also produced are associated documents, such as emails, establishing the process by which the forms were circulated and filled out.

The conspiracy count relates the payment of the bribe and the manner in which it was paid through a Construction Company, concealed, and then reimbursed to the Construction Company in the guise of a legitimate payment. The manner and means paragraphs specifically address the falsification of records in relation to those transactions:

> g. To conceal Cognizant's reimbursement for the bribe payment, COBURN, SCHWARTZ, and others, falsified and caused to be falsified Cognizant's books, records, and accounts. For example:

> i. COBURN, SCHWARTZ, and others approved and caused the approval of false change order requests and related approvals in connection with the KITS Campus.

> ii. COBURN, SCHWARTZ, and others, in connection with the preparation of Cognizant's SEC filings, made and caused to be made false, fraudulent, and misleading representations and

omissions in Sarbanes—Oxley Quarterly Global 302 Certifications for the quarter ending June 30, 2014 and the quarter ending March 31, 2015, including, but not limited to, falsely certifying that Cognizant's internal controls had been in force and effective, and that they had disclosed to Cognizant's Chief Executive Officer and Chief Financial Officer all known deficiencies in the operation of the internal controls and any known fraud involving management or other employees who had a significant role in Cognizant's internal controls.

        iii. COBURN, SCHWARTZ, and others, in connection with the preparation of Cognizant's filing of its annual report with the SEC, made and caused to be made false, fraudulent, and misleading representations and omissions in Annual Report on Form 10-K and Proxy Statement Disclosure Questionnaires for the year ended December 31, 2014 and the year ended December 31, 2015, including, but not limited to, providing false answers to questions relating to: bribes or kickbacks; disguised or intentionally misrecorded entries in Cognizant's books and records; and transactions that may have violated Cognizant's Code of Conduct.

(Indictment, Count 1 ¶ 29(g).) These allegations and others are incorporated by reference in Counts 5–11. (Indictment, Counts 5–11, ¶ 1.)

    *United States v. Moyer,* 674 F.3d 192, 203 (3d Cir. 2012), is instructive. There, the defendant asserted that the indictment, which charged him with falsification of records in a federal investigation, *see* 28 U.S.C. § 1519, was insufficiently specific. The Court, however, found that the indictment did not merely parrot the "generalities" of a statute; rather, it identified the false documents as police reports prepared between two dates, and incorporated allegations from the conspiracy count that identified the specific police reports and identified the subject matter of the falsehoods, *i.e.,* a racially motivated assault. In every way that matters, this Indictment is similar.

The Indictment's allegations, particularly in the context of the discovery, are more than sufficient. On this score, the motion for a bill of particulars in denied.[24]

g.    *Accounting Controls.* Defendants seek further information about the particular internal accounting controls involved, how they fell short of reasonable standards, which particular controls were circumvented, and so on. As a general matter, these requests far exceed the function of a bill of particulars. Count 12 of the Indictment (discussed further in Section I.C, *supra*) alleges that the relevant system of internal accounting controls includes "controls relating to payments and approvals for accounts payable." It is readily inferable that the "payments" must primarily refer to the bribe itself and the disguised reimbursement. Count 12 also alleges that the relevant controls relate to "Cognizant's SEC filings, such as Sarbanes-Oxley Quarterly Global 302 Certifications and Annual Report on Form 10-K Proxy Statement Disclosure Questionnaires." Those particular filings and questionnaires, which are required to be accurate, are discussed above, and have been turned over in discovery. That is sufficient. The motion for a bill of particulars is denied in this respect.

h.    *Personal benefit received by Schwartz and others.* Because this is not an express requirement of the FCPA, no bill of particulars is required to identify it. The main benefit referred to in the Indictment is the planning permit for Cognizant's KITS Campus.

i.    *Miscellaneous.* Defendants make further requests that the government identify the particular portions of 15 U.S.C. § 78dd-1 that apply, the names of all persons involved, the statutory "purpose" for which the offense was allegedly committed, and so forth. (*See* Coburn MBP Br. at 25; Schwartz MTD Br. at 37–38.) This amounts to little more than a sentence-by-sentence

---

[24]    The alternative request to strike the phrase "including but not limited to" is denied. I will entertain a motion to strike this language from the Indictment before it is published to the jury, should it appear that this boilerplate serves no further useful purpose.

reading of the FCPA counts, with "tell me more" appended to each. To some degree, I have disposed of these requests above. To the rest, the general principles governing indictments and bills of particulars, cited above, are a sufficient answer. I reiterate that a bill of particulars is not a general discovery device or a means of obtaining answers to questions the defendant may have. This Indictment, particularly as supplemented by discovery, fulfills its proper purposes under Rule 7(c) and permits the preparation of a defense. The miscellaneous requests are therefore denied.

## ORDER

**IT IS THEREFORE** this 14th day of February, 2020,

**ORDERED** that the defense motions (DE 57, 58, 59) are decided as follows:

 A. The motion of defendant Schwartz to dismiss Counts 3 and 4 is **DENIED**, as set forth in Section I.A, *supra*.

 B. The motion to dismiss some or all of counts 2, 3, and 4 on grounds of multiplicity is **DENIED**, as set forth in Section I.B, *supra*.

 C. The motion dismiss Count 12 on grounds of repugnance is **DENIED**, as set forth in Section I.C, *supra*.

 D. The motion for a bill of particulars is **GRANTED IN PART AND DENIED IN PART**, as set forth in Section II, *supra*.

**KEVIN MCNULTY, U.S.D.J.**