UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>     v.<br><br>GORDON J. COBURN and<br>STEVEN SCHWARTZ | Hon. Kevin McNulty<br><br>Crim. No. 19-120 (KM) |

BRIEF OF THE UNITED STATES IN OPPOSITION TO
DEFENDANTS' MOTION TO COMPEL DISCOVERY

CRAIG CARPENITO
United States Attorney
970 Broad Street
Newark, New Jersey 07102

ROBERT ZINK
Chief, Fraud Section
U.S. Department of Justice

On the Memorandum:

NICHOLAS P. GRIPPO
COURTNEY A. HOWARD
Assistant United States Attorneys

DAVID A. LAST
SONALI D. PATEL
Trial Attorneys, Fraud Section
Criminal Division
U.S. Department of Justice

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................. iii

PRELIMINARY STATEMENT ........................................................................... 1

BACKGROUND ................................................................................................. 3

ARGUMENT ....................................................................................................... 5

    I.    THE COURT SHOULD DENY THE DEFENDANTS' MOTION TO
        COMPEL DISCOVERY SOLELY IN THE SEC'S FILES BECAUSE
        THE GOVERNMENT AND THE SEC DID NOT CONDUCT A JOINT
        INVESTIGATION. ......................................................................... 5

        A. Applicable Law ....................................................................... 6

        B. Discussion ............................................................................... 9

            i.  *The Government and the SEC Did Not Conduct a Joint
               Investigation.* ........................................................................... 9

            ii. *The Other Risha Factors Do Not Support Extending the
               Government's Discovery Obligations to Materials in the SEC's
               Possession* ........................................................................... 16

    II.   THE COURT SHOULD DENY DEFENDANTS' MOTION TO COMPEL
        PRODUCTION OF EVIDENCE ABOUT OTHER CORRUPT
        PAYMENTS, INFORMATION ABOUT DOCUMENTS WITHHELD ON
        THE BASIS OF PRIVILEGE, AND INFORMATION REGARDING
        OTHER INTERVIEWS CONDUCTED BY COUNSEL FOR
        COGNIZANT. .............................................................................. 18

    III.  THE DEFENDANTS' MOTION FOR EXPERT DISCLOSURES IS
        PREMATURE. ............................................................................ 211

    IV.  THE DEFENDANTS' EFFORT TO COMPEL THE GOVERNMENT TO
        CURE TECHNICAL DEFICIENCIES IN PRODUCTIONS RECEIVED
        FROM THIRD PARTIES IS MOOT................................................ 22

    V.   THE DEFENDANTS' REQUEST FOR IMPEACHMENT EVIDENCE IS
        PREMATURE. .............................................................................. 23

CONCLUSION .................................................................................................. 24

## TABLE OF AUTHORITIES

**Cases**                                                                    **Page(s)**

*Brady v. Maryland,*
373 U.S. 83 (1963) .......................................................................... passim

*FDIC v. MAXXAM, Inc.,*
523 F.3d 566 (5th Cir. 2008) ........................................................... 7

*Giglio v. United States,*
405 U.S. 150 (1972) ......................................................................... 23

*Kyles v. Whitley,*
514 U.S. 419 (1995) ......................................................................... 6

*SEC v. Dresser Industries, Inc.,*
628 F.2d 1368 (D.C. Cir. 1980) ...................................................... 8

*SEC v. Stanard,*
No. 06-Civ.-7736 (GEL), 2007 WL 1834709 (S.D.N.Y. June 26, 2007) ........ 8, 11

*Strohl v. Grace,*
334 F. App'x 650 (3d Cir. 2009) (unpublished) ....................................... 20, 21

*United States v. Avellino,*
136 F.3d 249 (2d Cir. 1998) ............................................................. 6

*United States v. Bartko,*
No. 09-CR-321, 2011 WL 2471556 (E.D.N.C. June 21, 2011) ........................ 21

*United States v. Blaszczak,*
308 F. Supp. 3d 736 (S.D.N.Y. 2018) .................................................. 8, 10, 11

*United States v. Blumberg,*
No. 14-cr-458 (D.N.J. March 23, 2015) ............................................. 13, 14, 15

*United States v. Boustani,*
No. 18-CR-681 (WFK) (E.D.N.Y., Oct. 3, 2019) .................................. 8, 13, 17

*United States v. Canniff,*
521 F.2d 565 (2d Cir. 1975) ........................................................... 20

*United States v. Celestin,*
612 F.3d 14 (1st Cir. 2010) ........................................................................ 21

*United States v. Collins,*
409 F. Supp. 3d 228 (S.D.N.Y. 2019) ................................................. 8, 12, 16

*United States* v. *Finnerty,*
411 F. Supp. 2d 428 (S.D.N.Y. 2006) ........................................................ 17

*United States v. Flores,*
540 F.2d 432 (9th Cir. 1976) ..................................................................... 21

*United States v. Gupta,*
848 F. Supp. 2d 491 (S.D.N.Y. 2012) .............................................. 13, 14, 15

*United States v. Heppner,*
519 F.3d 744 (8th Cir. 2008) ..................................................................... 21

*United States v. Hughes,*
211 F.3d 676 (1st Cir. 2000) ..................................................................... 21

*United States v. Joseph,*
996 F.2d 36 (3d Cir. 1993) ........................................................................ 15

*United States v. Martoma,*
990 F. Supp. 2d 458 (S.D.N.Y. 2014) .............................................. 13, 14, 15

*United States v. Middendorf,*
No. 18-CR-36 (JPO) ....................................................................... 8, 11, 13

*United States v. Nixon,*
418 U.S 683 (1973) ................................................................................... 21

*United States v. Origel,*
No. 09-CR-2688, 2010 WL 1654134 (D. Ariz. Apr. 20, 2010) ...................... 21

*United States v. Osorio,*
929 F.2d 753 (1st Cir. 1991) ..................................................................... 20

*United States v. Pelullo,*
399 F.3d 197 (3d Cir. 2005) ...................................................................... 16

*United States v. Quinn,*
537 F. Supp. 2d 99 (D.D.C. 2008) .............................................................. 20

*United States v. Redcorn,*
528 F.3d 727 (10th Cir. 2008) ........................................................................... 21

*United States v. Reyeros,*
537 F.3d 270 (3d Cir. 2008) ......................................................................... 9, 17

*United States v. Rigas,*
583 F.3d 108 (2d Cir. 2009) ............................................................................... 8

*United States v. Rigas,*
779 F. Supp. 2d 408 (M.D. Pa. Apr. 20, 2011) ........................................... 15, 16

*United States v. Rigas,*
No. 02-CR-1236 (LBS), 2008 WL 144824 (S.D.N.Y. Jan. 15, 2008)............. 8, 12

*United States v. Risha,*
445 F.3d 298 (3d Cir. 2006) ................................................................... passim

*United States v. Sarras,*
575 F.3d 1191 (11th Cir. 2009) ....................................................................... 21

*United States v. Slawson,*
No. 4-CR-186 (RWS-JFK), 2014 WL 5804191, (N.D. Ga. Nov. 7, 2014) ........... 16

*United States v. Stringer,*
535 F.3d 929 (9th Cir. 2008) ............................................................................. 7

*United States v. Tadros,*
310 F.3d 999 (7th Cir. 2002) ........................................................................... 20

*United States v. Turner,*
104 F.3d 217 (8th Cir. 1997) ........................................................................... 21

**Rules**

Fed. R. Crim. P. 16........................................................................ 5, 17, 21, 22

Fed. R. Crim. P. 17.............................................................................................. 21

## PRELIMINARY STATEMENT

Since the inception of this case, the Government has consistently satisfied, and exceeded, its discovery obligations to Defendants Gordon Coburn and Steven Schwartz. The Government's comprehensive discovery disclosures have included reports of witness interviews and hundreds of thousands of documents produced by third parties – essentially, all the substantive evidence the Government collected relating to the charges in the indictment. Yet the Defendants still seek to compel the Government to search for *Brady* and Rule 16 materials in the files of a separate federal agency, the United States Securities and Exchange Commission ("SEC"), even though the Government's investigation was separate and independent from the SEC's investigation. The Defendants also ask the Court to order the Government to produce various other materials that either it does not possess, already has produced, or simply is not required to produce at this stage, months before the trial control date. The Court should deny all of these motions.

First, the Defendants' assertion that the Government and the SEC "jointly" investigated this case is meritless. While the two agencies conducted certain investigative activities in parallel (hardly a unique fact in a complex white-collar matter), the Government's criminal investigation at all times remained separate and independent from the SEC's civil enforcement inquiry. This alone disposes of the Defendants' request for materials solely in the SEC's possession.

Second, the Defendants seek to compel the Government to produce evidence about other corrupt payments by Cognizant Technology Solutions

Corporation ("Cognizant").  As noted in further detail below, the Government has produced all of the evidence in its possession, custody, and control relating to other, uncharged corrupt payments by Cognizant.

Third, the Defendants seek the Court's intervention in resolving certain highly technical alleged deficiencies in some of the discovery materials, including "missing date range metadata" and "documents for which there is a missing cross-reference file."  The Government has addressed these technical issues in detail in multiple letters to counsel, including by raising them with the document custodians and sharing with the Defendants their responses.  Any additional inquiries regarding these issues, including questions about entries on Cognizant's privilege logs, should be directed to Cognizant or the appropriate custodian, not the Government.

Finally, the Defendants are not entitled to expert disclosures at this time. Indeed, the Government has not yet decided whether to call an expert at trial and should not be forced to do so months before the trial control date.  Likewise, the Defendants are not entitled to impeachment information so far in advance of trial.  Nonetheless, consistent with the Government's fulsome approach to discovery in this case, the productions to date exceed the Government's discovery obligations and include certain materials that could be considered impeachment and/or *Jencks* information—documents that are usually produced much closer to a trial date.

## **BACKGROUND**

In or around September 2016, the Government opened a criminal investigation regarding potential violations of the Foreign Corrupt Practices Act ("FCPA") by Cognizant, its officers, employees, agents, and others.[1] The investigation followed Cognizant's self-disclosure of potential misconduct; the company was conducting an internal investigation of several matters, including potential FCPA violations. Around the same time, Cognizant made a self-disclosure to the SEC.

During the course of the criminal investigation, the Government obtained information and numerous documents from Cognizant, both on a voluntary basis and in response to a grand jury subpoena. The Government understands that Cognizant also separately produced documents and information to the SEC.

The Government also met with Cognizant's counsel, during which counsel provided information obtained through the internal investigation, including the substance of statements made during witness interviews. For example, Cognizant's counsel provided the Government with the substance of statements made by Schwartz and Coburn during interviews with Cognizant's counsel on August 28 and August 29, 2016, respectively – both of which occurred prior to Cognizant's self-disclosure to the Government and, therefore, before the Government's investigation even began. Cognizant's counsel also provided the

---

[1] The Government's Brief in Opposition to the Defendants' Motions to Dismiss and for a Bill of Particulars, filed on December 16, 2019 (Dkt. No. 61), contains a detailed summary of the facts and allegations in this case. The Government incorporates those facts here.

Government with the substance of a second interview of Schwartz that occurred shortly after Cognizant's self-disclosure, but that was not at the Government's direction or suggestion. The SEC attended some of these meetings between the Government and Cognizant's counsel.

As part of the criminal investigation, the Government conducted approximately 24 interviews of approximately 17 different witnesses. Indeed, the Government sought to directly interview any available witness with information relevant to the potential FCPA violations at issue. Some of those witnesses were located abroad and could not be interviewed. Other foreign witnesses agreed to be interviewed by representatives of the Government outside of the United States. The SEC attended (either physically or through a conference line) approximately 13 of the 24 interviews. For interviews that the SEC attended, a federal agent working with the criminal investigative team took notes. It is the Government's understanding that the SEC did not take its own substantive notes during these interviews.

Further, in addition to receiving records from Cognizant and the Construction Company on a voluntary basis, the Government issued numerous grand jury subpoenas for documents and several for witness appearances. The SEC had no involvement in, or access to, the grand jury aspects of the Government's investigation. Nor did the Government share any of the documents it collected (whether through subpoenas or otherwise) with the SEC. Instead, the SEC obtained documents through its own processes, independent of the Government.

4

Finally, the Government did not consult with the SEC regarding criminal charging decisions, did not provide the SEC with the Government's draft charging documents or internal memoranda, and had separate communications with counsel for witnesses, subjects, and targets of the investigation concerning potential dispositions.

The Government's discovery productions bear this out, and demonstrate that, although the Government and the SEC may have operated in parallel in certain phases of their respective investigations, they were at all times separate and independent.

## ARGUMENT

**I.    THE COURT SHOULD DENY THE DEFENDANTS' MOTION TO COMPEL DISCOVERY SOLELY IN THE SEC'S FILES BECAUSE THE GOVERNMENT AND THE SEC DID NOT CONDUCT A JOINT INVESTIGATION.**

The Defendants seek an order compelling the Government to produce any *Brady* or Rule 16 materials in the SEC's possession that have not already been disclosed in discovery.  (Memorandum of Law in Support of Defendant Gordon J. Coburn's Motion to Compel Discovery, Dkt. No. 79-1 (hereinafter "Def. Br.") at 2-3).[2]  In support of their motion, the Defendants contend that the Government and the SEC conducted a "joint" investigation such that the Government's discovery obligations flow to certain materials that the SEC solely possesses. The Defendants essentially ask this Court to make a finding that two *independent* federal agencies conducted a joint investigation based almost

---

[2] Defendant Schwartz joined Defendant Coburn's Motion to Compel Discovery.  (Dkt. No. 80.)

entirely on the fact that the SEC attended 13 interviews with the Government – and despite the fact that the Government and the SEC (i) engaged in separate fact-gathering, including a robust grand jury investigation conducted by the Government in which the SEC had no involvement; (ii) did not consult with one another on strategic decisions about the investigation or charges; and (iii) the Government conducted approximately 50% of its interviews without the SEC present. What Defendants seek is not only meritless, but would essentially turn every parallel investigation by separate federal agencies into a joint one and would obliterate the efficiency of interviews attended by both agencies – something that numerous courts have recognized as beneficial and an appropriate aspect of parallel investigations. This Court, like many before it, should deny this motion.

    A. <u>Applicable Law</u>

The basic rule of *Brady v. Maryland,* 373 U.S. 83, 87 (1963), is that the Government must disclose evidence that is both favorable to the defense and material to guilt or punishment. *United States v. Risha*, 445 F.3d 298, 303 (3d Cir. 2006). In limited circumstances, the Government's *Brady* obligation reaches beyond materials in the prosecutor's actual possession. The Government may have a duty to "learn of any favorable evidence known to others[,]" but only if they are "acting on the Government's behalf in the case." *Kyles v. Whitley,* 514 U.S. 419, 437 (1995). Indeed, "knowledge on the part of persons employed by a different office of the government does not in all instances warrant the imputation of knowledge to the prosecutor." *United States v. Avellino,* 136 F.3d

6

249, 255 (2d Cir. 1998).  That is because "the imposition of an unlimited duty on a prosecutor to inquire of other offices not working with the prosecutor's office on the case in question would inappropriately require [courts] to adopt a monolithic view of government that would condemn the prosecution of criminal cases to a state of paralysis."  *Id.*

Courts in the Third Circuit generally analyze three factors in determining whether the Government constructively possesses materials held by another agency: (1) whether the party with knowledge of the information acted on the government's "behalf" or under its "control"; (2) the extent to which the agencies were part of a "team," participated in a "joint investigation," or shared resources; and (3) whether the entity charged with constructive possession has "ready access" to the evidence.  *Risha*, 445 F.3d at 304.

Coordination among agencies, standing alone, is not enough to extend the Government's *Brady* obligations beyond its own files.  "There is nothing improper about the government undertaking simultaneous criminal and civil investigations. . . ."  *United States v. Stringer*, 535 F.3d 929, 933 (9th Cir. 2008) (reversing district court's dismissal of indictments and approving concurrent DOJ and SEC investigations into securities fraud).  Indeed, "[t]he simultaneous prosecution of civil and criminal actions is generally unobjectionable because the federal government is entitled to vindicate the different interests promoted by different regulatory provisions even though it attempts to vindicate several interests simultaneously in different forums."  *FDIC v. MAXXAM, Inc.*, 523 F.3d 566, 592 (5th Cir. 2008).  In fact, "[e]ffective enforcement of the securities laws

7

requires that the SEC and [DOJ] be able to investigate possible violations simultaneously." *SEC v. Dresser Industries, Inc.*, 628 F.2d 1368, 1377 (D.C. Cir. 1980).

In recognition of these important considerations, courts routinely deny defense motions, like this one, that seek to combine the Government and the SEC for criminal discovery purposes simply because the two agencies coordinated some aspects of their separate, parallel proceedings. *See United States v. Collins*, 409 F. Supp. 3d 228, 241 (S.D.N.Y. 2019) (denying defense motion to compel and finding that the Government and the SEC did not conduct a joint investigation of an insider trading scheme even though the two agencies both participated in certain witness interviews and coordinated other aspects of their parallel investigations); *United States v. Boustani*, No. 18-CR-681 (WFK), No. 232 (E.D.N.Y., Oct. 3, 2019) (same); *United States v. Middendorf*, No. 18-CR-36 (JPO), 2018 WL 3956494, at *4 (S.D.N.Y. Aug. 17, 2018) (same); *United States v. Blaszczak*, 308 F. Supp. 3d 736, 741-42 (S.D.N.Y. 2018) (same); *United States v. Rigas*, No. 02-CR-1236 (LBS), 2008 WL 144824, at *2 (S.D.N.Y. Jan. 15, 2008), *aff'd, United States v. Rigas*, 583 F.3d 108 (2d Cir. 2009) (same); *SEC v. Stanard*, No. 06-Civ.-7736 (GEL), 2007 WL 1834709, at *3 (S.D.N.Y. June 26, 2007) (same).

An analysis of the *Risha* factors in this case demonstrates that the Government's discovery obligations do not extend to materials in the SEC's possession.

B. <u>Discussion</u>

    i.    <u>*The Government and the SEC Did Not Conduct a Joint Investigation.*</u>

The Government and the SEC conducted separate, parallel investigations into conduct by Cognizant, as well as its officers, employees, and agents. Nonetheless, the Defendants argue that the Government and the SEC conducted a "joint investigation." (Def. Br. at 5). In claiming that the two agencies "investigated the facts together," the Defendants rely almost exclusively on the fact that the Government and the SEC both participated in some of the witness interviews during the investigation, although they also vaguely assert, without any actual basis or evidence, that "it is *highly likely* that the scope of joint fact gathering by DOJ and the SEC was broader than just the interviews[.]" (Def. Br. at 5-6) (emphasis added). Under *Risha*, joint fact gathering, without more, is not enough.

As an initial matter, although the Defendants cite to the *Risha* factors, they only apply one (i.e., whether the investigation was joint). (Def. Br. at 5-7). The Defendants' efforts to extend the Government's discovery obligations to materials in the SEC's files based on a selective application of the *Risha* standard is improper, as the Court must balance all three factors, not just one. *See United States v. Reyeros*, 537 F.3d 270, 281-82 (3d Cir. 2008) ("We held [in *Risha*] that a case-by-case analysis was appropriate when considering a federal prosecutor's constructive knowledge, and we set forth *three* questions as relevant to the analysis") (emphasis added). None of the factors supports the Defendants' motion.

There is no basis to the Defendants' claim that the Government and the SEC conducted a joint investigation. With respect to witness interviews, as noted, the SEC attended (either physically or through a conference line) approximately 13 of the 24 interviews.[3] For each interview, a federal agent working with the criminal investigative team took notes. While the SEC attended some of these interviews by phone or in person, it is the Government's understanding that the SEC did not take its own notes. Moreover, for witnesses who signed proffer agreements, the SEC and the Government each presented separate agreements to the witnesses and lawyers from both agencies separately explained those agreements to the witness and indicated the nature of their respective agency's investigation (i.e., a criminal investigation by the Government, and a parallel civil enforcement investigation by the SEC).[4] This structure is consistent with separate, independent investigations; the SEC's physical presence at some of the witness interviews, largely for the sake of efficiency, does not change that result. *See Blaszczak*, 308 F. Supp. 3d at 742 (finding no joint investigation despite SEC's involvement in "many, though not

---

[3] The Defendants incorrectly included a June 13, 2019 interview of an individual in their list. (Def. Br. at 5, n. 2). The SEC did not participate in that interview, and the FBI 302 does not state otherwise. There was an additional interview of the witness interviewed on July 25, 2018, for which there is no FBI 302, and the SEC did participate in that interview. The total interviews in which the SEC participated thus remains approximately 13 interviews.

[4] In addition to attending certain of the Government's witness interviews, the SEC also attended some of the meetings between the Government and Cognizant's counsel during which the Government received information from counsel concerning witness interviews in the internal investigation. This fact does not render the criminal investigation or even this isolated component of it "joint" when balanced against the other *Risha* factors, as discussed above.

10

all, witness interviews"); *Middendorf*, 2018 WL 3956494, at *4 ("[B]eyond conducting joint interviews, the Government and SEC have not coordinated their separate fact-finding efforts."); *Stanard*, 2007 WL 1834709, at *3 (FBI and SEC did not conduct a joint investigation despite participating in joint interviews during which only FBI took notes).

The Government's handling of other core areas of the investigation also makes clear that it did not operate jointly with the SEC. Namely, the SEC had no involvement in, or access to, the grand jury's functions in this matter, which formed a substantial portion of the Government's investigation. That includes documents that the Government obtained via grand jury subpoenas, witnesses who testified in the grand jury, and other events prompted by the grand jury's process, such as serving an individuals with grand jury subpoenas. *Blaszczak*, 308 F. Supp. 3d at 742 (explaining that the fact that SEC was not involved in the grand jury presentation "cut in the opposite direction" of finding a joint investigation). Similarly, the Government obtained a 2703(d) order for an email account—another investigative step taken by the Government independent of the SEC. Nor did the SEC have any involvement in the Government's strategy or decision-making for the investigation, charging decisions, internal discussions about the status of certain individuals in the investigation, or the Government's discussions with counsel for witnesses, subjects, and targets of the investigation regarding potential dispositions. *Id.* ("Neither the [SEC] nor the USAO recommended action to the other or had any role in the other's decision making process."). Notably, counsel for Cognizant made separate presentations to the

11

Government and the SEC concerning the corporate resolution of this matter, and ultimately signed separate agreements with each agency.

*United States v. Collins*, a recent decision from the Southern District of New York, is instructive. There, the court found no joint investigation despite what the court viewed as the Government's reliance, in part, on information it received from the SEC in obtaining search warrants and, more generally, on "a considerable number of documents from the SEC through an access request approved by the SEC"; the fruits of the search warrants were shared with the SEC; the SEC participated in witness interviews with the Government; and the Government relied, at least in part, on those interviews in bringing criminal charges. 409 F. Supp. 3d at 240.

In concluding that the two investigations were separate for purposes of the Government's discovery obligations, the court highlighted that the SEC only participated in some of the witness interviews (16 of 60), the witnesses executed separate proffer agreements, and "the SEC did not take notes during interviews in which both agencies participated" or "create reports of the witness interviews." *Id.* Additionally, like this matter, "personnel, information and documents were not shared in any material way between the USAO and SEC, and each agency made charging decisions independently of each other." *Id.* These facts demonstrated in *Collins*, as they do here, "that the SEC's involvement in the interviews could not be considered to have been that of a partner so as to support a finding that the USAO and SEC conducted a joint investigation." *Id. See also Rigas*, 2008 WL 144824, at *2 (finding that parallel civil and criminal

12

investigations were not "joint"); *Middendorf*, 2018 WL 3956494, at \*4; *Boustani*, 18-CR-681 (WFK), No. 232.

The Defendants principally rely on three cases that extended the Government's discovery obligations to materials in the SEC's possession: *United States v. Gupta,* 848 F. Supp. 2d 491 (S.D.N.Y. 2012); *United States v. Martoma*, 990 F. Supp. 2d 458 (S.D.N.Y. 2014); and *United States v. Blumberg*, No. 14-cr-458, No. 69 (D.N.J. March 23, 2015).  These cases are against the weight of authority on this issue and involved circumstances far different from this matter.

In *Gupta*, the court found that the Government and the SEC did conduct a joint investigation, but only with respect to the 44 witness interviews in which the two agencies jointly participated.  In the court's assessment, no other aspect of the investigation was joint.  The SEC attorney in *Gupta* "within a day or two after each interview, prepared memoranda that summarized what he felt were the relevant parts of the interviews" and consulted the Government in preparing those memoranda.  848 F. Supp. 2d at 493-94.  The court concluded that this kind of "joint fact gathering" at interviews triggered the Government's *Brady* obligations with respect to the SEC's interview notes and memoranda.  *Id.* at 494.  Those circumstances are not present here.

Importantly, the court's analysis in *Gupta* was controlled by the issue of joint fact-gathering during interviews.  *Id.* (reviewing argument that the USAO and the SEC are separate agencies that act independently, but concluding that "it is enough that the agencies are engaged in joint fact-gathering, even if they are making separate investigatory and charging decisions[.]")  That approach is

13

inconsistent with *Risha*, which requires this Court also to consider whether the SEC acted on behalf of the Government and whether the Government has ready access to the materials sought.  Similarly, the *Martoma* court applied *Gupta*'s "joint fact-gathering" test, noting that that "the SEC and the USAO jointly conducted twenty interviews of twelve witnesses."  990 F. Supp. 2d at 460-61.[5] Thus, the Court should give *Gupta* and *Martoma* little, if any, weight because of their limited focus and the fact that *Risha* mandates a different standard.

*Blumberg* is also unpersuasive as applied here.  In that case, Judge Linares found that "the Government and the SEC conducted a joint factual investigation into the securities trading practices" of the defendant's former employer, ConvergEx, and as a result, the Government had an obligation to review documents in the SEC's possession arising from those joint efforts.  *Blumberg*, 14-cr-458, No. 69 at 6.  But, unlike this case, the court in *Blumberg* found that the Government's investigative interactions with the SEC extended well beyond witness interviews; among other things, the court noted that the "SEC and the Government also coordinated their efforts in submitting requests for documents

---

[5]  *Martoma* is also factually distinguishable.  There, in addition to jointly conducting all witness interviews, the SEC provided the Government with documents it obtained during its investigation, including all documents that it received from the hedge fund that previously employed the defendant, SAC Capital.  Additionally, the SEC and the Government also coordinated their efforts in conducting depositions of SAC Capital and its employees.  For instance, the SEC informed the USAO in advance that it would be deposing Steven A. Cohen—the founder and principal of SAC Capital—and four days prior to the Cohen deposition, the Assistant U.S. Attorney handling the Martoma investigation met with SEC representatives "to discuss evidence obtained through [their] parallel investigations, including evidence relating to Steve Cohen and others."  990 F. Supp. 2d at 461.  Nothing of the sort happened here.

from third parties" and "the SEC also provided the Government with documents it obtained during its factual investigation into the practice of taking [trading profits] at ConvergEx." *Id.* This kind of coordination regarding document collection did not occur here.

Further, the Government respectfully submits that the court in *Blumberg* failed to give meaningful consideration, or misapplied, the other two *Risha* factors. Specifically, the court acknowledged that there had been "no showing that SEC personnel were necessarily acting at the behest of the Government," (*Risha*'s first factor) but then, without explaining how that factor weighed in the overall analysis, the court simply jumped to its finding that the Government and the SEC conducted a joint factual investigation (*Risha*'s second factor).[6] Additionally, with respect to access — the third factor — the court noted that the Government "has ready access to information if only 'minimal steps' are 'necessary to acquire' the evidence at issue," but then did not apply that principle or conduct any other factual analysis regarding this prong. *Id.* (citing *United States v. Joseph*, 996 F.2d 36, 40 (3d Cir. 1993)). Instead, like *Gupta* and *Martoma*, the court effectively based its decision solely on its finding of a joint factual investigation.[7] This is inconsistent with the *Risha* framework. As

---

[6] The Government recognizes that there is some degree of overlap between and among the *Risha* factors. *Risha,* 445 F.3d at 304 ("Related to the question whether an agent is acting on behalf of the government is the question whether the forces are part of a team or are engaged in a joint effort."). Still, the *Blumberg* court's failure to apply the other factors in any meaningful way to the facts presented undermines its overall decision.

[7] The Defendants also cite *United States v. Rigas*, 779 F. Supp. 2d 408 (M.D. Pa. Apr. 20, 2011). (Def. Br. at 5). That case provides little, if any, guidance. There, the

15

explained below, these other factors, which the Defendants also ignore, do not support a finding of constructive possession in this case.

> ii. *The Other Risha Factors Do Not Support Extending the Government's Discovery Obligations to Materials in the SEC's Possession.*

There can be no dispute in this case that the SEC neither acted on the Government's "behalf" nor under its "control." The SEC is an independent civil agency that is separate and distinct from the U.S. Department of Justice and its various components. In investigating this matter, the SEC was not part of a criminal task force, "no one from the SEC was designated a special assistant United States Attorney to work on the criminal investigation," "no one from the SEC was part of the USAO's investigative team," and "neither agency gave the other any directions concerning 'what to do or what avenues of investigation to pursue.'" *Collins*, 409 F. Supp. 3d at 242.

The SEC was thus "not a member of the prosecution team" because there is no "indication that the prosecution had any sort of control over [its] officials." *United States v. Pelullo*, 399 F.3d 197, 218 (3d Cir. 2005) (concluding that Pension Welfare Benefits Administration was not a member of the prosecution team). *See also United States v. Slawson*, No. 4-CR-186 (RWS-JFK), 2014 WL 5804191, at *16 (N.D. Ga. Nov. 7, 2014) (finding that the SEC was not part of

---

court ordered the Government to obtain and produce notes from two witness interviews — one conducted by the SEC, and the other by the Government and the SEC — in connection with a previous investigation and prosecution in the Southern District of New York. The court did not conduct a fulsome examination of the *Risha* factors in concluding that the Government in the Southern District and the SEC jointly investigated the prior matter, and that the Government in the case before it had access to those materials. *Id.* at 414-15.

the prosecution team and finding no evidence that it acted "at the behest of the federal prosecutors or the FBI."). Accordingly, this factor does not support the Defendants' motion.

Finally, because the SEC is a separate and independent agency not under the Government's control, the Government does not have "ready access" to its files. Unlike some other parallel investigations between the Government and the SEC, this case does not involve a deep record of the SEC sharing with the Government documents, analysis, and other materials from its files. Indeed, the Government did not even issue an access request letter to the SEC. While the Government could request documents from the SEC's files, that alone does not establish "ready access" or convert the SEC to a member of the prosecution team for *Brady* and Rule 16 purposes. *See Boustani*, No. 18-CR-681 (WFK), No. 232 at 4 ("Although the SEC granted the Government access to certain material, '[t]he mere fact that the Government may have requested and received documents from [another agency] in the course of its investigation does not convert the investigation into a joint one.'") (quoting *United States* v. *Finnerty,* 411 F. Supp. 2d 428, 433 (S.D.N.Y. 2006)); *Reyeros,* 537 F.3d at 284 ("[T]he mere fact that documents may be obtainable is insufficient to establish constructive possession.").

In sum, none of the *Risha* factors supports the Defendants' motion to compel. Instead, the record in this case demonstrates that the Government and the SEC conducted separate, distinct investigations that may have overlapped, but were not "joint." Because the Government is not in actual or constructive

17

possession of information the SEC solely possesses, the Court should deny the Defendants' motion.

**II.     THE COURT SHOULD DENY DEFENDANTS' MOTION TO COMPEL PRODUCTION OF EVIDENCE ABOUT OTHER CORRUPT PAYMENTS, INFORMATION ABOUT DOCUMENTS WITHHELD ON THE BASIS OF PRIVILEGE, AND INFORMATION REGARDING OTHER INTERVIEWS CONDUCTED BY COUNSEL FOR COGNIZANT.**

The Defendants further ask this Court to compel the Government to provide three additional categories of information.  First, the Defendants move to compel the production of evidence related to other corrupt payments made by Cognizant.  (*See* Def. Br. at 7-9.)  The Defendants also object to privilege assertions made by Cognizant in privilege logs that were provided to the Government in connection with productions made both voluntarily and pursuant to a grand jury subpoena.  *Id.* at 11-12.  Finally, the Defendants seek further information about additional interviews conducted by Cognizant of a former Cognizant employee.  *Id.* 15-16.  These requests should be denied as moot because the Government has already produced the responsive documents and discoverable information in its possession, custody, and control.

The Defendants' request for production of evidence related to other corrupt payments made by Cognizant relates to information contained in two letters and accompanying documents that the Government produced to the Defendants on or about April 8, 2019.  (*See* Def. Br. Exs. E and F.)[8]  The Government has already

---

[8] Exhibit E is a chart provided by Cognizant in response to a request by the Government for information regarding statutory approvals obtained from government authorities in India. The chart also includes bates numbers of documents corresponding to information outlined in the chart.  The Government produced both Exhibit E and supporting documents in its first

18

produced the documents and information in its possession, custody, and control related to other corrupt payments made by Cognizant—including documents and information related to Exhibits E and F.  These materials include documents produced by Cognizant to the Government, FBI 302 reports of witness interviews, and information provided to the Government by Cognizant's counsel regarding witness interviews and Cognizant's internal investigation.  Thus, the Defendants already have the information in the Government's possession regarding other corrupt payments by Cognizant.  Likewise, the Government has provided all of the information in its possession about interviews of the above-referenced former Cognizant employee that were conducted by Cognizant as part of its internal investigation, as the Government noted in its letter dated June 24, 2019.  (*See generally* Def. Br. Ex. I.)

Finally, the Government has provided the Defendants with the information it possesses regarding Cognizant's privilege logs.  The Government informed the Defendants of this fact in response to their letter dated January 10, 2020 (Def. Br. Ex. H).  *See* Letter from the Government to the Defendants dated January 15, 2020 ("With respect to the privilege issues raised in your January 8, 2020 and January 10, 2020 letters, we have provided the information we have concerning the companies' privilege assertions, including advising you that CTS invoked privilege over its decision-making with respect to its privilege determinations. Any additional inquiries regarding the companies' privilege

---

production to the Defendants on or about April 8, 2019.  The Government also produced Exhibit F to the Defendants, which is a letter to the Government from Cognizant's counsel presenting the company's cost avoidance analysis.

assertions, including the manner in which it documented those assertions or the factual and legal basis supporting them, should be directed to the companies, not the Government.").

The Government simply has no further information to provide the Defendants.  Moreover, the Defendants have pointed to no rule of discovery or otherwise that obligates the Government to seek these documents on the Defendants' behalf.  While it is true that the Government cannot be willfully blind to discoverable information in front of it, *see United States v. Quinn,* 537 F. Supp. 2d 99 (D.D.C. 2008), the "Government [also] cannot be required to produce that which it does not control and never possessed."  *United States v. Canniff*, 521 F.2d 565, 573 (2d Cir. 1975).  *See also United States v. Osorio*, 929 F.2d 753, 761 (1st Cir. 1991).

Here, the Government has already produced to the Defendants the documents and information in its possession, custody, and control related to these requests, and has otherwise complied with its *Brady* obligations.  After all, "*Brady* does not require the government to act as a private investigator and valet for the defendant[s], gathering evidence and delivering it to opposing counsel." *United States v. Tadros*, 310 F.3d 999, 1005 (7th Cir. 2002).  This is true even where the "prosecution could readily have obtained" the materials requested by the defense.  *Strohl v. Grace*, 334 F. App'x 650, 654 (3d Cir. 2009) (unpublished) (internal quotation marks omitted).

Other courts have routinely rejected efforts like those of the Defendants here to extend the Government's discovery obligations to documents that are in

the possession of non-government third parties like Cognizant.  *See United States v. Sarras,* 575 F.3d 1191, 1215 (11th Cir. 2009) (noting that the "government does not have a duty to disclose items that it does not possess . . . [n]or does it have a duty to obtain evidence it does not possess"); *see, e.g., United States v. Bartko,* No. 09-CR-321, 2011 WL 2471556, at *4 (E.D.N.C. June 21, 2011) (finding that the government did not have a duty to issue subpoenas to force production of documents within the possession of non-government third parties and citing cases)*; United States v. Celestin,* 612 F.3d 14, 22 (1st Cir. 2010)*; Strohl,* 354 F. App'x at 654; *United States v. Redcorn,* 528 F.3d 727, 744 (10th Cir. 2008); *United States v. Heppner,* 519 F.3d 744, 750 (8th Cir. 2008); *United States v. Hughes*, 211 F.3d 676, 688 (1st Cir. 2000); *United States v. Turner,* 104 F.3d 217, 220 (8th Cir. 1997); *United States v. Flores*, 540 F.2d 432, 438 (9th Cir. 1976) (per curiam).  This Court should do the same.[9]

## III.   THE DEFENDANTS' MOTION FOR EXPERT DISCLOSURES IS PREMATURE.

The Defendants' request for prompt disclosure of the expert witnesses the Government intends to call at trial is premature.  Just as the Government noted when it provided initial discovery, it has not yet determined whether to call an

---

[9] Here, to the extent that the Defendants can make the requisite showing, they can use appropriately tailored Rule 17(c) subpoenas that meet the standard set forth in *United States v. Nixon*, 418 U.S 683 (1973), to seek the information sought by this motion from Cognizant.  *See United States v. Origel*, No. 09-CR-2688, 2010 WL 1654134, at *2-*3 (D. Ariz. Apr. 20, 2010) (noting that where the Government does not have a disclosure obligation pursuant to *Brady* or Rule 16 because the information is not in its possession, custody, or control, Rule 17 is a mechanism that can be used by defendants to obtain that information).  Unlike the subpoenas at issue in the Defendants' *Ex Parte* Applications for Rule 17(c) subpoenas, *see* Dkt. Nos. 70 and 71, directed to purported "outsourcing," which the Government has opposed as failing to satisfy the *Nixon* standard, appropriate Rule 17(c) subpoenas seeking evidence related to substantive defenses and issues intended for trial, would seemingly be permissible.

expert at trial.  A specific trial date has not been set, and even the trial control date is over five months away.  The Government is well aware of its obligations to provide timely expert disclosures and will comply with the requirements set forth in Fed. R. Crim. P. 16(a)(1)(G).

### IV.   THE DEFENDANTS' EFFORT TO COMPEL THE GOVERNMENT TO CURE TECHNICAL DEFICIENCIES IN PRODUCTIONS RECEIVED FROM THIRD PARTIES IS MOOT.

The Defendants next complain of technical deficiencies in the documents produced by the Government.  (*See* Def. Br. at 11-12.)  As an initial matter, the Government turned over these materials to the Defendants in the same format in which they were originally received from third parties.  Since those documents were produced in discovery, the parties have corresponded extensively about technical issues that the Defendants identified with respect to the documents, and the Government has endeavored to obtain follow-up information from the custodians, where possible, to cure the technical deficiencies, which the Government thereafter produced to the Defendants.  The producing parties have represented to the Government that they have cured the technical issues identified by the Defendants to the extent possible.  There is no further technical assistance that the Government can provide with respect to these documents.

The Defendants also claim to be unable to identify some of the documents referenced in FBI 302 reports and in the information that the Government provided with respect to summaries of witness interviews provided by Cognizant's counsel.  (Def. Br. at 12.)  However, the Defendants have not identified with any specificity, in their motion or otherwise, the documents they

have been unable to identify.  Indeed, most of the FBI 302 reports reference documents by bates numbers correlating to those used in the production to the Defendants; for those FBI 302s referencing documents by distinct bates numbers, the Government produced to the Defendants a key identifying those documents on or about May 3, 2019.  Accordingly, the Defendants' requests should be denied as moot.

### V.   THE DEFENDANTS' REQUEST FOR IMPEACHMENT EVIDENCE IS PREMATURE.

The Government is fully aware of its obligations to produce evidence that may be used to impeach the credibility of witnesses who testify for the Government pursuant to *Giglio v. United States*, 405 U.S. 150, 154 (1972).  In this District, pursuant to the Standing Order, a schedule for the disclosure of such evidence is set at the final pretrial conference after all pretrial motions are resolved.  None of the Defendants' reasons for early disclosure of impeachment evidence, including that witnesses spoke to the Government pursuant to the protection of a proffer agreement, necessitates a departure from the standard procedure for disclosure contemplated by the Standing Order and the typical practice in this district.  In advance of the final pretrial conference, the Government will meet and confer with counsel regarding a date for disclosure of *Giglio* material.

## **CONCLUSION**

For the reasons stated above, the Court should deny the Defendants' motion in its entirety.

Respectfully submitted,

CRAIG CARPENITO                         ROBERT ZINK
United States Attorney                  Chief
                                        Department of Justice, Fraud Section


By:    *s/ Nicholas P. Grippo*          By:    *s/ Sonali D. Patel*
NICHOLAS P. GRIPPO                      DAVID A. LAST
COURNEY A. HOWARD                       SONALI D. PATEL
Assistant United States Attorneys       Department of Justice, Fraud Section


Dated: Newark, New Jersey
       April 9, 2020