# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | Hon. Kevin McNulty |
| GORDON J. COBURN and STEVEN SCHWARTZ | Crim. No. 19-cr-120 (KM-MAH) |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS GORDON J. COBURN AND STEVEN SCHWARTZ'S MOTION FOR ISSUANCE OF LETTER ROGATORY

# **TABLE OF CONTENTS**

FACTUAL BACKGROUND ....................................................................................3

    I.     DOJ THEORY OF PROSECUTION...................................................3

    II.    L&T'S PUBLIC DENIALS OF INVOLVEMENT IN
          ALLEGED IMPROPER PAYMENT ...................................................4

    III.   L&T'S COOPERATION WITH DOJ AND SEC
          INVESTIGATIONS.............................................................................7

    IV.   THE GOVERNMENT DECLINES TO BRING CRIMINAL
          OR CIVIL ACTIONS AGAINST L&T AND L&T
          EMPLOYEES ...................................................................................10

    V.    THE COURT ISSUES NARROW RULE 17 SUBPOENAS TO
          L&T AND DEFERS ISSUING ADDITIONAL SUBPOENA
          REQUESTS........................................................................................10

    VI.   L&T REFUSES SERVICE OF PROCESS ......................................11

    VII.  THE COURT ISSUES ADDITIONAL RULE 17
          SUBPOENAS RELATED TO MERITS OF THE CASE ................12

    VIII. L&T AGAIN REFUSES SERVICE OF PROCESS..........................13

ARGUMENT ......................................................................................................14

    I.     THE COURT SHOULD ISSUE A LETTER ROGATORY TO
          EFFECTUATE THE SUBPOENAS IT ISSUED TO L&T IN
          OCTOBER 2020 AND APRIL 2021 ................................................14

# TABLE OF AUTHORITIES

CASES

*Abraxis BioScience, LLC v. Actavis, LLC*,
    No. 2:16-cv-1925 (JMV), 2017 WL 2293347 (D.N.J. May 25,
    2017) ...........................................................................................................14

*Privata, LLC v. Norte Pesca, SA*,
    No. 18-cv-14688 (KM) (SCM), 2019 WL 325544 (D.N.J. Jan. 24,
    2019) ...........................................................................................................14

*United States v. Al Fawwaz*,
    No. S7 98-cr-1023, 2014 WL 627083 (S.D.N.Y. Feb. 18, 2014) ...............14, 15

*United States v. Hoskins*,
    No. 3:12-cr-238, 2015 WL 4874921 (D. Conn. Aug. 14, 2015).................14, 15

*United States v. McLellan*,
    959 F.3d 442 (1st Cir. 2020).................................................................16

*United States v. McLellan*,
    No. 16-cr-10094 (D. Mass. June 14, 2017), ECF No. 174.................................16

*United States v. Nixon*,
    418 U.S. 683 (1974).................................................................................15

*United States v. Rosen*,
    240 F.R.D. 204 (E.D. Va. 2007).....................................................................15

*United States v. Wedding*,
    No. 08-cr-2386, 2009 WL 1329146 (S.D. Cal. May 13, 2009)........................14

*United States v. Zavieh*,
    No. 12-cr-00195, 2013 WL 1283319 (N.D. Cal. Mar. 27, 2013)......................15

STATUTES

*28* U.S.C. § 1781................................................................................................14

Larsen & Toubro Ltd. ("L&T") is an Indian construction company and the central figure in the story that the government weaves together in its indictment. The government's theory of the case is that L&T retained a consultant who paid a bribe to a government official in India to obtain a permit that L&T was contractually required to obtain to build an office complex for Cognizant India. The government alleges that two Cognizant India employees authorized the bribe. The government further alleges that Messrs. Coburn and Schwartz authorized the two Cognizant India employees to authorize the bribe.

Yet the government has admitted during discovery that it does not know who paid the alleged bribe. The government does not know which government official received the alleged bribe. It does not know which government agency the alleged recipient of the bribe worked for. It does not know the amount of the alleged bribe. And it does not even know if the alleged bribe was actually paid.

L&T, which is represented by U.S. counsel, reportedly conducted an internal investigation into these allegations. L&T has loudly and publicly denied any knowledge of or involvement in the alleged bribe for which the government now seeks to hold Messrs. Coburn and Schwartz criminally responsible. It presumably made the same denials during the government investigations in which L&T fully cooperated. That cooperation included at least nine document productions and an unknown number of meetings and calls between L&T's U.S. counsel and

government counsel.  After spending years investigating this case, the government never brought an action against L&T or any L&T employees or agents.

But, as described in Defendants' Motion to Compel, which is being filed concurrently with this motion, L&T has refused to accept service of the subpoenas that the Court authorized on October 6, 2020, and April 5, 2021.  For the reasons described in the Motion to Compel, Defendants respectfully request that the Court compel L&T to produce documents in response to the April 2021 subpoena to L&T, which consolidates the requests from the October 2020 subpoenas with new requests.  In the alternative, should the Court deny the Motion to Compel, Messrs. Coburn and Schwartz request that the Court issue a letter rogatory to the appropriate authority in India to compel L&T to produce documents that are key to a fair adjudication of the investigative "outsourcing" as well as documents that are wholly inconsistent with the government's theory of the case, both of which are essential to the defense.[1]

---

[1]     Defendants' Motion for Issuance of Letter Rogatory is sought as alternative relief to Defendants' Motion to Compel, which is being filed concurrently.  A favorable ruling on the Motion to Compel would obviate the need for issuance of a letter rogatory, so Defendants respectfully request that the Court rule on the Motion to Compel before addressing this motion.

# FACTUAL BACKGROUND

## I.    DOJ THEORY OF PROSECUTION

DOJ's theory of prosecution is that, on a videoconference call in April 2014, Messrs. Coburn and Schwartz authorized two Cognizant India employees to approve an illegal payment to a government official in India to facilitate the issuance of a planning permit for a Cognizant India office building being built in Tamil Nadu, India.  Indictment ¶¶ 2–3, 12–13.  DOJ alleges that the illegal payment was made by an unnamed third party that was hired by L&T, the largest construction company in India and the company that was building the office in Tamil Nadu for Cognizant India.  *Id*. ¶¶ 5, 15.  Specifically, in its indictment, DOJ claims that L&T "would obtain the Planning Permit by making the illegal bribe payment."  *Id*. ¶ 3; *see also Id*. ¶ 29a ("COBURN, SCHWARTZ, CC#1, CC#2, and others agreed to reimburse the Construction Company for the payment of an approximately $2 million bribe to one or more government officials in India. . . .").  DOJ acknowledges that L&T was contractually obligated to obtain the planning permit prior to the alleged bribe authorization.  *Id*. ¶ 5.

In response to defense requests during discovery, DOJ has acknowledged that it does not know who made the alleged illegal payment to the government official.  Gov't's Opp. Defs.' Mot. Bill Particulars 12 (Dec. 16, 2019), ECF No. 61.  DOJ does not know the Indian government official who received the alleged illegal

3

payment.  *Id.*  DOJ does not know the amount of the alleged illegal payment.  *Id.* at 53.  And DOJ does not know who facilitated the alleged illegal payment, other than L&T.  *Id.* at 47–48, 51.  It also appears that DOJ does not even know if the alleged illegal payment actually occurred.  *Id.* at 48, 51.

## II.   L&T'S PUBLIC DENIALS OF INVOLVEMENT IN ALLEGED IMPROPER PAYMENT

In the weeks following the indictment of this case and the SEC's filing of an action against Messrs. Coburn and Schwartz the next day, L&T made public statements denying any involvement in improper payments in connection with construction of the Cognizant India office in Tamil Nadu.  Those public denials are consistent with the presentations counsel for L&T delivered to DOJ and the SEC (discussed below) and the fact that neither DOJ nor the SEC pursued criminal or civil actions against L&T or any employees of L&T.

The first known public statement that L&T made about this matter came in a February 18, 2019 letter that it sent to the National Stock Exchange of India, where shares of L&T are publicly traded.  In that letter, L&T stated the following:

> We wish to clarify that Cognizant Technology Solutions ("CTS"), a longtime customer of Larsen & Toubro, ha[s] reached a settlement with the U.S. Department of Justice . . . and the U.S. Securities and Exchange Commission . . . in which it . . . acknowledged violations of the U.S. Foreign Corrupt Practices Act ("FCPA") in connection with certain construction projects in India.  This settlement appears to arise from an internal investigation by CTS that it first announced on September 30, 2016.

4

> While we cannot comment on Cognizant's decision to enter into these settlements, ***we are not aware of any evidence that supports our involvement in making the alleged improper payments. We confirm that neither we nor any of our employees are a party to the proceedings brought in the United States***.

Ex. A (emphasis added).

Ten days later, in another letter to the National Stock Exchange of India, L&T described its efforts to investigate alleged improper payments. Ex. B. L&T explained that, in a February 27, 2019 Audit Committee meeting, L&T management presented "all details" of the Company's construction contracts with Cognizant, including details relating to Cognizant's settlement with the SEC and ongoing proceedings with DOJ. *Id.* L&T also briefed the Audit Committee on L&T's management-initiated investigation in 2017 "conducted by leading law firms in USA and India with the help of forensic experts from Hong Kong." *Id.* According to L&T's statement, the Audit Committee noted "no evidence of the involvement of the Company or any of its executives" in the alleged improper payments, but "decided to seek assistance of an external expert" to further evaluate L&T's 2017 investigative efforts. *Id.*

A March 1, 2019 *Business Standard* newspaper article about the DOJ and SEC cases against Cognizant stated:

> It was alleged that the $3.6 million was paid through engineering major L&T. ***However, L&T denied the allegation and said that the company was not aware of***

> *any evidence that supported the company's involvement*
> *in making the alleged improper payments.*

Ex. C (emphasis added).[2]   Similarly, in a March 28, 2019 interview with *The Economic Times*, L&T CEO Sekharipuram Narayanan Subrahmanyan denied L&T's having any role in making improper payments in connection with the construction of Cognizant India's office in Tamil Nadu, stating "Cognizant paid a $25-million fine and blamed somebody.  Department of Justice (US) lets them go. Now, how am I to defend myself?  Is there a letter to me accusing me of these things [?]"  Ex. D.  The article noted that in 2017, L&T engaged "leading law firms in the US and India, with the help of forensic experts from Hong Kong" to investigate the bribery allegations.  *Id*.  That investigation "did not reveal any evidence of involvement of the company or any of its executives."  *Id*.

Then, on October 24, 2019, L&T submitted a supplemental letter to the National Stock Exchange of India, this time relaying the results of the inquiry conducted by the external expert that L&T had hired to analyze its earlier investigation.  After reviewing and discussing the external expert's report, L&T's Audit Committee concluded that "there was no sufficient evidence to support the allegations of the Company's involvement in making alleged improper payments at the direction of Cognizant Technology Solutions."  Ex. E.

---

[2]      *Business Standard* is one of the most widely circulated English language newspapers in India.

### III.   L&T'S COOPERATION WITH DOJ AND SEC INVESTIGATIONS

Based on the discovery produced to date, it appears that L&T cooperated with the DOJ and SEC investigations into alleged improper payments in India.  Consistent with its statement and the articles described above, and inconsistent with DOJ's charging theory, L&T did not find evidence of making or facilitating improper payments in connection with its work building Cognizant India's office building in Tamil Nadu.

In conducting its internal investigation, L&T obtained and analyzed extensive evidence in India concerning the Tamil Nadu project and other projects. ████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████

Discovery shows that throughout L&T's internal investigation, DOJ closely coordinated with L&T and relied on L&T's investigative efforts. ████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████



Importantly, when Cognizant reached an agreement with DOJ and the SEC to disgorge nearly $20 million, the disgorgement amount was linked to numerous L&T construction projects in which the government claims that L&T paid bribes. *See* Ex. G (DOJ's Cognizant declination), Ex. H (SEC's Cognizant Cease & Desist Order).

L&T's cooperation with DOJ continued after Messrs. Coburn and Schwartz were indicted. For example, when Mr. Coburn raised concerns about L&T documents that DOJ produced during discovery – including concerns about missing documents, missing metadata, and document access issues identified during

counsel's review of discovery – DOJ merely passed Mr. Coburn's requests on to counsel for L&T and then provided counsel's responses to Mr. Coburn.  *See* Ex. I (relevant portions of DOJ correspondence to Mr. Coburn highlighted); Ex. J (filed under seal);  *see also* Mem. Law Supp. Def. Coburn's *Ex Parte* Appl. Rule 17(c) Subpoenas (Feb. 14, 2020) (filed under seal).

## IV.   THE GOVERNMENT DECLINES TO BRING CRIMINAL OR CIVIL ACTIONS AGAINST L&T AND L&T EMPLOYEES

The DOJ and SEC investigation into this matter appear to have been triggered by a self-disclosure made by Cognizant in September 2016.  In the fifty-six months since that disclosure, DOJ and the SEC have conducted at least twenty-four interviews and collected millions of pages of documents from L&T and Cognizant. The government has not filed any actions against L&T or any L&T employees.

## V.   THE COURT ISSUES NARROW RULE 17 SUBPOENAS TO L&T AND DEFERS ISSUING ADDITIONAL SUBPOENA REQUESTS

On September 14, 2020, the Court authorized the issuance of subpoenas to L&T for "documents relating to the prosecution's role in . . . L[&]T's internal investigation[]," which it referred to as "category (a)" requests.  Mem. Op. & Order 10, ECF No. 96 (the "Sept. Order").  The Court deferred consideration of requests for additional categories of documents from L&T related to the merits of the case, which it referred to as "category (b)" requests.  *Id*.  In doing so, the Court created "a double track" by which it would address requests to L&T for "broader . . .

10

information and evidence relating to the merits of the case in a separate opinion, on a sealed basis as appropriate, to avoid revealing trial strategy." *Id*. at 12.

On October 6, 2020, the Court approved Defendants' narrowed, specific requests to L&T and, on October 7 and October 16, the Clerk issued subpoenas to L&T with a return date of October 20, 2020. *See* Sept. Order, ECF No. 108.

## VI.   L&T REFUSES SERVICE OF PROCESS

On October 16, 2020, Mr. Coburn attempted to serve the Court-issued Rule 17 subpoena on L&T by delivering it to L&T Infotech at 2035 Lincoln Highway, Edison, NJ 08817 (the "Edison Address"). ▌▌▌▌▌▌▌▌▌▌▌▌▌▌

▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌

But this time, the L&T Infotech employee who received the subpoena stated that L&T Infotech is "not affiliated with Larsen & Toubro Construction" and refused to accept service.

On October 18, 2020, L&T's U.S. counsel informed Defendants that it was not authorized to accept service on L&T's behalf.  L&T's U.S. counsel subsequently wrote a letter to defense counsel confirming L&T's refusal to accept service by either L&T Infotech or L&T's counsel.  Ex. K.  L&T's U.S. counsel also claimed that L&T "is not subject to the jurisdiction of the United States District Court for the District of New Jersey." *Id*.

In an effort to avoid judicial intervention, Defendants asked the government if it would help obtain the records from L&T, either through a direct request to L&T or through the MLAT process.  Ex. L.  Despite its repeated successful requests to L&T for the production of extensive documents and information to aid its own investigation, DOJ refused.  Indeed, when the Court questioned DOJ on this very issue at the January 6, 2021 status conference, DOJ declared that it "certainly [would] not . . . pursue an MLAT to India or take other steps to assist the defense." Tr. 41:20–24, ECF No. 137.  Nevertheless, DOJ stated that if Defendants filed an application seeking judicial intervention, DOJ would "not . . . get in the way."  Tr. 42:22–24; *see also* Tr. 43:17–19 ("[I]f they file an application, I don't anticipate us having much of a role unless, of course, the Court requests our position.").

## VII.  THE COURT ISSUES ADDITIONAL RULE 17 SUBPOENAS RELATED TO MERITS OF THE CASE

On March 18, 2021, Messrs. Coburn and Schwartz filed an *ex parte* application for a supplemental Rule 17 subpoena to L&T, seeking evidence relating to the merits of the case (the "category (b)" requests).  ECF No. 143.  The Defendants asked the Court to issue three identical copies of the subpoena to: L&T; Larsen & Toubro Limited, Inc.; and L&T Infotech.  For efficiency and to perfect service in advance of an anticipated motion to compel, Messrs. Coburn and Schwartz consolidated the supplemental, category (b) requests with the category (a) requests that already had been approved by the Court.

12

On April 5, 2021, the Court granted Defendants' application. Mem. Op. & Order, ECF No. 144. And on April 20 and April 22, 2021, the Clerk issued three identical copies of the subpoena to L&T; Larsen & Toubro Limited, Inc.; and L&T Infotech.

## VIII. L&T AGAIN REFUSES SERVICE OF PROCESS

On May 19, 2021, Defendants contacted L&T's U.S. counsel about accepting service of the supplemental subpoena. L&T's U.S. counsel responded by letter, reiterating that it was not authorized to accept service on behalf of any of the L&T entities. Ex. M. L&T's U.S. counsel also restated its position that this Court has no jurisdiction over L&T. *Id.* On May 21, 2021, Defendants served a copy of the supplemental subpoena addressed to L&T on the person in charge at the office of the registered agent for L&T Limited, Inc. – the name under which L&T is registered to conduct business in New Jersey – at the Edison Address. Ex. N. That same day, Defendants also served a copy of the supplemental subpoena addressed to L&T on the person in charge at the office of L&T Infotech's registered agent at the Edison Address. Ex. O.[3]

---

[3]     At the same time, Defendants served copies of the supplemental subpoena addressed to L&T Infotech and to L&T Limited, Inc., on the person in charge at the office of their respective registered agents at the Edison Address. Exs. N, O.

# ARGUMENT

## I.  THE COURT SHOULD ISSUE A LETTER ROGATORY TO EFFECTUATE THE SUBPOENAS IT ISSUED TO L&T IN OCTOBER 2020 AND APRIL 2021

"The power of the federal courts extends to requests from criminal defendants for international assistance to gather evidence in support of their defense." *United States v. Wedding*, No. 08-cr-2386, 2009 WL 1329146, at *1 (S.D. Cal. May 13, 2009).  Letters rogatory are the mechanism "whereby one country, speaking through one of its courts, requests another country, acting through its own courts and by methods of court procedure peculiar thereto and entirely within the latter's control, to assist the administration of justice in the former country." *Abraxis BioScience, LLC v. Actavis*, LLC, No. 2:16-cv-1925 (JMV), 2017 WL 2293347, at *2 (D.N.J. May 25, 2017) (citation omitted).  District courts have both statutory and inherent authority to issue letters rogatory in criminal cases.[4]  *United States v. Al Fawwaz*, No. S7 98-cr-1023, 2014 WL 627083, at *2 n.18 (S.D.N.Y. Feb. 18, 2014); 28 U.S.C. § 1781.  In determining whether a letter rogatory seeking overseas documents should issue, "[t]he standard . . . is the same as if the evidence were located in the United States." *United States v. Hoskins*, No. 3:12-cr-238, 2015 WL 4874921, at *5

---

[4]      District courts also have authority to issue letters rogatory in civil matters, as this Court has done on at least one occasion.  *See Privata, LLC v. Norte Pesca, SA*, No. 18-cv-14688 (KM) (SCM), 2019 WL 325544, at *2 (D.N.J. Jan. 24, 2019) (granting letters rogatory to serve Brazilian defendants with summons and complaint).

(D. Conn. Aug. 14, 2015); *see also Al Fawwaz*, 2014 WL 627083, at \*7 (denying letters rogatory for overseas documents "to which the defendant would have no clear right were those documents located here in the United States").[5]

Accordingly, Defendants "must satisfy the requirements of Fed. R. Crim. P. 17 and [*United States v. Nixon*, 418 U.S. 683 (1974)] to obtain evidence from [L&T] that is located abroad." *Hoskins*, 2015 WL 4874921, at \*5.  Here, the Court has already determined that Defendants have satisfied these requirements as to the category (a) requests.  Indeed, in advance of granting Defendants' applications to issue the subpoenas to L&T on October 6, 2020, this Court ruled that the document requests included in the subpoenas to L&T, as narrowed by the Court, satisfied Rule 17 and the *Nixon* standard.  *See* Sept. Order at 15 (holding that the narrowed document requests satisfied the *Nixon* requirements for relevancy, admissibility, and specificity).  In addition, on April 5, 2021, the Court authorized the issuance of a subpoena containing Defendants' category (b) requests, noting that the Court would consider any objections under *Nixon* at a later date, should they arise.[6]

---

[5]    When determining whether letters rogatory should issue to preserve overseas testimony, courts assess whether the Rule 15(a) standard for depositions is satisfied. *See, e.g.*, *United States v. Rosen*, 240 F.R.D. 204, 208 (E.D. Va. 2007); *Al Fawwaz*, 2014 WL 627083, at \*2; *United States v. Zavieh*, No. 12-cr-00195, 2013 WL 1283319, at \*2 (N.D. Cal. Mar. 27, 2013).

[6]    For the reasons described in Defendants' *ex parte* Application for the Issuance of Rule 17(c) Subpoenas (ECF No. 143), the additional "category (b)"

If the Court does not grant Defendant's Motion to Compel L&T to produce the subpoenaed documents, Defendants require the assistance of the courts in India to compel L&T to comply with the subpoena. In that event, a letter rogatory is the only method to obtain L&T documents that are crucial to a fair adjudication of this case.

The circumstances here are similar to those in *United States v. McLellan*, 959 F.3d 442 (1st Cir. 2020). In *McLellan*, the district court issued subpoenas, as narrowed, to third-party corporations and the third-party corporations refused to accept service, stating that the subpoenaed documents were in the possession of overseas subsidiaries. *Id*. at 455-56. In response, the district court granted the Defendants' request to issue letters rogatory. *Id.*; *see also* Assented-to Motion for Issuance of Letters Rogatory, *United States v. McLellan*, No. 16-cr-10094 (D. Mass. June 14, 2017), ECF No. 174. *In McLellan*, the government assented to issuance of the letters rogatory. *Id*.

The requests in the attached [Proposed] Request for International Judicial Assistance (Letter Rogatory) are the precise category (a) and category (b) requests contained in the Court-authorized subpoenas.[7]

---

materials sought related to the merits of the government's case also meet the *Nixon* standard.

[7] These requests are taken from the subpoena to L&T authorized by the Court on April 5, 2021, which, as discussed above, consolidated the supplemental category (b) requests and the earlier-approved category (a) requests. For the same

\*     \*     \*

L&T is the central figure in this case and the alleged conduit of the bribe for which the government now seeks to hold Messrs. Coburn and Schwartz criminally responsible.   L&T has consistently and publicly maintained that it had no involvement in the scheme.  After cooperating with the DOJ and SEC investigations, neither the company nor any employees were charged.  By refusing to accept service of the subpoenas, L&T is effectively withholding documents and information that are not only relevant, but essential to the defense of this case.  Accordingly, the Court should grant Defendants' Motion to Compel.  Should the Court deny that motion, a letter rogatory is necessary and appropriate.  Defendants respectfully request that the Court grant this motion and issue the attached [Proposed] Request for International Judicial Assistance (Letter Rogatory).

---

reasons that the Court granted Defendants' request to submit *ex parte* and under seal the application for that subpoena, Defendants seek to file *ex parte* and under seal the [Proposed] Request for International Judicial Assistance (Letter Rogatory). *See* Mem. Op. & Order 2 (Apr. 5, 2021), ECF No. 144; Mem. Law Supp. Defs.' *Ex Parte* Appl. Rule 17(c) Subpoenas 14–16 (Mar. 18, 2021), ECF No. 143.

Dated: June 15, 2021                    Respectfully submitted,

/s/ Roberto Finzi                       /s/ Hank B. Walther
Theodore V. Wells, Jr.                  Henry Klehm III
Roberto Finzi                           Hank B. Walther
Justin D. Lerer                         James P. Loonam
PAUL, WEISS, RIFKAND                    Sarah D. Efronson
WHARTON & GARRISON LLP                  JONES DAY
1285 Avenue of the Americas             250 Vesey Street
New York, NY 10019                      New York, NY 10281
Tel. (212) 373-3000                     Tel. (212) 326-3939

Jeremy I. Bohrer                        Nicholas J. Lewin
Amir Toossi                             Alexandra Messiter
Jonathan E. Jason                       KRIEGER KIM & LEWIN LLP
Arthur T. Tergesen                      500 Fifth Avenue
BOHRER PLLC                             New York, NY 11215
One Penn Plaza, Suite 2520              Tel. (212) 390-9559
New York, NY 10119
Tel. (212) 303-3314                     *Attorneys for Defendant Gordon J.*
                                        *Coburn*

Lawrence S. Lustberg
Daniel B. Weinstein
John D. Haggerty
GIBBONS P.C.
One Gateway Center
Newark, NJ 07102
Tel. (973) 596-4500

*Attorneys for Defendant*
*Steven Schwartz*

18