# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>    **v.**<br><br>**GORDON COBURN and STEVEN SCHWARTZ,**<br><br>    **Defendants.** | Civ. No. 2:19-cr-00120 (KM)<br><br>**OPINION** |

### **KEVIN MCNULTY, U.S.D.J.:**

Defendants Gordon J. Coburn and Steven Schwartz are accused of violating the Foreign Corrupt Practices Act ("FCPA") while employed as Chief Legal Officer and President of Cognizant Technology Solutions Corporation ("Cognizant"). They allegedly conspired to pay a $2 million bribe to obtain a permit for opening an office facility in India ("the KITS office facility"). In two orders dated January 24, 2022, I granted in part Defendants' motions to compel discovery regarding (1) the Government's alleged intrusion into the defense camp; (2) the Government's alleged "outsourcing" of its investigation to Cognizant; and (3) the merits of the case. (DE 262, 264.)[1] In doing so, I

---

[1]     "DE __" refers to the docket entry numbers in this case.

"Mem. & Ord." refers to my Memorandum and Order granting in part Schwartz's motion to compel discovery, filed on January 24, 2022. (DE 262.)

"Op." refers to my Opinion granting in part Defendants' motions to compel discovery, filed under seal on January 25, 2022. (DE 263, as redacted, DE 268.)

"Defs. Mot." refers to Defendants' memorandum of law in support of their motion for reconsideration. (DE 267-3.)

"Cog. Opp. to Defs. Mot." refers to Cognizant's memorandum of law in support of its opposition to Defendants' motion for reconsideration. (DE 284-1.)

"Gov. Mot." refers to the Government's memorandum of law in support of its motion for reconsideration. (DE 271.)

"Defs. Opp. to Gov. Mot." refers to Defendants' brief in opposition to the Government's motion for reconsideration. (DE 286.)

explained that I weighed the relevance and burden somewhat more in Defendants' favor than usual, based in part on five factors features peculiar to this case. (*See* Op. at 23–24.)

Now before the Court are three motions from the Government, Defendants, and Cognizant, each seeking reconsideration of different aspects of these orders. (DE 267, 271, 290.) For the reasons articulated below, I will **GRANT IN PART** Defendants' motion for reconsideration, **GRANT IN PART** the Government's motion for reconsideration, and **DENY** Cognizant's motion for reconsideration.

## I. BACKGROUND

In a memorandum and order filed on January 24, 2022, I granted Schwartz's motion to compel discovery and ordered the Government "to produce all communications between itself and Cognizant, including any documents furnished, that are relevant to the investigation of Defendants Schwartz and Coburn, dating from the onset of the investigation [in September 2016] until the date of the Indictment [in February 2019]." (Mem. & Ord. at 6.) I ordered this discovery to allow greater factual development of Schwartz's claim that Cognizant's investigation of a fee dispute concerning one of the firms representing Schwartz, Bohrer PLLC, allowed the Government to intrude into the defense camp. (*Id.* at 1-2.) My decision provided that "[i]tems already produced in discovery need not be furnished again" and that the Government could submit documents for in camera inspection if it "has particular, valid reasons to withhold a particular item." (*Id.* at 6.)

In a second opinion and accompanying order, also dated January 24, 2022, I resolved multiple interrelated motions concerning subpoenas that Defendants served on Cognizant and L&T Construction. These subpoenas were

---

"Cog. Mot." refers to Cognizant's memorandum of law in support of its motion for reconsideration. (DE 290-2.)

"Defs. Opp. to Cog. Mot." refers to Defendants' memorandum of law in opposition to Cognizant's motion for reconsideration. (DE 293.)

denominated as either "Category A subpoenas," which related to motion practice, primarily the issue of investigative outsourcing, or "Category B subpoenas," which related to the merits of the case against Defendants. (Op. at 1, 3-4.) Two aspects of that opinion and order are relevant to these motions for reconsideration: my decision to deny Request Nine of the Category B subpoenas, in which Defendants sought "Design Basis Reports . . . drawing sets and specifications for the KITS facility", and my decision that Cognizant's draft press releases, draft public disclosures, and communications with two public relations firms were not shielded from discovery by virtue of attorney-client privilege or the work product doctrine. (*Id.* at 11-12, 26.)

## II. DISCUSSION: Motions for Reconsideration

### A. Standard of Review

In the District of New Jersey, motions for reconsideration are governed by Local Civil Rule 7.1(i). Reconsideration is an "extraordinary remedy," to be granted "sparingly." *NL Indus. Inc. v. Commercial Union Ins. Co.*, 935 F. Supp. 513, 516 (D.N.J. 1996). Generally, reconsideration is granted in three scenarios: (1) "an intervening change in the controlling law"; (2) "the availability of new evidence that was not available" at the time of the court's decision; and (3) "the need to correct a clear error of law or fact or to prevent manifest injustice." *Max's Seafood Cafe ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999); s*ee also North River Ins. Co. v. CIGNA Reinsurance Co.*, 52 F.3d 1194, 1218 (3d Cir. 1995). The party moving for reconsideration bears the burden of demonstrating that one of these scenarios applies, *see Max's Seafood Café*, 176 F.3d at 677, and must identify "the matter or controlling decisions which the party believes the Judge or Magistrate Judge has overlooked," L. Civ. R. 7.1(i).

L. Civ. R. 7.1(i) does not permit parties to restate or relitigate arguments that the court has already considered—motions for reconsideration do not provide a "second bite at the apple" and "a difference of opinion with the court's decision should be dealt with through the normal appellate process." *Andreyko*

3

*v. Sunrise Sr. Living, Inc.*, 993 F. Supp. 2d 475, 478 (D.N.J. 2014) (quoting *Tischio v. Bontex, Inc.*, 16 F.Supp. 2d 511, 533 (D.N.J.1998)); *see also, e.g.*, *Artis v. Schultz*, 427 F. App'x 65, 66 (3d Cir. 2011) (affirming the District Court's denial of a motion for reconsideration where the movant "only restated facts and arguments" included in prior filings); *Aruanno v. Corzine*, 413 F. App'x 494, 498 (3d Cir. 2011) (same). Rather, reconsideration may be granted to "correct a clear error of law or fact" where the Court was previously notified of "dispositive factual matters or controlling decisions of law" but failed to consider them. *P. Schoenfeld Asset Mgmt. LLC v. Cendant Corp.*, 161 F. Supp. 2d 349, 353 (D.N.J. 2001) (citations omitted); *see also Carmack v. Amaya Inc.*, No. CV 16-1884, 2018 WL 10068303, at *1 (D.N.J. Feb. 26, 2018) (stating that "the moving party must actually present something new or something overlooked by the court in rendering the earlier decision") (citation omitted). "The word 'overlooked' is the operative term and has been consistently interpreted as referring only to facts and legal arguments that might reasonably have resulted in a different conclusion had they been considered." *Carmack*, No. CV 16-1884, 2018 WL 10068303, at *1 (citing *Summerfield v. Equifax*, 264 F.R.D. 133, 145 (D.N.J. 2009)); *see also Andreyko*, 993 F. Supp. 2d at 478 ("The Court will grant a motion for reconsideration only where its prior decision has overlooked a factual or legal issue that may alter the disposition of the matter.").

### B. Defendant's Motion for Reconsideration

Defendants' motion is targeted; they seek reconsideration of my prior decision denying Request Nine of the Category B subpoena served on Cognizant. It is granted in part.

Request 9 sought Design Basis Reports ("DBRs"), drawing sets, and specifications for the KITS office facility. (Defs. Mot. at 3.) Specifically, Defendants request that I order production of those DBRs containing the pre-construction, interim, and final construction specifications for the KITS facility because they reflect design amendments that Cognizant and L&T agreed upon

4

over the course of construction through change orders. (*Id.* at 6-7, 9.) The relevance is that the Indictment alleges that Defendants used change orders to disguise payments made to reimburse L&T for bribes given to Indian government officials. (*Id.* at 4, 7.) Defendants now urge that reconsideration is warranted because an analysis of these DBRs is necessary to demonstrate that the change orders were legitimate and to rebut the Government's allegations. (*Id.* at 7-10.)[2]

Cognizant responds that, as before, Defendants fail to identify the materials sought with the requisite specificity and that the plain language of Request Nine calls for unspecified "drawing sets" and "specifications," in addition to the DBRs. (Cog. Opp. to Defs. Mot. at 2-3.) Cognizant argues that Defendants' renewed attempt to obtain these documents violates the requirements of both Rule 17 and *United States v. Nixon*, 418 U.S. 683 (1974), and thus reconsideration must be denied. (*Id.* at 3-4.)

While acknowledging that reconsideration should be granted sparingly, I will grant reconsideration in part. Defendants have sufficiently shown that my decision to deny Request Nine underplayed the significance of DBRs in assessing the truth of the allegation in the Indictment that the change orders were one means through which the alleged bribery scheme was accomplished. The connection between DBRs and the Indictment's allegations was, as Defendants suggest, only briefly explained in Defendants' prior filings. (*See* Defs. Mot. at 10.) Still, Defendants are not raising the issue for the first time on reconsideration; it was "brought to my attention." *See P. Schoenfeld Asset Mgmt.*, 161 F. Supp. 2d at 353.

---

[2] Defendants also maintain that Request Nine is similar to other requests that I granted regarding allegations that Defendants authorized the payment of bribes and "manufactured expenses" to conceal them, and that the DBRs represent "a finite, limited and readily ascertainable set of documents." (*Id.* at 3, 10-13.) Whether that implies that Request Nine should be granted, or that the others should have been denied, depends on the substantive arguments, discussed herein.

On further reflection, at least some evidence of the agreed-upon design of the KITS facility would seem to be relevant and helpful in determining whether subsequent modifications of designs or adjustments to costs reflected legitimate project changes or were in fact means by which L&T papered over reimbursement for bribes given to Indian officials. The defense's need for the DBRs in contesting the Government's allegations counsels in favor of granting Defendants' motion, to avoid the risk of a manifest injustice under the unusual circumstances of this case, described elsewhere.

Specifically, I will grant Defendant's motion and approve Request Nine to the extent that it seeks three categories of DBRs—final pre-construction DBRs, interim DBRs, and final as-built DBRs—documents that Defendants now identify as crucial to their defense. (*See* Defs. Mot. at 9-10.) The motion is otherwise denied. Additional drawing sets, specifications, or other like materials remain vague and inadequately described, and their relevance is not sufficiently established.

### C. The Government's Motion for Reconsideration

The Government seeks reconsideration of my prior decision regarding Schwartz's allegation that the Government invaded the defense camp in the course of Cognizant's dispute over legal fees with Bohrer PLLC, one of the firms representing Schwartz. (Gov. Mot. at 1-3.) In essence, the Government argues that the date range of documents to be produced was mistaken. To that extent, the Government is correct; in the course of editing, I misidentified the date range of the alleged intrusion into the defense camp.

In granting Schwartz's motion to compel discovery on this issue, I ordered the Government to produce communications with Cognizant regarding the investigation of Defendants that dated from the investigation's initiation in September 2016 through the issuance of the Indictment in February 2019. (Mem. & Ord. at 6.) The Government maintains, correctly, that this order "covers a timeframe that predates any alleged intrusion" into the defense camp, which allegedly began in July 2020 when Cognizant received an anonymous

6

email from a member of Schwartz's defense team regarding alleged billing fraud. (Gov. Mot. at 1-2.) Accordingly, the Government requests that the date range of production be amended to cover the period July 2020 to the present. (*Id.* at 1-2, 6.) Moreover, given Schwartz's failure to establish any impropriety thus far, the Government argues that communications should be precleared for discovery by this Court or a Magistrate Judge in camera. (*Id.* at 2.)

Predictably, Defendants consent to production of documents from July 2020 to the present, but maintain that these documents should be produced *in addition* to those dating from September 2016 to February 2019. (Defs. Opp. at 3, 7-12.) They maintain that reading my prior discovery opinions "in tandem" compel this broader date range to allow for discovery into documents that may be "mutually relevant" to the issues of intrusion into the defense camp and investigative outsourcing. (*Id.* at 10-12.) Moreover, they maintain that the Government's request for in camera review of all documents produced is an approach that the Government failed to raise in prior briefing and that I implicitly rejected in my prior opinion. (*Id.* at 12-15.)

Part of the Government's motion, at least, must be granted. I agree with both parties that the date range for production insofar as it is justified by the issue of intrusion into the defense camp should cover July 2020 to the present. Because, as to that issue, there is some smoke that may betoken fire, I will grant some latitude. I therefore order that the Government must produce "all communications between itself and Cognizant, including any documents furnished, that are relevant to the investigation of Defendants Schwartz and Coburn," dating from July 2020 to the present. (*See* Mem. & Ord. at 6.) As I previously noted, the "real crux" of the issue on which such discovery may shed light is "whether confidential, prejudicial information made its way, via Cognizant, from the defense to the prosecution." (*Id.*) Production of documents in that date range reflects that focus.

That leaves the dispute over whether the order inadvertently requiring production of documents prior to that time frame, dating from September 2016

to February 2019, should remain in place. Defendants essentially argue that such production should nevertheless be required, not based on the defense-camp issue, but instead on the "investigative outsourcing" issue. The government responds that Defendants have read my prior opinions too broadly, that there is no threshold indication of improper investigative outsourcing, and that the production requested by Defendants would undermine the limits I put on the date range of documents that Cognizant is required to produce in response to the Category A subpoenas. (DE 292 at 2.)

According to Defendants, their entitlement to a broader range of documents is inherent in the interplay among the Court's prior rulings. To be sure, I observed that the discovery I (mistakenly) ordered might have the serendipitous additional benefit of either confirming or dispelling defendants' suspicions about investigative outsourcing, or at least the *Garrity* component of that issue:

> Such discovery should have the additional benefit of revealing any influence that may or may not have been brought to bear concerning Cognizant's interviews of Defendants—the so-called *Garrity* issue—which has been the subject of discovery requests to Cognizant. Thus far, however, the Court has not seen an independent basis to order discovery on that issue.

(Mem. & Ord. at 6 n.3) For example, I ordered that Cognizant's production in response to the Category A subpoenas concerning outsourcing be limited to documents and communications dated April 2016 to October 2016. (*See* Op. at 16-18.) This limitation was based on Defendants' failure to show with any specificity that evidence concerning investigative outsourcing exists after October 2016. (*See id.* at 18). As I observed, the *Garrity* component is the only allegation of improper outsourcing as to which a minimal showing of plausibility has been made:

> Substantially weaker and more speculative are Defendants' arguments for documents dating from after their interviews. The issue, remember, is not "outsourcing" per se—i.e., whether any of the information now in the government's possession was originally gathered by Cognizant—but rather, whether Cognizant performed

8

> some unconstitutional act on the government's behalf. Thus far, the only clear allegation of such a (potentially) unconstitutional act is the Garrity claim.

(Op. at 18)

As to any other improper investigative outsourcing, we have only suspicions and a desire to probe. Nothing thus far sets out a threshold independent basis to believe that the issue of improper investigative outsourcing would justify broad discovery of all government communications with Cognizant from the 2016–19 period. For that period, and with respect to the investigative outsourcing issue, I believe the ordinary discovery process is adequate. I will therefore order that the government review its communications with Cognizant for the period September 2016 to February 2019; produce any and all communications that reflect any direction of Cognizant's investigative efforts; and thereafter certify to the Court that such production has been complete.

The Court will not take on the burden of in camera pre-sorting of the government's production. As noted in my earlier opinion, the Court will entertain focused objections based on "particular, valid reasons to withhold a particular item." (*See* Mem. & Ord. at 6.)

### D. Cognizant's Motion for Reconsideration

Cognizant seeks reconsideration of two aspects of my prior order granting in part Defendants' motion to compel: the requirement that Cognizant produce (1) draft press releases and public disclosures; and (2) communications between the law firm DLA Piper, representing Cognizant, and the PR firms Finsbury LLC ("Finsbury") and CLS Strategies ("CLS") that it retained. (Cog. Mot. at 1-3.) Cognizant argues that these records are protected by attorney-client privilege and the work product doctrine, and that I overlooked as much by "operating without the benefit of in camera review." (Cog. Mot. at 4.) Indeed, Cognizant maintains that Finsbury and CLS were hired to assist Cognizant's lawyers "in developing their legal advice—including about whether, when, and how to disclose Cognizant's investigation to the

9

public and how to minimize the company's legal exposure from the litigation that would follow the public disclosures." (Cog. Mot. at 5, 9-10, 13-14.) Cognizant submits for in camera review (1) the engagement letters between DLA Piper, one of the law firms representing Cognizant, and Finsbury and CLS; and (2) "representative" emails involving the PR firms, Cognizant, and its lawyers. (*See* DE 290-6, -7, -8, -12, -13, -14.) I have reviewed those documents.

       Defendants counter that Cognizant has failed to show that my prior opinion overlooked the role of CLS or Finsbury, characterizing Cognizant's attempt to bolster its motion through materials submitted for in camera review, despite prior opportunity to do so, as an impermissible attempt at "litigation-by-increment." (Def. Op. to Cog. Mot. at 1-2, 3-8.) Moreover, they urge that my prior opinion's ultimate conclusion remains valid: namely that the materials Cognizant seeks to withhold were not created for the primary purpose of obtaining legal advice or in order to prepare for litigation and thus are not protected by either attorney-client privilege or the work product doctrine. (*Id.* at 2, 8-12.)

       Indeed, I find that neither Cognizant's briefing nor the document submitted in camera provide sufficient basis for reconsideration. Both CLS and Finsbury were clearly hired by DLA Piper to provide advice and services regarding Cognizant's disclosures to the public, as is both appropriate and to be expected given these companies' expertise in public relations. (*See* DE 290-6 at 2; 290-8 at 2, 9-15; 290-12 at 2, 10-11; DE 290-13 at 2, 4-5; 290-14 at 4-5, 8-11, 15-23.) However, the question of Cognizant's "legal exposure" can only be answered by a person with legal expertise and there is no indication from Cognizant's submissions how specialized knowledge of public relations would be necessary for the provision of legal advice or litigation preparation. That Cognizant's law firm employed CLS and Finsbury with the understanding that attorney-client privilege or the work product doctrine applied (*see e.g.*, DE 290-6 at 3-4; 290-7 at 3-4) cannot, on its own, negate the law governing protections afforded between lawyers and third parties. To the contrary, the materials submitted indicate only that CLS and Finsbury provided advice on how to

10

convey *to the public* facts about the case against Coburn and Schwartz and about Cognizant's response to their alleged misconduct. (*See e.g.*, 290-8 at 9-10, 12-15; 290-12 at 2, 10-11; DE 290-13 at 2, 4-5; 290-14 at 4-5, 15-23.) These materials are silent however as to how such public relations advice was reasonably necessary for DLA Piper to formulate advice on the legal exposure facing Cognizant or potential future litigation. Even now, Cognizant does not articulate factually how this public relations advice related to legal advice.

Lacking substantive detail about how public relations professionals were necessary for the provision of legal advice, Cognizant has failed to show that draft press releases, draft public disclosures, or communications with its public relations firms deserve to be shielded from discovery by attorney-client privilege or the work product doctrine. More to the point, I did not overlook Cognizant's assertions in this regard and observe neither legal nor factual error in my prior decision ordering production of these materials. Accordingly, I will deny Cognizant's motion for reconsideration.

### III. CONCLUSION

For the reasons set forth above, I will **GRANT IN PART** Defendants' motion for reconsideration, **GRANT IN PART** the Government's motion for reconsideration, and **DENY** Cognizant's motion for reconsideration.

A separate order will issue.

Dated: March 23, 2022

/s/ Kevin McNulty

_____
**Hon. Kevin McNulty
United States District Judge**