UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>          v.<br><br>**GORDON COBURN and STEVEN SCHWARTZ,**<br><br>          Defendants. | Civ. No. 2:19-cr-00120 (KM)<br><br>**MEMORANDUM AND ORDER** |

**KEVIN MCNULTY, U.S.D.J.:**

      Defendant Schwartz moves to disqualify one of Cognizant's attorneys and her firm from representing Cognizant, alleging that she violated New Jersey Rule of Professional Conduct ("R.P.C.") 1.18, governing a lawyer's duties to former prospective clients. (DE 285.) I discuss that motion herein but withhold a decision pending submission of further evidentiary materials.

**DISCUSSION**

      Schwartz moves to disqualify the firm Alston & Bird and one of its attorneys, Jenny Kramer, Esq., from representing Cognizant, citing New Jersey Rule of Professional Conduct 1.18. Specifically, Schwartz claims that Kramer "consulted extensively" with Schwartz and his attorneys about "potentially joining the defense team," learning over the course of several meetings "confidential facts, secret defense investigative plans, and [defense] strategies and approaches with regard to pretrial motions and trial." (Mot. to Disqualify at 1-5.) In addition to seeking the disqualification of Kramer and Alston & Bird, Schwartz requests that (1) Kramer be enjoined from communicating with Cognizant about this case; and (2) I order Kramer and Cognizant to preserve and produce documents and other communications relating to Cognizant's retention of Kramer or to information obtained by Kramer through her meetings with Schwartz and his attorneys. (Mot. to Disqualify at 13-16.) Cognizant maintains that Kramer received no information, confidential or otherwise, that could significantly harm Schwartz's defense and that

Schwartz's failure to detail the information allegedly conveyed to Kramer is fatal to his motion. (Op. to Mot. to Disqualify at 1-2, 14-17.)

### A. Standard of Review

In the District of New Jersey, issues concerning professional ethics are governed by L. Civ. R. 103.1, providing that "the Rules of Professional Conduct of the American Bar Association as revised by the New Jersey Supreme Court shall govern the conduct of members of the bar admitted to practice" in the District. L. Civ. R. 103.1(a). In moving for the disqualification of counsel, the movant bears the burden of proof. *O Builders & Assocs., Inc. v. Yuna Corp. of NJ*, 206 N.J. 109, 127, 19 A.3d 966, 977 (2011) (quoting *City of Atlantic City v. Trupos*, 201 N.J. 447, 463, 992 A.2d 762 (2010)). "The movant's burden is a heavy one since '[m]otions to disqualify are viewed with disfavor and disqualification is considered a drastic measure which courts should hesitate to impose except when absolutely necessary.'" *Bell v. Cumberland Cnty.*, No. CIV. 09-6485 JHR/JS, 2012 WL 1900570, at *2 (D.N.J. May 23, 2012) (quoting *Alexander v. Primerica Holdings, Inc.*, 822 F.Supp. 1099, 1114 (D.N.J.1993) (alteration in original)). Nonetheless, "a motion for disqualification calls for [courts] to balance competing interests, weighing the need to maintain the highest standards of the profession against a client's right freely to choose his counsel." *Trupos*, 201 N.J. at 462 (citing *Dewey v. R.J. Reynolds Tobacco Co.*, 109 N.J. 201, 218, 536 A.2d 243 (1988)).

A determination of whether to disqualify counsel requires "close judicial scrutiny of the facts of each case" in order "to prevent unjust results." *Montgomery Acad. v. Kohn*, 50 F.Supp.2d 344, 349 (D.N.J.1999); *see also Trupos*, 201 N.J. at 467 (noting that courts must undertake "a fact-sensitive analysis to ensure that the congruity of facts, and not merely similar legal theories, governs whether an attorney ethically may act adverse to a former client"). Additionally, "[t]he decision whether to disqualify a law firm by imputation is best undertaken on a case-by-case basis, weighing the facts as they exist at the time the motion to disqualify is made. New Jersey courts have

consistently eschewed per se rules of disqualification, stressing the 'fact-sensitive nature' of a decision to disqualify counsel." *Cardona v. Gen. Motors Corp.*, 942 F. Supp. 968, 976 (D.N.J.1996) (quoting *Dewey*, 109 N.J. 201, 218, 536 A.2d 243 (1988)).

### B. New Jersey Rule of Professional Conduct 1.18

R.P.C. 1.18 governs an attorney's ethical obligations to a "former prospective client," defined as "[a] person who communicates with a lawyer the possibility of forming a client-lawyer relationship with respect to a matter" but with whom "no client-lawyer relationship is formed." R.P.C. 1.18(d). R.P.C. 1.18, as relevant, provides that:

> (a) A lawyer who has had communications in consultation with a prospective client shall not use or reveal information acquired in the consultation, even when no client-lawyer relationship ensues
> . . . .
>
> (b) A lawyer subject to paragraph (a) shall not represent a client with interests materially adverse to those of a former prospective client in the same or a substantially related matter if the lawyer received information from the former prospective client that could be significantly harmful to that person in the matter, except as provided in paragraph (c).
>
> (c) If a lawyer is disqualified from representation under (b), no lawyer in a firm with which that lawyer is associated may knowingly undertake or continue representation in such a matter, except that representation is permissible if . . . the disqualified lawyer is timely screened from any participation in the matter and is apportioned no part of the fee therefrom and written notice is promptly given to the former prospective client.

Thus, a motion for disqualification pursuant to R.P.C. 1.18 will be granted "if and only if two factors exist in combination: the matter of the consultation and the matter then adverse must be 'the same or substantially related,' and the information the lawyer received during the consultation must be 'significantly harmful' to the former prospective client in the now adverse matter." *O Builders & Assocs., Inc. v. Yuna Corp. of NJ*, 206 N.J. 109, 125, 19 A.3d 966, 975 (2011) (quoting R.P.C. 1.18); *see also Bell v. Cumberland Cnty.*,

No. CIV. 09-6485 JHR/JS, 2012 WL 1900570, at *8 (D.N.J. May 23, 2012). Information received by a lawyer is "significantly harmful" under RPC 1.18 if disclosure of that information is "prejudicial in fact to the former prospective client within the confines of the specific matter in which disqualification is sought, a determination that is exquisitely fact-sensitive and -specific." *Id.* at 126 (also noting that the information at issue "cannot be simply detrimental in general to the former prospective client").

The New Jersey Supreme Court has noted that a motion for disqualification under R.P.C. 1.18

> should ordinarily be decided on the affidavits and documentary evidence submitted, and an evidentiary hearing should be held only when the court cannot with confidence decide the issue on the basis of the information contained in those papers, as, for instance, when despite that information there remain gaps that must be filled before a factfinder can with a sense of assurance render a determination, or when there looms a question of witness credibility.

*Id.* at 127.

While Schwartz has provided documentary evidence to support some elements of his claim, this evidence is an insufficient basis to decide with confidence that Kramer should be disqualified—a "drastic measure" appropriate only "when absolutely necessary." *See Alexander*, 822 F. Supp. at 1114. On the one hand, the evidence submitted unquestionably establishes that Schwartz is a "former prospective client" of Kramer's, a point that Cognizant and Kramer appear to concede. (*See* Bohrer Cert. ¶¶ 4-9, 15, Bohrer Cert. Ex. C; Cog. Opp. at 1-2. Kramer Cert. ¶¶ 4-6, 18, 25-28, 30-33.) Moreover, "the matter of the consultation and the matter then adverse" are the same matter, so Kramer's discussions with Schwartz and his attorneys clearly implicate R.P.C. 1.18. *See O Builders*, 206 N.J. at 125. If I conclude, then, that Kramer learned from these discussions information that is "significantly harmful" to Schwartz's case, then Kramer should be disqualified. If so, it may well be that Alston & Bird should be disqualified as well, given the firm's failure

to "timely screen[]" Kramer from the case, or indeed to screen her at all. *See* R.P.C. 1.18(c).

On the critical issue of whether Kramer learned information that would be significantly harmful to Schwartz's case, Schwartz provides meager evidence. His allegation that Kramer learned such information is based solely on the certification of his attorney Jeremy Bohrer that the information shared with Kramer included (1) "legal strategy and anticipated motions," including "legal theories with regard to *Connolly* motions and 'Brady laundering'"; (2) the "defense theory of the case," including "defenses to certain specific allegations in the Indictment" and discussions of the alleged roles played by "key individuals" associated with Cognizant in the Indictment's allegations, Cognizant's internal investigation, and as witnesses or participants in litigation; (3) potential areas for further investigation; and (4) "specific facts unknown to Cognizant, both then and now, including facts regarding a critical document in which Mr. Schwartz purportedly memorialized the conversation in which the Government claims he approved the bribe at issue." (DE 281-1 "Bohrer Cert." ¶¶ 6, 11-13.) If uncontroverted, this certification might be sufficient. Cognizant alleges, however, that Bohrer's statements consist of "mischaracterizations, gross distortions of the facts, and, in some instances, outright falsehoods," citing his claim about the information disclosed to Kramer specifically. (Op. to Mot. to Disqualify at 1.) Cognizant and Kramer represent that Kramer never received any "significantly harmful" information from Schwartz's defense team and that Schwartz's failure to include specific detail about the information conveyed to Kramer is fatal to his motion. (*Id.* at 14-17; DE 297-1 "Kramer Cert." ¶¶ 9, 17-18, 23, 33-34, 36).

Indeed, the documentary evidence currently available to the Court does not provide detail as to the content of Kramer's discussions with Schwartz's attorneys; the documents submitted only indicate that these discussions concerned mutual interest in Kramer joining Schwartz's legal team. (*See e.g.*, Bohrer Cert., Ex. A., Ex. C; Kramer Cert. Ex. F, Ex. I, Ex. J.) Moreover, Bohrer and Kramer have fundamentally different accounts of the events at issue here

and each party disputes the veracity of its opponent's contentions. (*See e.g.*, Mot. to Disqualify at 5-6; Op. to Mot. to Disqualify at 1; Kramer Cert ¶ 35.). I therefore cannot decide Schwartz's motion "with a sense of assurance" on the papers alone, given the factual "gaps" that remain in the record and the evident questions of credibility that "loom[]" over this dispute. *See O Builders*, 206 N.J. at 127.

      Both sides of this dispute were present for the discussions at issue. Any alleged confidences have already been shared. Apart from an application to seal to prevent further dissemination, there should be no barrier to either side's stating with precision what passed between them. The Court will therefore not be satisfied with generalities about confidences and secret strategies.

      To supplement his submissions, Schwartz has offered to submit a "more detailed affidavit" and "additional evidential materials, including relevant communications, for in camera review," a route that Cognizant opposes as an improper method to rectifying a deficient filing. (Op. to Mot. to Disqualify at 20-22.) While I understand Cognizant's concerns, their representation that Bohrer's certification is self-serving or untruthful does not, on its own, demonstrate that Schwartz's motion must be dismissed out of hand. Indeed, the New Jersey Supreme Court in *O Builder* sympathetically noted the dilemma facing such movants, who must reveal confidential information in order to preserve it. That Court has permitted the use of protective orders or in camera review to protect confidentiality "in cases where the disclosure of confidential information must be made so that the court can grapple fairly with the issues," 206 N.J. at 129 (also noting that "where the lawyer whose disqualification is sought denies ever receiving the claimed confidential information, an appropriate screening device would be to engage substitute counsel to oppose the disqualification motion").

      I am also mindful that determining whether any information conveyed to Kramer is significant and harmful is an "exquisitely fact-sensitive and -specific" inquiry implicating the "delicate balance" that R.P.C. 1.18 seeks to maintain "between a client's right to protect communications made in the context of a

consultation precedent to the actual retention of a lawyer, and the lawyer's right to be free to represent clients without being unduly restricted by the yoke of short-lived consultations that do not ripen into an attorney-client relationship." *O Builders*, 206 N.J. at 113, 126. I am willing to accept supplemental affidavits and evidence from both sides, so long as the focus remains narrow: specifically, any new materials submitted must shed light on the actual content of discussions between Kramer and Schwartz's legal team. Indeed, documentary evidence on this point would appear particularly useful in avoiding further disputes over credibility and allowing me to decide the motion "on the papers presented." *See O Builders*, 206 N.J. at 114.

## ORDER

Accordingly, I will withhold decision on Schwartz's motion to disqualify Kramer pending submission of further evidentiary materials, sealed or in camera as necessary. Schwartz has proffered that he wishes to submit such materials; Kramer may do the same. Both shall be done within 10 days.

Dated: March 23, 2022

/s/ Kevin McNulty

_____
**Hon. Kevin McNulty**