**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| **v.** | Civ. No. 2:19-cr-00120 (KM) |
| **GORDON COBURN and STEVEN SCHWARTZ,** | **MEMORANDUM AND ORDER** |
| **Defendants.** | |

**KEVIN MCNULTY, U.S.D.J.:**

Cognizant Technology Solutions Corp. ("Cognizant") and Defendants Gordon Coburn and Steven Schwartz again dispute the proper scope of Defendants' subpoenas concerning investigative outsourcing, the so-called "Category A subpoenas." I have already issued three opinions to resolve these parties' continued disputes over the Category A subpoenas (*see* DE 263, 319, 339), finding and reaffirming (as relevant to the current dispute) that Cognizant's draft press releases, draft public disclosures, and its communications with its public relations firms are not protected by attorney-client privilege or work product protections.[1] (*See* DE 263 at 11-12; DE 319 at 9-11.) Now, Defendants state that Cognizant's disclosure of these drafts and communications revealed "additional, unproduced documents" that they argue are responsive, directly relevant to the investigative outsourcing issue, and thus subject to disclosure. (Mot. at 1-4, 6-8; Reply at 2-4.) Cognizant has

---

[1]   Certain citations to the record are abbreviated as follows:

"DE" refers to the docket entry numbers in this case

"Mot." refers to Defendants' Letter, dated June 14, 2022, in lieu of a motion to compel. (DE 365.)

"Op." refers to Cognizant's Letter, dated June 24, 2022, opposing Defendants' motion. (DE 370.)

"Reply" refers to Defendants' Letter, dated July 1, 2022, replying to Cognizant's opposition to their motion. (DE 375.)

refused to turn these documents over, maintaining that Defendants' request is an attempt to impermissibly expand the scope of the Category A subpoenas. (Op. at 3-8.) For the reasons set forth below, I will deny Defendants' request.

**DISCUSSION**

I assume familiarity with the underlying procedural history as outlined in my prior opinions. (*See* DE 263 at 3-4; DE 319 at 2-3.) In addressing the Category A subpoenas in my opinions dated January 24 and March 23, 2022, I found that attorney client privilege and work product protections did not extend to "draft press releases and public disclosures" and "communications with public relations firms . . . concerning public disclosures, communications, potential litigation, and related legal strategy relevant to Cognizant's internal investigation" (DE 263 at 11; DE 319 at 10-11.) The communications that I found to be non-privileged were those specifically "between the law firm DLA Piper, representing Cognizant, and the PR firms" that DLA Piper retained. (DE 319 at 9.) In those opinions, I also limited the scope of the Category A subpoenas to responsive documents or communications (1) dated between April to October 2016; and (2) held by 22 custodians identified by Cognizant. (DE 263 at 16-20.) Following my orders that Cognizant disclose these documents and communications, Cognizant produced responsive materials and represented to Defendants that as of April 2022, it had "completed its production of materials in response to the Category A Subpoenas." (Mot. at 2.)

Defendants now contend that the discovery produced thus far has revealed the existence of additional relevant materials concerning edits to Cognizant's draft press releases during the same time that Cognizant was conducting its internal investigation and interviews of Defendants. (Mot. at 2.) Specifically, Defendants allege that Cognizant's press releases drafted immediately prior to the second interview of Schwartz on September 23, 2016, stated that Cognizant had terminated Defendants while its final press release issued on September 30 stated that Coburn had resigned his position and omitted any reference to Schwartz. (*Id.*) Thus, Defendants ask this Court to order Cognizant to search for and produce (1) any *further* draft press releases

prepared between those two dates, *i.e.,* September 23–September 30, 2016; (2) relevant documents held by DLA Piper attorneys who played a "significant role" in preparing and editing the press releases; and (3) "other relevant documents" such as a draft "Questions and Answers" document and "core messaging document" that ostensibly "shed light" on the "discrepancy" between Cognizant's draft and final press releases. (*Id.* at 2-4.)

Cognizant counters that Defendants are again trying to broaden the reach of the Category A subpoenas beyond what I have already approved, adding new documents and custodians to be searched and seeking to review communications "exclusively between Cognizant and outside counsel." (Reply at 3-4, 6-8.) Cognizant urges that the materials now requested by Defendants are neither responsive to the Category A subpoenas nor relevant to the investigative outsourcing issue. (*Id.* at 4-6.) Moreover, they maintain that those communications solely between Cognizant and outside counsel regarding the press releases are privileged and thus outside the grasp of the Category A subpoenas. (*Id.* at 8.)

To begin with, communications directly between Cognizant and its counsel (as opposed to Cognizant's or counsel's communications with PR firms or the press), not directly or derivatively shared with the government, are presumptively privileged, and Defendants do not really offer a substantial argument to the contrary.

Fundamentally, however, I must agree with Cognizant that Defendants' latest effort to expand the Category A subpoenas is neither authorized by my prior orders nor by the principles governing subpoenas under Rule 17. Defendants' argument relies on a bevy of civil cases in which courts have ordered a subpoenaed party to conduct additional searches after discovery has been produced "where there is evidence that casts doubt on the comprehensiveness of that party's search methods[] or provides support for the existence of additional responsive materials that have not yet been produced." (Mot. at 6-7.) Yet the documents cited by Defendants do not bespeak

noncompliance; *i.e.,* they evidence neither an incomplete search for documents nor new responsive material. Cognizant conducted discovery in line with my prior orders, including the limitations I set on the subject matter, date range, and custodians to be searched. Thus, Defendants' request is better understood as an attempt to supplement the Category A subpoenas than as an attempt to effectuate them as originally ordered.

I therefore consider Defendants' request under the ordinary principles governing Rule 17 subpoenas. To compel production of documents before trial, a moving party must show:

> (1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general 'fishing expedition.'

*United States v. Nixon*, 418 U.S. 683, 699-700 (1974).

Here, the threshold obstacle to Defendants' request is their failure to show that the new materials sought are necessary for them to "properly prepare for trial" or avoid unreasonable delay. It is possible to speculate that draft press releases and other requested materials might be relevant, in the very broadest sense, to the investigative outsourcing issue—perhaps, as suggested, they "bear upon how, when, and why" Cognizant ended its employment of Defendants—but bare relevancy is not enough to sustain a subpoena in a criminal case. (*See* Mot. at 3.) Defendants simply have not shown with sufficient specificity that the changes made to Cognizant's draft press release between September 23 and September 30, 2016, or legal advice about such changes, go to the "heart" of the investigative outsourcing inquiry or are necessary for its resolution. (*See* Mot. at 4; Reply at 4.) Indeed, here, as elsewhere, Defendants conflate their grievances against their former employer with a constitutional claim. Little is provided to permit an inference that drafts

of statements made for public consumption would reflect that *the Government* "directed or 'engineered'" Cognizant's interview of Defendants or a "cooperate or be fired"-type ultimatum. (*See* DE 96 at 10-11 (citing *Garrity v. New Jersey*, 385 U.S. 493, 87 S. Ct. 616 (1967).)

Moreover, Defendants have failed to offer much detail on the materials they seek. A party requesting materials pursuant to a Rule 17 subpoena "must 'show the evidentiary nature of the requested materials with appropriate specificity' and 'do more than speculate about the relevancy of the materials being sought.'" *United States v. Onyenso*, No. CRIM. 12-602 CCC, 2013 WL 5322651, at *1 (D.N.J. Sept. 20, 2013) (quoting *United States v. Shinderman*, 232 F.R.D. 147, 150 (D. Maine 2005)). Yet here, Defendants' request to search additional materials held by DLA Piper attorneys rests on their speculation that an attorney's suggested changes to a press release must reflect further undisclosed yet relevant documents and communications. (*See* Mot. at 3, 4-5.) Indeed, Defendants have offered few specifics on how the draft documents related to "Questions and Answers" and "core messaging" are truly relevant to the investigative outsourcing issue, even if they do "shed light" on some of the final changes to Cognizant's draft press release.

Nor, indeed, is there any particular need to supplement the prior production with these documents. If the argument is that the presumptive status changed from "fired" to "quit" in the period September 23–30, the documents (at least as described by Defendants) provide them the basis for such an argument, and for questioning at any hearing. In short, Defendants have neither detailed the requested materials with appropriate specificity nor demonstrated that such materials are necessary to their case.

These shortcomings all counsel against revising my prior limitations on discovery and are ultimately fatal to Defendants' latest request for additional documents. My ruling, moreover, must be understood in the context of the very broad discovery that I have already granted. As the Third Circuit has cautioned, "[c]ourts must be careful that Rule 17(c) is not turned into a broad

discovery device, thereby undercutting the strict limitation of discovery in criminal cases found in Fed. R. Crim. P. 16." *United States v. Cuthbertson*, 630 F.2d 139, 146 (3d Cir. 1980). With such caution in mind and having already given Defendants ample leeway to investigate and develop their case, I find that Defendants neither need nor are entitled to the materials sought. As such, their request will be denied.

## ORDER

Accordingly, Defendants' request to compel production of further materials in response to the Category A subpoenas is **DENIED**.

Dated: July 19, 2022

/s/ Kevin McNulty

_____

**Hon. Kevin McNulty**