March 15, 2022

**BY ECF & EMAIL**

The Honorable Kevin McNulty
United States District Judge
District of New Jersey
Martin Luther King Building & U.S. Courthouse
50 Walnut Street
Newark, NJ 07102

Re: *United States v. Coburn and Schwartz,* No. 19-cr-120-(KM)

Dear Judge McNulty:

We represent non-party Cognizant Technology Solutions Corporation ("Cognizant") and write to respectfully request the Court's reaffirmation, in advance of the *Garrity* hearing scheduled for April 18 and 19, of its prior rulings regarding Cognizant's limited privilege waiver and the substantive scope of the *Garrity* issue—which Defendants, in an eleventh-hour, transparent attempt to delay the hearing and trial, appear unwilling to accept.

This application concerns three separate, but related, issues, the third of which is submitted *ex parte* and under seal for the Court's review *in camera*:

- **First**, as described in greater detail below, just weeks before the *Garrity* hearing, Defendants now complain **for the first time** that Cognizant has not produced "[n]otes and summaries of meetings between Cognizant . . . and the Government **prepared during or after** those meetings" in response to Defendants' "Category A" subpoenas. *See* Ex. A, March 1, 2023 Ltr. from R. Finzi to M. Harker, at 2. But contemporaneous and after-the-fact notes or summaries of communications with the Government are plainly outside of the scope of Cognizant's privilege waiver, which the Court ruled encompassed "documents and communications **that were reviewed and formed any part of the basis of** any presentation, oral or written, to the DOJ in connection with this investigation." *See* January 24, 2022 Opinion (ECF 268, filed on Feb. 1, 2022) (the "January 2022 Opinion"), at 14 (emphasis added). Moreover, it is Cognizant's understanding that the Government has already produced to Defendants notes taken by members of its investigation team, which are not privileged. Defendants' repeated requests to invade Cognizant's privilege when they already possess the very information they seek (rendering empty any argument that they have a substantial need to overcome Cognizant's privilege) further reflects the bad faith that has permeated their discovery efforts. Although Cognizant substantially completed its productions in response to the Category A subpoenas and the Court's rulings **nearly a year ago**, in April and May 2022, Defendants—who scrutinized Cognizant's productions with a fine-toothed comb—intentionally waited until the eve of the *Garrity* hearing to demand the production of undeniably privileged, contemporaneous and after-the-fact summaries of Cognizant's communications with the Government, strongly suggesting a dilatory motive.

Hon. Kevin McNulty                        - 2 -                        March 15, 2022

- ***Second***, despite Cognizant's good faith efforts to collaborate with Defendants on developing parameters for the permissible scope of witness examination at the *Garrity* hearing designed to reflect the Court's rulings on the limited scope of Cognizant's privilege waiver and the limited substantive scope of the *Garrity* issue, Defendants continue to insist that they are entitled to inquire as to topics that, per the Court's rulings, remain privileged and outside the substantive scope of their application under *Garrity*, and, thus, are outside the bounds of permissible examination. In the interests of being efficient with the Court's time and the time of the non-party witnesses who will testify at the *Garrity* hearing, Cognizant respectfully submits that the Court should make clear which subjects are, and are not, appropriate areas for questioning—particularly given Defendants' propensity for pushing the boundaries of, if not wholly ignoring, the Court's prior rulings.

- 

## I.     DEFENDANTS' BELATED REQUEST FOR PRIVILEGED, AFTER-THE-FACT SUMMARIES OF COMMUNICATIONS WITH THE GOVERNMENT IS A TRANSPARENT DELAY TACTIC THAT DEMONSTRATES A CONTINUED DISREGARD FOR THE COURT'S RULINGS

### A.     The Court's Prior Rulings Established That Cognizant's Privilege Waiver is Limited to Matters Disclosed to the Government and Documents that "Formed Any Part of the Basis" of the Disclosures

Defendants have for years sought expansive and intrusive discovery into the investigation of potential violations of the Foreign Corrupt Practices Act conducted by Cognizant and its counsel at DLA Piper ("DLA") to try to support their *Garrity* motions.[2]  While Defendants

---

1 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

2 As a threshold matter, Cognizant notes that it is unclear what substantive relief is available to Defendant Coburn under *Garrity*, as his sole interview with Cognizant's counsel during the course of the investigation occurred on August 29, 2016—two days before Cognizant first contacted the Government regarding its investigation, and three days before Cognizant first self-disclosed potential FCPA violations to the Government through its counsel. *See* Coburn Opening *Garrity* Brief at 8 (characterizing the September 1, 2016 call as Cognizant's "very first disclosed substantive communication with DOJ").  As such, it would be logically impossible for the Government to have coordinated Defendant Coburn's August 29 interview such that Cognizant's actions during that interview were "fairly attributable" to the Government under the relevant case law.  Defendant Coburn's motion appears to rely entirely on the bare conjecture that Cognizant may have "engaged in [] informal communications with

Hon. Kevin McNulty                   - 3 -                      March 15, 2022

initially sought Rule 17 subpoenas directed to the broad question of whether the Government had "outsourced" its investigation to Cognizant and DLA, the Court only "grant[ed] the issuance of trial subpoenas relevant to the ***narrow*** issue of investigative 'outsourcing,' ***as it relates to a potential pretrial motion for suppression of coerced statements of Coburn and Schwartz.*** " *See* September 14, 2020 Memorandum & Order (ECF 96), at 12 (emphases added). The Court also expressly rejected Defendants' attempt "to compel production of basically all the fruits of [Cognizant's] investigation," *id*. at 12, and limited Defendants' individual subpoena requests to "communications related to the investigation ***and*** interview" of Defendants. *Id*. at 16-20 (emphasis added).

Nonetheless, when Defendants challenged Cognizant's response to the Category A subpoenas and moved to compel in 2021, they ignored these limitations and asserted that the subpoenas were "designed to obtain evidence to show the extent to which Cognizant coordinated its investigation with, and assumed the investigative role of, the Government" and claimed that the subpoenas "expressly permitted inquiry into the investigation." *See* ECF 158 at 1, 24. In its January 2022 Opinion, the Court rightly rejected Defendants' attempt at "rewriting the subpoenas in asking for such a broad swath of material" and held that focusing the subpoenas on "Cognizant's internal investigation and Defendants' interviews is better tailored to the case law and [the Court's] prior opinion than Defendants' request for 'documents concerning the investigation broadly or documents concerning Cognizant's inquiry into Defendants generally.'" Jan. 2022 Opinion, at 15, 16. Undeterred, Defendants kept seeking broad discovery, including privileged draft press releases and attorney-client communications concerning public disclosure of the investigation, which the Court appropriately rejected. *See* Memorandum and Order, dated July 19, 2022 (ECF 380) (the "July 2022 Order"), at 4 ("Defendants simply have not shown with sufficient specificity that the [requested documents] go to the 'heart' of the investigative outsourcing inquiry or are necessary for its resolution.").

Defendants have likewise continually sought to invade the privilege and work-product protections attendant to Cognizant's investigation despite the Court's clear rulings limiting the scope of Cognizant's privilege waiver. In moving to compel, Defendants asserted that Cognizant effected a subject matter waiver as to "the conduct alleged in the Indictment and Cognizant's internal investigation, including, without limitation, Cognizant employees' interviews with DLA, [and] emails relating to Cognizant's internal investigation," among other topics. *See* ECF 158 at 83. The Court appropriately rejected Defendants' extravagant waiver arguments, noting in a later decision that "Defendants originally urged a very broad subject matter waiver, *a position the Court did not accept*." *See* Memorandum and Order, dated April 27, 2022 (ECF 339) (the "April 2022 Order"), at 3 (emphasis added). Ignoring the plain language of the Court's rulings, Defendants have continued to insist that the Court found a subject matter waiver. *See, e.g.*, Ex. C, Sept. 7, 2022 Ltr. from R. Finzi to M. Harker, at 3 n.3 (noting "the Court's finding of subject matter waiver").

---

the government prior to [September 1, 2016]," an allegation for which Defendants have provided zero evidence. *Id.* at 8 n.7. The Court should not countenance Defendant Coburn's attempt to accompany Defendant Schwartz on a fishing expedition at the upcoming hearing when he has offered nothing but an unsupported hypothesis as the basis for the relief that he seeks.

Hon. Kevin McNulty                        - 4 -                        March 15, 2022

But, as the Court made clear, Cognizant's privileges and work product protections continue to apply to investigation-related documents and communications, except where such materials were disclosed to—or formed part of the basis of a disclosure to—the Government.  As the Court explained in the July 2022 Order, "communications directly between Cognizant and its counsel . . . not directly or derivatively shared with the government, are presumptively privileged, and Defendants do not really offer a substantial argument to the contrary."  July 2022 Order at 3.  The limited areas where the Court found that Cognizant had waived its privileges based on "direct or derivative" disclosure to the Government are expressly set forth in the January 2022 Opinion:

> First, to the extent that summaries of interviews were conveyed to the government, whether orally or in writing, the privilege is waived as to all memoranda, notes, summaries, or other records of the interviews themselves.  Second, to the extent the summaries directly conveyed the contents of documents or communications, those underlying documents or communications themselves are within the scope of the waiver.  Third, the waiver extends to documents and communications that were reviewed and formed any part of the basis of any presentation, oral or written, to the DOJ in connection with this investigation.

Jan. 2022 Opinion at 14.  Thus, Cognizant's limited waiver of privilege only extends to (1) investigation interviews summarized for the Government, including the records of those interviews; (2) documents and communications discussed in those interviews where the interview summaries provided to the Government "directly conveyed the contents" of those documents or communications; and (3) documents and communications that formed the basis for a presentation to the Government.

B.  <u>Defendants Belatedly Seek Summaries of Cognizant's</u>
<u>Communications with the Government on the Eve of the *Garrity* Hearing</u>

Cognizant substantially completed its productions in response to the Category A subpoenas and the Court's January 2022 Opinion and April 2022 Order in April and May 2022.  *See* Ex. D, Apr. 12, 2022 Ltr. from J. Kramer to Defs. Counsel; Ex. E, May 11, 2022 Ltr. from J. Kramer to Defs. Counsel.  Since that time, Defendants have scrutinized Cognizant's productions.  *See, e.g.*, Ex. F, Apr. 27, 2022 Ltr. from R. Finzi to M. Harker; Ex. C, Sept. 7, 2022 Ltr. from R. Finzi to M. Harker.  Yet at no time during the  thirteen months since the January 2022 Opinion did Defendants seek Cognizant's or DLA's contemporaneous or after-the-fact summaries of communications with the Government or contend that such summaries fell within the scope of the privilege; that is, until now—the eve of the *Garrity* hearing.

Specifically, on February 4, 2023, Defendants informed Cognizant for the first time that they intended to call Karl Buch, the DLA attorney who led Cognizant's investigation, and Francisco D'Souza, Cognizant's former CEO, as witnesses during the *Garrity* hearing.  *See* Ex. G Feb. 4, 2023 email from L. Lustberg to J. Kramer *et al.*  Because of the clear privilege issues

Hon. Kevin McNulty          - 5 -          March 15, 2022

implicated by calling Cognizant's former CEO and outside counsel as witnesses, the Government sent an email to Defendants and Cognizant on February 28, 2023, which stated:

> The defendants are calling Cognizant's attorney, Karl Buch, and its former CEO, Francisco D'Souza, at the April 18–19 evidentiary hearing. Each witness has his own counsel. We don't know what defense counsel will ask these witnesses at the hearing, but Cognizant conceivably could seek to prevent either or both from testifying about anything protected by the attorney-client privilege. So please resolve with Cognizant's counsel (copied on this email) and the witnesses' respective counsel any disputes about the privilege before the hearing. And please tell us what agreements you reach regarding these witnesses, because those agreements could affect any cross-examination we conduct. Finally, if the defendants don't resolve any privilege disputes before the hearing, we will object to any continuance of the hearing either defendant seeks to litigate a privilege objection raised at the hearing. After all, by then, the defendants will have had at least ***seven weeks*** to resolve with Cognizant, and Judge McNulty, if necessary, any disputes about the privilege.

*See* Ex. H, Feb. 28, 2023 email from G. Moody to L. Lustberg *et al*. (emphasis in original). Defendants did not reach out to Cognizant to discuss privilege issues until Cognizant, at the urging of D'Souza's counsel, sent an email on March 2, 2023, requesting to meet and confer. *See* Ex. I, Mar. 3, 2023 email from L. Lustberg to J. Kramer (thanking Cognizant for "initiating this process").

Instead, on March 1, 2023, Defendants sent Cognizant a letter demanding that Cognizant produce "[n]otes and summaries of meetings between Cognizant . . . and the Government prepared during or after those meetings" through "at least . . . the date of the Indictment"— over two years after the limited date range for discovery authorized by the Court with respect to the Category A subpoenas. *See* Ex. A, Mar. 1, 2023 Ltr. from R. Finzi to M. Harker at 2. In a transparent ploy to gin-up a discovery dispute to delay the *Garrity* hearing, Defendants noted that:

> [T]he Court will soon be holding an evidentiary hearing regarding Defendants' [*Garrity*] motions. We expect there to be testimony at that hearing concerning, among other things, the extent and content of conversations between Cognizant, or counsel for Cognizant, and the Government. The materials requested here are critical to a full and fair exploration of those issues, as the Government has recognized in making a production of similar information just last week. In light of the pendency of that hearing, we request that you confirm for us at your earliest convenience whether you will produce these

Hon. Kevin McNulty                          - 6 -                          March 15, 2022

> materials and when, so that we can prepare accordingly or, if
> necessary, seek relief from the Court.

*Id*. at 3.

> ### C.  Defendants Are Not Entitled to Privileged Summaries of Cognizant's Communications with the Government, As To Which There Has Been No Waiver

Any notes or summaries of communications with the Government could only have been made by the representatives of Cognizant who participated in those meetings and communications: Buch and other attorneys from DLA; attorneys from Latham and Watkins; and Brackett Denniston, who served as Cognizant's interim General Counsel in 2016 (and attorneys supporting him at Goodwin Procter).   Accordingly, such notes necessarily reflect those attorneys' mental impressions of their communications with the Government and constitute textbook "opinion" or "core" attorney work product. *See, e.g.*, *Upjohn Co. v. United States*, 449 U.S. 383, 399 (1981) (disclosure of attorney notes is "particularly disfavored . . . because it tends to reveal the attorney's mental processes[.]"); *In re Cendant Corp. Sec. Litig.*, 343 F.3d 658, 663 (3d Cir. 2003) (material reflecting attorney "mental impressions, conclusions, opinions, or legal theories" constitute "core" or "opinion" work product). "Opinion" or "core" attorney work product is "generally afforded near absolute protection from discovery." *In re Cendant Corp.*, 343 F.3d at 663.  Additionally, any communications between these attorneys and their client—*i.e.*, Cognizant, including its directors and officers—concerning the attorneys' communications with the Government constitute privileged, attorney-client communications.

Beyond the threshold problem that Defendants seek non-discoverable privileged communications and "opinion" work product, the Court has made clear that "communications directly between Cognizant and its counsel . . . not directly or derivatively shared with the government, are presumptively privileged"—*i.e.*, outside the scope of the limited privilege waiver found by the Court.  *See* July 2022 Order at 3.  Defendants have not identified a single instance in which Cognizant or its attorneys shared their notes or summaries of communications with the Government with anyone outside the attorney-client relationship so as to give rise to waiver.

Defendants' principal argument for why they are entitled to the notes and summaries that they now seek is that they somehow (now) fall within the scope of the privilege waiver found by the Court.  But that argument is based on a blatant and arguably intentional misreading of the Court's prior orders. *First*, to the extent that Defendants assert that the language in the January 2022 Opinion that "Cognizant's waiver of privilege and work product protection extend[s] to 'communications that "concern the same subject matter" and "ought in fairness be considered together" with the actual disclosures to DOJ'" means that the Court found a subject matter waiver, *see* Ex. A at 2, that view cannot be squared with the Court's unequivocal statement that it "did not accept" Defendants' contention that Cognizant effectuated a "very broad subject matter waiver."  *See* April 2022 Order, at 3.

Hon. Kevin McNulty                     - 7 -                          March 15, 2022

*Second*, the clear import of the January 2022 Opinion is that the otherwise privileged materials that "'ought in fairness be considered together' with the actual disclosures to DOJ'" are the three categories of materials described in the very next paragraph of the Opinion, *i.e.*: (1) investigation interviews summarized for the Government and records of those interviews; (2) documents and communications discussed in those interviews whose contents were "directed conveyed" in summaries provided to the Government , and (3) "documents and communications that were reviewed and formed any part of the basis of any presentation, oral or written, to the DOJ." January 2022 Opinion, at 13-14. Categories 1 and 2—which concern interview summaries—plainly do not apply. As for Category 3, contemporaneous and after-the-fact summaries of communications or meetings with the Government could not, as a matter of logic, have "formed any part of the basis of" what was conveyed at those same communications or meetings, and Defendants cannot seriously contend otherwise. Accordingly, the summaries Defendants now seek are outside the scope of the privilege waiver found by the Court.

To the extent that Defendants believed that Cognizant had waived its privileges as to contemporaneous and after-the-fact summaries of communications or meetings with the Government, they could have sought clarification or reconsideration within 14 days of the January 2022 Opinion, but they failed to do so. *See* Local Civil Rule 7.1(i). Or they could have sought the documents from Cognizant, or sought relief from the Court, at any time in the almost one year since Cognizant substantially completed its Category A subpoena productions but, again, they failed to do so—despite having sought numerous other categories of documents from Cognizant during that time and seeking Court assistance. *See, e.g.*, ECF 365. The Court should reject Defendants' attempt—mere weeks before the long-anticipated *Garrity* hearing—to manufacture a discovery dispute that is obviously intended to delay that hearing and trial in this matter. *See* FED. R. CRIM. P. 2 ("These rules are to be interpreted to provide for the just determination of every criminal proceeding, to secure simplicity in procedure and fairness in administration, and to eliminate unjustifiable expense and delay.").

**II.    CONSISTENT WITH ITS PRIOR RULINGS, THE COURT SHOULD LIMIT DEFENDANTS' EXAMINATION OF WITNESSES TO MATTERS THAT WERE DISCLOSED TO THE GOVERNMENT AND TO THE SUBSTANTIVE SCOPE OF THE *GARRITY* ISSUE**

As referenced above, on March 6, 2023, Cognizant met-and-conferred with Defendants about the issues implicated by the fact that Defendants will call Cognizant's former CEO and outside counsel as witnesses at the *Garrity* hearing. Following the meet-and-confer, in an attempt to avoid disputes during the hearing and make efficient use of the Court's and the witnesses' time, Cognizant proposed to Defendants a stipulation that would set out, in accordance with the Court's prior rulings, the topics that are and are not appropriate subjects for the examination of Messrs. Buch and D'Souza at the hearing. *See* Ex. J, Mar. 7, 2023 email from M. Palmieri to L. Lustberg *et al*. and attached stipulation. After delaying for more than a week, Defendants responded by letter dated March 15 that they would not agree to Cognizant's proposal and set forth a number of improper and equally unavailing objections that fundamentally misconstrue the Court's prior orders. Moreover, Defendants refuse to offer any counter-proposal as to the appropriate scope of examination at the hearing. *See* Ex. K, Mar. 15, 2023 Ltr. from L. Lustberg to M. Harker.

Hon. Kevin McNulty                          - 8 -                          March 15, 2022

Based on the Defendants' steadfast and unsupported positions in the failed negotiations surrounding a stipulation, as well as the arguments set forth in their *Garrity* motion, it appears that Defendants intend to seek testimony regarding (1) privileged attorney-client communications and attorney mental processes over which the Court has never found that Cognizant effected a waiver, as well as (2) matters outside the limited substantive scope and time period that the Court has repeatedly held is relevant to the *Garrity* issue.

> A. The Court Should Not Permit Defendants to Question
>    Witnesses Concerning Privileged Matters Where There
>    Was No Waiver By Substantive Disclosure to the Government

Turning first to the privilege issue, as the Court rightly observed, "communications directly between Cognizant and its counsel . . . not directly or derivatively shared with the government, are presumptively privileged[.]"  July 2022 Order at 3.  The touchstone of the Court's waiver rulings is whether the substance of the matter was disclosed or conveyed to the Government, but Defendants' *Garrity* motions suggest—and often expressly state—that they intend to question Messrs. Buch and D'Souza on matters where there was no substantive disclosure or "download" to the Government, such as:

- "[T]he exact timing and motivations behind Cognizant's initiation of the investigation," Coburn Opening *Garrity* Brief, at 4 n.4;

- Decisions made by Cognizant regarding "what documents to disclose and what documents to withhold," *id.* at 32.

- "[H]ow, and to what degree, [Cognizant's] investigation was influenced by the government," Coburn Reply *Garrity* Brief, at 9.

- Cognizant's counsel's "***contemplat[ion]***" of "self-disclosure to the Government" in June 2016 earlier—months before any contact with the Government, Schwartz Opening *Garrity* Brief, at 4 (emphasis added); *see also id.* at 56 n. 26 ("[T]he hearing ordered by this Court may discern when, precisely, self-disclosure was first discussed by Cognizant and its counsel, ***and what specifically was discussed***");

- DLA's interview of Cognizant employees prior to any communication with the Government, Coburn Opening *Garrity* Brief, at 4 n.5;

- The "manner in which [Cognizant employee] interviews were conducted, and the extent to which they are accurately summarized in . . . interview memoranda", *id*. at 11 n.15;  *see also id.* 16 n. 19 ("The manner in which the[] initial interviews [of Coburn and Schwartz]"—*i.e.*, before any communication with the Government—"and Schwartz's follow-up interview were conducted, including length, tone and structure.");

- Cognizant's counsel's briefing of the Board of Directors concerning the investigation and "Cognizant's potential eligibility under the FCPA Pilot Program" in late August— again, "***before*** their first . . . communication with DOJ," *id*. at 7-8 & n.6 (emphasis

Hon. Kevin McNulty                     - 9 -                     March 15, 2022

added); *see also* Dec. 2, 2022 Hr'g Tr. at 40:9-12 (Mr. Lustberg: "Cognizant had had an audit committee meeting the week before [the self-disclosure], board meeting and so forth leading up to all of this, ***all of which is fair game*** in terms of what impact the Yates Memo and so forth had ***on their decision-making***.");[3]

- Cognizant's "***internal*** discussions regarding self-disclosure to the government," which, obviously, preceded such disclosure, Coburn Opening *Garrity* Brief, at 8 (emphasis added);

- Cognizant's "intent with respect to self-disclosure at the time of the Defendants' initial interviews," *id*. at 14 n. 17;

- The rationale behind Cognizant's employment decisions with respect to Defendants, *see* Dec. 2, 2022 Hr'g Tr. at  44:9-22 ("[T]here's documents that show that the company, Cognizant, decided to terminate Mr. Schwartz – ultimately, Mr. Schwartz resigns – but decided to terminate Mr. Schwartz and Mr. Coburn in September but held off until after the interview.  That's an interesting – that raises a very interesting question.  . . . Did they hold off because ***Cognizant thought*** that the government – that would satisfy the government?  These are critical questions that need to be asked and answered at the hearing."); and

- The "reasons" for revisions made (by attorneys) to Cognizant's press release issued on September 30, 2016 disclosing the investigation and Coburn's resignation as against earlier drafts, *id*. at 19 n.25.

---

[3] The fact that certain communications between DLA and Cognizant's Board or Audit Committee are referenced in talking points that DLA prepared for its discussions with the Government does not indicate that Cognizant's privileged Board communications were substantively disclosed to the Government.  As the talking points show, DLA disclosed to the government only the ***fact*** that the Board or Audit Committee received certain reports or took certain actions, but did not "directly convey[] the contents of [] communications" with the Board to the Government.  *See* January 2022 Opinion at 14.  Consequently, Defendants should not be permitted to question witnesses regarding privileged communications between DLA and Cognizant's Board or Audit Committee on the basis of any of the following disclosures to the government:  (i) ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ *see* Ex. L, CTS_R17_0005220 at -220; (ii) ▉▉▉▉▉▉▉▉▉▉▉ *see id*.; (iii) ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ *see id*. at -222; (iv) ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ *see id*. at -223; (v) ▉▉▉▉▉▉▉▉▉▉▉▉▉▉ *see* Ex. M, CTS_R17_0005246 at -256; and (vi) *see* Ex. N, CTS_R17_0005257 at -258.

Hon. Kevin McNulty                     - 10 -                     March 15, 2022

Under the Court's clear rulings, Defendants are not entitled to question Messrs. Buch and D'Souza on these, or other, topics because Defendants cannot demonstrate—and have not even asserted—that Cognizant conveyed the substance of privileged legal advice or attorney work product or mental impressions on these topics to the Government.

Defendants' March 15 response characterizes Cognizant's position as "*all* communications involving *any* of Cognizant's in-house or outside counsel will be considered privileged." Ex. K at 2. This is a clear and intentional misreading of Cognizant's proposed stipulation, which explicitly seeks to confirm the appropriate parameters for testimony regarding "*[p]rivileged* attorney-client communications" over which there has been no waiver under the Court's rulings. Ex. J at 2-3. Similarly, Defendants insist that they are entitled to elicit testimony that falls well outside the categories of materials specifically enumerated in the January 2022 Opinion. Ex. K at 3-5. But Defendants do not attempt in their March 15 letter to offer their own view on the appropriate parameters of questioning under the Court's rulings—despite the Court's clear delineation of the three categories of materials on which Cognizant waived privilege, as explained above. *See* January 2022 Opinion at 13-14.

To be clear, Cognizant does not dispute that Defendants may, under the Court's prior rulings, question Messrs. Buch and D'Souza regarding the following topics during the relevant time frame for the *Garrity* issue, assuming they are competent to testify as to any of them: (i) their communications with the Government, such as D'Souza's interview by the Government or Buch's various interactions with the Government (subject to the scope constraints discussed below); (ii) the substance of interviews conducted by DLA that were subsequently disclosed or "downloaded" to the government; or (iii) to the extent even relevant, the substance of privileged communications where the "contents" of those communications were later "directly conveyed" to the Government, such as through interview "downloads" or talking points used in communications with, or presentations for, the Government. Similarly, where Cognizant's counsel disclosed in detail to the government actions taken by Cognizant during the course of the investigation—*e.g.* the "Rules of Engagement" that Cognizant established for certain executives under review in the investigation[4]—those topics can properly be the subject of inquiry at the upcoming hearing pursuant to the Court's finding of waiver.

        B.   <u>The Court Should Not Permit Defendants to</u>
            <u>Question Witnesses On Matters Outside the Substantive</u>
            <u>Scope of the *Garrity* Hearing Authorized by the Court</u>

As discussed above, despite Defendants' expansive initial request for discovery, the Court only "grant[ed] the issuance of trial subpoenas relevant to the ***narrow*** issue of investigative 'outsourcing,' *as it relates to a potential pretrial motion for suppression of coerced statements of Coburn and Schwartz*." *See* September 14, 2020 Memorandum & Order (ECF 96), at 12 (emphases added). The Court stressed that "[r]elevance" for the purposes of Defendants' requested discovery means relevance to a potential *Garrity* motion **to suppress the coerced statements of Schwartz or Coburn**." *Id.* at 16 (emphases added.) The Court, however, explicitly rejected Defendants' request "to compel production of basically all the fruits of [Cognizant's] investigation" and limited the scope of the subpoenas' requests to

---

[4] *See* CTS_R17_0005168 at -175-176.

Hon. Kevin McNulty                        - 11 -                        March 15, 2022

"communications related to the investigation *and* interview" of Defendants.  *Id*. at 12, 16-20 (emphasis added).

Refusing to feel bound by the Court's clear rulings, Defendants moved to compel Cognizant to produce "materials from the start of the investigation in April 2016 through at least the date of the Indictment in February 2019," *see* ECF 158 at 4—a three-year period, even though all of Defendants' interviews occurred and their employment by Cognizant ended between August and early November 2016.  In the January 2022 Opinion, the Court rejected Defendants' attempt at "rewriting the subpoenas" and—***yet again***—made clear that:

> [T]he relevant issues to which the subpoenas are directed are (a) whether Defendants' interviews were "government-engineered," and therefore fairly attributable to the government, and (b) whether the interviews were coerced, classically, "in the *Garrity* sense of 'submit or be fired.'"

January 2022 Opinion at 15-16.  Further, with one modification (extending the start date back to April 2016), the Court endorsed Cognizant's date range of August 14, 2016, through October 24, 2016 for document discovery, reasoning that this date range "capture[s] the lion's share of relevant documents" because "it covers the period of Defendants' interviews and Cognizant's disclosure of its internal investigation to the DOJ."  *Id*. at 17.  The Court found "Defendants' arguments for documents dating from *after* their interviews" to be "substantially weaker and more speculative" and, again, emphasized that:

> The issue . . . is not "outsourcing" per se—*i.e.,* whether any of the information now in the government's possession was originally gathered by Cognizant—but rather, whether Cognizant performed some unconstitutional act on the government's behalf. Thus far, the only clear allegation of such a (potentially) unconstitutional act is the *Garrity* claim.

*Id*. at 18.

Yet Defendants have continued to ignore the Court's rulings as to the scope of *Garrity* issue. For example, in June 2022, Defendants sought to compel "materials concerning edits to Cognizant's draft press releases during the same time that Cognizant was conducting its internal investigation and interviews of Defendants" which, in their view were "directly relevant to the investigative outsourcing issue."  *See* July 2022 Order, at 1-2.  The Court denied the application and noted Defendants' repeated penchant for "conflat[ing] their grievances against their former employer with a constitutional claim."  *Id*. at 4.  Again, the Court emphasized that:

> Defendants simply have not shown with sufficient specificity that the changes made to Cognizant's draft press release between September 23 and September 30, 2016, or legal advice about such changes, go to the "heart" of the investigative outsourcing inquiry or are necessary for its resolution. . . . Little is provided to permit an inference that drafts of statements made for public

Hon. Kevin McNulty                           - 12 -                           March 15, 2022

        consumption would reflect that the Government "directed or
        'engineered'" Cognizant's interview of Defendants or a
        "cooperate or be fired"-type ultimatum.

*Id*. at 4-5.

To this day, however, Defendants remain unwilling to take "no" for an answer and abide by
the clear substantive limits on the scope of the *Garrity* inquiry that the Court has imposed.
Defendants' *Garrity* briefs are replete with discussions of dealings between Cognizant and the
Government that happened well after, sometimes years after, the relevant time frame for
discovery ordered by the Court.  *See* Schwartz Opening *Garrity* Brief, at 19-28; Coburn
Opening *Garrity* Brief, at 19-25; *see also* Dec. 2, 2022 Hr'g Tr. at 50:2-53:13, 57:23-58:25.
Defendants even went so far as to imply that the date limitations that the Court ordered on
discovery require a broader hearing so that Defendants can explore their other, unsubstantiated
constitutional theories.  *See* Dec. 2, 2022 Hr'g Tr. at 59:15-63:22 (Mr. Lustberg: "[T]here were
date limits on that, so we don't necessarily have all of" the purportedly exculpatory
information); *see also id*. at 66:1-7.  It is beyond the scope of the Court's prior rulings and
simply impractical to expect Cognizant to prepare witnesses to testify on interactions with the
Government for such a lengthy timeframe.  Defendants also apparently intend to question
Cognizant witnesses regarding the "numerous employee interviews" it conducted during the
investigation other than the interviews of Defendants themselves.  *See* Coburn Opening *Garrity*
Brief at 9.  Defendants do not (and cannot) explain how this information is relevant to the
question of whether their own interview statements should be suppressed.

Moreover, as described above, Defendants announced their intention to explore at the hearing
Cognizant's interviews of other witnesses throughout the investigation and decision-making
processes and employment decisions with respect to Defendants—apparently irrespective of
whether the Government had any involvement in those decisions—despite the Court's
determination that such matters are irrelevant to the question of whether Cognizant's
interviews of Defendants were Government-engineered.  *See id*.; *see also* Dec. 2, 2022 Hr'g
Tr. at 44:9-22.  Defendants' briefs also suggest that they intend to inquire about Cognizant's
consultation with the Government about a contemplated strategic transaction.  Coburn Opening
*Garrity* Brief, at 22-23 & n. 26 ("The context for, and propriety of, requesting this information
from the government and what, if anything, it demonstrates about the relationship between the
government and Cognizant, are topics we expect to further explore at the Hearing.").  Putting
aside that it is entirely reasonable and appropriate for a public company that, at the time, was
cooperating with a federal criminal inquiry into foreign bribery allegations to discuss potential
acquisitions with the Government, Defendants have made no showing why this consultation—
which occurred in February 2017, months after Defendants' interviews—could have any
bearing on whether those interviews were Government-engineered.

The Government put it succinctly at the December 2, 2022 hearing:

        MS. PATEL:

        . . .

Hon. Kevin McNulty                         - 13 -                         March 15, 2022

> [W]hat the defendants want to do is explore that three-week
> period [between Cognizant's initial contact with the
> Government and Schwartz's second interview relevant to the
> *Garrity* question], but they also want to explore what happened
> in the months and years after that  But that's not the scope here.
> The scope here is really limited --
>
> THE COURT: Not unless they win on the three-week period,
> but okay.
>
> MS. PATEL: Even if they win on the three-week period, the
> scope is not what happened two years later. It would be that
> three-week period.

Dec. 2, 2022 Hr'g Tr. at 85:22-86:5.

Cognizant maintains that the appropriate scope of the hearing is confined to the narrow time
period relevant to the *Garrity* issue even if Defendants prevail on their *Garrity* claims.  To
date, however, Defendants have not established those (or any other) claims.  Accordingly, the
Court should reaffirm its numerous earlier rulings as to the scope of the *Garrity* issue and
impose appropriate limits on the substantive scope of questioning during the *Garrity* hearing.

*      *      *      *

As a result of the foregoing—and Defendants' demonstrated refusal to abide by the Court's
clear rulings—Cognizant respectfully requests that the Court set guidelines for the appropriate
questioning of witnesses in accordance with the Court's prior orders regarding Cognizant's
privilege waiver and the scope of the *Garrity* Hearing, as set forth below:

1.     Defendants may not question witnesses or seek to elicit testimony regarding
any non-waived privileged documents, communications, or matters, including:

    a.     Privileged attorney-client communications, including:

        i.     Communications among Cognizant's in-house or outside
counsel;

        ii.     Communications between (1) Cognizant's in-house or outside
counsel, and (2) Cognizant's Board of Directors, or any
committee or subsection thereof, or Cognizant's officers,
employees, or agents,

including but not limited to communications, notes, or summaries created (i) in
preparation for or following meetings or correspondence with the Government,
or (ii) in preparation for or following Cognizant's interviews of Defendants,
<u>unless</u> the substance of such documents, communications, notes, or summaries
was subsequently disclosed or conveyed to the Government; and

Hon. Kevin McNulty                          - 14 -                          March 15, 2022

      b.      Privileged attorney-client communications created during Defendant Steven Schwartz's tenure as Cognizant's Chief Legal Officer, including:

            i.      Schwartz's communications with Cognizant's Board of Directors, or any committee or subsection thereof, Cognizant's in-house or outside counsel, or any other Cognizant officer, employee, or agent, <u>unless</u> the substance of such communications was disclosed or conveyed to the Government.

      c.      To the extent even relevant, attorney work product containing or reflecting Cognizant's in-house or outside attorneys' thoughts, mental impressions, and/or legal strategy concerning Cognizant's investigation, its dealings and communications with the Government, or its interviews of Defendants, whether reflected in emails or other communications with Cognizant or its counsel, notes, memoranda to file, or other documents, <u>unless</u> the substance of such thoughts, mental impressions, legal strategy, documents, or communications was subsequently disclosed or conveyed to the Government.

      2.      Defendants may question the Witnesses—to the extent they are competent to testify under the Federal Rules of Evidence—regarding:

      a.      Telephone calls, presentations, meetings and/or communications between the Government and Cognizant and/or its attorneys or agents regarding Cognizant from April 1, 2016 through October 24, 2016 (the "<u>Government Communications</u>"), including, to the extent that the substance of documents, communications, or other matters was disclosed or conveyed to the Government during or in the Government Communications or formed the basis of a Cognizant presentation to the Government, the details of such documents, communications, or other matters;

      b.      D'Souza's October 4, 2017 interview with the Government, including, to the extent that the substance of documents, communications, or other matters was disclosed or conveyed to the Government during said interview, the details of such documents, communications, or other matters; and

      c.      Matters, including documents and communications (written or oral), discussed in interviews conducted by Cognizant's counsel during its investigation, to the extent the substance of the interview was disclosed or conveyed to the Government.

For the reasons discussed above in Sections I and II, Cognizant submits its argument on the third issue in this application *ex parte* and under seal for the Court's review *in camera*.

Hon. Kevin McNulty                    - 15 -                    March 15, 2022

**III.**



Hon. Kevin McNulty                    - 16 -                        March 15, 2022



Hon. Kevin McNulty                    - 17 -                    March 15, 2022



Hon. Kevin McNulty               - 18 -               March 15, 2022



\* \* \*

We appreciate Your Honor's consideration of this request and are available to answer any questions.  In order to resolve these issues in advance of the hearing, allowing for a smooth, orderly and efficient presentation evidence, and to avoid unnecessary interruptions and further delay, and in view of the Defendants' unwarranted delay in seeking contemporaneous and after-the-fact notes or summaries of communications with the Government and the rapidly-approaching *Garrity* hearing, Cognizant requests that the Court order briefing on this application to proceed on an expedited schedule, with Defendants' opposition (if any) due on March 24 and Cognizant's reply due on March 31.

Respectfully Submitted,

ALSTON & BIRD LLP

s/ *Jenny Kramer*
Jenny Kramer
Rachel Finkel (not admitted to USDC-NJ bar)
90 Park Avenue, 12th Floor
New York, New York 10016
(212) 210-9400

FRIEDMAN KAPLAN SEILER ADELMAN & ROBBINS LLP

s/ *Mala Ahuja Harker*
Mala Ahuja Harker (not admitted to USDC-NJ bar)
Michael S. Palmieri (not admitted to USDC-NJ bar)
Bria D. Delaney (not admitted to USDC-NJ bar)
7 Times Square
New York, New York 10036-6516
(212) 833-1100

cc:    All Counsel (via email) (with exhibits)