March 31, 2023

**BY ECF & EMAIL**

The Honorable Kevin McNulty
United States District Judge
District of New Jersey
Martin Luther King Building & U.S. Courthouse
50 Walnut Street
Newark, NJ 07102

Re: *United States v. Coburn and Schwartz,* No. 19-cr-120-(KM)

Dear Judge McNulty:

Cognizant respectfully submits this letter in further support of its letter application concerning the upcoming *Garrity* hearing (ECF 448) (the "Cognizant Letter" or "CTS Ltr."),[1] and in response to Defendants' letter which, among other things, seeks voluminous, intrusive further discovery from Cognizant on the eve of the *Garrity* hearing (ECF 451) ("Defendants' Letter" or "Def. Ltr.").

The purpose of the Cognizant Letter was to assist the Court by identifying areas where there appeared to be disputes between Defendants and Cognizant so that the Court can effectively "resolve th[o]se issues in advance of the hearing," allow "for a smooth, orderly and efficient presentation of evidence, and . . . avoid unnecessary interruptions and further delay" for the Court and the non-party witnesses who will be testifying.  CTS Ltr. at 18.

The briefing makes clear that significant issues exist which necessarily require this Court's careful attention.  To be sure, there is a vast disparity between Cognizant's and Defendants' understandings regarding the scope of both the waiver as well as the *Garrity* hearing.  Defendants' Letter makes clear that they intend to ask questions about DLA Piper's conversations with Cognizant's Board of Directors, legal department, and staff relating to ***legal advice*** that were never disclosed to the Government.  Def. Ltr. at 22.  Their letter also reveals that Defendants intend to ask questions that they contend are "factual," but which undoubtedly seek to reveal work product and privileged information.  Def. Ltr. at 19; CTS Ltr. at 8 (Defendants intend to probe the "timing ***and motivations*** behind Cognizant's initiation of the investigation") (emphasis added).  Because Cognizant has legitimate concerns regarding its privilege, which is in jeopardy of being invaded in light of Defendants' Letter, we are respectfully requesting the Court's intervention.  Specifically, Cognizant requests that the Court grant the relief requested in the Cognizant Letter, including entering an order setting parameters for questioning at the *Garrity* hearing as set out in the Cognizant Letter (CTS Ltr. at 13-4) or, in the alternative, schedule a status conference to address these issues.  Understanding the permissible lines of questioning and scope in advance will undoubtedly result in a more efficient and orderly hearing.

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Cognizant Letter.

Hon. Kevin McNulty                              - 2 -                              March 31, 2023

Ultimately, Cognizant respectfully seeks guidance as to the proper and appropriate parameters of the *Garrity* hearing in accordance with this Court's prior rulings.

## I. DEFENDANTS' ATTEMPTS TO RELITIGATE THE COURT'S PRIOR RULINGS ON THE EVE OF THE *GARRITY* HEARING SHOULD BE REJECTED

Defendants, in their letter, are attempting to re-write the Court's rulings. Defendants repeatedly insist that this Court found that Cognizant had effected a broad subject matter waiver, but they ignore the Court's express rulings that "Defendants originally urged a very broad subject matter waiver, ***a position the Court did not accept***" and that the Court "***narrowed the scope*** of the waiver." April 2022 Order at 3 (emphases added). Accordingly, the appropriate scope of examination at the upcoming hearing must be informed by and limited to the "narrowed" privilege waiver as determined by this Court. And, as to the substantive scope of the hearing, Defendants' arguments are an improper attempt to re-write prior Court rulings that focused the scope of discovery and of the hearing itself on "(a) whether Defendants' interviews were 'government-engineered,' and therefore fairly attributable to the government, and (b) whether the interviews were coerced 'in the *Garrity* sense of "submit or be fired."'" Jan. 2022 Opinion at 15-16.

### A. Defendants' Arguments About the Scope of Cognizant's Privilege Waiver Ignore the Court's Express Rulings

The record is clear that "Defendants originally urged a very broad subject matter waiver, ***a position the Court did not accept***" and the Court "***narrowed the scope*** of the waiver." April 2022 Order at 3 (emphases added). Defendants conspicuously avoid these express rulings because they cannot be reconciled with their broad subject matter waiver theory.

In their motion to compel with respect to the Category A subpoena, Defendants urged an expansive subject matter waiver theory that encompassed "the conduct alleged in the Indictment and Cognizant's internal investigation, including, without limitation, Cognizant employees' interviews with DLA, [and] emails relating to Cognizant's internal investigation," among other topics. *See* ECF 158 at 83. In its January 2022 Opinion, the Court correctly noted that Defendants' waiver argument entailed "a subject matter waiver over broad categories of documents—namely, any communications regarding conduct alleged in the indictment and any materials related to Cognizant's internal investigation." Jan. 2022 Opinion at 13. This is the "very broad subject matter waiver . . . position" that the Court expressly "did not accept." April 2022 Order at 3. Instead, the Court "narrowed the scope of the waiver" requested by Defendants and held that the otherwise privileged materials that "'ought in fairness be considered together' with the actual disclosures to DOJ" were:

> First, to the extent that summaries of interviews were conveyed to the government, whether orally or in writing, the privilege is waived as to all memoranda, notes, summaries, or other records of the interviews themselves. Second, to the extent the summaries directly conveyed the contents of documents or communications, those underlying documents or

Hon. Kevin McNulty - 3 - March 31, 2023

> communications themselves are within the scope of the waiver. Third, the waiver extends to documents and communications that were reviewed and formed any part of the basis of any presentation, oral or written, to the DOJ in connection with this investigation.

Jan. 2022 Opinion at 14.[2]

As discussed further below, Defendants' misinterpretation of the Court's rulings is also illustrated by their recent, eleventh-hour request for a Magistrate Judge to review thousands of entries on Cognizant's privilege logs. Defendants seek the production of logged, privileged documents that fall into three purported "waiver categories": (1) KITS, (2) FCPA, and (3) "other bribes." *See* Def. Ltr. Exs. 1, 3-4. But these "waiver categories" appear nowhere in any of the Court's rulings. Defendants contend that disclosure of documents in these categories is appropriate because the categories represent, in their view, "core issues that Cognizant discussed openly, extensively, and in detail with the Government." Def. Ltr. 24. But accepting Defendants' argument—which is untethered to any language in any of this Court's prior rulings—would result in a waiver extending to the "conduct alleged in the indictment and any materials related to Cognizant's internal investigation," *id*. at 13, the very position that this Court did not accept.

Per this Court's rulings, waiver extends only to the three categories enumerated in the January 2022 Opinion and, consistent with the Court's rulings, "communications directly between Cognizant and its counsel . . . not directly or derivatively shared with the government" remain privileged. July 2022 Order at 3.[3] The guidelines proposed in Cognizant's Letter faithfully reflect these rulings and the law and, Cognizant respectfully submits, the Court should so-order them. And, in any event, it is clear that there was no subject matter waiver implicating these communications between Cognizant and its counsel.

---

[2] Defendants claim that Cognizant refuses to acknowledge that the Court found that Cognizant had effected a "significant" waiver. Def. Ltr. at 6. Not so. Pursuant to the Court's rulings Cognizant has disclosed numerous categories of otherwise privileged materials that it did not directly disclose to the Government—such as scores of attorney notes of witness interviews, talking points for meetings/calls with the Government, and portions of interview memoranda and underlying documents that were never disclosed to DOJ—precisely because they fell within the scope of the Court's waiver ruling.

[3] Defendants challenge Cognizant's reliance on the July 2022 Order, which addressed a dispute concerning public relations materials, arguing that "Defendants did not make a privilege waiver argument as to the additional public relations documents they then sought." Def. Br. at 20 n. 14. But, prior to seeking judicial relief, Defendants took the position that "[c]ommunications exclusively with outside counsel regarding draft press releases and public disclosures also 'concern the same subject matter' as the information over which Cognizant has waived privilege and 'ought in fairness be considered together' with it." *See* Reply Ex. A at 4. In other words, Defendants did, in fact, assert the same subject matter waiver arguments with respect to public relations materials.

Hon. Kevin McNulty                       - 4 -                          March 31, 2023

    B. <u>Defendants' Arguments About the Substantive Scope of the *Garrity* Hearing Ignore the Fundamental Limitations Imposed by the Court</u>

Defendants' conduct makes clear that they are not prepared to recognize any limitations on the scope of witness examination during the *Garrity* hearing. In meeting and conferring with Cognizant prior to the filing of the Cognizant Letter, they refused to offer any counter-proposal as to the appropriate scope of examination at the hearing. CTS Ltr. at 7, Ex. K. Even now, Defendants' Letter does not identify a single subject that is beyond the scope of the *Garrity* inquiry.[4]

Defendants' strategy has been to ignore and erode each of the substantive limitations on the *Garrity* inquiry that the Court has, repeatedly, sought to impose. To begin, the Court's September 14, 2020 Memorandum & Order (ECF 96) (the "<u>September 2020 Opinion</u>") that authorized issuance of the Category A subpoenas held:

- That Defendants' proposed discovery requests to Cognizant were "facially overbroad, and substantially so," Sept. 2020 Opinion at 12;

- That the Court only "grant[ed] the issuance of trial subpoenas relevant to the ***narrow*** issue of investigative 'outsourcing,' ***as it relates to a potential pretrial motion for suppression of coerced statements of Coburn and Schwartz***," *id*. (emphasis added);

- That "relevance" for the Category A subpoenas meant "relevance ***to a potential Garrity motion to suppress the coerced statements*** of Schwartz or Coburn," *id*. at 16 (emphasis added); and

- That Defendants were not entitled "to compel production of basically all the fruits of [Cognizant's] investigation, as well as its cooperation with the government." *Id*. at 12.

The September 2020 Opinion also noted that Defendants had failed to make "a showing akin to the fairly extreme facts in *Connolly*—*i.e.*, that the prosecution actually outsourced its investigation, let alone that it engineered Cognizant's interview of [them]." *Id*. at 11.

Defendants moved to compel Cognizant to produce materials from the three-year period "from the start of the investigation in April 2016 through at least the date of the Indictment in February 2019," *see* ECF 158 at 46—even though Defendants' interviews occurred and their employment ended between August and early November 2016. The Court again rejected Defendants' attempt at "rewriting the subpoenas" in the January 2020 Opinion and re-emphasized that:

---

[4] Defendants complain that Cognizant "has no legitimate interest in seeking to limit the scope of the hearing," Def. Ltr. at 26, but, as Defendants' Letter and *Garrity* submissions make plain, Cognizant's privileges are at the center of what Defendants intend to probe at the hearing, giving Cognizant significant concerns that its privileges will be further invaded and, thus, an interest in the scope of the hearing.

Hon. Kevin McNulty - 5 - March 31, 2023

> [T]he relevant issues to which the subpoenas are directed are (a) whether Defendants' interviews were "government-engineered," and therefore fairly attributable to the government, and (b) whether the interviews were coerced, classically, "in the *Garrity* sense of 'submit or be fired.'"

Jan. 2022 Opinion at 15-16. The Court stated that "Defendants' arguments for documents dating from *after* their interviews" to be "[s]ubstantially weaker and more speculative" and, again, stressed that:

> The issue . . . is not "outsourcing" per se—*i.e.,* whether any of the information now in the government's possession was originally gathered by Cognizant—but rather, whether Cognizant performed some unconstitutional act on the government's behalf. Thus far, the only clear allegation of such a (potentially) unconstitutional act is the *Garrity* claim.

*Id*. at 18 (emphasis in original).

After reviewing the parties' voluminous *Garrity* submissions—consisting of 234 pages of briefing and 145 exhibits—the Court questioned whether a hearing on Defendants' motions was even necessary. *See* Oct. 19, 2022 Conference Tr. at 10:1-3, 13:5-9. After the parties' oral argument, the Court granted Defendants a hearing on their motions, but commented, "I don't see this really lasting longer than half a day or so[.]" Jan. 10, 2023 Conference Tr. at 9:12-13.[5]

Faced with the Court's evident skepticism of their claims, Defendants seek to cast the widest possible net for the hearing—demonstrating that they have, yet again, not taken the Court's admonitions to heart. They argue that "the subsequent interactions between [Cognizant and the Government] bear directly on the question of whether Cognizant's actions are fairly attributable to the Government." Def. Ltr. at 26. The logical implication of Defendants' argument is a hearing without limits—which will devolve into repeated invasions of Cognizant's privilege—and will undoubtedly go far afield from what the Court ever intended. Defendants quote the Court's observation that there could, hypothetically, have been discussions between the Government and Cognizant after the Defendants' interviews "in which they say, 'Hey, remember that time we engineered the interview?'" Def. Ltr. at 26 (quoting Dec. 2, 2022 Tr. at 90:10-17). But that quotation proves Cognizant's point—the relevant **substantive** issue is whether Defendants' August-September 2016 interviews were "government-engineered," not the entirety of Cognizant's interactions with the Government over the lifetime of their separate investigations, which is what Defendants appear to believe they are entitled to probe.

---

[5] The Court further remarked: "I am not seeing enough smoke tokening fire. . . . I might be tempted to just rule on the papers, but I'm not going to do that. . . . [T]his is another case of, frankly, bending over backward a little bit for the defense on this . . . But I will be frank and tell you, so far, I'm not overwhelmed." Jan. 10, 2023 Conference Tr. at 8:21-9:19.

Hon. Kevin McNulty - 6 - March 31, 2023

Moreover, the Court already considered and rejected Defendants' attempt to bootstrap the narrow time window around Defendants' interviews so that they could achieve broad ***substantive*** discovery under *Brady* and other theories:

> Coburn adds that certain of the subpoena requests are "essential to evaluating whether the companies' cooperation with the government implicates the government's *Brady* obligations." The implication seems to be that because the government "outsourced" its investigation to the companies, the companies hid potentially exculpatory information not only from the Defendants, but from the government itself. The hearings ordered by the Court here may alter the picture as to the "outsourcing" claim. As things stand, however, Defendants have not made any threshold showing that the prosecution failed in its *Brady* obligations, and the prosecution is not generally answerable under *Brady* for facts and documents that were concealed from it by third parties. Nor can the limits on Rule 16 disclosure be so easily circumvented by subpoenas "just to check."

Sept. 2020 Opinion at 10. n.10. Defendants' Letter presents no basis for jettisoning the Court's prior rulings (1) focusing the hearing on the issue of whether Defendants' interviews were "government engineered" under *Garrity*, (2) restricting the timeframe relevant for Category A discovery to April 1 through October 24, 2016, or (3) rejecting Defendants' attempts to probe Cognizant's cooperation with the Government generally, absent a showing that "the prosecution failed in its *Brady* obligations." If Defendants are allowed to expansively examine witnesses concerning Cognizant's interactions with the Government in 2017, 2018, and 2019, they will undoubtedly complain that they cannot do so without the full documentary record of those interactions—which they do not have because the Court rejected Defendants' request to compel their production. And if Defendants are permitted to examine witnesses on matters outside the April 1 through October 24, 2016 timeframe pursuant to their speculative, unsubstantiated *Brady* theory, the Court should make clear that Defendants may only do so using the discovery that they have. Defendants' time to seek further discovery—which was rejected by the Court in any event—has long since run out.

Defendants' reliance on *Connolly* to justify an expansive substantive scope of the upcoming hearing is unavailing. Def. Br. at 26-27. *First*, unlike here, there was ample evidence in the *Connolly* record suggesting a *Garrity* violation. Unlike here, the *Connolly* investigation was commenced by the government and not the company, and the interviews by the company's counsel stretched over nearly two years (as compared to the one month at issue here). 2019 WL 2120523, at *1, 4. Nor have Defendants adduced any evidence showing that, ***prior*** to their interviews, the Government gave "considerable direction to the investigating . . . attorneys, both about what to do and about how to do it" or laid "the framework for [the company's] initial investigatory steps," as was the case in *Connolly*. *Id.* at *2-3. *Second*, Defendants ignore the fact that there was a "limited record" available to Judge McMahon regarding company counsel's interactions with the government at the time of the *Connolly* defendant's interviews. *See id.* at *5 n.3 ("[Paul Weiss's] 3500 material [did] not provide any evidence of what

Hon. Kevin McNulty                          - 7 -                                March 31, 2023

[Deutsche] Bank contemporaneously shared with the Government as its own investigation progressed" until after defendant had been indicted). Here, Defendants have a far more expansive record, including documentation and talking points of all communications between Cognizant and the Government in the period surrounding Defendants' interviews, and can ask Cognizant and Government witnesses about the content of their communications with one another at that time. *See* July 2022 Order at 5 (noting the "very broad discovery" the Court granted Defendants). In short, Defendants will not have to resort to evidence from years after the fact to probe the interactions between Cognizant and the Government during the limited time frame that the Court has already determined to be relevant to the *Garrity* issue.

Accordingly, Court should reject Defendants' attempt to expand the substantive scope of the limited hearing that the Court has authorized and so-order the guidelines for witness examination proposed in the Cognizant Letter.

   II.   **NOTHING IN DEFENDANTS' LETTER SUGGESTS THAT THEY ARE ENTITLED TO PRODUCTION OF COGNIZANT'S ATTORNEYS' CONTEMPORANEOUS AND AFTER-THE-FACT NOTES OF THEIR COMMUNICATIONS WITH THE GOVERNMENT**

Defendants rely on the Court's January 24, 2022 and April 27, 2022 rulings to demand Cognizant's attorneys' "notes, summaries, and memoranda of [] meetings with the government," Def. Ltr. at 17, but fail to identify any language in those rulings (or any other) that addresses—let alone requires production of—these facially privileged materials. While the Court ruled that "the notes used by Cognizant's attorneys ***in preparation for*** presentations to the government" fall within the scope of Cognizant's privilege waiver and must be produced, *see* April 2022 Order at 5 (emphasis added), the Court never ruled that Cognizant waived privilege over contemporaneous and after-the-fact notes/summaries of Cognizant's attorneys' communications with the Government or that those materials must be produced. Further, while Defendants insist that Cognizant's "privilege and work product protection over these materials has been waived," Def. Ltr. at 16, Defendants fail to identify a single instance where Cognizant "directly or derivatively shared with the government" (or any third party) its attorneys' notes/summaries of communications with the Government, meaning that those materials remain privileged under the Court's rulings. *See* CTS Ltr. at 6; July 2022 Order at 3.

Defendants' other arguments are unavailing and easily rebutted:

- As to whether Cognizant's attorneys' notes "necessarily reflect [its] attorneys' mental impressions," Def. Ltr. at 17 n.12, multiple courts have denied discovery of attorney notes as "core" work product "because, when taking notes, an attorney often focuses on those facts that she deems legally significant." *Baker v. Gen. Motors Corp.*, 209 F.3d 1051, 1054 (8th Cir. 2000) ("In this way, attorney notes are akin to an attorney's determination as to which documents are important to the case[], the latter being something we have also held to be protected work product."); *see also S.E.C. v. Nadel*, 2012 WL 1268297, at *8 (E.D.N.Y. Apr. 16, 2012) (noting a "real concern" that notes by non-attorney SEC notetakers who "were familiar with the legal strategy of the investigation" and "were instructed by SEC attorneys to record only the most relevant information" would be "permeated with [the attorneys'] inferences," including a

Hon. Kevin McNulty                              - 8 -                                March 31, 2023

concern that the disclosure of underlining in the notes "would reveal what the staff note takers and/or attorneys felt was important information").

- There is no "inherent contradiction" between Cognizant's position that its attorneys' notes are privileged work product while the Government's notes are not. Def. Ltr. at 17. The Government produced notes taken by its investigative team (including notes of meetings with Cognizant) without claiming privilege. *See* Def. Ltr. Exs. 5, 15; CTS Ltr. Ex. A at 3. That the Government did not assert (or waived) whatever privilege it might have claimed over its investigative team's notes in no way impairs Cognizant's ability to assert its own privileges, which it has done *See* Reply Ex. B.

- The fact that the Government produced its own notes of meetings with Cognizant bears directly on Defendants' ability to demonstrate the substantial need required to overcome Cognizant's assertion of work product protection. Def. Ltr. at 17 n. 12. As one court recently observed, "memoranda and emails containing the content of what was discussed at meetings with the DOJ are . . . plainly prepared by [counsel] in anticipation of litigation," and when, as here, "[the party seeking production] already has been provided with DOJ's notes of meetings with [counsel]" there can be no showing of substantial need to invade the work product protection. *Ramchandani v. CitiBank N.A.*, 2022 U.S. Dist. LEXIS 106930, at *14-17 (S.D.N.Y. June 15, 2022). Here, Defendants received not only the Government's notes of meetings with Cognizant but also Cognizant's counsel's talking points for those very communications, the Government's proffer as to what was said during meetings with Cognizant's counsel,*see* ECF 399 at 5-9, and will have the opportunity to examine both Cognizant and Government witnesses as to what transpired during the meetings. *See Ramchandani*, 2022 U.S. Dist. LEXIS 106930 at *16-17 (noting that plaintiff had the opportunity to depose both a DOJ witness who was present at relevant meetings as well as outside counsel concerning communications with the DOJ, and received an oral proffer as to what was discussed during those meetings).[6]

- Defendants' suggestion that Cognizant's waiver applies to any "type of material that one would expect Cognizant and its counsel to review in preparation for *subsequent* meetings with the Government" would render the Court's prior rulings "narrowing" the waiver Defendants sought a nullity. Def. Ltr. at 16 (emphasis in original). The Court held that Cognizant waived privilege as to documents that "were reviewed **and** formed any part of the basis of any presentation . . . to the DOJ." Jan. 2022 Opinion at 14 (emphasis added). The idea that this language captures every document that an attorney *may* have reviewed prior to a meeting with the Government is akin to the "very broad subject matter waiver" that the Court explicitly "did not accept." April 2022 Order at 3.

---

[6] Similarly, in *Connolly*, Chief Judge McMahon sustained objections to cumulative evidence regarding the cooperation between Deutsche Bank and the CFTC where a white paper establishing the nature and extent of the cooperation was already in the record. *See* Reply Ex. C at 1530:11-1531:9.

Hon. Kevin McNulty - 9 - March 31, 2023

Finally, Defendants' motion to compel with respect to the Category A subpoenas was expansive and encompassed the very contemporaneous and after-the-fact summaries of Cognizant's attorneys' communications with the Government that they now seek.[7] In its Order implementing the January 2022 Opinion on Defendants' motion to compel, the Court made clear that Defendants' motion was denied except to the extent granted. *See* ECF 264 at 1. Thus, the Court denied Defendants' attempt to compel production of the notes/summaries they now seek well over a year ago and Defendants' time to seek reconsideration of that ruling expired long ago. *See* Local Civil Rule 7.1(i).

### III. DEFENDANTS' TACTICALLY DELAYED CHALLENGE TO COGNIZANT'S PRIVILEGE LOGS IS WITHOUT MERIT AND SHOULD BE REJECTED

Defendants' supposed basis for seeking a belated,[8] expansive review of Cognizant's privilege logs is their "concern" that Cognizant is "improperly withholding additional information that is not privileged or that is encompassed by the Court's waiver rulings." Def. Ltr. at 23. But, for the reasons explained above, it is Defendants—not Cognizant—who have fundamentally misread the Court's clear rulings concerning privilege. Defendants' arguments concerning Cognizant's privilege logs only serve to illustrate their self-serving distortions of the Court's rulings. Defendants challenge various entries on Cognizant's privilege log using three "waiver categories": (1) KITS, (2) FCPA, and (3) "other bribes," Def. Ltr. Exs. 1, 3-4, which they appear to have invented out of whole cloth. The "categories" appear nowhere in any of the Court's rulings and Defendants do not contend otherwise. Instead, Defendants claim that they are entitled to re-write the Court's rulings because they categories are "core issues" that— Defendants assert (with no support)—"Cognizant discussed openly, extensively, and in detail with the Government." Def. Ltr. 24. But the Court did not rule that Cognizant waived privilege as to "core issues" that Cognizant discussed with the Government; it held that Cognizant waived privilege as to "documents and communications that were reviewed and formed any part of the basis of any presentation, oral or written, to the DOJ in connection with

---

[7] *See* ECF 158 at 8-9 ("In the less than four weeks between Cognizant's self-disclosure to the Government and DLA's second interview of Schwartz . . . DLA and the Government engaged in at least 29 communications about the case," including the call requested for "shortly after Schwartz's interview concluded" on September 23. "The details of the Government's and Cognizant's interactions on this call and indeed, throughout this period, have not been disclosed, but ***certainly require further exploration through documents thus far withheld by Cognizant***.") (emphasis added).

[8] In the over 14 months since the January 2022 Opinion was issued, Defendants never sought to bring a single privilege dispute to Magistrate Judge Hammer for resolution, even though it has been apparent for many months that Cognizant and Defendants have differing interpretations of the Court's privilege rulings. *See* Def. Ltr. Ex. 12, at 2-3; CTS Ltr. Ex. C, at 3 n.3.

Hon. Kevin McNulty - 10 - March 31, 2023

[Cognizant's] investigation." Jan. 2022 Opinion at 14. Defendants do not even try to satisfy the standard that the Court actually imposed.[9]

\* \* \*

For the reasons set forth above, we respectfully request that the Court grant the relief requested in the Cognizant Letter and deny Defendants' challenge to the entries on Cognizant's privilege logs. Alternatively, Cognizant respectfully requests that the Court convene a status conference to (i) address these significant issues so that the Court may provide guidance and establish the appropriate parameters and limitations in advance of the *Garrity* hearing, and (ii) address the sealing/closing of the courtroom for certain portions of the *Garrity* hearing so that matters that the parties have treated as confidential, including in Defendants' *Garrity* submissions, remain so.

We appreciate the Court's consideration of this letter and are available at the Court's convenience to address any questions or concerns.

Respectfully Submitted,

| ALSTON & BIRD LLP | FRIEDMAN KAPLAN SEILER ADELMAN & ROBBINS LLP |
|---|---|
| s/ *Jenny Kramer* | s/ *Mala Ahuja Harker* |
| Jenny Kramer | Mala Ahuja Harker (not admitted to USDC-NJ bar) |
| Rachel Finkel (not admitted to USDC-NJ bar) | Michael S. Palmieri (not admitted to USDC-NJ bar) |
| Scott O'Brien (not admitted to USDC-NJ bar) | 7 Times Square |
| 90 Park Avenue, 12th Floor | New York, New York 10036-6516 |
| New York, New York 10016 | (212) 833-1100 |
| (212) 210-9400 | |

cc: All Counsel (via email) (with exhibits)

---

[9] Defendants' assertion that "the Court's January 24, 2022 Opinion and Order did not directly address the concerns raised by Defendants regarding Cognizant's assertions of privilege over communications with third parties such as L&T," Def. Ltr. at 10 n. 6, is wrong. Defendants fail to mention (1) that, in connection with their motion to compel addressed to the Category A subpoenas, Defendants asserted that "[t]he Court should compel production" of documents where privilege or work product was purportedly waived "through disclosure to third parties," ECF 158 at 62; and (2) that except as otherwise granted, the Court denied Defendants' motion to compel. *See* Jan. 25, 2022 Order (ECF 264), at 1. In other words, Defendants already litigated this issue and lost.