**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| v. | Cr. No. 2:19-cr-00120 (KM) |
| **GORDON COBURN and STEVEN SCHWARTZ,** | **MEMORANDUM AND ORDER** |
| **Defendants.** | |

**KEVIN MCNULTY, U.S.D.J.:**

This matter comes before the Court on the application of non-party Cognizant Technology Solutions Corp. ("Cognizant"). (DE 448.)[1] I focus here on three issues most pertinent to an upcoming hearing, at which the parties will present evidence relevant to the question of whether Cognizant's interviews with Defendants Coburn and Schwartz were "government-engineered," and thus fairly attributable to the government, and whether the interviews were coerced, in the sense of "submit or be fired." (Op. 15-16.) The three issues at hand concern Cognizant's assertion of attorney-client privilege and work product privilege as to certain documents within its possession and as to certain areas of questioning that may arise at the hearing.

I previously ruled on a number of motions to compel Cognizant's compliance with subpoenas issued by the defendants, as well as motions by Cognizant to quash subpoenas directed at them. (Op.) Those rulings shape the

---

[1] Certain citations to the record will be abbreviated as follows:

DE = Docket entry in this case
App. = Cognizant's application for judicial review of privilege issues (DE 448)
Op. = Opinion of the Court dated February 1, 2022 (DE 268)
Finzi Letter = Letter from Roberto Finzi to Mala Harker, Michael Palmeri, and Jenny Kramer dated March 1, 2023 (DE 448-1)
Lustberg Letter = Letter to the Court from Lawrence Lustberg dated March 24, 2023 (DE 451)
Buch Decl. = Declaration of Karl Buch (DE 253)
Stratton Decl. = Declaration of Gray Stratton (DE 457)

1

current ones. I recognized that Cognizant had effected a "significant waiver" of its privileges by disclosing information to the DOJ related to its internal investigation of its employees' involvement in a bribery scheme. (Op. 13.) Specifically, Cognizant had disclosed to the Government "detailed accounts" of numerous interviews it had conducted with 19 of its employees, including the defendants. (*Id.*) I concluded that Cognizant could not claim privilege over materials that it had directly furnished to a third party.

I also considered whether Cognizant's disclosures entailed a "waiver of the privilege as to communications that 'concern the same subject matter' and 'ought in fairness to be considered together' with the actual disclosures to the DOJ." (Op. 14.) I ruled that the privilege was waived as to the following:

> First, to the extent that summaries of interviews were conveyed to the government, whether orally or in writing, the privilege is waived as to all memoranda, notes, summaries, or other records of the interviews themselves. Second, to the extent the summaries directly conveyed the contents of documents or communications, those underlying documents or communications themselves are within the scope of the waiver. Third, the waiver extends to documents and communications that were reviewed and formed any part of the basis of any presentation, oral or written, to the DOJ in connection with this investigation.

(*Id.*)

Finally, with respect to the proper scope of the defendants' Category A subpoenas, which are substantively targeted at the issue of Cognizant's "outsourcing" of its internal investigation to the Government (and are thus potentially pertinent to the upcoming *Garrity* hearing), I determined that the appropriate date range of documents that Cognizant must produce is April 2016 to October 24, 2016. (Op. 16-18.) I agreed with the defendants that the range should begin in April 2016, when Cognizant's internal investigation began, but disagreed with them that it should run through February 2019, when the defendants were indicted. I concluded that although it was possible to imagine scenarios under which documents created *after* the October 24,

2016 interviews contained relevant material, the relevance and pertinence to a waiver of the attorney client privilege were speculative. (Op. 18.)

With that background in mind, I turn to the three issues stated above.

## A. Later notes and summaries

The first issue arises out of a request by the defendants that Cognizant produce "[n]otes and summaries of meetings between Cognizant and/or its agents and the Government prepared during or after those meetings" through "at least . . . the date of the Indictment." (App. 5.) As to this issue, I agree with Cognizant that the contents of such "notes and summaries" facially constitute attorney work-product; Cognizant asserts that these documents could only have been created by its attorneys who participated in the meetings with the Government, and therefore makes a plausible claim that these documents would contain the attorneys' "mental impressions" and processes. (App. 6.) *See United States v. Nobles*, 422 U.S. 225, 238 (1975) ("At its core, the work-product doctrine shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case."); *In re Cendant Corp. Sec. Litig.*, 343 F.3d 658, 661-62 (3d Cir. 2003) (work product doctrine protects documents prepared in anticipation of litigation by a party's attorney).[2]

I also agree with Cognizant that these documents do not fall within the scope of the privilege waiver I recognized in my prior opinion. Recall that the waiver applies to interview summaries that were directly disclosed to the Government, as well as to the following three buckets of materials: (1) notes or records of any interviews that were summarized for the Government, (2) documents and communications discussed in those interviews where the interview summaries provided to the Government "directly conveyed the contents" of those documents or communications, and (3) documents and communications "that were reviewed and formed any part of the basis of any

---

[2] The speculative relevance of such documents, *see supra,* also suggests that the privilege would not be outweighed.

3

presentation, oral or written, to the DOJ in connection with this investigation." (*Id.*)

Notes and summaries of Cognizant's meetings with the Government are not (a) summaries, other notes, or records of employee interviews that were disclosed to the Government, or (b) underlying documents whose contents were conveyed in interview summaries provided to the Government. As to (c), the third bucket of documents subject to waiver, notes and summaries memorializing meetings with the Government could not logically have been reviewed in advance of those meetings or formed "the basis of any presentation" to the Government during those meetings.

The defendants would bypass my prior rulings and return to first principles. Their position is that "[n]otes and summaries of meetings between Cognizant and/or its agents and the Government prepared during or after those meetings will clearly contain information 'actually conveyed to the government' or, at the very least, material 'so related to that information that they 'ought in fairness be considered together." (Finzi Letter 2.) [3] While it is possible, though speculative, that such contemporaneous or after-the-fact records of such meetings might contain relevant material, the records themselves were not conveyed to the Government. I ruled that the privilege was waived as to anything that was actually conveyed to the Government, whether directly or derivatively. Concededly some line drawing occurred here. Nevertheless, I will not require production of notes and summaries prepared during or after meetings with the Government that were not themselves conveyed to the Government, as they fall within the privilege, are less weighty in relation to the issue of whether the government ordered or coerced the defendants' interviews, and likely would duplicate other records or testimony.

The defense also argues that "notes, summaries, and memoranda of Cognizant's prior meetings with the Government are precisely the type of

---

[3] To remove doubt, the "so related" standard is not a free-floating entitlement that can be used to roll back the actual rulings of the Court. The three "buckets" of information were promulgated by the Court as an implementation of that standard.

4

material that one would expect Cognizant and its counsel to review in preparation for *subsequent* meetings with the Government." (Lustberg Letter 16.) Such speculation is insufficient to support the production of documents otherwise privileged on their face. *See United States v. Eisenhart*, 43 F. App'x 500, 505 (3d Cir. 2002) (upholding the quashing of defendant's Rule 17 subpoenas where he was not able to "provide a sufficient foundation to allow the district court to conclude" that the "subpoena targeted relevant evidence"). Accordingly, Cognizant is not required to produce these notes and summaries in response to defendants' requests.

### B. Testimony

The second issue presented in Cognizant's application concerns the examination of witnesses at the upcoming hearing. Defendants informed Cognizant in February 2023 that they intend to call as witnesses Cognizant's outside counsel Karl Buch, who led the company's internal investigation into the bribery scheme, and Cognizant's former CEO, Francisco D'Souza. (App. 4.) In light of the privilege issues implicated, Cognizant had a meet-and-confer with the defendants on March 6, 2023, with the intention of resolving any disputes that might arise at the hearing. Following the meet-and-confer, Cognizant proposed to the defendants a stipulation that would set out topics that are and are not appropriate subjects for the examination of Buch and D'Souza at the hearing. Defendants responded by letter on March 15 that they would not agree to Cognizant's proposal. (App. 7.)

Cognizant has requested that I set guidelines for the appropriate questioning of Buch and D'Souza, in accordance with my prior order regarding Cognizant's privilege waiver and the substantive scope of the *Garrity* hearing. I will do so to the extent possible in advance, recognizing that I may well be required to rule in relation to specific questions, which are not yet known to the Court.

The guidelines I will set take into account the defendants' primary objections to Cognizant's proposal, which are two-fold. First, the defendants argue that Cognizant's proposal is too broad in its prohibition of any

5

questioning of witnesses about any communications involving Cognizant's in-house or outside counsel. Defendants point out that the attorney-client privilege falls far short of protecting everything said by or to a lawyer. (Lustberg Letter 18.)

I must agree with the Defendants that "the attorney-client privilege does not apply just because a statement was made by or to an attorney." *In re Riddell Concussion Reduction Litig.*, No. 13-7585 (JBS/JS), 2016 WL 7108455, at *3 (D.N.J. Dec. 5, 2016), *on reconsideration in part*, No. CV 13-7585 (JBS/JS), 2017 WL 11633446 (D.N.J. Jan. 5, 2017). For example, "[c]ommunications which relate to business rather than legal matters do not fall within the protection of the privilege." *Leonen v. Johns-Manville*, 135 F.R.D. 94, 98 (D.N.J. 1990) (citations omitted). This distinction is particularly salient in the corporate context, where in-house counsel typically wear many hats. *See, e.g., Rowe v. E.I. duPont de Nemours & Co.*, No. CIV.06-1810-RMD-AMD, 2008 WL 4514092, at *8 (D.N.J. Sept. 30, 2008) ("in-house counsel often plays a dual role in the corporate context" and "participates in and renders decisions about business, technical, scientific, public relations, and advertising issues, as well as purely legal issues"). At a minimum, then, Cognizant can only assert its privilege over communications involving in-house or outside counsel where the purpose of the communications was to secure legal advice.

The defendants' second essential objection to Cognizant's proposal is that it too narrowly construes the privilege waiver that the Court previously recognized. (Lustberg Letter 22.) The proposal provides that the questioning of witnesses regarding otherwise privileged attorney-client communications or attorney work-product is permitted only if the substance of those communications or work product were subsequently disclosed or conveyed to the Government. The defendants point out, however, that the waiver includes not only documents that were directly disclosed to the Government, but also documents that "concern the same subject matter" and "ought in fairness be considered together" with Cognizant's actual disclosures. (Op. 14.) Such

6

documents, as discussed above, are defined for these purposes as those that fall into one of the three buckets.

To be fair, Cognizant's proposal is broad enough to recognize that the waiver applies to documents that were not directly disclosed to the Government, so long as the *substance* of the documents was disclosed. (App. 10.) Nonetheless, Cognizant's construction of the court's waiver ruling is incomplete. The defendants are permitted to question the witnesses about otherwise privileged communications or work product to the extent that such communications or work product were either directly conveyed to the Government or fall into one of the three buckets outlined above.[4]

### C. Chilton Memo

The third and final issue presented in Cognizant's application was submitted *ex parte* and under seal for the Court's review *in camera*. Cognizant seeks the Court's confirmation that it need not produce a particular document that has been on Cognizant's privilege log for two years, referred to as the "Chilton Memo," and that the defendants may not question witnesses about this memo at the hearing. Recognizing the potential for dispute over whether the Chilton Memo falls into the scope of the privilege waiver, Cognizant has requested that the Court affirm that the memo has been appropriately withheld. For the reasons expressed herein, I hold that the Chilton Memo need not be produced and that counsel need not answer questions about it.



---

[4] Of course, all questions must fall within the substantive scope of the *Garrity* hearing, which is focused on particular issues and a relevant time period of April 2016 through October 24, 2016.







## ORDER

In accordance with the memorandum above, it is **ORDERED** that

(1) Cognizant is not required to produce any "[n]otes and summaries of meetings between Cognizant and/or its agents and the Government prepared during or after those meetings" through "at least . . . the date of the Indictment."

(2) During the upcoming *Garrity* hearing, the defendants are permitted to question the witnesses about otherwise privileged communications or work product to the extent that such communications or work product constitute: (i) records of Cognizant's employee interviews where the interviews were summarized to the Government, (ii) underlying documents whose contents were conveyed in interview summaries provided to the Government, or (iii) documents and communications that were reviewed and formed any part of the basis of any presentation, oral or written, to the DOJ in connection with this investigation. Communications involving Cognizant's in-house or outside counsel are presumptively privileged only if the purpose of the communications was to secure legal advice.

(3) Cognizant is not required to produce the Chilton Memo. Defendants may not question witnesses about the Chilton Memo at the *Garrity* hearing.

Dated: April 17, 2023

/s/ Kevin McNulty

**Hon. Kevin McNulty**
**United States District Judge**