**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| v. | Hon. Kevin McNulty |
| GORDON J. COBURN and STEVEN E. SCHWARTZ, | Crim. No. 19-cr-120 (KM-MAH) |
| Defendants. | |

---

**BRIEF IN SUPPORT OF DEFENDANT**
**GORDON J. COBURN'S OMNIBUS MOTIONS *IN LIMINE***

---

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ..............................................................................1

I.  MOTION *IN LIMINE* NO. 1: THE COURT SHOULD EXCLUDE COGNIZANT'S INTERNAL CORPORATE FCPA POLICY'S DEFINITION OF FACILITATION PAYMENTS, AND ALLEGED STATEMENTS MADE BY DEFENDANTS DURING THE INVESTIGATION ABOUT THE POLICY AND THE LAW. ...................3

    A.  Cognizant's FCPA Policy's Definition of Facilitation Payments and Defendants' Alleged 2016 Statements Concerning the Policy and the Law. ........................................................................................5

    B.  Cognizant's FCPA Policy's Definition of Facilitation Payments and Defendants' Alleged Statements in 2016 Concerning It and the Law are Irrelevant, Inadmissible, and Would Only Serve to Confuse the Jury...............................................................................7

II.  MOTION *IN LIMINE* NO. 2:  THE COURT SHOULD EXCLUDE PEJORATIVE REFERENCES TO COGNIZANT OUTSOURCING JOBS OR USING LESS EXPENSIVE FOREIGN LABOR.......................12

III.  MOTION *IN LIMINE* NO. 3:  THE COURT SHOULD EXCLUDE ANY REFERENCE TO, OR EVIDENCE ABOUT, MR. COBURN'S DECISIONS OR VIEWS RELATING TO COGNIZANT'S COMPLIANCE BUDGET.........................................................................15

IV.  MOTION *IN LIMINE* NO. 4:  THE COURT SHOULD EXCLUDE ANY REFERENCE TO, OR EVIDENCE ABOUT, MR. COBURN'S COMPENSATION WHILE EMPLOYED AT COGNIZANT, AND HIS NET WORTH. ...........................................................................19

V.  MOTION *IN LIMINE* NO. 5: THE COURT SHOULD EXCLUDE ANY REFERENCE TO, OR EVIDENCE ABOUT, MR. COBURN'S DECISION NOT TO SIT FOR A SECOND INTERVIEW WITH DLA PIPER UNDER THE UNREASONABLE TERMS COGNIZANT SOUGHT TO IMPOSE AND THE CIRCUMSTANCES OF HIS SUBSEQUENT RESIGNATION. ...............................................22

VI.  MOTION *IN LIMINE* NO. 6:  THE COURT SHOULD EXCLUDE REFERENCES TO, OR EVIDENCE ABOUT, MR. SCHWARTZ'S PURPOTED NOTES FROM TWO VIDEO CALLS ON APRIL 21 AND 22, 2014...........................................................................27

# TABLE OF CONTENTS
## (continued)

Page

A.   The Purported Notes Are Unreliable.................................................28

B.   The Purported Notes Are Inadmissible Hearsay...............................30

C.   The Probative Value of the Purported Notes Is Outweighed By Risk of Prejudice, Confusion, and Misleading the Jury....................31

VII.  MOTION *IN LIMINE* NO. 7:  THE COURT SHOULD EXCLUDE MR. SCHWARTZ'S ALLEGED PRIOR STATEMENTS CONCERNING MR. COBURN. ...................................................................33

A.   Mr. Schwartz's Alleged Statements Concerning Mr. Coburn. ..........33

B.   Mr. Schwartz's Alleged Statements Are Inadmissible Against Mr. Coburn Because They Are Hearsay. ...........................................36

C.   Admission of Mr. Schwartz's Alleged Statements During the Investigation Will Unduly Prejudice Mr. Coburn.............................38

D.   Mr. Schwartz's Alleged Statements to DLA Piper During the Investigation Concerning Mr. Coburn Are Testimonial and Should be Excluded.  To the Extent Such Statements Are Not Excluded, They Should Be Sanitized................................................38

  1.   Admission of Mr. Schwartz's Testimonial Hearsay Statements Inculpating Mr. Coburn Will Violate *Bruton*........44

  2.   To the Extent Mr. Schwartz's Alleged Statements Are Not Excluded, They Must be Sanitized. .........................................45

VIII.  MOTION *IN LIMINE* NO. 8:  THE COURT SHOULD EXCLUDE CERTAIN OF MR. SCHWARTZ'S ALLEGED ACTIONS AND STATEMENTS MADE DURING THE INVESTIGATION. .....................47

A.   Mr. Schwartz's Other Alleged Actions and Statements During the Investigation. ...............................................................................47

B.   Purported Evidence of Mr. Schwartz's Consciousness of Guilt........49

C.   Mr. Schwartz's Alleged Actions and Statements During the Investigation Are Inadmissible and Unfairly Prejudicial..................51

D.   Mr. Schwartz's Alleged Actions and Statements Purportedly Evidencing His Consciousness of Guilt Are Irrelevant as to Mr. Coburn. .............................................................................................53

# TABLE OF CONTENTS
(continued)

Page

IX.   A LIMITING INSTRUCTION WILL NOT CURE THE UNFAIR PREJUDICE AGAINST MR. COBURN.  THE ONLY FAIR AND CONSTITUTIONAL ALTERNATIVE TO EXCLUDING THE EVIDENCE IS SEVERANCE. ...................................................................55

X.   MOTION *IN LIMINE* NO. 9:  THE COURT SHOULD ADMIT EXCULPATORY STATEMENTS MEMORIALIZED IN FBI-302s OF DOJ INTERVIEWS OF OVERSEAS WITNESSES UNAVAILABLE TO DEFENDANTS. ...............................................60

    A.   Mr. Coburn's Efforts to Secure Testimony From the Exculpatory Overseas Witnesses. ............................................................60

    B.   The FBI-302s of DOJ Interviews of the Unavailable Overseas Witnesses Contain Exculpatory Statements. ........................62

        1.   Ramesh Vadivelu ..............................................................63

        2.   Balaji Subramanian ..........................................................65

        3.   Sekharipuram Narayanan Subrahmanyan.............................66

    C.   Exculpatory Statements Memorialized in FBI-302s Are Admissible. ........................................................................67

XI.   MR. COBURN'S JOINDER TO MOTIONS *IN LIMINE* MADE BY MR. SCHWARTZ. .........................................................................74

    A.   Mr. Schwartz's Motion *in Limine* No. 1. ...........................74

    B.   Mr. Schwartz's Motion *in Limine* No. 2. ...........................75

    C.   Mr. Schwartz's Motion *in Limine* No. 3. ...........................75

    D.   Mr. Schwartz's Motion *in Limine* No. 4. ...........................76

CONCLUSION ......................................................................................76

# TABLE OF AUTHORITIES

**Page(s)**

<span style="font-variant: small-caps;">CASES</span>

*Abstrax, Inc. v. Dell, Inc.*,
  No. 07-cv-221, 2009 WL 10677355 (E.D. Tex. Oct. 9, 2009)...........................14

*Berckeley Inv. Grp. Ltd. V. Colkitt*,
  455 F.3d 195 (3d. Cir. 2006) ......................................................................8

*Bradford Trust Co. of Boston v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
  805 F.2d 49 (2d Cir. 1986) ........................................................................67

*Bruton v. United States*,
  391 U.S. 123 (1968)...................................................................*passim*

*Cameron v. City of New York*,
  598 F.3d 50 (2d Cir. 2010) .................................................................51, 52

*Carroll v. Clifford Twp.*,
  No. 12-cv-0553, 2014 WL 901126 (M.D. Pa. Mar. 7, 2014)...........................18

*Chambers v. Mississippi*,
  410 U.S. 284 (1973)...........................................................................29, 70

*Combs v. Coyle*,
  205 F.3d 269 (6th Cir. 2000) .......................................................................26

*Crane v. Kentucky*,
  476 U.S. 683 (1986)...........................................................................70, 74

*Crawford v. Washington*,
  541 U.S. 36 (2004)...........................................................................39, 41

*Crowley v. Chait*,
  322 F. Supp 2d 530 (D.N.J. 2004)...............................................................8, 51

*Davis v. Washington*,
  547 U.S. 813 (2006)...................................................................39, 40, 41, 43

*Devine v. Pittsburgh Bd. Public Educ.*,
  No. 13-cv-220, 2015 WL 7871059 (W.D. Pa. Dec. 3, 2015).....................32, 33

*Draper v. Airco, Inc.*,
  580 F.2d 91 (3d Cir. 1978) ..................................................................14

*Dutton v. Evans*,
  400 U.S. 74 (1970)..............................................................................37

*Epic Sys. Corp. v. Tata Consultancy Servs. Ltd.*,
  No. 14-cv-748, 2016 WL 1179228 (W.D. Wis. Mar. 23, 2016) ........................14

*Escriba v. Foster Poultry Farms*,
  793 F. Supp. 2d 1147 (E.D. Ca. 2011) .................................................74

*Ford Motor Company v. Versata Software, Inc.*,
  No. 15-cv-10628 (E.D. Mich. Aug. 8, 2022)......................................14

*Galaxy Computer Servs., Inc. v. Baker*,
  325 B.R. 544 (E.D. Va. May 27, 2005)................................................33

*Gray v. Maryland*,
  523 U.S. 185 (1998).............................................................................46

*Grunewald v. United States*,
  353 U.S. 391 (1957).............................................................................37

*Happel v. Wal-Mart Stores, Inc.*,
  No. 02-cv-7771, 2007 WL 495277 (N.D. Ill. Feb. 9, 2007)..............................13

*In re Drake*,
  786 F. Supp. 229 (E.D.N.Y. 1992) ......................................................71

*In re Urethane Antitrust Litig.*,
  No. 08-cv-5169, 2016 WL 475339 (D.N.J. Feb. 8, 2016)..............................9, 12

*In re Worldcom, Inc. Sec. Litig.*,
  No. 02-cv-3288, 2005 WL 491399 (S.D.N.Y. Mar. 3, 2005) ...........................20

*Janes v. Chicago Bd. of Educ.*,
  No. 00-cv-6128, 2002 WL 31557619 (N.D. Ill. Nov. 18, 2002).........................16

*Johnson v. Superintendent Fayette SCI*,
  949 F.3d 791 (3d Cir. 2020) ..........................................................39, 46

*Kinsey v. Cendant Corp.*,
  588 F. Supp. 2d 516 (S.D.N.Y. 2008) ..................................................20

*Krulewitch v. United States*,
   336 U.S. 440 (1949)...................................................................................37

*L-3 Commc'ns Corp. v. OSI Sys., Inc.*,
   No. 02-cv-9144, 2006 WL 988143 (S.D.N.Y. Apr. 13, 2006)...................20, 21

*Lutwak v. United States*,
   344 U.S. 604 (1953)...................................................................................37

*Melendez-Diaz v. Massachusetts*,
   557 U.S. 305 (2009).............................................................................39, 43

*Michigan v. Bryant*,
   562 U.S. 344 (2011).............................................................................40, 41

*Moore v. GEICO Gen. Ins. Co.*,
   No. 13-cv-1569, 2016 WL 5719474 (M.D. Fla. Sept. 30, 2016) .......................10

*MSC Mediterranean Shipping Co. SA, Geneva v. Metal Worldwide, Inc.*,
   884 F. Supp. 2d 1277 (S.D. Fla. 2012) ..............................................................71

*O'Laughlin v. O'Brien*,
   568 F.3d 287 (1st Cir. 2009)...............................................................................24

*Ohio v. Clark*,
   576 U.S. 237 (2015).............................................................................41, 44

*Ouska v. Cahill–Masching*,
   246 F.3d 1036 (7th Cir. 2001) ...........................................................................26

*Picard v. Sage Realty*,
   No. 20-cv-10109, 2021 WL 6052422 (S.D.N.Y. Dec. 21, 2021).......................68

*Quinn v. Wexford Health Sources, Inc.*,
   No. 17-cv-669, 2020 WL 888048 (S.D. Ill. Feb. 24, 2020) ..............................72

*Richardson v. Marsh*,
   481 U.S. 200 (1987).............................................................................39, 45

*Samia v. United States*,
   143 S. Ct. 2004 (2023)........................................................................................46

*SEC v. Goldstone*,
   No. 12-cv-0257, 2016 WL 3654273 (D.N.M. June 13, 2016) ..........................19

*Spanierman Gallery, Profit Sharing Plan v. Merritt*,
  No. 00-cv-5712, 2003 WL 22909160 (S.D.N.Y. Dec. 9, 2003).........................68

*Spruill v. Winner Ford of Dover, Ltd.*,
  175 F.R.D. 194 (D. Del. 1997) ................................................................8

*Steinberg v. Obstetrics–Gynecological & Infertility Grp., P.C.*,
  260 F. Supp. 2d 492 (D. Conn. 2003).....................................................71

*Tyco Healthcare Grp. LP v. Applied Med. Res. Corp.*,
  No. 9:09-cv-176, 2011 WL 7563868 (E.D. Tex. Sept. 23, 2011) ......................14

*United States of America ex rel. Barrick v. Parker-Migloiorini International, LLC*,
  No. 12-cv-00381-JNP (D. Utah June 27, 2021), ECF No. 288..........................68

*United States ex rel. Wuestenhoefer v. Jefferson*,
  No. 10-cv-00012, 2014 WL 7185428 (N.D. Miss. Dec. 16, 2014)....................68

*United States v. Ammar*,
  714 F.2d 238 (3d Cir. 1983) ................................................................36

*United States v. Balter*,
  91 F.3d 427 (3d Cir. 1996), *as amended* (Aug. 16, 1996)................................56

*United States v. Baskes*,
  649 F.2d 471 (7th Cir. 1980) ................................................................52

*United States v. Bergrin*,
  No. 09-cr-369, 2011 WL 6779548 (D.N.J. Dec. 27, 2011)..............................55

*United States v. Berrios*,
  676 F.3d 118 (3d Cir. 2012) ................................................................39

*United States v. Blunt*,
  930 F.3d 119 (3d Cir. 2019) ................................................................59

*United States v. Boscia*,
  573 F.2d 827 (3d Cir. 1978) ................................................................57

*United States v. Cameron*,
  699 F.3d 621 (1st Cir. 2012)................................................................43

*United States v. DiNome*,
  954 F.2d 839 (2d Cir. 1992) ................................................................59

*United States v. Dougherty*,
  No. 19-cr-64, 2020 WL 6395464 (E.D. Pa. Nov. 2, 2020) ........................55, 59

*United States v. Ferguson*,
  No. 06-cr-137, 2007 WL 4240782 (D. Conn. Nov. 30, 2007) ..........................19

*United States v. Griffin*,
  324 F.3d 330 (5th Cir. 2003) ..............................................................................51

*United States v. Hawkins*,
  360 F. Supp. 2d 689 (E.D. Pa. 2005) ............................................................20, 21

*United States v. Holland*,
  76 F. App'x 452 (3d Cir. 2003) ........................................................................37

*United States v. Islam*,
  No. 20-cr-00045, 2021 WL 308272 (E.D. Pa. Jan. 29, 2021) ...........................59

*United States v. James*,
  No. 02-cr-0778, 2007 WL 1579978 (E.D.N.Y. May 31, 2007) ........................54

*United States v. James*,
  No. 07-cr-578, 2008 WL 370921 (D.N.J. Feb. 11, 2008) ..................................60

*United States v. Jones*,
  No. 16-cr-516, 2017 WL 1591855 (D.N.J. May 1, 2017)..................................25

*United States v. Kemp*,
  580 F. App'x 138 (3d Cir. 2014) ......................................................................30

*United States v. Lyon*,
  567 F.2d 777 (8th Cir. 1977) ............................................................................71

*United States v. Mallory*,
  988 F.3d 730 (4th Cir. 2021) ............................................................................51

*United States v. McIntosh*,
  2022 WL 212310 (3d Cir. Jan. 25, 2022).........................................................39

*United States v. McVeigh*,
  169 F.R.D. 362 (D. Colo. 1996) ......................................................................54

*United States v. Musaibli*,
  No. 18-cr-20495, 2022 WL 17832696 (E.D. Mich. Dec. 21, 2022) ..........*passim*

*United States v. North*,
No. 06-cr-323, 2007 WL 1630366 (D. Conn. June 5, 2007)...............................9

*United States v. Okatan*,
728 F.3d 111 (2d Cir. 2013) ...............................................................26

*United States v. Penn*,
No. 20-cr-00152, 2022 WL 523004 (D. Colo. Feb. 22, 2022)............................9

*United States v. Ruzicka*,
No. 16-cr-246, 2018 WL 385422 (D. Minn. Jan. 11, 2018)..................68, 72, 73

*United States v. Scarfo*,
No. 11-cr-740, 2012 WL 4120504 (D.N.J. Sept. 19, 2012) ...............................55

*United States v. Stahl*,
616 F.2d 30 (2d Cir. 1980) ...............................................................20

*United States v. Thevis*,
84 F.R.D. 57 (N.D. Ga. 1979)...............................................................71

*United States v. Trala*,
386 F.3d 536 (3d Cir. 2004) ...............................................................53, 54

*United States v. Vastola*,
670 F. Supp. 1244 (D.N.J. 1987)...............................................................58

*United States v. Waller*,
654 F.3d 430 (3d Cir. 2011) ...............................................................26

*United States v. Wilmington Tr. Corp.*,
No. 15-cr-23, 2017 WL 4416354 (D. Del. Oct. 5, 2017) ...............................20

*United States v. Wong*,
No. 17-cr-0407, 2018 WL 5776336 (N.D. Cal. Nov. 2, 2018) ...................68, 71

*Upstate Shredding, LLC v. Ne. Ferrous, Inc.*,
No. 12-cv-1015, 2016 WL 865299 (N.D.N.Y. Mar. 2, 2016)............................68

*Washington v. Sec'y Pa. Dep't of Corr.*,
801 F.3d 160 (3d Cir. 2015) ...............................................................47

*Youssef v. Lynch*,
No. 11-cv-1362, 2016 WL 2771803 (D.D.C. May 12, 2016) ............................33

*Zafiro v. United States*,
    506 U.S. 534 (1993) .............................................................................56, 58

**CONSTITUTIONAL AND STATUTORY AUTHORITIES**

U.S. Const. amend. VI ........................................................................33, 39

15 U.S.C. § 78dd-1 ...................................................................*passim*

35 U.S.C. § 271 .............................................................................14

**OTHER AUTHORITIES**

Fed. R. Crim. P. 14 ..............................................................................56

Fed. R. Evid. 401 ...................................................................*passim*

Fed. R. Evid. 402 ...................................................................*passim*

Fed. R. Evid. 403 ...................................................................*passim*

Fed. R. Evid. 801 ...................................................................*passim*

Fed. R. Evid. 802 ...................................................................*passim*

Fed. R. Evid. 803 ...................................................................*passim*

Fed. R. Evid. 804 ...................................................................*passim*

Fed. R. Evid. 807 ...................................................................*passim*

Third Circuit Model Criminal Jury Instruction, 5.06 Willful Blindness ................51

2 Kevin F. O'Malley et al., Federal Practice & Instruction § 31:04
    (6th ed. 2023) ..........................................................................31

Charles Alan Wright & Arthur R. Miller, Federal Practice and
    Procedure § 6634 (2d ed. updated April 2022) ....................................44

## PRELIMINARY STATEMENT

Defendant Gordon Coburn moves *in limine* to exclude testimony and evidence from trial that is irrelevant, unduly prejudicial, or otherwise inadmissible under the Federal Rules of Evidence, and which violate Mr. Coburn's rights under the Fifth and Sixth Amendments to the United States Constitution.  Specifically, Mr. Coburn moves to exclude testimony and evidence regarding: (1) the Cognizant Technology Solutions ("Cognizant") corporate Foreign Corrupt Practices Act ("FCPA") policy's definition of facilitation payments, which is more restrictive than the FCPA itself, and Defendants' alleged statements made during the corporate internal investigation related to their understanding of the policy and the law; (2) Cognizant outsourcing jobs or using less expensive foreign labor; (3) Mr. Coburn's decisions and views relating to Cognizant's compliance budget; (4) Mr. Coburn's compensation while employed at Cognizant and his overall net worth; (5) Mr. Coburn's decision not to sit for a second interview with DLA Piper during Cognizant's internal investigation under the unreasonable terms that Cognizant sought to impose on Mr. Coburn; (6) Defendant Steven Schwartz's purported notes from video conference calls on April 21 and 22, 2014; (7) statements allegedly made by Mr. Schwartz concerning Mr. Coburn; and (8) Mr. Schwartz's alleged actions and statements during the investigation that would substantially and unfairly prejudice Mr. Coburn.

Furthermore, a limiting instruction will not cure the spillover prejudice to Mr. Coburn if the Court admits certain evidence and testimony against Mr. Schwartz but not Mr. Coburn in a joint trial. We therefore move to exclude certain evidence from the trial entirely or, in the alternative, we move for a severance.

In addition, Mr. Coburn moves *in limine* to admit exculpatory statements that directly rebut the allegations in the Indictment and that were made to the government in response to government questioning by witnesses with direct knowledge of the events at issue in this case and that are unavailable to testify at trial, and which are reliably memorialized in Federal Bureau of Investigation ("FBI") FD-302 Forms ("FBI-302s").

Mr. Coburn also respectfully joins Mr. Schwartz's omnibus motions *in limine*, insofar as they seek an order: (a) excluding information regarding Mr. Schwartz's attendance at a Mets game on April 22, 2014, video of Mr. Schwartz at the April 22, 2014 Mets game, and information regarding Mr. Schwartz's eye surgery on April 24, 2014; (b) excluding evidence of answers allegedly given by Mr. Schwartz to questions posed by counsel for Cognizant during interviews held on August 28, 2016 and September 23, 2016 to the extent the alleged questions posed (or answers given) referred to hypothetical scenarios or called for legal conclusions; (c) allowing to be admitted into evidence statements made by Larsen & Toubro Ltd. ("L&T") concerning its investigation into the alleged bribe scheme charged in this case,

including formal public statements made to the National Stock Exchange of India ("NSE") to the effect that its investigation did not find evidence of a bribe payment; and (d) allowing to be admitted into evidence the government's admission that neither Defendants, their co-conspirators, nor the government itself knows key details of the alleged bribe conspiracy in this case.

I.   **MOTION *IN LIMINE* NO. 1: THE COURT SHOULD EXCLUDE COGNIZANT'S INTERNAL CORPORATE FCPA POLICY'S DEFINITION OF FACILITATION PAYMENTS, AND ALLEGED STATEMENTS MADE BY DEFENDANTS DURING THE INVESTIGATION ABOUT THE POLICY AND THE LAW.**

The government alleges that Mr. Coburn authorized Cognizant India to authorize L&T to make a payment to an unknown Indian government official to secure a permit to occupy an office facility. *See* Indict. ¶¶ 2, 3. The anti-bribery counts in the Indictment (Counts Two through Four), and the conspiracy to violate the anti-bribery provisions (Count One), require the government to prove beyond a reasonable doubt that the alleged payment at issue was not a facilitation payment. *See* 15 U.S.C. § 78dd-1(b).

The FCPA defines a facilitation payment as a payment to a foreign official "the purpose of which is to expedite or to secure the performance of a routine governmental action by a foreign official . . . ." 15 U.S.C. § 78dd-1(b). The term "routine governmental action" is defined as:

> an action which is ordinarily and commonly performed by a foreign official in—

(i) *obtaining permits*, licenses, or other official documents to qualify a person to do business in a foreign country;

(ii) processing governmental papers, such as visas and work orders;

(iii) providing police protection, mail pick-up and delivery, or scheduling inspections associated with contract performance or inspections related to transit of goods across country;

(iv) providing phone service, power and water supply, loading and unloading cargo, or protecting perishable products or commodities from deterioration; or

(v) *actions of a similar nature.*

15 U.S.C. § 78dd-1(f)(3)(A) (emphasis added).

The definition of a facilitation payment is further clarified by what Congress explicitly excluded from the statutory definition:

The term "routine governmental action" does not include any decision by a foreign official whether, or on what terms, to award new business to or to continue business with a particular party, or any action taken by a foreign official involved in the decision-making process to encourage a decision to award new business to or continue business with a particular party.

15 U.S.C. § 78dd-1(f)(3)(B).

The jury must decide whether the government has proven beyond a reasonable doubt that the alleged contemplated payment to the unknown Indian government official to obtain a planning permit was not a facilitation payment. The jury must decide this issue based on the Court's instruction on the law, not on Cognizant's more restrictive definition of facilitation payments in its internal corporate policy or

4

Defendants' statements during the investigation concerning that policy or the law. Any evidence on these topics should be excluded because it is inadmissible hearsay or not relevant to the charged offenses, and any probative value is substantially outweighed by the danger of unfair prejudice, confusing the issues, misleading the jury, and wasting time. *See* Fed. R. Evid. 401, 403 and 802.

### A. Cognizant's FCPA Policy's Definition of Facilitation Payments and Defendants' Alleged 2016 Statements Concerning the Policy and the Law.

Cognizant's corporate FCPA policy does not reflect the law, but rather Cognizant's corporate approach to compliance with anti-corruption laws around the world. The policy does not reflect the statutory language of the FCPA. The corporate policy states:

> **Facilitating Payments:** So-called "facilitating payments" are also known as "grease payments" or "expediting payments." Grease or expediting payments are nominal, very small payments (e.g., $10) typically made to expedite an administrative or clerical official's performance of some non-discretionary action or service that he or she is supposed to provide, and to which you are legally entitled, such as:
>
> > Permits, licenses, or other official documents necessary to do business in a certain market or country;
> >
> > Processing of government papers such as visas and work orders;
> >
> > Police protection, mail services, or scheduling inspections; or
> >
> > Utility (e.g., phone, electricity, water) or other government services.

Loonam Decl. Ex. 1, (CTS_R17_0000101) at 5. Cognizant adopted this policy in accordance with its "Core Values and Standards of Business Conduct" for the

purpose of preventing violations of anti-corruption laws or "the appearance of impropriety . . . ."  *Id.* at 1.

According to a memorandum of a meeting with Mr. Coburn prepared by DLA Piper, Cognizant's external counsel, Mr. Coburn commented on Cognizant's FCPA policy.  According to the memorandum, Mr. Coburn allegedly stated that he had recently learned from Dana Gilbert, the then Cognizant Chief Compliance Officer, that notwithstanding the policy's reference to "$10," facilitation payments could be for more than $10.  Loonam Decl. Ex. 2 (CTS_R17_0004337) at 1.  Mr. Coburn told the interviewers that this position, which he heard from Gilbert, was news to him. *Id.*

During the investigative interviews with DLA Piper in August and September 2016, Mr. Schwartz, former Cognizant Chief Legal Officer, is alleged to have made various statements concerning facilitation payments, though it is not clear whether he was commenting on the facilitation provision of the FCPA or Cognizant's more restrictive facilitation payment policy.  For example, Mr. Schwartz allegedly made statements concerning an uncharged $300,000 payment or potential payment to an Indian government official purportedly required to connect the Cognizant KITS facility to the electrical grid.[1]  According to DLA Piper's notes of the interview, Mr.

---

[1] This $300,000 payment or potential payment came to light in August 2016 after the government's main witness, Srimanikandan Ramamoorthy, approached Mr. Coburn and raised the issue of this payment for the first time.  Loonam Decl. Ex. 3

Schwartz is alleged to have stated that it was his view that such a payment could not be a facilitation payment because of its size and that if the payment had been made "it would be a clear violation of the Foreign Corrupt Practices Act . . . ."  Loonam Decl. Ex. 8 (CTS_R17_0004363) at 3.  When asked how he knew it would violate the FCPA, Mr. Schwartz is said to have stated, revealing faulty legal analysis: "It sounded like a bribe.  It sounded like a payment to get power more quickly." *Id*.  Mr. Schwartz also allegedly told DLA Piper his view that while Cognizant's policy allowed facilitation payments, "he believed that [Cognizant] should never tolerate it and they should stop it altogether."  Loonam Decl. Ex. 9 (CTS_R17_0004324) at 4.

> **B.     Cognizant's FCPA Policy's Definition of Facilitation Payments and Defendants' Alleged Statements in 2016 Concerning It and the Law are Irrelevant, Inadmissible, and Would Only Serve to Confuse the Jury.**

To be clear, Defendants are not seeking to exclude evidence concerning past facilitation payments made by Cognizant personnel.  But the Court should exclude Cognizant's corporate FCPA policy concerning the definition of a facilitation

---

(CTS_R17_0004416) at 3–4.  Mr. Coburn immediately brought the issue to the attention of Steven Schwartz, the then-Chief Legal Officer, and Gilbert.  Loonam Decl. Ex. 4 (CTS-0006261).  Mr. Schwartz and Gilbert involved their outside legal counsel at DLA Piper, who proceeded to question Ramamoorthy.  Loonam Decl. Ex. 5 (CTS-0011196); Loonam Decl. Ex. 6 (CTS-0011204).  It was during this questioning that Ramamoorthy first made the allegations against Mr. Coburn and Mr. Schwartz that led to the present Indictment.  *See, e.g.*, Loonam Decl. Ex. 7 (CTS_R17_0004414) at 1.

payment and alleged statements made by Mr. Coburn and Mr. Schwartz during the investigation in 2016, after the time period of the charged conspiracy, concerning *the legal definition* of a facilitation payment.

It is solely the province of this Court to instruct the jury on the law. *Crowley v. Chait*, 322 F. Supp 2d 530, 550 (D.N.J. 2004) ("[I]t is the court's duty to explain the law to the jury . . . ."). Testimony and evidence concerning the legal definition of a facilitation payment "is prohibited because it would usurp the District Court's pivotal role in explaining the law to the jury." *Berckeley Inv. Grp. Ltd. v. Colkitt*, 455 F.3d 195, 217 (3d. Cir. 2006) (citing *First National State Bank v. Reliance Elec. Co.*, 668 F.2d 725, 731 (3d Cir. 1981)) (per curiam); *Spruill v. Winner Ford of Dover, Ltd.*, 175 F.R.D. 194, 198 (D. Del. 1997) (excluding evidence of state agency's legal conclusions because "[i]nstructing the jury on the law is the province of the Court; admitting such statements would only lead to jury confusion").

To allow testimony and evidence concerning alternative and inconsistent legal definitions and interpretations of the facilitation payment exception would create a substantial risk of misleading the jury on this important issue and potentially cause the jury to apply a legal standard inconsistent with the Court's instruction. The introduction of this evidence risks a trial not on whether Defendants violated the FCPA, but on whether they violated Cognizant's corporate policy or Mr. Schwartz's and Mr. Coburn's own (flawed) interpretations of the FCPA as communicated to

DLA investigators.  *See, e.g.*, *United States v. North*, No. 06-cr-323, 2007 WL 1630366, at *1 (D. Conn. June 5, 2007) (granting motion to exclude company compliance policy in part because the policy "present[s] legal conclusions as to the scope and meaning of the Sherman Act that would undermine the Court's role as the jury's sole source of law applicable in this case.").

The evidence also risks confusing the jury.  Cognizant's corporate policy is not an accurate statement of the law.  There is nothing in the statutory language that limits facilitation payments to $10 or any monetary value for that matter.  *See* 15 U.S.C. § 78dd-1(b).  The sole test for determining whether a payment is a facilitation payment is whether it was made for "routine government action" as defined by the statute.  15 U.S.C. § 78dd-1(b).

Courts consistently exclude documents like Cognizant's written policy to avoid the risk of confusing the jury.  For example, in *United States v. Penn*, the court excluded evidence of antitrust training, internal company policies, and related testimony because of, among other reasons, "the danger that the jury will confuse the standard in the policy or training with the law it is to apply."  No. 20-cr-00152, 2022 WL 523004, at *2 (D. Colo. Feb. 22, 2022).  The same risk is present here.  Cognizant's policy contains recommended corporate practices, not a legal standard to be applied by a jury.  *See, e.g.*, *In re Urethane Antitrust Litig.*, No. 08-cv-5169, 2016 WL 475339, at *2 (D.N.J. Feb. 8, 2016) (granting motion *in limine*

to exclude company's code of business conduct based on the finding that it could confuse the jury regarding the governing law); *see also Moore v. GEICO Gen. Ins. Co.*, No. 13-cv-1569, 2016 WL 5719474, at *5 (M.D. Fla. Sept. 30, 2016) (excluding corporate code of conduct that went "above and beyond what is required under [ ] law").

Moreover, Cognizant's policy in practice appears to have been very different from the written policy. According to DLA Piper's interview memorandum, Mr. Schwartz, Cognizant's Chief Legal Officer, allegedly recalled that Cognizant received advice from DLA Piper that a $500,000 payment to a government official was a facilitation payment. This is inconsistent with the written policy, which describes "grease payments" as being "small payments (e.g. $10)." Loonam Decl. Ex. 1, (CTS_R17_0000101) at 5. Similarly, and according to the same memorandum, Mr. Schwartz is alleged to have recalled an $80,000 facilitation payment linked to statutory payments (*i.e.*, government fees for permits). Likewise, according to DLA Piper's memorandum of the meeting with Mr. Coburn, Gilbert had recently informed Mr. Coburn that facilitation payments could be for dollar values above the $10 stated in Cognizant's written policy. Loonam Decl. Ex. 2 (CTS_R17_0004337) at 1.

Moreover, Defendants' statements to DLA Piper investigators in August and September 2016, after the time period of the alleged conspiracy, concerning the

definition of facilitation payment under Cognizant's written corporate policy and the law are not probative of the factual issues in this case. This case concerns whether Defendants authorized Cognizant India to authorize L&T to make a corrupt payment to a government official and agreed to reimburse L&T for that payment, all in 2014. The last alleged overt act charged in the Indictment is in March 2015. Similarly, there is no evidence anyone consulted or relied on Cognizant's written corporate policy prior to the investigation at issue. It would be expected that Defendants would review Cognizant's policies immediately before speaking with DLA investigators. Defendants' alleged statements in August and September in 2016 to DLA Piper investigators concerning their legal views of the scope of the facilitation payment exception are therefore not relevant. Fed. R. Evid. 401. In addition, Mr. Schwartz's statements allegedly made during the investigation, and after the termination of the alleged conspiracy, are inadmissible hearsay as to Mr. Coburn, and vice versa. Fed. R. Evid. 802; *see also infra* Motion *in Limine* No. 7.

Even if Defendants' alleged statements in August and September 2016 were somehow minimally probative, any probative value of Defendants' alleged statements concerning a legal definition and Cognizant's corporate policy more than two years after the alleged payment authorization is substantially outweighed by the

danger of unfair prejudice, confusion of the issues and the risk of misleading the jury.

Fed. R. Evid. 403.[2]

## II.   MOTION *IN LIMINE* NO. 2:   THE COURT SHOULD EXCLUDE PEJORATIVE REFERENCES TO COGNIZANT OUTSOURCING JOBS OR USING LESS EXPENSIVE FOREIGN LABOR.

Mr. Coburn moves to exclude statements, testimony, or comments regarding Cognizant being in the business of outsourcing jobs from the United States to lower-cost foreign countries, or utilizing less expensive foreign labor from India and elsewhere.   Such references are irrelevant and serve no purpose other than to prejudice Mr. Coburn by injecting a subtext into the trial that Cognizant outsourced American jobs and took advantage of less expensive foreign labor.   As such, any evidence on these topics should be excluded because it is not relevant to the charged offenses and any probative value is substantially outweighed by the danger of unfair prejudice, confusing the issues, misleading the jury, and wasting time.   *See* Fed. R. Evid. 401 and 403.

The jury will, of course, come to understand that Cognizant, headquartered in Teaneck, New Jersey, had operations and employees based in India.   *See, e.g.*, Indict.

---

[2] The risk of prejudice cannot be remedied by advising the jury that they must distinguish between Cognizant's policy and the FCPA.   "A barrage of evidence" concerning internal corporate policies, as opposed to the applicable standard under the statute, would "create a prejudice too great to be cured by a limiting instruction." *In re Urethane Antitrust Litig.*, 2016 WL 475339, at *2.

¶ 1(a) ("Cognizant had more than 250,000 employees globally, more than half of whom worked in various locations in India[.]").  But references to Cognizant's outsourcing of jobs or taking advantage of inexpensive foreign labor are irrelevant to the two key issues in this case: (1) whether Defendants authorized Cognizant India to authorize L&T to pay a bribe in an April 2014 videoconference call; and (2) whether Defendants authorized Cognizant India to reimburse L&T for the alleged bribe.  Cognizant outsourcing jobs or utilizing less expensive foreign labor does not make a fact of consequence to these issues more or less probable, and courts exclude references to similar irrelevant evidence.  *See, e.g.*, *Abstrax, Inc. v. Dell, Inc.*, No. 07-cv-221, 2009 WL 10677355, at *2 (E.D. Tex. Oct. 9, 2009) (granting defendant's motion *in limine* to exclude "pejorative statements, testimony, or comment regarding foreign operations or reasons behind outsourcing," including references to defendant as "'un-American' and outsourcing jobs or that [defendant] has moved operations to or has operations in foreign countries, such as India"); *Happel v. Wal-Mart Stores, Inc.*, No. 02-cv-7771, 2007 WL 495277, at *7 (N.D. Ill. Feb. 9, 2007) (granting motion *in limine* to prohibit references to defendant participating in "global outsourcing," which has "no place in this litigation").

Even if Cognizant outsourcing jobs or using inexpensive foreign labor had any tendency to make the allegations in the Indictment more or less probable, the risk of unfair prejudice to Mr. Coburn substantially outweighs any probative value

and should be excluded.  Fed. R. Evid. 403.  For example, in *Abstrax*, the plaintiff

argued that Dell's outsourcing of jobs was directly relevant to its claim of patent

infringement under 35 U.S.C. § 271(g), which specifically covers the importation of

goods into the United States from foreign countries.  2009 WL 10677355 at *2; 35

U.S.C. § 271(g).  Yet, despite the relevance of Dell's foreign operations to the matter,

the court granted its motion *in limine* to exclude "pejorative statements, testimony,

or comment regarding foreign operations or reasons behind outsourcing."  *Id.*; *see

also Draper v. Airco, Inc.*, 580 F.2d 91, 95 (3d Cir. 1978) (noting that "there must

be restraints against blatant appeals to bias and prejudice"); Order on Motions *In

Limine* at 2, *Ford Motor Company v. Versata Software, Inc.*, No. 15-cv-10628 (E.D.

Mich. Aug. 8, 2022), ECF No. 866 (granting motion *in limine* to exclude "any

references, evidence, testimony . . . , arguments regarding, or inquiries attempting to

elicit testimony regarding foreigners, foreign employees, employees with

'unpronounceable names,' 'layoffs,' 'downsizing,' and 'outsourcing'"); *Epic Sys.

Corp. v. Tata Consultancy Servs. Ltd.*, No. 14-cv-748, 2016 WL 1179228, at *12

(W.D. Wis. Mar. 23, 2016) (granting motion *in limine* to exclude references to

"'outsourcing' . . . given that it has become a loaded term"); *Tyco Healthcare Grp.

LP v. Applied Med. Res. Corp.*, No. 9:09-cv-176, 2011 WL 7563868, at *1 (E.D.

Tex. Sept. 23, 2011) (granting motion *in limine* to exclude referring to plaintiff's

foreign headquarters).

14

We ask the Court to exclude from trial any evidence or arguments regarding Cognizant outsourcing jobs or utilizing inexpensive foreign labor in India.

## III.   MOTION *IN LIMINE* NO. 3:  THE COURT SHOULD EXCLUDE ANY REFERENCE TO, OR EVIDENCE ABOUT, MR. COBURN'S DECISIONS OR VIEWS RELATING TO COGNIZANT'S COMPLIANCE BUDGET.

Mr. Coburn moves to prohibit the government from referencing or offering evidence of Mr. Coburn's decisions or views relating to Cognizant's compliance budget.  Such evidence should be excluded as not relevant to the offenses charged in the Indictment, and any probative value is substantially outweighed by the danger of unfair prejudice, confusing the issues, misleading the jury, and wasting time.  *See* Fed. R. Evid. 401 and 403.

The defense anticipates that the government may attempt to introduce alleged statements by, and communications from, Gilbert and Mr. Schwartz concerning Mr. Coburn's decisions and views relating to Cognizant's compliance budget.  For example, Gilbert purportedly told the government in an interview that Mr. Coburn "was resistant to the idea of a compliance department" because he believed that it would have been "redundant."  Loonam Decl. Ex. 10 (DOJ-302-00000046) at 11. Gilbert also allegedly stated that Mr. Coburn "did not support a formalized compliance program" and "verbalized that a compliance program was 'unnecessary.'"  Loonam Decl. Ex. 11 (DOJ-302-00000058) at 1.  Mr. Schwartz also allegedly told DLA Piper that Mr. Coburn rejected Mr. Schwartz's compliance

15

budget request in 2015 and did not approve Mr. Schwartz's request for additional funding for compliance training software.  Loonam Decl. Ex. 9 (CTS_R17_0004324) at 5.[3]  The government has also included on its preliminary exhibit list an email exchange between Mr. Schwartz and Gilbert (among others) regarding Cognizant's compliance budget wherein Mr. Schwartz states that Mr. Coburn did not "want[ ] to do what needs to be done . . . ."  Loonam Decl. Ex. 12 (CTS-0100421) at 1.

Mr. Coburn's budgetary decisions made in the normal course of business are not relevant to the charged offenses since they do not make any facts of consequence more or less likely.  *See* Fed. R. Evid. 401; *see also Janes v. Chicago Bd. of Educ.*, No. 00-cv-6128, 2002 WL 31557619, at *10 (N.D. Ill. Nov. 18, 2002) (excluding evidence of board of education's decision to increase recruiting budget based upon the finding that it did not tend to show that the board engaged in age discrimination by terminating plaintiff).  Evidence concerning Mr. Coburn's decisions and views relating to Cognizant's compliance budget should be excluded because Mr. Coburn's purported conversations with Gilbert and Mr. Schwartz were about corporate finances, and not related to the bribery scheme alleged in the Indictment.

---

[3] To the extent that Mr. Schwartz seeks to establish his support for the compliance program (and components thereof) as part of his defense, we believe that this can be done without making prejudicial references to Mr. Coburn.  Evidence of Mr. Schwartz's support for the compliance program, in other words, need not include allegations relating to Mr. Coburn's views on the same.

Such evidence is also not relevant to the government's allegation that Defendants circumvented "controls relating to payments and approvals for accounts payable, and controls relating to Cognizant's SEC filings, such as Sarbanes-Oxley Quarterly Global 302 Certifications and Annual Reports on Form 10-K and Proxy Statement Disclosure Questionnaire."  Indict. at 23; Loonam Decl. at ¶ 15 (quoting letter from the government that clarifies the government's charging theory).  And, nothing in the Indictment alleges that Mr. Coburn failed to adequately fund Cognizant's compliance department.  In fact, Mr. Coburn was not the sole decisionmaker regarding distribution of financial resources at Cognizant.  *See e.g.*, Loonam Decl. Ex. 10 (DOJ-302-00000046) at 11 (noting that Mr. Coburn had Gilbert present her compliance program proposal to Cognizant's Board of Directors and that the Board subsequently approved the program); Loonam Decl. Ex. 13 (CTS-0100426) (Gilbert email to Mr. Schwartz, Karen McLoughlin, and Catriona Fallon attaching draft Compliance Update presentation for the Board of Directors); Loonam Decl. Ex. 14 (CTS-0100427) (Q1 Compliance Update slide deck).  Moreover, nothing in the Indictment suggests that the conduct alleged was a result of Cognizant's compliance program lacking the appropriate resources.  Indeed, the government has praised the "effectiveness of [Cognizant's] pre-existing compliance program," touting it as a reason for the government's decision not to prosecute Cognizant for conduct related

to the allegations in the Indictment.  Loonam Decl. Ex. 15 (DOJ-CTS-LTR-00000008) at 2.

The details of Cognizant's budget process with the appropriate context, such as the internal push and pull for resources common across businesses in the United States, would also require a mini-trial on the issue.  *See, e.g.*, Loonam Decl. Ex. 9 (CTS_R17_0004324) at 5 ("Coburn told Schwartz with margin pressures he could only approve the base yearly increase amount of 10–12% for all of Legal."); Loonam Decl. Ex. 10 (DOJ-302-00000046) at 12 (Gilbert explaining that Cognizant had an enterprise risk management function and internal auditors and noting that the legal department was responsible for anti-bribery compliance); Loonam Decl. Ex. 11 (DOJ-302-00000058) at 2 (Gilbert stating that Mr. Coburn was "very expense conscious" and was reluctant to utilize outside legal support functions "because of the added costs"); *see also Carroll v. Clifford Twp.*, No. 12-cv-0553, 2014 WL 901126, at *3 (M.D. Pa. Mar. 7, 2014) (excluding evidence of budget reductions because it would confuse the issues and "cause the parties to re-litigate the legitimacy" of defendant's budgetary decisions).

As such, even if evidence concerning Mr. Coburn's decisions and views relating to Cognizant's compliance budget was minimally probative, it should be excluded because it would only serve to mislead and confuse the jury, waste time, and unfairly prejudice Mr. Coburn.  *See* Fed. R. Evid. 401 and 403.

IV.    **MOTION *IN LIMINE* NO. 4:  THE COURT SHOULD EXCLUDE ANY REFERENCE TO, OR EVIDENCE ABOUT, MR. COBURN'S COMPENSATION WHILE EMPLOYED AT COGNIZANT, AND HIS NET WORTH.**

Mr. Coburn moves to prohibit the government from referencing or offering evidence of Mr. Coburn's compensation while employed at Cognizant and overall net worth.  Such references are irrelevant to the charges in the Indictment, serve no purpose other than to prejudice Mr. Coburn, and should be excluded.  *See* Fed. R. Evid. 401 and 403.

Mr. Coburn's compensation and net worth are irrelevant because they do not make it more or less likely that he or Mr. Schwartz authorized Cognizant India to authorize L&T to pay a bribe or authorized Cognizant India to reimburse L&T to pay a bribe.  Where, as here, Defendants' compensation and net worth do not bear directly on allegations against them, courts frequently exclude evidence of such issues.  *See, e.g.*, *SEC v. Goldstone*, No. 12-cv-0257, 2016 WL 3654273, at *12 (D.N.M. June 13, 2016) (granting motion *in limine* to exclude references to defendant's wealth and explaining that "the default rule is not to admit evidence of wealth, because it is usually irrelevant under Rule 401 and unfairly prejudicial under Rule 403"); *United States v. Ferguson*, No. 06-cr-137, 2007 WL 4240782, at *1 (D. Conn. Nov. 30, 2007) (holding the defendant's salary and bonuses "inadmissible because it is irrelevant to the charges against him," and explaining defendant's "salary and bonuses were not affected by [his employer]'s stock price [and they] are

19

not probative of any financial incentive [defendant] may have had to participate" in the alleged crime); *L-3 Commc'ns Corp. v. OSI Sys., Inc.*, No. 02-cv-9144, 2006 WL 988143, at *6 (S.D.N.Y. Apr. 13, 2006) (precluding "argument and examination regarding [defendant's CEO's] wealth and lifestyle" because "[e]vidence regarding this topic is clearly irrelevant"); *United States v. Hawkins*, 360 F. Supp. 2d 689, 694–96 (E.D. Pa. 2005) (prohibiting evidence of defendant's "balance sheet net worth" because defendant's financial condition was a "collateral" issue that did not bear directly on transactions relevant to the indictment); *In re Worldcom, Inc. Sec. Litig.*, No. 02-cv-3288, 2005 WL 491399, at *2 (S.D.N.Y. Mar. 3, 2005) (excluding references to party's "net worth, financial situation, any entity that he owns, and his family's wealth").

Courts routinely exclude evidence of a defendant's financial condition as substantially more prejudicial than probative, confusing, and wasting time.[4]  *See United States v. Wilmington Tr. Corp.*, No. 15-cr-23, 2017 WL 4416354, at *9 (D. Del. Oct. 5, 2017) (excluding evidence of defendants' "salary, bonuses, or any other financial recompense" under Rule 403); *Kinsey v. Cendant Corp.*, 588 F. Supp. 2d 516, 518 (S.D.N.Y. 2008) (finding that compensation package's limited relevance

---

[4] Courts of Appeals have reversed convictions where the government engages in a "persistent appeal to class prejudice."  *See, e.g.*, *United States v. Stahl*, 616 F.2d 30, 33 (2d Cir. 1980) (reversing judgment of conviction despite "curative instructions by the trial court," which were not "sufficient to eliminate the taint").

"is outweighed by the unfair prejudice that would result from its admission" and prohibiting parties from "argu[ing] to the fact finder's potential economic sympathies or prejudices"); *L-3 Commc'ns Corp.*, 2006 WL 988143, at *6 (precluding "argument and examination regarding [defendant's CEO's] wealth and lifestyle" because "its inclusion would be unfairly prejudicial"); *Hawkins*, 360 F. Supp. 2d at 696 (granting motion to exclude evidence as to defendant's "'balance sheet net worth' because that would open a whole line of collateral evidence, both on defense and sur rebuttal, as the potentially complex and perhaps indeterminable issue as to exactly what was [defendant]'s financial condition at a particular point in time, an issue that is collateral in this case").

Moreover, Mr. Coburn's compensation structure was complex in both design and practice. *See, e.g*., Loonam Decl. Ex. 16, Cognizant, 2014 Definitive Proxy Statement 43–50, 56 (2014); Loonam Decl. Ex. 17, Cognizant, 2015 Definitive Proxy Statement 35–41, 47 (2015). To put the details of Mr. Coburn's actual compensation, and how that compensation was reached in practice, before the jury with the appropriate context would require a mini-trial on the issue.

Because evidence of Mr. Coburn's compensation and net worth will prejudice him by improperly appealing to class bias, and will cause confusion and time-consuming mini-trials to rebut such evidence, the Court should exclude it.

21

## V.     MOTION *IN LIMINE* NO. 5: THE COURT SHOULD EXCLUDE ANY REFERENCE TO, OR EVIDENCE ABOUT, MR. COBURN'S DECISION NOT TO SIT FOR A SECOND INTERVIEW WITH DLA PIPER UNDER THE UNREASONABLE TERMS COGNIZANT SOUGHT TO IMPOSE AND THE CIRCUMSTANCES OF HIS SUBSEQUENT RESIGNATION.

Mr. Coburn moves to exclude evidence regarding the immediate circumstances leading to his decision to resign from Cognizant and to not participate in a second compelled interview during Cognizant's internal investigation, under the unreasonable terms that Cognizant and DLA Piper insisted on imposing.[5] Any evidence on these topics should be excluded because it is not relevant to the charged offenses and any probative value is substantially outweighed by the danger of unfair prejudice, confusing the issues, misleading the jury, and wasting time. *See* Fed. R. Evid. 401 and 403.

As part of its internal investigation and effort to ingratiate itself to the government, Cognizant, through its counsel DLA Piper, unilaterally set unreasonable ground rules for its second interview of Mr. Coburn.[6] Seeking to

---

[5] The jury will of course come to understand that Mr. Coburn resigned from Cognizant on September 27, 2016, and that he no longer works for the company.

[6] The details of Cognizant's internal investigation are addressed at length in Defendants' joint briefing filed in connection with the *Garrity* and *Connolly* motions. *See* Br. Supp. Def. Coburn's Mot. Compel Brady Searches, Suppress, and Other Relief, ECF. No. 433 ("Coburn *Garrity* Br."); *see also* Order Denying Mot. to Compel, to Suppress, and for Other Relief (July 20, 2023), ECF No. 495 ("*Garrity* Order"). After hiring DLA Piper to conduct its internal investigation in May 2016, Cognizant immediately pursued a strategy to secure a declination from the

control any record or narrative coming out of the interview, Cognizant prohibited

Mr. Coburn's lawyer from speaking or taking notes at the second scheduled

interview.  Coburn *Garrity* Br. at 15–16; *see also Garrity* Order at 4–5 (describing

the conditions imposed by DLA Piper for Mr. Schwartz's first and second interviews,

which were imposed on Mr. Coburn's second interview).   These terms were

unacceptable to Mr. Coburn's counsel.  *See* Coburn *Garrity* Br. at 17.  Mr. Coburn

knew that he was required to agree to Cognizant's demands or face termination.[7]  *Id.*

at 14–15; *see also Garrity* Order at 3–4.  On the advice of counsel, based on

Cognizant's draconian requirements, Mr. Coburn canceled the follow-up interview

and simultaneously resigned from Cognizant.  *See* Coburn *Garrity* Br. at 16–17;

*Garrity* Order at 6.

Under these circumstances, Mr. Coburn's decision to resign rather than sit for

a second interview is not probative of any issue properly before the jury, but rather

only of his choice to follow his counsel's advice and remain silent in the face of

---

government pursuant to the DOJ FCPA Pilot Program by helping the government
prosecute Mr. Coburn and Mr. Schwartz.

[7] As recognized by the Court in its recent *Garrity* ruling, under the terms of
Cognizant's employee policies and Mr. Coburn's employment agreement, which
mandated cooperation with the investigation for him to maintain his employment at
Cognizant, Mr. Coburn had no choice but to participate in the interview pursuant to
DLA Piper's terms or terminate his employment at Cognizant.  *Garrity* Order at 3–
4; *see also id.* at 11 ("[T]he record establishes that the interviews of Coburn and
Schwartz by DLA were compelled.").

Cognizant's unreasonable restrictions. Even if evidence concerning the circumstances of Mr. Coburn's resignation and his refusal to sit for a second interview were somehow minimally probative, it should still be excluded because any probative value is substantially outweighed by the danger of unfair prejudice, confusion, delay, and wasted time. *See* Fed. R. Evid. 403. In *O'Laughlin v. O'Brien*, for example, the First Circuit, in reversing the defendant's conviction, stated that evidence that the defendant was "reluctant to come down to the police station and displayed some agitation during the interview" was of "minimal probative value" as to whether the defendant committed the charged offenses. 568 F.3d 287, 303 (1st Cir. 2009). Here too, it would be an "impermissible inferential leap" for a jury to find the circumstances surrounding Mr. Coburn's resignation and his refusal to sit for a second interview "significantly probative." *Id.*

Moreover, admitting the evidence would be certain to cause a mini-trial concerning the reasons for Mr. Coburn's decision and could infringe on Mr. Coburn's privileged communications with his counsel. This lengthy, unnecessary, and confusing sideshow could involve taking evidence concerning the repressive conditions Cognizant imposed on Mr. Coburn, how those conditions deviated from normal practice, how counsel interpreted Cognizant's conditions, and the advice that

counsel gave to Mr. Coburn.[8]  All of these factors led to Mr. Coburn cancelling the second interview.  The balancing test of Rule 403 falls heavily in favor of excluding evidence regarding the immediate circumstances leading to Mr. Coburn's decision to resign from Cognizant and to not participate in a second compelled interview during Cognizant's internal investigation.  *See, e.g.*, *United States v. Jones*, No. 16-cr-516, 2017 WL 1591855, at *5 (D.N.J. May 1, 2017) (McNulty, J.) (excluding minimally probative evidence that was "substantially outweighed by the prejudicial emotional impact" and which would "open the door to the [other party] responding by instituting a collateral mini-trial," and finding such evidence "would result in jury confusion, waste of time, and undue delay, within the meaning of Rule 403").

In addition, we acknowledge the Court's decision finding that Cognizant's internal investigation was not government action.  *See generally Garrity* Order (holding the same).  Nevertheless, the admission of evidence regarding Mr. Coburn's decision not to sit for a second compelled interview, after Cognizant began coordinating its investigative efforts with the government, would violate his Fifth

---

[8] Mr. Coburn notes that Mr. Schwartz sat for two interviews with DLA Piper under these conditions and may wish to place evidence of the conditions under which he did so before the jury.  Mr. Schwartz is obviously differently situated from Mr. Coburn in this regard.  If evidence from Mr. Schwartz's interviews is admitted, Mr. Coburn believes that it would be possible to admit evidence of the conditions of Mr. Schwartz's interviews, while excluding evidence of Mr. Coburn's refusal to sit for a second interview under the same conditions.

Amendment privilege against self-incrimination.  United States Courts of Appeals have held that the government may not admit as substantive evidence of guilt a defendant's silence during a noncustodial, pre-*Miranda* interview.  *See, e.g.*, *United States v. Okatan*, 728 F.3d 111, 120 (2d Cir. 2013) (holding that during a noncustodial interview, when "an individual is interrogated by an officer, even prior to arrest, his invocation of the privilege against self-incrimination and his subsequent silence cannot be used by the government in its case in chief as substantive evidence of guilt"); *Ouska v. Cahill–Masching*, 246 F.3d 1036, 1049 (7th Cir. 2001) (holding that "us[ing] [defendant's] pre-arrest, pre-*Miranda* silence as an improper inference of her guilt" amounted to constitutional error); *Combs v. Coyle*, 205 F.3d 269, 283 (6th Cir. 2000) (holding that "the use of a defendant's prearrest silence as substantive evidence of guilt violates the Fifth Amendment's privilege against self-incrimination," and explaining that the Fifth Amendment does not "come[] into play only when a defendant is taken into custody, for it would eviscerate the privilege to say that, although a defendant's post-custody silence may not be used as substantive evidence against him, a defendant's pre-custody silence may"); *see also United States v. Waller*, 654 F.3d 430, 437 n.5 (3d Cir. 2011) (noting without deciding that the use of defendant's "*pre*-arrest silence as substantive evidence of guilt" may give rise to "constitutional concerns") (citing *Combs*, 205 F.3d at 283).

The Court should exclude evidence regarding the immediate circumstances leading to Mr. Coburn's decision to resign from Cognizant and to not participate in a second compelled interview during Cognizant's internal investigation. Any evidence regarding these topics is not relevant to the charged offenses. And, if there is any minimal probative value, it is substantially outweighed by the danger of unfair prejudice, confusing the issues, misleading the jury, and wasting time. This evidence should therefore be excluded.

## VI.   MOTION *IN LIMINE* NO. 6:   THE COURT SHOULD EXCLUDE REFERENCES TO, OR EVIDENCE ABOUT, MR. SCHWARTZ'S PURPOTED NOTES FROM TWO VIDEO CALLS ON APRIL 21 AND 22, 2014.

The government alleges that during videoconference calls on April 21 and 22, 2014, Mr. Coburn, Mr. Schwartz, Srimanikandan Ramamoorthy (the government's main witness), and Sridhar Thiruvengadam discussed a corrupt payment to a government official in India. *See* Indict. ¶¶ 12, 13. In its Opposition to Defendants' Motions to Dismiss and for a Bill of Particulars (Dec. 19, 2019), ECF No. 61 ("Gov't Bill of Particulars Opp."), the government claimed that Mr. Schwartz "took contemporaneous notes of the April 2014 video call communications," that "those notes corroborate witness testimony and further confirm the details of the bribe demand," and that the notes "demonstrate exactly what occurred during the calls." *See id.* at 8–9. The government will undoubtedly argue that statements allegedly made during the April 21 and 22, 2014 video calls are nonhearsay statements made

in furtherance of a conspiracy.  This motion does not address those statements, but rather Mr. Schwartz's purported notes, which is a separate statement.

The government should be precluded from offering into evidence or making any argument about the purported notes because the notes are unreliable, inadmissible hearsay, and substantially more unfairly prejudicial than probative.  *See* Fed. R. Evid. 401, 403, 801, and 802.

### A.     The Purported Notes Are Unreliable.

The notes are unreliable on their face.  The government asserts that these are notes of video calls in April 2014.  Gov't Bill of Particulars Opp. at 7–9.  To be clear, that is not apparent from the text of the notes themselves.  Assuming these notes were taken in connection with the April 2014 video communications, the notes indicate, contrary to the government's theory, that the government's witness Ramamoorthy did not participate in any of the communications reflected in the notes. *See* Loonam Decl. Ex. 18 (CTS-0000123).

The notes consist of two sections.  The first section contains sixteen bullets under the heading "Gordon Srihdar"—presumably Coburn and Thiruvengadam. The government has asserted that this top section reflects Mr. Schwartz's notes of the video calls between Mr. Coburn, Mr. Schwartz, Ramamoorthy, and Thiruvengadam on April 21 and April 22.  ECF No. 61 at 8 ("Schwartz took contemporaneous notes of the April 2014 video call communications").  The second

section consists of four bullet points under the heading "Lakshmi," presumably Lakshmi Narayanan, the Vice Chair of Cognizant's Board of Directors in April 2014. *Id.* The government's entire case is premised on the allegation that Ramamoorthy participated in the April 21 and April 22 calls, but the notes that purportedly "demonstrate exactly what occurred on those calls," Gov't Bill of Particulars Opp. at 9, do not reflect his participation in the calls. Only Mr. Coburn and Thiruvengadam are listed as participants. The notes do not indicate who said what to whom. The notes do not even indicate if they reflect Mr. Schwartz's own thoughts and knowledge as opposed to the statements made by others. The bullets in the notes are clipped phrases and would be certainly incomplete if they were notes of video calls as the government asserts. Moreover, the numbered bullets are not sequential, and jump from bullet 14 to bullet 16, with bullet 15 missing.

In short, the notes are facially unreliable. Assuming, as we must for purposes of the government's case, that Mr. Schwartz does not testify at trial to shed light on the notes, it is exactly this scenario that the rule against hearsay was meant to protect against. *See generally Chambers v. Mississippi*, 410 U.S. 284, 298 (1973) ("Out-of-court statements are traditionally excluded because they lack the conventional indicia of reliability: they are usually not made under oath or other circumstances that impress the speaker with the solemnity of his statements; the declarant's word is not subject to cross-examination; and he is not available in order that his demeanor

and credibility may be assessed by the jury.").  Accordingly, the notes should be excluded from trial.

### B.   The Purported Notes Are Inadmissible Hearsay.

The government asserts that the notes are Mr. Schwartz's written out-of-court statement of "exactly what occurred during the calls."  *See* Gov't Bill of Particulars Opp. at 9.  That, of course, is offering the notes for a hearsay purpose.  The notes do not qualify as nonhearsay as a co-conspirator statement under Federal Rule of Evidence 801(d)(2)(E).  To constitute nonhearsay under the Rule, "a court must determine, by a preponderance of the evidence, that the statement sought to be admitted was made in furtherance of the conspiracy."  *United States v. Kemp*, 580 F. App'x 138, 142 (3d Cir. 2014) (citing *United States v. McGlory*, 968 F.2d 309, 333 (3d Cir. 1992)).

Here, the notes themselves do not qualify as nonhearsay under Rule 801(d)(2)(E) because they did not further any of the alleged goals of the conspiracy. According to the Indictment, the goals of the conspiracy were "improperly securing and obtaining a required planning permit for the KITS Campus by bribing one or more government officials in India; falsely recording payments relating to the bribe on Cognizant's books, records, and accounts; and circumventing and failing to implement Cognizant's internal accounting controls."  Indict. ¶ 28.  But there is no evidence the notes were used for anything or viewed by anyone in furtherance of the

30

conspiracy.  To the contrary, as courts around the country take note every day when instructing juries, conspiracies by their nature are secret.  *See* 2 Kevin F. O'Malley et al., Federal Practice & Instruction § 31:04 (6th ed. 2023) ("[A] conspiracy is usually a secret if the purpose is to break the law.").  The notes are antithetical to furthering any conspiracy.

Because the notes, whatever they actually represent, were not in furtherance of the alleged conspiracy, they do not qualify as nonhearsay under Rule 801(d)(2)(E) and should be excluded pursuant to Federal Rule of Evidence 802.

### C.     The Probative Value of the Purported Notes Is Outweighed By Risk of Prejudice, Confusion, and Misleading the Jury.

Even if the government can establish that the purported notes by Mr. Schwartz qualify as nonhearsay or that an exception to the rule against hearsay applies, the probative value of the notes is substantially outweighed by the risk of unfair prejudice, confusing the issues, and misleading the jury.  Fed. R. Evid. 403.

Assuming as we must, that Mr. Schwartz will not testify at trial, Mr. Coburn will have no opportunity to question Mr. Schwartz about the notes.  As discussed *supra*, the notes are unreliable on their face, and do not reflect whether they contain Mr. Schwartz's internal thoughts or statements of others, who may have said what and to whom, or any response to the statements in the notes.  The notes are obviously incomplete.

Moreover, the second half of the notes, purportedly of a call with Narayanan, appears to contradict the government's theory that Mr. Coburn and Mr. Schwartz authorized a bribe payment.  Those notes reflect bullets that state: "We are taking the right approach," "Right stand for us to say their problem," and, "Anything other than real estate, we should not pay."   Loonam Decl. Ex. 18 (CTS-0000123). According to a DLA interview memorandum, Mr. Schwartz allegedly told counsel for Cognizant during the internal investigation that he interpreted the notes to "mean that they were not paying a bribe."  Loonam Decl. Ex. 8 (CTS_R17_0004363) at 16.

Courts routinely exclude personal notes under Rule 403.  In *Devine v. Pittsburgh Board of Public Education*, the plaintiff alleged that she was terminated by her employer, a public school district, because of her race.  No. 13-cv-220, 2015 WL 7871059, at *1–2 (W.D. Pa. Dec. 3, 2015).  In support of her case, plaintiff sought to admit notes taken by a defendant, the principal of the school from which she was terminated, during a presentation on racial equity.  *Id.* at *2.  Both in its initial decision on the parties' motions *in limine*, and on the plaintiff's motion for reconsideration, the court held that the notes should be excluded because "it is unclear whether the notes . . . reflect [the defendant's] own thoughts or merely record the content of [other] speakers," and the defendant "testified that she has no memory regarding" the notes, which the court concluded would result in "unfair prejudice, confusion, misleading the jury, undue delay, waste of time and cumulative

32

evidence." *Id.*; *see also Youssef v. Lynch*, No. 11-cv-1362, 2016 WL 2771803, at \*2 (D.D.C. May 12, 2016) (excluding unredacted notes under Rule 403); *Galaxy Computer Servs., Inc. v. Baker*, 325 B.R. 544, 558 (E.D. Va. May 27, 2005) (excluding portion of notes because of "a genuine risk that the jury will be misled by the references in the notes").  Mr. Schwartz's alleged notes are similarly unclear as to what they purport to record and, because it cannot be assumed that Mr. Schwartz will testify, the risk of unfair prejudice, confusion, and misleading the jury is acute, as in *Devine* where the defendant had no memory of the notes.  As such, even assuming that Mr. Schwartz's alleged notes from the April 2014 calls do qualify as nonhearsay under Rule 801(d)(2)(E), they should be excluded under Rule 403.

## VII.   MOTION *IN LIMINE* NO. 7:  THE COURT SHOULD EXCLUDE MR. SCHWARTZ'S ALLEGED PRIOR STATEMENTS CONCERNING MR. COBURN.

Mr. Schwartz allegedly made certain statements concerning Mr. Coburn that are inadmissible against Mr. Coburn on multiple grounds, including the prohibition against hearsay, the Confrontation Clause, relevance, and the risk of unfair prejudice.  U.S. Const. amend. VI; Fed. R. Evid. 401, 403, 802.

### A.    Mr. Schwartz's Alleged Statements Concerning Mr. Coburn.

During the course of the DLA Piper investigation, Mr. Schwartz allegedly made the following statements concerning Mr. Coburn:

33

- Mr. Schwartz allegedly complained to Gilbert that Mr. Coburn was "unpolic[e]able." Loonam Decl. Ex. 10 (DOJ-302-00000046) at 6.

- Mr. Schwartz allegedly told DLA Piper investigators that Mr. Coburn was "very detail-oriented." Mr. Schwartz also purportedly said Mr. Coburn was "in the weeds" with respect to budget management. Mr. Schwartz allegedly described Mr. Coburn as being "super into details." Loonam Decl. Ex. 9 (CTS_R17_0004324) at 4.

- Mr. Schwartz allegedly told DLA Piper investigators that Mr. Coburn knew he could not pay a bribe directly or indirectly. Loonam Decl. Ex. 9 (CTS_R17_0004324) at 9.

- Mr. Schwartz allegedly told DLA Piper investigators of challenges in getting approval from Mr. Coburn regarding the compliance budget. Mr. Schwartz purportedly said he thought the compliance function was underfunded. Mr. Schwartz allegedly wanted to break out compliance in 2015 as a separate line item in the budget, but "it did not go where [he] wanted it to go" with Mr. Coburn. Loonam Decl. Ex. 9 (CTS_R17_0004324) at 5.

- Mr. Schwartz allegedly told DLA Piper investigators that he remembered only one conversation with Mr. Coburn about payment of a bribe—he believed in 2014—and he did not remember the word

34

"bribe" being used.  Mr. Schwartz purportedly stated that Mr. Coburn was having a difficult time getting approvals on a real estate transaction.  Mr. Schwartz allegedly said that, at the time, he did not know what facility the issue concerned, and that Mr. Coburn asked two questions.  First, Mr. Coburn allegedly asked, "I can't make a payment to help with these approvals?"  Mr. Schwartz allegedly replied, "correct."  Second, Mr. Coburn purportedly asked, "And I can't do that through a third party?"  Mr. Schwartz again allegedly replied, "correct." Mr. Schwartz allegedly told DLA investigators that he did not remember which facility the conversation concerned.  Loonam Decl. Ex. 9 (CTS_R17_0004324) at 9.

- Mr. Schwartz allegedly told DLA Piper investigators that, in order to confirm that his recollection was correct, he asked Mr. Coburn, around the time of Mr. Schwartz's conversation with DLA Piper, about the substance of Mr. Coburn and Mr. Schwartz's alleged 2014 conversation concerning the permitting issue.  Loonam Decl. Ex. 9 (CTS_R17_0004324) at 10.

- Mr. Schwartz also allegedly told DLA Piper investigators that, in hindsight, given what he knows now, Mr. Coburn's asking him about

the possibility of such a payment was "brazen."  Loonam Decl. Ex. 9
(CTS_R17_0004324) at 9.

- Though Mr. Schwartz allegedly told DLA Piper investigators that the
  alleged 2014 meeting in Mr. Coburn's office involved only Mr.
  Schwartz and Mr. Coburn, Loonam Decl. Ex. 9 (CTS_R17_0004324)
  at 9, Mr. Schwartz also allegedly told Gilbert that, in meeting with Mr.
  Coburn, Mr. Schwartz joined a call with others that was already taking
  place, Loonam Decl. Ex. 10 (DOJ-302-00000046) at 4.

- Mr. Schwartz allegedly expressed concerns to Gilbert that Mr. Coburn
  was going to throw Mr. Schwartz under the bus to protect himself.
  Loonam Decl. Ex. 10 (DOJ-302-00000046) at 8.

### B.   Mr. Schwartz's Alleged Statements Are Inadmissible Against Mr. Coburn Because They Are Hearsay.

Mr. Schwartz's alleged statements are inadmissible against Mr. Coburn
because they are hearsay.  The alleged statements do not qualify as nonhearsay under
Rule 801(d)(2)(E) because they were neither made during nor in furtherance of the
alleged conspiracy.   Mr. Schwartz's alleged statements to other Cognizant
employees or DLA Piper were not made until August and September 2016, over six
months after the conspiracy alleged by the government ended in January 2016 per
the Indictment.  Indict. ¶27; s*ee United States v. Ammar*, 714 F.2d 238, 253 (3d Cir.
1983) ("A conspiracy is presumed to continue until its objective is achieved.")

36

(citation omitted); *see also Krulewitch v. United States*, 336 U.S. 440, 442 (1949) ("This hearsay declaration, attributed to a co-conspirator, was not made pursuant to and in furtherance of objectives of the conspiracy charged in the indictment, because if made, it was after those objectives either had failed or had been achieved.").

Nor did Mr. Schwartz's alleged statements further any of the alleged goals of the conspiracy. *See Dutton v. Evans*, 400 U.S. 74, 81 (1970) ("It is settled that in federal conspiracy trials the hearsay exception that allows evidence of an out-of-court statement of one conspirator to be admitted against his fellow conspirators applies only if the statement was made in the course of and in furtherance of the conspiracy, and not during a subsequent period when the conspirators were engaged in nothing more than concealment of the criminal enterprise"); *Grunewald v. United States*, 353 U.S. 391, 401–02 (1957) ("The crucial teaching of *Krulewitch* and *Lutwak* is that after the central criminal purposes of a conspiracy have been attained, a subsidiary conspiracy to conceal may not be implied from circumstantial evidence showing merely that the conspiracy was kept a secret and that the conspirators took care to cover up their crime in order to escape detection and punishment."); *Lutwak v. United States*, 344 U.S. 604, 617–18 (1953) ("There can be no furtherance of a conspiracy that has ended.  Therefore, the declarations of a conspirator do not bind the co-conspirator if made after the conspiracy has ended"); *United States v. Holland*, 76 F. App'x 452, 455 (3d Cir. 2003) (testimony by co-conspirator that third

co-conspirator regretted being involved in the murder was not in furtherance of the conspiracy, and therefore not admissible).  Because Mr. Schwartz's alleged actions and statements were not made during and in furtherance the conspiracy, they do not qualify as nonhearsay under Rule 801(d)(2)(E).

**C.**      **Admission of Mr. Schwartz's Alleged Statements During the Investigation Will Unduly Prejudice Mr. Coburn.**

The risk of unfair prejudice substantially outweighs the probative value of Mr. Schwartz's alleged statements. Examples of evidence which would substantially prejudice Mr. Coburn include Mr. Schwartz's alleged statements that Mr. Coburn was "unpolic[e]able" and Mr. Coburn was "brazen" in asking Mr. Schwartz about the possibility of a payment.  Loonam Decl. Ex. 10 (DOJ-302-00000046) at 6; Loonam Decl. Ex. 9 (CTS_R17_0004324) at 9.

**D.**      **Mr. Schwartz's Alleged Statements to DLA Piper During the Investigation Concerning Mr. Coburn Are Testimonial and Should be Excluded.  To the Extent Such Statements Are Not Excluded, They Should Be Sanitized.**

The statements that Mr. Schwartz allegedly made during the course of the DLA Piper investigation were testimonial and admitting them would violate the Confrontation Clause.  To the extent such statements are not excluded, they must be sanitized.

The Confrontation Clause of the Sixth Amendment guarantees a criminal defendant's right to be "confronted with the witnesses against him."  U.S. Const.

amend. VI.   "[A] defendant is deprived of his Sixth Amendment right of confrontation when the facially incriminating confession of a non-testifying defendant is introduced at their joint trial, even if the jury is instructed to consider the confession only against the codefendant."  *Richardson v. Marsh*, 481 U.S. 200, 207 (1987) (citing *Bruton v. United States*, 391 U.S. 123, 135–36 (1968)); *see also Johnson v. Superintendent Fayette SCI*, 949 F.3d 791, 795 (3d Cir. 2020) ("When a non-testifying co-defendant's statement is introduced, it is in effect the testimony of a witness who cannot be cross-examined.").  The Confrontation Clause applies only to testimonial hearsay.  *See United States v. Berrios*, 676 F.3d 118, 127 (3d Cir. 2012); *see also United States v. McIntosh*, 2022 WL 212310, at *2 (3d Cir. Jan. 25, 2022).

The Confrontation Clause prohibits the introduction of "testimonial" statements by non-testifying witnesses absent certain exceptions not relevant here. *See Crawford v. Washington*, 541 U.S. 36, 54 (2004).  To qualify as "testimonial," the statement must have a "primary purpose" of "establish[ing] or prov[ing] past events potentially relevant to later criminal prosecution." *Davis v. Washington*, 547 U.S. 813, 822 (2006); *see also Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 310 (2009) (quoting *Crawford*, 541 U.S. at 51) (explaining that a testimonial statement is one "made for the purpose of establishing or proving some fact").  When applying the "primary purpose" test, "courts should look to all of the relevant circumstances."

*Michigan v. Bryant*, 562 U.S. 344, 369 (2011).  Relevant factors include: (1) whether the statement was made during an ongoing emergency or instead to prove past events; (2) the formality of the interrogation or discussion; and (3) the questioner's identity.[9]  *Id.* at 370–78.

As to the first factor, courts consider whether the statement was made during an ongoing emergency or instead to prove a past event.  "Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency."  *Davis*, 547 U.S. at 822.  In contrast, statements "are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution."  *Id.*

As to the second factor, courts consider the "informality of the situation and the interrogation."  *Bryant*, 562 U.S. at 377.  "[F]ormality suggests the absence of an emergency and therefore an increased likelihood that the purpose of the investigation is to 'establish or prove past events potentially relevant to later criminal

---

[9] In *Davis*, the Supreme Court reserved deciding "whether and when statements made to someone other than law enforcement personnel are 'testimonial.'"  547 U.S. at 823 n.2.

prosecution[.]'" *Id.* at 366 (quoting *Davis*, 547 U.S. at 822). "A 'formal station-house interrogation,' like the questioning in *Crawford*, is more likely to provoke testimonial statements, while less formal questioning is less likely to reflect a primary purpose aimed at obtaining testimonial evidence against the accused." *Ohio v. Clark*, 576 U.S. 237, 245 (2015) (quoting *Bryant*, 562 U.S. at 377).

As to the third factor, courts evaluate the questioner's identity. Testimonial evidence is not limited to statements made to (or at the direction of) law enforcement, and the Supreme Court has "decline[d] to adopt a rule that statements to individuals who are not law enforcement officers are categorically outside the Sixth Amendment." *Id.* at 249.

Mr. Schwartz's alleged statements to DLA Piper are testimonial. *First*, Mr. Schwartz's alleged statements were made during the course of an internal investigation over two years after the events alleged in the Indictment. Rather than responding to an ongoing emergency, the purpose of DLA Piper's interrogation and Mr. Schwartz's purported responses were to "prove past events potentially relevant to later criminal prosecution." *Davis*, 547 U.S. at 822. In fact, four days after Mr. Schwartz's first interview with DLA Piper, Cognizant made a self-disclosure to the United States Department of Justice ("DOJ"), prompting an investigation and eventual criminal prosecution of Defendants. During Mr. Schwartz's second interview with DLA Piper, after the company began coordinating its investigation

with the government, DLA Piper's questions appeared to focus not only on proving past events but also on issues that would only be relevant to a criminal prosecution, such as whether a particular action constituted "willful blindness."[10]   Loonam Decl. Ex. 8 (CTS_R17_0004363) at 19.

*Second*, Mr. Schwartz's alleged statements were also made during formal interviews.   Mr. Schwartz was required to cooperate with the investigation by participating and answering DLA Piper's questions.   DLA Piper set strict rules for both interviews, requiring that Mr. Schwartz be represented by a single lawyer who was not allowed to speak or take notes during either interview.   *Garrity* Order at 4. According to DLA's memorandum of the interview, Mr. Schwartz was informed that Cognizant was investigating certain allegations, he was instructed to keep the interview confidential, and the interviews proceeded in formal question and answer format.   Furthermore, the second interview was conducted only after Cognizant

---

[10] As the Court recognized in its July 20, 2023 *Garrity* opinion, the only contemporaneous record of Mr. Schwartz's statements during the DLA interviews were DLA's attorney notes and memoranda.   *See* ECF No. 495 at 4 ("The DLA attorneys who interviewed Schwartz, including Buch, set and enforced strict ground rules for the interview, including prohibiting Schwartz from having more than one lawyer present and not allowing that lawyer to take notes or ask questions."). Defendants therefore take issue with each of the quotes attributed to Mr. Schwartz in DLA's records of such interviews, including the memorandum of the September 23, 2016 interview, and nothing in this motion should be construed as an acknowledgment by Defendants of the accuracy of DLA's records of the interviews.

made a self-disclosure to and began coordinating its investigation with the government.  *Id.* at 4–5.

Rather than the type of casual or spontaneous remarks that are non-testimonial, the circumstances of these interviews confirm that DLA Piper conducted formal interviews with the primary purpose of establishing past facts relevant to a later criminal prosecution.  *See Davis*, 547 U.S. at 822.[11]

*Third*, the questioner's identity and coordination with the government confirm that Mr. Schwartz's alleged statements are testimonial.  According to DLA's memorandum of the interview, at the outset of both interviews, Karl Buch—a former

---

[11] Courts and commentators have found that statements and reports are testimonial when created during an internal investigation that is disclosed to the government, triggering a criminal prosecution.  *See United States v. Cameron*, 699 F.3d 621, 644 (1st Cir. 2012) (finding reports created pursuant to standard Yahoo! business practice but which did not advance business purpose were also testimonial where (1) reports referred to an individual account suspected of containing images of child pornography; (2) reports were sent to non-government entity that forwards reports of child pornography to law enforcement; and (3) the primary purpose of reports was to establish past events clearly relevant to later criminal prosecution); *see also Melendez-Diaz*, 557 U.S. at 313 (finding analyst report stating substance defendant possessed was cocaine to be testimonial); Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 6634 (2d ed. updated April 2022) ("Companies routinely engage in in-house investigations that are designed to uncover internal wrongdoing without any knowledge of, or assistance by, law enforcement.  Undoubtedly, a prime purpose is to identify malefactors and terminate them as quickly as feasible, without law enforcement intervention (and the bad publicity that follows).  Nonetheless, if those same persons are criminally prosecuted it is likely that the internal report, recorded statements by witnesses, and other documents generated (created) during the investigation will be declared testimonial hearsay.").

Assistant United States Attorney in the very office prosecuting this case—informed

Mr. Schwartz that DLA Piper had been retained by Cognizant to investigate certain

allegations.  Following the first interview, Cognizant (through DLA Piper) self-

disclosed to the government and began closely coordinating on the investigation.

Like the reports that were provided to law enforcement through an intermediary in

*Cameron*, Mr. Schwartz's alleged statements to DLA Piper were relayed to the

government with the intention that they would assist in a criminal prosecution.  DLA

Piper's purpose in conducting this investigation and coordination with the

government confirm that Mr. Schwartz's alleged statements were made to someone

responsible for uncovering potential criminal behavior.  *See Clark*, 576 U.S. at 249.

1.   Admission of Mr. Schwartz's Testimonial Hearsay Statements
     Inculpating Mr. Coburn Will Violate *Bruton*.

A defendant's Sixth Amendment right to confrontation is violated when a

non-testifying codefendant's confession is introduced in a joint trial, and the

confession implicates the defendant.  *Bruton*, 391 U.S. at 137.  Even when the jury

is instructed not to consider the statement against the defendant, it "cannot accept

limiting instructions as an adequate substitute for petitioner's constitutional right of

cross-examination."  *Id.*   When such "powerfully incriminating extrajudicial

statements of a codefendant, who stands accused side-by-side with the defendant,

are deliberately spread before the jury in a joint trial," it is as if "there had been no

instruction at all."  *Id.* at 135–37.  In this scenario, "the risk that the jury will not, or

cannot, follow instructions is so great, and the consequences of failure so vital to the defendant, that the practical and human limitations of the jury system cannot be ignored." *Id.* at 135.

Here, Mr. Schwartz's alleged statements to DLA Piper directly implicate Mr. Coburn in the crimes alleged in the Indictment.  For example, when asked if he remembered a conversation with Mr. Coburn, Ramamoorthy, and Thiruvengadam about payment of a bribe, Mr. Schwartz is alleged to have responded that he recalled one conversation with Mr. Coburn during which Mr. Coburn asked if he could make a payment directly or indirectly to a government official to get approval to build a facility.  Loonam Decl. Ex. 8 (CTS_R17_0004363) at 10.  Mr. Schwartz is also alleged to have claimed that he told Mr. Coburn that no such payment could be made, and that Mr. Coburn never ignored Mr. Schwartz's advice.  *Id.*  And when asked by DLA Piper why Mr. Coburn asked these questions, Mr. Schwartz is alleged to have claimed that Mr. Coburn said that Cognizant was having trouble getting the requisite approvals.  Loonam Decl. Ex. 9 (CTS_R17_0004324) at 9.

> 2.    To the Extent Mr. Schwartz's Alleged Statements Are Not Excluded, They Must be Sanitized.

"[T]he Confrontation Clause is not violated by the admission of a nontestifying codefendant's confession with a proper limiting instruction when . . . the confession is redacted to eliminate not only the defendant's name, but any reference to his or her existence." *Richardson*, 481 U.S. at 211.  But "redactions

cannot be so ineffectual that they actually could signal to the jury that the co-defendant's name was deleted." *Superintendent Fayette SCI*, 949 F.3d at 796 (citing *Gray v. Maryland*, 523 U.S. 185, 195 (1998)). "[R]edactions that replace a proper name with an obvious blank, the word 'delete,' a symbol, or similarly notify the jury that a name has been deleted are similar enough to *Bruton's* unredacted confessions as to warrant the same legal results." *Gray*, 523 U.S. at 195. "[C]ourts should not apply a bright-line rule that such use [of redactions] will never violate *Bruton*." *Superintendent Fayette SCI*, 949 F.3d at 796; *see also Washington v. Sec'y Pa. Dep't of Corr.*, 801 F.3d 160, 167 (3d Cir. 2015) ("It is not enough to say that because there were redactions of [the defendant's] names that the rules from *Bruton* and *Gray* do not apply.").

The Supreme Court recently held that the admission of a non-testifying codefendant's confession did not violate the Confrontation Clause where the confession was appropriately modified and the jury was instructed to consider the confession only as to the codefendant. *Samia v. United States*, 143 S. Ct. 2004 (2023). To the extent the Court does not exclude Mr. Schwartz's alleged statements from the trial, his alleged statements must be sanitized.

## VIII. MOTION *IN LIMINE* NO. 8:   THE COURT SHOULD EXCLUDE CERTAIN OF MR. SCHWARTZ'S ALLEGED ACTIONS AND STATEMENTS MADE DURING THE INVESTIGATION.

Mr. Schwartz is alleged to have engaged in various actions and made statements during the investigation, including those that the government may seek to admit at trial as evidence of Mr. Schwartz's consciousness of guilt, that should be excluded.   Such alleged actions and statements are irrelevant, inadmissible, and highly prejudicial to Mr. Coburn, and the Court should exclude any evidence of them at trial.  *See* Fed. R. Evid. 401, 403, 801, and 802.

### A.    Mr. Schwartz's Other Alleged Actions and Statements During the Investigation.

During the investigation, Mr. Schwartz allegedly engaged in actions and made statements that should be excluded at trial.  For example:

- Mr. Schwartz allegedly claimed not to remember the call referenced in his notes discovered by DLA Piper investigators, but told DLA Piper that he did not like the way his notes looked now.  When asked about his interpretation of the notes, Mr. Schwartz purportedly responded, "It could be a payment to a government official."  Loonam Decl. Ex. 8 (CTS_R17_0004363) at 16.  When asked if his notes referred to hiding the alleged bribe payment in a change order request, Mr. Schwartz allegedly responded that "one could interpret it that way" and that "it is a red flag."  *Id.*  DLA Piper pushed further, allegedly eliciting from Mr.

Schwartz an admission that failure to pursue a red flag could constitute "willful blindness."  *Id.* at 19.

- During the investigation, Mr. Schwartz allegedly asked Gilbert if she remembered when Ramamoorthy "raised a bribe that needed to be paid."  Gilbert reportedly responded that she did not, to which Mr. Schwartz allegedly responded, "Oh you weren't part of that?"  Loonam Decl. Ex. 19 (CTS_R17_0004438) at 1.

- After reviewing certain documents with DLA Piper investigators, Mr. Schwartz allegedly interpreted the documents to indicate that certain individuals inflated the cost of the work to hide the incidental charges. Loonam Decl. Ex. 9 (CTS_R17_0004324) at 4.

- Mr. Schwartz allegedly stated that he was aware that the Chief Minister of Tamil Nadu was arrested for corruption and that there are probably similar issues in other parts of India.   Loonam Decl. Ex. 8 (CTS_R17_0004363) at 2.

- On a call with Gilbert concerning the internal investigation, Mr. Schwartz allegedly asked if he could speak to Gilbert "off the record." Loonam Decl. Ex. 20 (CTS_R17_0004423) at 2.

- Mr. Schwartz allegedly stated that a $300,000 potential payment to an Indian government official could not be a facilitation payment because

of its size and that if they payment had been made, "it would be a clear violation of the Foreign Corrupt Practices Act . . . ."  Loonam Decl. Ex. 8 (CTS_R17_0004363) at 3.

### B.    Purported Evidence of Mr. Schwartz's Consciousness of Guilt.

During the investigation, Mr. Schwartz allegedly engaged in actions and made statements that are inadmissible against Mr. Coburn, but which the government may try to admit to show Mr. Schwartz's consciousness of guilt.  For example, the government may seek to offer evidence that:

- After being removed from Cognizant's internal investigation, Mr. Schwartz allegedly repeatedly called or texted Gilbert and Cognizant's CEO Francisco D'Souza concerning the investigation.  Gilbert and D'Souza discussed Mr. Schwartz's outreach with DLA Piper investigators and took notes of certain of these purported conversations with Mr. Schwartz.  Loonam Decl. Ex. 21 (DOJ-DSOUZA-00000001) at 14; Loonam Decl. Ex. 22 (CTS_R17_0005515).

- During these interactions, Mr. Schwartz allegedly admitted to D'Souza that he had been on the April 2014 calls.  Loonam Decl. Ex. 23 (CTS_R17_0004320) at 1.  But Mr. Schwartz later allegedly told DLA Piper investigators that he did not tell D'Souza that he had been on the calls.  Loonam Decl. Ex. 9 (CTS_R17_0004324) at 10.

- Mr. Schwartz allegedly stated to Gilbert and implied to D'Souza during these interactions that Ramamoorthy had accused him of wrongdoing, before Mr. Schwartz had been told that Ramamoorthy had implicated him.  Loonam Decl. Ex. 10 (DOJ-302-00000046) at 4; Loonam Decl. Ex. 23 (CTS_R17_0004320) at 2.  Further, Mr. Schwartz allegedly told Gilbert that by "reading between the lines," he was of the opinion that Ramamoorthy must have been claiming to be unaware that bribes could not be paid through third parties.  Loonam Decl. Ex. 10 (DOJ-302-00000046) at 7.

- Mr. Schwartz also allegedly told Gilbert that the team on the ground in India was "desperate," and what they would say about Mr. Schwartz was unpredictable, as well as that he believed he was being accused by "bad people looking for a[] scapegoat.  Loonam Decl. Ex. 11 (DOJ-302-00000058) at 6; Loonam Decl. Ex. 20 (CTS_R17_0004423) at 2–3.

- Mr. Schwartz allegedly told DLA Piper investigators that he could not remember the April 2014 calls because he had eye surgery that week.  Loonam Decl. Ex. 8 (CTS_R17_0004363) at 12.  To impeach that statement, the government apparently intends to introduce evidence that Mr. Schwartz attended a Mets game that week.  Mr. Schwartz also

allegedly made statements to D'Souza around the time of his surgery that suggested the surgery was not high-risk and did not require significant recovery.  Loonam Decl. Ex. 24 (DOJ-302-00000021) at 7.

- Mr. Schwartz resigned rather than sit for a further interview with DLA Piper.  Brief Supp. Def. Schwartz's Mot. Suppress at 17 (July 8, 2022), ECF No. 431.

### C.   Mr. Schwartz's Alleged Actions and Statements During the Investigation Are Inadmissible and Unfairly Prejudicial.

Mr. Schwartz's alleged actions and statements are inadmissible and unfairly prejudicial.  For example, Mr. Schwartz's alleged statement that failure to pursue a "red flag" could constitute "willful blindness" would impermissibly infringe on the role of the Court.  Willful blindness is a legal term, *see* Third Circuit Model Criminal Jury Instruction, 5.06 Willful Blindness, and, as such, it is solely within the role of the Court to instruct the jury as to the law.  *Crowley*, 322 F. Supp 2d at 550 ("[I]t is the court's duty to explain the law to the jury . . . .").  Witness testimony or evidence as to a legal conclusion impermissibly encroaches on the role of the jury.  *See Cameron v. City of New York*, 598 F.3d 50, 62 (2d Cir. 2010) ("[W]itnesses may not present testimony in the form of legal conclusions.") (quotation marks and citations omitted); *United States v. Griffin*, 324 F.3d 330, 347 (5th Cir. 2003) ("[T]he record also reflects that [the lay witness] testified to her own interpretation of the law, which is error . . . ."); *see also United States v. Mallory*, 988 F.3d 730, 741 (4th Cir. 2021)

51

(affirming district court exclusion of attorney testimony "as to whether Defendants 'would have reason to know what the legal obligations were,' . . . testimony [that] presents a legal conclusion informing the jury about how it should apply the law, which is prohibited") (citations omitted); *United States v. Baskes*, 649 F.2d 471, 478 (7th Cir. 1980) (holding that a witness's opinion testimony was inadmissible when asked whether certain conduct was "unlawful" or "willful," which are "terms that demand an understanding of the nature and scope of the criminal law, [and the witness] . . . may feel that the legal standard is either higher or lower than it really is"). This is because such testimony "undertakes to tell the jury what result to reach, and thus attempts to substitute the [witness's] judgment for the jury." *Cameron*, 598 F.3d at 62 (quotation marks and citations omitted). Admitting evidence concerning Mr. Schwartz's alleged interpretation of what constitutes willful blindness creates a substantial risk that the jury adopts Mr. Schwartz's position, and undermines the admonition that jurors apply the law as instructed, not according to some other notion or opinion about what the law is.

Additional examples of evidence which would substantially prejudice Mr. Coburn include Mr. Schwartz purportedly asking if he could speak to Gilbert "off the record" on a call concerning the internal investigation and Mr. Schwartz allegedly interpreting documents he was shown by DLA Piper to indicate that certain

individuals inflated the cost of the work to hide the incidental charges.  Loonam Decl.

Ex. 20 (CTS_R17_0004423) at 2; Loonam Decl. Ex. 9 (CTS_R17_0004324) at 4.

> **D.    Mr. Schwartz's Alleged Actions and Statements Purportedly Evidencing His Consciousness of Guilt Are Irrelevant as to Mr. Coburn.**

Mr. Schwartz's alleged actions and statements during the investigation that

the government may claim reflect his consciousness of guilt are irrelevant and, thus,

inadmissible as to Mr. Coburn.   Fed. R. Evid. 401, 402.   Regardless of their

admissibility as to Mr. Schwartz, this evidence is irrelevant as to Mr. Coburn because

Mr. Schwartz's alleged statements and actions do not make the facts alleged as to

the charges against Mr. Coburn more or less likely.  Indeed, Mr. Schwartz's alleged

statements were not attributed in any way to Mr. Coburn, Mr. Schwartz did not make

these alleged statements at the direction of Mr. Coburn, and Mr. Coburn was not

present when Mr. Schwartz allegedly spoke to other Cognizant employees or DLA

Piper.   Because Mr. Schwartz's alleged statements and actions were in no way

prompted by or connected to Mr. Coburn, such evidence purportedly evincing

Mr. Schwartz's consciousness of guilt cannot be admitted against Mr. Coburn.  *See*

*United States v. Trala*, 386 F.3d 536, 544–46 (3d Cir. 2004), *judgment vacated on*

*other grounds*, 546 U.S. 1086 (2006).

In *Trala*, the Third Circuit found the admission of certain third-party false

statements to the police was "legal error" and not relevant to the defendant's

consciousness of guilt where the jury could "only speculate" as to whether the defendant had actually heard the third-party's false statements to the police such that the defendant could have corrected the third-party. *Id.* at 545–46.

As in *Trala*, Mr. Schwartz's alleged actions and statements are irrelevant and inadmissible against Mr. Coburn given that Mr. Coburn had no involvement in Mr. Schwartz's alleged actions, and Mr. Coburn was not present during Mr. Schwartz's alleged statements to investigators and Cognizant employees or otherwise involved in directing Mr. Schwartz to make such alleged statements. Because there is nothing tying Mr. Coburn to Mr. Schwartz's alleged statements, the purported evidence of Mr. Schwartz's consciousness of guilt is inadmissible against Mr. Coburn. *See id.*; *see also United States v. James*, No. 02-cr-0778, 2007 WL 1579978, at *2–*3 (E.D.N.Y. May 31, 2007) (denying government's motion to introduce evidence of co-defendant's consciousness of guilt due to risk of spillover prejudice to defendant, even with a limiting instruction that such evidence was inadmissible against defendant); *United States v. McVeigh*, 169 F.R.D. 362, 369 (D. Colo. 1996) (granting motion to sever despite government's request for limiting instruction that the jury could not consider evidence of co-defendant's consciousness of guilt "in your deliberations about [defendant]").

IX.   **A LIMITING INSTRUCTION WILL NOT CURE THE UNFAIR PREJUDICE AGAINST MR. COBURN.   THE ONLY FAIR AND CONSTITUTIONAL ALTERNATIVE TO EXCLUDING THE EVIDENCE IS SEVERANCE.**

Evidence and testimony concerning Mr. Schwartz's purported notes and Mr. Schwartz's alleged statements and actions during the DLA Piper investigation should be excluded from the trial entirely, not only against Mr. Coburn.  In the alternative, the Court should sever Defendants' trial.  If admitted at trial, Mr. Schwartz's purported notes and statements and activities during the investigation will require the jury to hear a significant volume of circumstantial evidence against Mr. Schwartz, including evidence likely to elicit an emotional response from the jury.   A jury cannot be expected to follow a limiting instruction and compartmentalize the evidence.  In these circumstances, limiting instructions are insufficient.  *See, e.g.*, *United States v. Scarfo*, No. 11-cr-740, 2012 WL 4120504, at *13 (D.N.J. Sept. 19, 2012), *aff'd*, 41 F.4th 136 (3d Cir. 2022) (explaining that the risk a jury cannot follow instructions and compartmentalize evidence "must be understood in light of the quantity of any alleged prejudicial evidence admitted and its limited admissibility with respect to the defendant seeking severance") (citation omitted); *United States v. Dougherty*, No. 19-cr-64, 2020 WL 6395464, at *3 (E.D. Pa. Nov. 2, 2020) ("Such instructions would require the jury to ignore weeks' worth of evidence against some defendants while simultaneously using that evidence against other defendants in coming to multiple verdicts."); *United States v. Bergrin*,

No. 09-cr-369, 2011 WL 6779548, at *3–*4 (D.N.J. Dec. 27, 2011) (granting motion to sever counts and finding that "any limiting instructions would likely be insufficient" where it "would be perhaps unavoidable—and merely human—for the jury to use the direct, explicit evidence [of one crime] to infer [the defendant's] guilt" for another crime, "regardless of any limiting instruction") (citation omitted)).

Therefore, if the Court allows substantial evidence against Mr. Schwartz of Mr. Schwartz's purported notes and his alleged statements and actions during the DLA Piper investigation, Mr. Coburn should be granted a severance.  Federal Rule of Criminal Procedure 14(a) authorizes the Court to sever co-defendants' trial "[i]f the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant . . . ." Fed. R. Crim. P. 14(a). Severance is appropriate where there exists a "serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro v. United States*, 506 U.S. 534, 539 (1993).  Such a risk occurs "when evidence that the jury should not consider against a defendant and that would not be admissible if a defendant were tried alone is admitted against a codefendant." *Id.*; *see also United States v. Balter*, 91 F.3d 427, 433 (3d Cir. 1996), *as amended* (Aug. 16, 1996) (explaining that severance may be appropriate in "a case such as *Bruton v. United States*, 391 U.S. 123 (1968), where evidence that is probative of one defendant's guilt is technically

admissible only against a co-defendant") (citing *Zafiro*, 506 U.S. 539).  There is potentially a significant amount of evidence admissible only against Mr. Schwartz, which, if introduced by the government at a joint trial, would result in substantial prejudice against Mr. Coburn.  *See supra* Motion *in Limine* No. 6 (discussing inadmissibility of Mr. Schwartz's purported notes as to Mr. Coburn); Motion *in Limine* No. 7 (discussing inadmissibility of Mr. Schwartz's alleged prior statements about Mr. Coburn); Motion *in Limine* No. 8 (discussing inadmissibility of Mr. Schwartz's other alleged actions and statements during the investigation, including purported evidence of Mr. Schwartz's consciousness of guilt).

Although joint trials promote judicial economy and efficiency, they should be used only "where these objectives can be achieved without substantial prejudice to the right of the defendants to a fair trial."  *Bruton v. United States*, 391 U.S. 123, 132 n.6 (1968) (citations and quotation marks omitted); *see also United States v. Boscia*, 573 F.2d 827, 833 (3d Cir. 1978) ("[N]o defendant should ever be deprived of a fair trial because it is easier or more economical for the government to try several defendants in one trial rather than in protracted multiple trials.  The goal of the

judicial process is not to decide cases as quickly and as inexpensively as possible.").[12]

Severance is appropriate where there is a serious risk that a joint trial will "prevent the jury from making a reliable judgment of guilt or innocence." *Zafiro*, 506 U.S. at 539. Spillover prejudice presents such a risk. For example, "when evidence that the jury should not consider against a defendant and that would not be admissible if a defendant were tried alone" is admitted, this creates a risk of spillover prejudice. *Id.* at 539. Similarly, "[e]vidence that is probative of a defendant's guilt but technically admissible only against a codefendant" presents a similar risk. *Id.* A substantial amount of evidence will be offered to show Mr. Schwartz's alleged statements and actions during the investigation, which we expect the government will argue reflects Mr. Schwartz's guilty conscience. This evidence would be irrelevant and inadmissible if Mr. Coburn were tried alone.

Any joint trial that admits Mr. Schwartz's alleged statements and actions during the investigation would be highly prejudicial to Mr. Coburn. Evidence reflecting Mr. Schwartz's purported consciousness of guilt will no doubt color the jury's view of Mr. Coburn as the alleged co-conspirator when the entire case boils

---

[12] Courts have "a continuing obligation under Rule 14 to evaluate the prejudicial effect" of evidence presented at trial. *United States v. Vastola*, 670 F. Supp. 1244, 1262 (D.N.J. 1987).

down to what happened on the April 2014 calls. Mr. Schwartz's other alleged statements are also highly prejudicial, including, for example, alleged statements concerning Mr. Coburn's nature, Mr. Schwartz's purported view of his notes in retrospect, Mr. Schwartz's supposed personal understanding of key issues in the case like corruption in India, and Mr. Schwartz's at times allegedly inconsistent descriptions of events at issue. *See, e.g.*, *United States v. Blunt*, 930 F.3d 119, 125–26 (3d Cir. 2019) (finding that motion to sever co-defendant spouse should have been granted in part where severance was necessary to prevent "reasonably foreseeable" problem that co-defendant would offer prejudicial testimonial evidence that "would not be otherwise admitted, necessitating the severing"); *United States v. DiNome*, 954 F.2d 839, 844–45 (2d Cir. 1992) ("Instead of being swamped by [a] mass of irrelevant evidence" concerning his codefendant, the case should be severed."); *United States v. Islam*, No. 20-cr-00045, 2021 WL 308272, at *3 (E.D. Pa. Jan. 29, 2021) (granting severance motion in part where "highly prejudicial evidence would likely not be admissible" against defendants in a severed trial and "a jury in a joint trial would be unable to compartmentalize [this] evidence and the testimony would be unduly prejudicial"); *United States v. Dougherty*, No. 19-cr-64, 2020 WL 6395464, at *3–4 (E.D. Pa. Nov. 2, 2020) (finding severance appropriate in part because unlike a simple drug charge case, "the prejudice and confusion in this case would be unavoidable, and a single jury would be unable to

compartmentalize all of the counts and evidence."); *United States v. James*, No. 07-cr-578, 2008 WL 370921, at *7–*8 (D.N.J. Feb. 11, 2008) (granting motion to sever certain counts under Rule 14 in part where it was "clear to the Court that such allegations have the potential to incite strong emotion in jurors and distract them from the merits of the case," and noting that "the Court can exercise greater control over potential prejudice in a separate trial," which "will also limit any possible spillover effects").

## X.   MOTION *IN LIMINE* NO. 9:   THE COURT SHOULD ADMIT EXCULPATORY STATEMENTS MEMORIALIZED IN FBI-302s OF DOJ INTERVIEWS OF OVERSEAS WITNESSES UNAVAILABLE TO DEFENDANTS.

Mr. Coburn moves to admit exculpatory witness statements from witnesses whom the government has had an opportunity to question but are unavailable to testify at trial.  These exculpatory statements, which are critical to a fair trial in this case, are memorialized in FBI-302s and are admissible under the Federal Rules of Evidence.

### A.   Mr. Coburn's Efforts to Secure Testimony From the Exculpatory Overseas Witnesses.

As the Court knows, Mr. Coburn attempted to secure testimony from witnesses located in India pursuant to the Mutual Legal Assistance Treaty ("MLAT") between the United States and India, but DOJ denied that request, maintaining that the compulsory procedures available pursuant to the MLAT are available only to the

prosecutors.  Hearing Tr. 19:9–20 (Oct. 19, 2022).  As a result, Mr. Coburn was left with no alternative but to pursue this testimony through the cumbersome and time consuming Letters Rogatory process.

The motion practice that led to the Letters Rogatory is well known to the Court and will not be repeated here.  *See* ECF Nos. 396, 405, 407.  The Letters Rogatory were served on the State Department on December 14, 2022, but were only transmitted by the State Department to Indian authorities more than three months later on March 28, 2023.  Loonam Decl. Ex. 25 (Email from D. Gant to J. Loonam *et al*. (Apr. 5, 2023)).  The Court directed the government to do whatever it could to expedite the Letters Rogatory process.  Hearing Tr. 21:15–17 (Jan. 10, 2023) ("I will want to know periodically what's going on with the letters rogatory, and I'll ask you, Ms. Patel, to use your good offices to find out the status.").  In an abundance of caution, by letter dated March 8, 2023, Mr. Coburn requested that the State Department inform the Indian authorities of the new trial date in this case of October 2, 2023.  Loonam Decl. Ex. 26 (Ltr. From J. Loonam to U.S. Dep't of State (Mar. 8, 2023)).  It is unclear whether and when the State Department advised the Indian authorities of the new trial date.  Loonam Decl. Ex. 27 (Email from J. Loonam to D. Gant *et al*. (July 26, 2023)).

The State Department has advised us that Letters Rogatory Requests to India typically take a year to be processed by Indian authorities.  Loonam Decl. Ex. 28

(Email from D. Gant to J. Loonam *et al.* (Apr. 4, 2023)).  This is consistent with the information we provided to the Court at the time the Court set the trial date.  Ltr. from J. Loonam to Hon. Kevin McNulty at 3 (Jan. 18, 2023), ECF No. 441; Hearing Tr. 13:1-14:22 (Jan. 10, 2023).  The Court scheduled trial for October over the Defendants' continuing objection.  Order (Jan. 18, 2023), ECF No. 442; Hearing Tr. 4:10–12, 5:16-24, 8:3–5 (Jan. 31, 2023).  We maintain that objection, but the admission of the exculpatory statements contained in the FBI-302s is necessary to reduce the prejudice to Defendants caused by the inability to present testimony from these unavailable witnesses.[13]

### B.   The FBI-302s of DOJ Interviews of the Unavailable Overseas Witnesses Contain Exculpatory Statements.

Three witnesses interviewed by the government have first-hand knowledge of the events at issue and have made statements directly contradicting core allegations in the Indictment.  *See* Mem. of Law in Supp. of Defs. Gordon J. Coburn and Steven E. Schwartz's Application to Take Witness Depositions in India, ECF No. 396–1 (hereafter "Letters Rogatory Motion").  These witnesses are (1) Ramesh Vadivelu; (2) Balaji Subramanian; and (3) Sekharipuram Narayanan Subrahmanyan.

---

[13] There are four additional exculpatory witnesses in India whom DOJ has not questioned and for whom we do not move to admit their out-of-court exculpatory statements.  Mem. Law Supp. Defs.' App. to Take Witness Depositions in India at 3 (Aug. 11, 2022), ECF No. 396; Request for Int'l Judicial Assistance (Letters Rogatory) at 2–5 (Dec. 2, 2022).

1.    Ramesh Vadivelu

Ramesh Vadivelu was questioned on May 17, 2018, by DOJ Trial Attorney Kevin Gingras from the DOJ Fraud Section, AUSA Courtney Howard of the U.S. Attorney's Office, District of New Jersey and FBI Special Agent Kelly Blanchfield. Vadivelu was represented by counsel from the law firm Willkie Farr & Gallagher. During the questioning, the government confronted Vadivelu with 26 exhibits.  A copy of the Vadivelu FBI-302 is attached as Loonam Decl. Ex. 29 (DOJ-302-00000192).

Vadivelu was the head of L&T's Commercial Buildings Department and is identified as a co-conspirator (specifically "CC#3") in the Indictment.  *Id.* at 1.  He has been described by the government's main witness Ramamoorthy as Cognizant India's main contact at L&T for the KITS project.  Loonam Decl. Ex. 30 (DOJ-302-00000078) at 6.  Vadivelu is a central to the facts of this case.

Vadivelu made statements in response to questioning by the government that are contrary to the government's theory of prosecution.  He explained certain emails and documents, including documents Vadivelu authored.  Loonam Decl. Ex. 29 (DOJ-302-00000192).  We expect the government to offer as evidence at trial some of these documents, but not Vadivelu's explanatory statements about them.

Vadivelu told the government that L&T used the change order process on the KITS project to compensate itself for delays and additional costs incurred on the

project.    Loonam Decl. Ex. 31 (Undated Government Notes of Nakkiran, Subramanian, and Vadivelu Proffer) at 54.  Vadivelu told the government that he instructed his subordinates to triple the actual cost of variations to capture additional profit margins.  *Id.*  He further told the government that the "statutory approvals" line item in a variation document sent to Cognizant which is central to the government's case (*see* Indict. ¶¶ 22–23; 29(d)), was not for paying a bribe to a government official, but rather for "extended stay expenses" (or "idling time"), caused by the delay associated with obtaining the statutory approvals, that L&T could not recover otherwise.  Loonam Decl. Ex. 29 (DOJ-302-00000192) at 9.  The line item was labeled "statutory approvals" because, based on his previous experience with Cognizant, Vadivelu knew that the company refused to reimburse extended stay expenses.  *Id.*  Vadivelu told the government that L&T made promises to Cognizant about obtaining the planning permit to encourage the release of payments Cognizant had frozen, but that, in fact, there was nothing L&T or Cognizant could do to obtain the planning permit more quickly.  *Id.* at 7; Loonam Decl. Ex. 31 (Undated Government Notes of Nakkiran, Subramanian, and Vadivelu Proffer) at 53.  Finally, Vadivelu explained that his email dated June 30, 2014, requesting that L&T's procurement of the Government Order for KITS be kept confidential, which is cited in the Indictment and pre-marked as a government exhibit, *see* Indict. ¶ 18, was not intended to hide an improper payment to an Indian

government official as the government alleges.  Rather, he stated it was written because L&T feared that the Indian government would stop construction at KITS due to a recent building collapse.  Loonam Decl. Ex. 29 (DOJ-302-00000192) at 7.

2.   <u>Balaji Subramanian</u>

Balaji Subramanian was questioned on May 21, 2018, by DOJ Trial Attorney Kevin Gingras from the DOJ Fraud Section, AUSA Courtney Howard of the U.S. Attorney's Office, District of New Jersey and FBI Special Agent Kelly Blanchfield. Subramanian was also represented by counsel from the law firm Willkie Farr & Gallagher.  During the questioning, DOJ confronted Subramanian with 11 exhibits. A copy of the Subramanian FBI-302 is attached as Loonam Decl. Ex. 32 (DOJ-302-00000152).

Subramanian was L&T's Planning Engineer responsible for site coordination at the KITS project.  *Id.* at 1.  Subramanian assisted with submitting the paperwork to the government agencies to obtain the planning permit and updated Cognizant once the permit was obtained.  *Id.* at 2.  Subramanian also personally calculated the costs listed on the "statutory approvals" line item at issue in this case.  *Id.* at 5. Subramanian is central to the facts of this case.

In response to questioning by DOJ, Subramanian made statements that are contrary to the government's theory of prosecution.  Subramanian, consistent with Vadivelu, told DOJ that L&T's change order request regarding the statutory

65

approvals line item was for "extended stay expenses" incurred as a result of the planning permit's delay—not reimbursement for a bribe payment an Indian government official, as the government alleges. *Id*. Subramanian provided the government with a level of detail that Vadivelu did not. Subramanian described how he calculated the extended stay expenses. In response to DOJ questioning, Subramanian answered that he had calculated 15.2 crore as the amount owed to L&T as the result of delays. *Id.* Specifically, Subramanian told DOJ that he determined the average monthly costs incurred by L&T from project delays ("indirect costs") by dividing INR 35-45 crore (the total amount of indirect costs contemplated by the contract) by 34 months (the anticipated length of the project). *Id*. He then took the resulting average indirect costs of INR 1.5 crore per month and multiplied that number by the length of the project delay relating to statutory approvals (10 months). *Id*. This generated the "Statutory Approvals – PP [Planning Permit]" line item of INR 15.2 crore (or approximately $2.5 million). *See id*. These statements directly contradict the government's case that the statutory approval line item was used to reimburse L&T for a corrupt bribe payment.

### 3.   Sekharipuram Narayanan Subrahmanyan

Sekharipuram Narayanan Subrahmanyan was questioned on May 21, 2018, by DOJ Trial Attorney Kevin Gingras from the DOJ Fraud Section, AUSA Courtney Howard of the U.S. Attorney's Office, District of New Jersey and FBI Special Agent

Kelly Blanchfield.  Subrahmanyan was represented by counsel from the law firm Simpson Thacher.  During the questioning, DOJ confronted Subramanian with eight exhibits.  A copy of the Subrahmanyan FBI-302 is attached as Loonam Decl. Ex. 33 (DOJ-302-00000144).

During the KITS project, Subrahmanyan was the Head of Total Construction and handled 60% of the operations of L&T.  *Id.* at 2.  Ramamoorthy, the government's cooperating witness, has stated that Subrahmanyan was involved in approving the improper payment by L&T to the Indian government official.  Loonam Decl. Ex. 30 (DOJ-302-00000078) at 6.  Subrahmanyan is central to the facts of this case.  Upon questioning by the government, Subrahmanyan contradicted Ramamoorthy's testimony.   Subrahmanyan stated that he does not remember discussing the Planning Permit with Ramamoorthy and that he did not hear anything about a request from a government official for an improper payment.  Loonam Decl. Ex. 33 (DOJ-302-00000144) at 5–6.

### C.   Exculpatory Statements Memorialized in FBI-302s Are Admissible.

Exculpatory witness statements memorialized in FBI-302s[14] are admissible under the residual exception to the hearsay rule.  Fed. R. Evid. 807; *see also, e.g.,*

---

[14] The FBI-302s themselves are also admissible under various hearsay exceptions, including the business records exception (Fed. R. Evid. 803(6)), the public records exception (Fed. R. Evid. 803(8)), and the residual exception (Fed. R. Evid. 807).  *See, e.g., Bradford Trust Co. of Boston v. Merrill Lynch, Pierce, Fenner*

*United States v. Musaibli*, No. 18-cr-20495, 2022 WL 17832696, at *6 (E.D. Mich.

Dec. 21, 2022).   For a hearsay statement to be admissible under Rule 807, the

statement must be: (1) supported by "sufficient guarantees of trustworthiness – after

considering the totality of the circumstances under which it was made and evidence,

if any, corroborating the statement"; and (2) "more probative on the point for which

------

*and Smith, Inc.*, 805 F.2d 49, 54 (2d Cir. 1986) (concluding that FBI-302s are admissible under public records hearsay exception); *Musaibli*, 2022 WL 17832696, at *6 (considering statements and FBI-302 as single level of hearsay and admitting under Rule 807); *Picard v. Sage Realty*, No. 20-cv-10109, 2021 WL 6052422, at *3 (S.D.N.Y. Dec. 21, 2021) ("The 302 Report, therefore, is admissible at trial as a public record under Fed. R. Evid. 803(8)."); Order Denying Motion *In Limine* to Exclude Evidence of or Reference to FBI 302 Reports and Supporting Memorandum at 6–10, *United States of America ex rel. Brandon Barrick v. Parker-Migloiorini International, LLC*, No. 12-cv-00381-JNP (D. Utah June 27, 2021), ECF No. 288 (explaining that "the 302 Report may also qualify as a business record for essentially the same reasons that qualify it as a public record," and finding that "even if none of the preceding exceptions to the rule against hearsay apply, . . . the 302 Report is admissible under the residual hearsay exception"); *United States v. Wong*, No. 17-cr-0407, 2018 WL 5776336, at *1 (N.D. Cal. Nov. 2, 2018) (finding that FBI-302 statement bore the necessary indicia of trustworthiness for admission under the residual hearsay exception); *United States v. Ruzicka*, No. 16-cr-246, 2018 WL 385422, at *12 (D. Minn. Jan. 11, 2018) (same); *Upstate Shredding, LLC v. Ne. Ferrous, Inc.*, No. 12-cv-1015, 2016 WL 865299, at *13 (N.D.N.Y. Mar. 2, 2016) ("The 302 Report itself is admissible as a business record or a public record."); *United States ex rel. Wuestenhoefer v. Jefferson*, No. 10-cv-00012, 2014 WL 7185428, at *8 (N.D. Miss. Dec. 16, 2014) ("Defendants have failed to satisfy their burden of showing that the 302s are untrustworthy, and the Rule 803(8) hearsay exception applies."); *Spanierman Gallery, Profit Sharing Plan v. Merritt*, No. 00-cv-5712, 2003 WL 22909160, at *5 (S.D.N.Y. Dec. 9, 2003) ("FBI reports are admissible in evidence as either business records, see Fed. R. Evid. 803(6), or as public records, see Fed. R. Evid. 803(8).").

it is offered than any other evidence that the proponent can obtain through reasonable efforts."  Fed. R. Evid. 807(a).

Courts applying this standard have admitted statements in FBI-302s under circumstances similar to the facts here.  *See, e.g.*, *Musaibli*, 2022 WL 17832696, at *6.  For example, in *Musaibli,* a defendant charged with crimes relating to his alleged provision of assistance to the terrorist organization ISIS, moved *in limine* to "allow admission of hearsay statements made by several witnesses during interviews abroad with government agents, which were memorialized in FBI-302s, due to the asserted unavailability of the witnesses whose interviews are the subject of the reports."  *Id.* *1.  The statements at issue were exculpatory.  *Id.* at *4.

In *Musaibli*, the FBI obtained access to and interviewed all of the prospective witnesses while they were held in a foreign prison.  *Id.* at *3.  "[A]fter unsuccessful efforts to secure assistance from the government," the defendant hired investigators. *Id.* at *4.  But, the defense was unsuccessful in obtaining the witnesses' statements in advance of trial.  *Id.*

The district court granted the *Musaibli* defendant's motion, allowing him to offer into evidence, "in furtherance of his right to present a defense," the reports of statements by unavailable witnesses procured by the FBI.  *Id.* at *1.  Though the government argued that the statements sought to be admitted were hearsay and untrustworthy, the court reasoned that despite the legal restrictions on admission of

hearsay statements, "the Supreme Court has held that 'where constitutional rights directly affecting the ascertainment of guilt are implicated, the hearsay rule may not be applied mechanistically to defeat the ends of justice." *Id.* at *5 (quoting *Chambers v. Mississippi*, 410 U.S. 284, 302 (1973)).

Further examining the Supreme Court's decisions in *Chambers* and *Crane v. Kentucky*, 476 U.S. 683 (1986), as well as federal appellate precedent, the court explained that one key factor warrants consideration when determining whether to admit potentially exculpatory hearsay statements: "the degree to which the evidence was 'central to the defendant's claim of innocence.'" *Musaibli*, 2022 WL 17832696, at *5 (quoting *Crane*, 476 U.S. at 690). In consideration of this factor, the court concluded that because his defense turned on an assertion that he was an unwilling participant in ISIS operations, the unavailable witnesses' statements, including concerning the defendant's resentment of and conflict with ISIS, were "central to the defendant's claim of innocence" and thus weighed in favor of admission. *Id.*

Against this backdrop, the *Musaibli* court held that the unavailable witnesses' statements satisfied the standard for admission under Rule 807, explaining: (1) the statements were trustworthy because they were taken by FBI agents during the course of a criminal investigation and under threat of prosecution for false statements (and with no incentive to lie to protect the defendant); (2) the statements were more probative than any other available evidence before the court because nothing else

70

offered tended to establish the facts asserted by the unavailable witnesses; and (3) the admission of the statements would serve the interests of justice by allowing the defendant to present to the jury evidence supporting his defenses that he was not a willing participant in a conspiracy to support ISIS. *Id.* at *6–7; *see also id.* at *6 (noting that "[i]n similar circumstances, other federal courts have admitted evidence of statements memorialized in FBI 302 reports where the persons interviewed were exposed to the threat of criminal consequences of their behavior, notwithstanding whether their statements directly implicated their own guilt in the same crimes for which the defendant was charged") (citing *Ruzicka*, 2018 WL 385422 at *12)); *United States v. Lyon*, 567 F.2d 777, 784 (8th Cir. 1977) (permitting FBI agent to read a portion of his report into the record under residual exception formerly in Rule 804(b)(5)); *Wong*, 2018 WL 5776336 at *1 (admitting under Rule 807 FBI-302s summarizing witnesses' exculpatory statements to FBI agents); *In re Drake*, 786 F. Supp. 229, 234–35 (E.D.N.Y. 1992) (admitting witness statements to FBI agent under former catch-all exception in Rule 803(24)); *United States v. Thevis*, 84 F.R.D. 57, 65 (N.D. Ga. 1979) (admitting witness proffers under residual exception formerly in Rule 804(b)(5)). *Cf. MSC Mediterranean Shipping Co. SA, Geneva v. Metal Worldwide, Inc.*, 884 F. Supp. 2d 1277, 1282 (S.D. Fla. 2012) (admitting Indian Customs agent report under residual hearsay exception); *Steinberg v. Obstetrics–Gynecological & Infertility Grp., P.C.*, 260 F. Supp. 2d 492, 497 (D.

Conn. 2003) (admitting lawyer's letter on behalf of her client under residual hearsay exception).

Here, the witnesses' exculpatory statements memorialized in FBI-302s are central to the defense, which turns on whether a bribe was even demanded, and, if so, whether L&T ever paid that bribe or sought reimbursement for it, and satisfy Rule 807. The statements have circumstantial guarantees of trustworthiness. The witnesses (Vadivelu, Subramanian, and Subrahmanyan) were formally interviewed by DOJ trial attorneys, AUSAs, and "FBI agents with the assistance of counsel during a criminal investigation (ergo under threat of prosecution for false statements)[.]" *Ruzicka*, 2018 WL 385422, at *12; *see also Musaibli*, 2022 WL 17832696, at *6 (same). The witnesses were each given admonitions to be truthful. *See* Loonam Decl. Ex. 29 (DOJ-302-00000192) at 1; Loonam Decl. Ex. 32 (DOJ-302-00000152) at 1; Loonam Decl. Ex. 33 (DOJ-302-00000144) at 1. And the interviews were relatively close in time to the events alleged in the Indictment. *Quinn v. Wexford Health Sources, Inc.*, No. 17-cv-669, 2020 WL 888048, at *2 (S.D. Ill. Feb. 24, 2020) (admitting investigative report which includes descriptions of

statements made to investigators, because it was prepared by an investigator relatively close-in-time to the events at issue).[15]

The statements are also material[16] and highly probative—the statements are exculpatory and in many instances directly contradict the government's case. Finally, "the admission of the statements would serve the interests of justice by allowing the defendant to put before the jury the evidentiary record to support his defenses[.]" *Musaibli*, No. 18-20495, 2022 WL 17832696, at *7; *see also Ruzicka*, 2018 WL 385422, at *12 ("admission serves the interests of justice because it tends to vindicate [defendant's] Sixth Amendment right to put on a defense"). These interests are particularly acute here, where (similar to the circumstances presented

---

[15] L&T's public denials of wrongdoing are consistent with the statements of the L&T witnesses. The admissibility of these statements is the subject of a separate motion *in limine* filed by Mr. Schwartz, which Mr. Coburn joins.

[16] Though Rule 807, as amended in 2019, no longer explicitly requires evidence admitted under the Rule to (a) be offered to prove a material fact; and (b) serve the interests of justice, those considerations are still relevant to the analysis. Indeed, Federal Rule of Evidence 102 requires that all Rules of Evidence "be construed so as to administer every proceeding fairly, eliminate unjustifiable expense and delay, and promote the development of evidence law, to the end of ascertaining the truth and securing a just determination." Fed. R. Evid. 102. And Federal Rules of Evidence 401 and 402 state that only relevant evidence, or evidence that tends to make a fact of consequence in determining the action more or less probable, is admissible. Fed. R. Evid. 401 and 402; *see* Fed. R. Evid. 807 Advisory Committee Notes (2019) ("The requirements that residual hearsay must be evidence of a material fact and that its admission will best serve the purposes of these rules and the interests of justice have been deleted. These requirements have proved to be superfluous in that they are already found in other rules. *See* Rules 102, 401.").

73

in *Musaibli*) the government denied Defendants' request to proceed with the compulsory and streamlined MLAT process and opposed waiting for India to execute the Letters Rogatory before proceeding to trial. *See* January 18, 2023 Letter, ECF No. 441; Tr. 19:9-20 (Oct. 19, 2022); *Escriba v. Foster Poultry Farms*, 793 F. Supp. 2d 1147, 1157 (E.D. Ca. 2011) (notes authored by witness in Guatemala admissible because they were more probative than any other evidence that the proponent could "procure through reasonable efforts; i.e., . . . discovery required to be conducted through letters rogatory or a request for international judicial assistance through the Court system of Guatemala"). Without the exculpatory witness statements contained in the FBI-302s, there is no guarantee that Mr. Coburn will have a "meaningful opportunity to present a complete defense." *Crane*, 476 U.S. at 690. The Court accordingly should admit the exculpatory witness statements set forth above under Rule 807.

## XI.    MR. COBURN'S JOINDER TO MOTIONS *IN LIMINE* MADE BY MR. SCHWARTZ.

### A.    Mr. Schwartz's Motion *in Limine* No. 1.

Mr. Coburn respectfully joins in Mr. Schwartz's August 3, 2023 motion *in limine* to exclude information regarding Mr. Schwartz's attendance at a Mets game on April 22, 2014, video of Mr. Schwartz at the April 22, 2014 Mets game, and information regarding Mr. Schwartz's eye surgery on April 24, 2014. Such evidence is irrelevant under Rule 401 and thus inadmissible under Rule 402. Further, the

evidence is inadmissible under Rule 403 because the risks associated with its introduction substantially outweigh its probative value, if any.

**B.      Mr. Schwartz's Motion *in Limine* No. 2.**

Mr. Coburn respectfully joins in Mr. Schwartz's August 3, 2023 motion *in limine* to exclude evidence of alleged answers given by Mr. Schwartz to questions posed by counsel for Cognizant during interviews held on August 28, 2016 and September 23, 2016 to the extent the alleged questions posed (or answers given) referred to hypothetical scenarios or called for legal conclusions.  Such evidence is irrelevant under Rule 401 and thus inadmissible under Rule 402.  Further, the evidence is inadmissible under Rule 403 because the risks associated with its introduction substantially outweigh its probative value, if any.

**C.      Mr. Schwartz's Motion *in Limine* No. 3.**

Mr. Coburn respectfully joins in Mr. Schwartz's August 3, 2023 motion *in limine* to allow to be admitted into evidence statements made by L&T concerning its investigation into the alleged bribe scheme charged in this case, including formal public statements made to the NSE to the effect that its investigation did not find evidence of a bribe payment.  Such evidence, which directly contradicts the government's theory of the case, should be admitted under Rule 807 because the statements are: (1) supported by sufficient guarantees of trustworthiness, and (2) more probative on the point for which they are offered than any other evidence

75

Defendants can obtain through reasonable efforts.  Further, admitting the statements will serve the interests of justice.

### D.      Mr. Schwartz's Motion *in Limine* No. 4.

Mr. Coburn respectfully joins in Mr. Schwartz's August 3, 2023 motion *in limine* to allow to be admitted into evidence the government's admission that neither Defendants, their co-conspirators, nor the government itself knows key details of the alleged bribe conspiracy in this case.  Such evidence should be admitted against the government at trial as a statement by a party-opponent under Rule 801(d)(2).

## **CONCLUSION**

For all the foregoing reasons, Mr. Coburn requests that the Court exclude certain testimony and/or evidence concerning: (1) Cognizant's FCPA policy concerning facilitation payments and Defendants' prior statements related to their understanding of the policy and the law; (2) Cognizant outsourcing jobs or using less expensive foreign labor; (3) Mr. Coburn's decisions and views relating to Cognizant's compliance budget; (4) Mr. Coburn's compensation while employed at Cognizant and his overall net worth; (5) Mr. Coburn's decision not to sit for a second interview with DLA Piper during Cognizant's internal investigation under the unreasonable terms that Cognizant sought to impose on Mr. Coburn; (6) Mr. Schwartz's purported notes from one or more calls; (7) statements allegedly made by Mr. Schwartz concerning Mr. Coburn; and (8) Mr. Schwartz's alleged actions

and statements during the investigation that would substantially and unfairly prejudice Mr. Coburn.

In the alternative, if the Court admits evidence and testimony against Mr. Schwartz in a joint trial concerning Mr. Schwartz's purported notes, and alleged actions and statements during the internal investigation, the Court should grant Mr. Coburn a severance.

Mr. Coburn further requests that the Court admit exculpatory statements made to the government in response to government questioning by witnesses with direct knowledge of the events at issue in this case and that are unavailable to testify at trial, and which are reliably memorialized in FBI-302s.

In addition, Mr. Coburn respectfully joins Mr. Schwartz's omnibus motions *in limine*, insofar as they seek an order: (a) excluding information regarding Mr. Schwartz's attendance at a Mets game on April 22, 2014, video of Mr. Schwartz at the April 22, 2014 Mets game, and information regarding Mr. Schwartz's eye surgery on April 24, 2014; (b) excluding evidence of alleged answers given by Mr. Schwartz to questions posed by counsel for Cognizant during interviews held on August 28, 2016 and September 23, 2016 to the extent the alleged questions posed (or answers given) referred to hypothetical scenarios or called for legal conclusions; (c) allowing to be admitted into evidence statements made by L&T concerning its investigation into the alleged bribe scheme charged in this case, including formal

public statements made to the NSE to the effect that its investigation did not find evidence of a bribe payment; and (d) allowing to be admitted into evidence the government's admission that neither Defendants, their co-conspirators, nor the government itself knows key details of the alleged bribe conspiracy in this case.

Dated: August 3, 2023                    Respectfully submitted,

                                         /s/ *James P. Loonam*
                                         Henry Klehm III
                                         Harold B. Walther
                                         James P. Loonam
                                         Sarah D. Efronson
                                         Abigael C. Bosch
                                         JONES DAY
                                         250 Vesey Street
                                         New York, NY  10281
                                         Tel. (212) 326-3939
                                         Fax: (212) 755-7306

                                         *Attorneys for Defendant*
                                         *Gordon J. Coburn*