# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

UNITED STATES OF AMERICA

v.

GORDON J. COBURN and
STEVEN SCHWARTZ

**Hon. Michael E. Farbiarz**

Criminal No. 19-120 (MEF)

## DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO DEBEVOISE'S MOTION TO QUASH SUBPOENA AD TESTIFICANDUM

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ................................................................................1

RELEVANT BACKGROUND .............................................................................4

LEGAL STANDARD ...........................................................................................7

ARGUMENT .........................................................................................................9

    I.     Testimony Regarding Debevoise's Investigation Is Relevant ............10

    II.    Testimony Regarding Debevoise's Investigation Is Admissible ........14

    III.   The Testimony Sought Through the Subpoena Does Not
          Implicate Privilege ................................................................................16

    IV.   The Testimony Sought Through the Subpoena Would Not Be
          Unduly Burdensome...............................................................................18

CONCLUSION ....................................................................................................20

i

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*In re Appeal of Hughes*,
633 F.2d 282 (3d. Cir. 1980) ...............................................................18

*United States* v. *Beckford*,
964 F. Supp. 1010 (E.D. Va. 1997) .......................................................9

*United States* v. *Blumberg*,
2017 WL 4790382 (D.N.J. Oct. 20, 2017) ...........................................8

*United States* v. *Caruso*,
948 F. Supp. 382 (D.N.J. 1996) ............................................................8

*United States* v. *Coburn & Schwartz*,
2022 WL 357217 (D.N.J. Feb 1, 2022) .................................................17

*In re Columbia/HCA Healthcare Corp. Billing Pracs. Litig.*,
293 F.3d 289 (6th Cir. 2002) ................................................................17

*United States* v. *Cuthbertson*,
630 F.2d 139 (3d Cir. 1980) .................................................................8

*United States* v. *Gas Pipe, Inc.*,
2018 WL 5262361 (N.D. Tex. June 18, 2018) ......................................15

*United States* v. *Goldstein*,
2023 WL 3662971 (E.D.N.Y. May 25, 2023) .......................................14

*In re Grand Jury Investigation*,
599 F.2d 1224 (3d Cir. 1979) ...............................................................18

*United States* v. *Khalil*,
2023 WL 8237249 (E.D. Pa. Nov. 28, 2023) ........................................9

*In re Linerboard Antitrust Litig.*,
237 F.R.D. 373 (E.D. Pa. 2006)............................................................18

*United States* v. *Llanez-Garcia*,
735 F.3d 483 (6th Cir. 2013) ................................................................14

**TABLE OF AUTHORITIES**
**(Continued)**

**Page(s)**

*United States* v. *Messercola*,
    701 F. Supp. 482 (D.N.J. 1988) ....................................................................13, 15

*United States* v. *Nixon*,
    418 U.S. 683 (1974)....................................................................................13

*United States* v. *Olhovsky*,
    562 F.3d 530 (3d Cir. 2009) ......................................................................18

*United States* v. *Orena*,
    883 F. Supp. 849 (E.D.N.Y. 1995) ............................................................15

*United States* v. *Peavler*,
    2017 WL 1018304 (E.D. Ky. Mar. 10, 2017) ............................................14, 15

*United States* v. *R. Enterprises, Inc.*,
    498 U.S. 292 (1991)....................................................................................9

*United States* v. *Riego*,
    627 F. Supp. 3d 1254 (D.N.M. 2022)..........................................................11, 14

*United States* v. *Robinson*,
    2023 WL 7019109 (D.V.I. Oct. 25, 2023)...................................................8

*Scrimo* v. *Lee*,
    935 F.3d 103 (2d Cir. 2019) .......................................................................14

*Stern* v. *U.S. Dist. Ct. for the Dist. of Mass.*,
    214 F.3d 4 (1st Cir. 2000)...........................................................................8

*In re Teleglobe Commc'ns Corp.*,
    493 F.3d 345 (3d Cir. 2007) .......................................................................17

*United States* v. *Tomison*,
    969 F. Supp. 587 (E.D. Cal. 1997) .............................................................9

*Upjohn Co.* v. *United States*,
    449 U.S. 383 (1981).....................................................................................18

# TABLE OF AUTHORITIES
## (Continued)

**Page(s)**

*Westinghouse Elec. Corp.* v. *Republic of Philippines*,
   951 F.2d 1414 (3d Cir. 1991) ..............................................................................17

**PRELIMINARY STATEMENT**

The government has alleged that Larsen & Toubro Construction ("L&T") hired a consultant to pay a bribe to an Indian government official and then sought (and received) reimbursement for the bribe from Cognizant Technology Solutions Corporation ("Cognizant").  Under the government's theory of the case, L&T played a central role in every step of the charged offense, including ███████████████

███████████████████████████████████████████████

███████████████████████.  Indeed, the government does not allege that Cognizant or its employees, including the Defendants, had any meaningful dealings with any Indian government official in connection with the alleged bribe.  As a result, and according to the government, ███████████████████

███████████████████████████████████████████████

███████████████████████████████████.

But L&T's documents and financial records—as gathered, reviewed, and reported on to the government by Debevoise & Plimpton LLP ("Debevoise")—███

███████████████████████████████████████████████

███████████████████████████████████████████████.

And notwithstanding a thorough U.S.-style internal investigation that included document review and witness interviews conducted ███████████████████

███████████████████████████████████████████████

████████████████████████████████████. That fact—the absence of evidence where one would expect to find it—is probative, admissible, and not hearsay.

In particular, the record in this case shows that over the course of nearly eighteen months, Debevoise ████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████. The same record shows that Debevoise and L&T, contrary to any claim of privilege now being asserted, communicated the scope, size, and results of its review to the government, and that L&T later ████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████.

Unable to meaningfully contest the relevance of the testimony being sought, Debevoise offers a series of unpersuasive arguments that ignore either the constitutional rights at stake in this case, the significance of the testimony being sought, or both.

So, for example, Debevoise argues that the testimony sought through the subpoena is "cumulative" of written documents in Defendants' possession.  In particular, Debevoise points to a declaration filed several years ago by Colby Smith,

a lawyer involved in the investigation.  But setting aside the Defendants' right to present evidence through live witnesses rather than documents or declarations, the declaration in question does not contain the single most important part of the testimony to be elicited from a Debevoise witness: ███████████████████

███████████████████████████████████████████

██████████████████████.  As a result, and while the Smith Declaration describes certain aspects of Debevoise's efforts to find relevant evidence, it does not address the absence of evidence that makes Debevoise's testimony so probative.

Debevoise's remaining objections are similarly meritless.  Although Debevoise asserts that the requested testimony implicates privilege concerns, the testimony being sought consists of information already shared with the government. Any privilege that L&T or Debevoise may have claimed over these communications has been waived (a proposition that Debevoise does not seriously dispute), and Defendants have expressly disclaimed any intention to seek testimony as to privileged matters.  Finally, and while Debevoise raises the "burden" of compliance, the subpoena seeks straightforward testimony (and no documents) that requires at most a few days of travel and a few hours on the witness stand by lawyers at an international law firm.  That burden cannot reasonably be called "excessive" or "undue" in light of the enormous countervailing interests at stake in a criminal trial.

For all of these reasons, and others described below, Debevoise's motion to quash should be denied.

## RELEVANT BACKGROUND

On October 5, 2016, very shortly after Cognizant made an initial self-disclosure, the government █████████████████████████████████████ █████████████████████████████. July 5, 2021 Declaration of Colby Smith, ECF No. 188-6 ¶ 3 ("Smith Decl."). By October 28, L&T had retained Debevoise and an Indian law firm, Cyril Amarchand Mangaldas ("CAM"), and advised the government that ████████████████████████████████████████████ ████. Id. ¶¶ 6–8. By January 4, 2017, Debevoise informed the government that ███████████████████████████████████████████████████████████ ████. Id. ¶ 12.

As part of this effort, Debevoise and CAM ██████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████. July 27, 2017 Debevoise Presentation to Government (LT00005782), ECF No. 167-4 at 17. █████████████████████████████████████████████████ ████████████████████████████████████████████. Smith Decl. ¶¶ 37–38. As

4

part of the same effort, Debevoise interviewed ███████████████████████

████████████████████████████████████████████████████████████████

███████████████████████ *Id.* ¶ 21; *see also* ECF No. 167-4 at 18, 21.

None of these efforts were a secret, and Debevoise regularly made the government aware of the scope, size, and results of the review.  So, for example, █

████████████████████████████████████████████████████████████████

███████████████████. ECF No. 167-4 at 1. ████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

███████. *Id.* at 18–20.

Contacts with the government continued through the rest of 2017 and into 2018, with Debevoise providing the government additional details, including ██████

██████████████████████████████████████████████████. *See, e.g.*, April 18, 2018 Letter from Debevoise to Government (DOJ-LT-LTR-00000055), ECF No. 167-27.  This information, like answers to questions posed by the government, was provided as part of L&T's effort to cooperate with the government's investigation.  *See, e.g.*, January 19, 2018 Letter from Debevoise to Government (DOJ-LT-LTR-00000039), ECF No. 167-29 at 2 (████████████████████

█████████████████████████████████████████

████████████████ ”); ECF No. 167-27 at 1 (████████████████

████████████████ ); November 6, 2018 Email from Debevoise to

Government (DOJ-LT-LTR-00000080), ECF No. 167-31 at 1 (███████████

████████████████████████████████████ ).

The government in turn noted ████████████████████████████

████████████████████████████████████

████████████████████████████ December 8, 2017

Letter from Government to Debevoise (DOJ-LT-LTR-00000001), ECF No. 167-32

at 1.

Two things about Debevoise's interactions are particularly notable. First, the

government provided, and Debevoise accepted, information about the specific

allegations concerning KITS such that Debevoise could focus on the relevant project

and time periods. Smith Decl. ¶¶ 14, 19. Second, Debevoise's reports to the

government included comments about documents and information that it did *not*

find, notwithstanding the government's efforts to steer them in the right direction.

*See, e.g.*, Government Notes of Presentations and Meetings (DOJ-EH-0000000018),

ECF No. 482-1 at 71 ████████████████████████████

████████████████████████ ; *id*. at 79 ████████████

█████████████████████████████████████████



; *id.* at 126–27

It is against this background that on April 15, 2024, the defense served Debevoise partner David O'Neil with a trial subpoena[1] and that, on June 10, 2024, Debevoise filed the instant motion to quash.[2]

## **LEGAL STANDARD**

A Rule 17 subpoena "is designed as an aid for obtaining relevant evidentiary material that the moving party may use at trial." *United States* v. *Cuthbertson*, 630 F.2d 139, 144 (3d Cir. 1980). Although there is not much precedent on the point, courts have generally applied the same legal standards in weighing motions to quash

---

[1] Upon adjournment of the May 6, 2024 trial date, Defendants—on agreement with Debevoise and without prejudice to any party's rights—withdrew the March 5, 2024 subpoena and reissued a new subpoena reflecting the new trial date of September 9, 2024.

[2] On April 5, 2021, the Court granted Defendants leave to serve a Rule 17 subpoena for documents on L&T, and on June 20, 2021, Defendants filed a motion to compel L&T's compliance with that subpoena. L&T then filed a cross-motion to quash, which was granted based on the Court's finding that it lacked personal jurisdiction over L&T. Because this subpoena concerns Debevoise, not L&T, the Court's prior ruling regarding a lack of jurisdiction over L&T has no bearing on this motion.

subpoenas *ad testificandum* under Rule 17(a) and motions to quash subpoenas *duces tecum* under Rule 17(c).  *United States* v. *Robinson*, 2023 WL 7019109, at *3 (D.V.I. Oct. 25, 2023) ("[M]otions to quash subpoenas *ad testificandum* and subpoenas *duces tecum* are subject to 'roughly the same standard.'" (quoting *Stern* v. *U.S. Dist. Ct. for the Dist. of Mass.*, 214 F.3d 4, 17 (1st Cir. 2000))).

When evaluating a Rule 17(c) subpoena, the Third Circuit applies the *Nixon* standard set out by the Supreme Court.  *See, e.g.*, *United States* v. *Blumberg*, 2017 WL 4790382, at *2 (D.N.J. Oct. 20, 2017) (citing *United States* v. *Nixon*, 418 U.S. 683, 699–700 (1974)).  "[A] subpoena *ad testificandum* will generally survive a motion to quash so long as 'the defendant seeks testimony that is relevant and material to the issue being litigated.'"  *Robinson*, 2023 WL 7019109, at *3; *Stern*, 214 F.3d at 17 ("[A] subpoena ad testificandum survives scrutiny if the party serving it can show that the testimony sought is both relevant and material."); *United States* v. *Caruso*, 948 F. Supp. 382, 397 (D.N.J. 1996) ("[A] subpoena for documents may be quashed if their production would be 'unreasonable or oppressive,' but not otherwise.").  Notably, "[t]he burden of production and the burden of persuasion to show that a subpoena [is] unreasonable [under Rule 17] lies with the party resisting it."  *See Impounded*, 277 F.3d 407, 415 (3d Cir. 2002) (citing *United States* v. *R. Enterprises, Inc.*, 498 U.S. 292, 301 (1991)).

8

Given their clear relationship to defendants' constitutional rights, courts have understandably taken a permissive view towards Rule 17 subpoenas. "Whether rooted directly in the Due Process Clause of the Fourteenth Amendment . . . or in the Compulsory Process or Confrontation clauses of the Sixth Amendment, . . . the Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense.'" *United States* v. *Khalil*, 2023 WL 8237249, at *4 (E.D. Pa. Nov. 28, 2023) (quoting *Crane* v. *Kentucky*, 476 U.S. 683, 690 (1986)). "That includes the right to put before a jury evidence that might influence the determination of guilt." *Id.* (internal citation and alterations omitted). "Rule 17(c) implements both the right to obtain the evidence and to require its production." *United States* v. *Tomison*, 969 F. Supp. 587, 593 (E.D. Cal. 1997); *see also United States* v. *Beckford*, 964 F. Supp. 1010, 1019 (E.D. Va. 1997) ("The essential purpose of the Rule is to implement the Sixth Amendment guarantee that an accused have compulsory process to secure evidence in the accused's favor." (internal citation omitted)). This guarantee is "considered fundamental to the right to a fair trial." *Beckford*, 964 F. Supp. at 1019.

## ARGUMENT

Debevoise's motion to quash should be denied. The testimony sought at trial is clearly relevant in that it shows that Debevoise, despite a thorough review, did not find evidence that one would expect to find based on the government's theory of the

case.  And although Debevoise and the government can and will argue that there are reasons for that, it is clear that Debevoise looked for but did not find evidence where one would expect it to be according to the government's theory of the case.  As a result, and while Debevoise and the government can and will make arguments about the weight that should be given Debevoise's testimony, neither it nor the government can seriously argue that the results of Debevoise's investigation (and what it did not reveal) does not undermine the government's case.

## I.    Testimony Regarding Debevoise's Investigation Is Relevant

The testimony sought through the subpoena was clearly spelled out in Defendants' letter to Debevoise, and involves (i) testimony to the effect that Debevoise was retained by L&T in connection with this case; (ii) testimony that Debevoise (together with CAM) conducted an internal review of certain construction projects ███████████████████████████████████████████ ██████████; (iii) testimony concerning the scope, methodology of, and limitations on that review (including ███████████████████████████ ████████████████████████████████████████████ █████████████████████████████████████); and (iv) testimony regarding the results of the review to the extent communicated to the Department of Justice or other regulators.  March 5, 2024 Letter from Defendants to Debevoise, ECF No. 713-3 at 1–2.

10

"In a criminal proceeding, the relevancy bar is 'very low' and need only provide a fact-finder with a basis for making an inference, or chain of inferences related to a material issue." *United States* v. *Riego*, 627 F. Supp. 3d 1254, 1259 (D.N.M. 2022) (citing *United States* v. *Jordan*, 485 F.3d 1214, 1218 (10th Cir. 2007)); *see also Riego*, 627 F. Supp. 3d at 1258 ("The burden of showing relevance and materiality is low.").

The testimony sought by Defendants easily clears this low bar. Testimony regarding the first two topics—L&T's retention of Debevoise, and Debevoise and CAM's internal review of certain L&T construction projects—provides necessary background for understanding Debevoise's role in conducting the review. Testimony regarding the scope and methodology of Debevoise's investigation establishes the rigor of the review, which in turn gives meaning to the fact that Debevoise did not find evidence one would expect it to find if the government's allegations were true. Finally, testimony regarding the results of the review—as communicated to the government—allows the defense to argue about an absence of evidence in a way that undermines the government's case. Put another way—and just as a defendant would be permitted to elicit testimony about a search of an alleged crime scene that did not reveal evidence of the alleged crime—the defense here should be allowed to present evidence and argue that a diligent search did not unearth

evidence that should have existed if the government's theory of the case was accurate.

Notably, Debevoise does not meaningfully dispute the relevance of the requested testimony. Instead, it argues that the information sought by Defendants is already in the Defendants' possession in the form of the Smith Declaration, material produced by L&T, and notes of L&T's meetings with the government. On this basis, Debevoise concludes that the testimony sought through the subpoena is "unreasonably cumulative." Debevoise's Motion to Quash Defendants' Subpoena to Testify, ECF No. 713-1 ("Debevoise Br.") at 13. Debevoise is wrong.

First, and although the Smith Declaration contains some of the information the defense would elicit at trial, it is—consistent with the purpose for which it was drafted—primarily focused on the issue of whether L&T was subject to the Court's jurisdiction. Smith Decl. ¶¶ 11–36 ███████████████████████ ██████████████. Neither the Declaration nor the documents L&T produced to the government were designed to describe the scope and depth of Debevoise's review, a description that gives force to Defendants' arguments about the absence of evidence regarding the demand for and payment of the bribe alleged in the Indictment.

Further, and even if some of the trial testimony sought through the subpoena was cumulative of information that exists in the form of declarations or documents,

the subpoena would still not be so "unreasonable or oppressive" as to require that it be quashed. *Nixon*, 418 U.S. at 700; *see also United States* v. *Messercola*, 701 F. Supp. 482, 485 (D.N.J. 1988) ("Given the difficulties inherent in preparing for a complex and lengthy criminal trial, the benefits that arise from requiring [pretrial] production . . . from a nonparty witness far outweigh the speculative inconveniences." (internal citations and alterations omitted)). At a minimum, Debevoise's argument ignores the fundamental difference between questioning specifically tailored to disputed issues at trial and statements written for other purposes. Neither the Smith Declaration nor documents produced by L&T provide the clear and direct evidence that comes with live testimony. Put another way, Debevoise is essentially asking this Court to order that the defense be deprived of live testimony because some similar (but incomplete) information on some (but not all) of the topics it wishes to develop through that testimony exists elsewhere in the record in documentary form. Neither the Constitution nor any relevant case law supports that position.

To the contrary, "a criminal defendant is entitled by the Constitution to a meaningful opportunity to present a complete defense, including the opportunity to call witnesses to aid in that defense: [f]ew rights are more fundamental than that of an accused to present witnesses in his own defense." *Scrimo* v. *Lee*, 935 F.3d 103, 112 (2d Cir. 2019) (internal citation and alterations omitted); *United States* v.

13

*Llanez-Garcia*, 735 F.3d 483, 493 (6th Cir. 2013) ("[Rule 17] implements a criminal defendant's constitutional right 'to have compulsory process for obtaining witnesses in his favor' by providing a means to subpoena witnesses and documents for a trial[.]").  Debevoise has not cited any cases suggesting that this constitutional right can be abridged simply because some similar (but less precise and direct) evidence exists elsewhere in the record.  *See Riego*, 627 F. Supp. 3d at 1260 (denying motion to quash testimonial subpoena and rejecting witness's objection that the evidence is cumulative); *United States* v. *Peavler*, 2017 WL 1018304, at *4 (E.D. Ky. Mar. 10, 2017) (denying motion to quash testimonial subpoena of former outside lawyer where she was "intimately involved in compiling" materials, which "could be the proper basis for testimony"); *United States* v. *Goldstein*, 2023 WL 3662971, at *5 (E.D.N.Y. May 25, 2023) (denying motion to quash testimonial subpoena and rejecting cumulative objection where defendants sought to elicit testimony from two investigators who conducted witness interviews).[3]

## II.    Testimony Regarding Debevoise's Investigation Is Admissible

Debevoise's next argument is that the testimony sought through the subpoena, whether or not relevant, is somehow inadmissible.  As an initial matter, courts do

---

[3]   Debevoise argues that the documentary evidence "should either be admitted at trial or become the subject of a stipulation between the parties."  Debevoise Br. at 13.  Defendants respectfully disagree with the proposition that they should be required to choose between less effective ways of presenting their defense.

14

not require that the proponent of the subpoena establish that the material being sought will actually be admitted at trial.  Rather, "[i]t is only required that a good faith effort be made to obtain evidence" through the Rule 17 process.  *Messercola*, 701 F. Supp. at 485 (quoting *Bowman Dairy Co.* v. *United States*, 341 U.S. 214, 219 (1951)).  Courts recognize that "it is difficult to predict in advance of trial which documents will be held admissible," and thus materials need only be "potentially admissible."  *United States* v. *Orena*, 883 F. Supp. 849, 868 (E.D.N.Y. 1995); *see also United States* v. *Gas Pipe, Inc.*, 2018 WL 5262361, at *3 (N.D. Tex. June 18, 2018) (noting the documents sought are "relevant and may be admissible").  Given the "comparable principles" used to adjudicate the propriety of Rule 17(a) trial subpoenas, the Court should apply the same standard here with respect to the testimonial topics Defendants intend to raise with the Debevoise witness at trial. *Peavler*, 2017 WL 1018304, at *2 (quoting *Stern*, 214 F.3d at 17).  At a minimum, the issue of admissibility can await the application of the rules of evidence to specific questions and answers at trial.

Debevoise concludes that the subpoena seeks inadmissible hearsay, but does not articulate a coherent basis for that claim.  Defendants do not seek to have the Debevoise witness recite at trial "what others told Debevoise during the course of its investigation," or "what others said to regulators or in newspaper articles." Debevoise Br. at 17.  Rather, Defendants intend to elicit information—already

shared with the government—about evidence that was not found as part of Debevoise's review.  Debevoise has offered no serious argument that testimony about (1) its involvement in the case; (2) the scope, methodology, and process by which it conducted its investigation; and (3) what was not found as part of its review constitutes inadmissible hearsay.

## III.   The Testimony Sought Through the Subpoena Does Not Implicate Privilege

Debevoise next raises privilege concerns, arguing that "testimony regarding the scope, methodology, and limitations of the . . . [r]eview that is not already in the record" is *per se* protected from disclosure by the attorney-client privilege and the attorney work product doctrine.  Debevoise Br. at 13.

To the extent that this is an argument that Defendants should be forced to proceed with information already in the record, it is addressed *supra* at pages 11–13.  More importantly, the subpoena—as reflected in the letter that accompanied it—seeks testimony that is limited to information already provided to the government, and therefore either was not privileged in the first instance or as to which privilege has been waived.[4]  ECF No. 713-3 at 2 (stating that "[w]ith respect to privilege in

---

[4]   The subpoena does not request documents, either from Debevoise or L&T, and plainly does not implicate written "fact [or] opinion work product created by Debevoise."  Debevoise Br. at 14.  Nor does the subpoena "seek testimony from a Debevoise attorney regarding [internal] communications between Debevoise and its client."  *Id.* at 16.  To the contrary, the subpoena is aimed at facts, not communications, and to the extent the topics do touch on communications, they

particular, we agree to limit the testimony sought to disclosures already made to the government and other regulators, both orally and in writing, with respect to each of the points described above").  Debevoise has no plausible basis to assert that the disclosures it made to the government—whether factual information or updates regarding the results of the review—are privileged.  Opinion re Motions to Compel and Quash Rule 17(c) Subpoenas, ECF No. 263 at 7, *United States* v. *Coburn & Schwartz*, 2022 WL 357217, at *4 (D.N.J. Feb 1, 2022) ("[D]isclosure of ostensibly privileged communications to a third party 'has long been considered inconsistent with an assertion of the privilege.'" (citation omitted)); *In re Teleglobe Commc'ns Corp.*, 493 F.3d 345, 361 (3d Cir. 2007) ("Disclosing a communication to a third party unquestionably waives the privilege."); *Westinghouse Elec. Corp.* v. *Republic of Philippines*, 951 F.2d 1414, 1426 n.12 (3d Cir. 1991) (same); *In re Columbia/HCA Healthcare Corp. Billing Pracs. Litig.*, 293 F.3d 289, 307 (6th Cir. 2002) ("Even more than attorney-client privilege waiver, waiver of the protections afforded by the work product doctrine is a tactical litigation decision.").

None of the cases cited in Debevoise's motion change the analysis.  Two of them, *In re Grand Jury Investigation*, 599 F.2d 1224 (3d Cir. 1979), and *In re Appeal*

---

are communications that Debevoise had with the government and over which no privilege exists.  Finally, and in light of Debevoise's representations about the scope of its work, *id.*, the Defendants will not ask Debevoise questions about communications with foreign regulators.

*of Hughes*, 633 F.2d 282 (3d. Cir. 1980) precede the Supreme Court's seminal case of *Upjohn Co.* v. *United States*, 449 U.S. 383 (1981). And neither those cases nor *In re Linerboard Antitrust Litig.*, 237 F.R.D. 373 (E.D. Pa. 2006), involved circumstances, like the ones present here, involving intentional disclosures to the government. In sum, Debevoise has barely alleged, and certainly has not shown, that the testimony sought through the subpoena is protected by a privilege.

## IV. The Testimony Sought Through the Subpoena Would Not Be Unduly Burdensome

Debevoise's final argument is that providing the requested testimony would constitute an undue burden. Debevoise Br. at 17–18. That claim is meritless. The testimony being sought relates to a criminal trial, and Debevoise's references to Rule 45 and civil cases more generally are inapplicable. *See, e.g.*, *id.* at 18 n.5; *United States* v. *Olhovsky*, 562 F.3d 530, 544 (3d Cir. 2009) (stating that Federal Rule of Civil Procedure 45 "is not relevant to a criminal proceeding"). But even assuming *arguendo* that the burden language of Rule 45 applied to this case (and clearly it does not), Debevoise cannot demonstrate that testifying at trial would be unduly burdensome.

First, and as a threshold matter, the trial subpoena was addressed to David O'Neil, a Debevoise partner based in Washington, D.C., who was involved in the review and participated in numerous calls with the government. ECF No. 482-1 at

24, 64, 79, 126.  The burden involved in traveling from Washington, D.C. to Newark, New Jersey is not, in the context of a criminal trial, "undue."

Further, and in any event, Defendants explicitly agreed to work with Debevoise to "identify the specific person . . . best suited to testify," should it prefer not to make Mr. O'Neil available for testimony.  ECF No. 713-3 at 2.  Debevoise suggests two other individuals, Mr. Smith (based in Colorado and Utah) and Phillip Rohlik (based in China), as potential witnesses.  Debevoise Br. at 18.  Given the stakes—and that each appears to travel (or have traveled, often internationally) for business—it is not "unduly" burdensome for either to testify at trial.[5]

Finally, and regardless of which particular attorney testifies, actual time spent on the witness stand will be limited.  Based on the contours outlined above, Defendants anticipate that the direct examination of the Debevoise witness will be brief.  And even in the unlikely scenario that the government might conduct a lengthy cross, the duration of all of the testimony, direct and cross, is likely to be measured in hours, not days.  On this record, and given what is at stake, Debevoise cannot credibly argue that the subpoena issued here presents an undue burden.

---

[5]   Debevoise references a planned vacation that Mr. Smith intends to take between September 23 and September 29.  Debevoise Br. at 18 n.4.  Should Mr. Smith ultimately serve as the witness, Defendants are willing to work with Debevoise to ensure that Mr. Smith's vacation will not be interrupted by his trial testimony.

## <u>CONCLUSION</u>

For the foregoing reasons, this Court should deny Debevoise's motion to quash.

Dated: June 20, 2024                           Respectfully submitted,


/s/ *Nicholas J. Lewin*                         /s/ *Roberto Finzi*
Nicholas J. Lewin                               Theodore V. Wells, Jr.
**KRIEGER LEWIN LLP**                           Roberto Finzi
350 Fifth Avenue                                Justin D. Lerer
New York, NY 10118                              Kyle T. Sieber
(212) 390-9559                                  **PAUL, WEISS, RIFKIND,**
                                                **WHARTON & GARRISON LLP**
                                                1285 Avenue of the Americas
*Attorney for Defendant*                        New York, NY  10019-6064
*Gordon J. Coburn*                              (212) 373-3000

                                                **GIBBONS P.C.**
                                                Lawrence S. Lustberg
                                                John D. Haggerty
                                                Anne M. Collart
                                                One Gateway Center
                                                Newark, NJ  07102
                                                (973) 596-4500

                                                **BOHRER PLLC**
                                                Jeremy I. Bohrer
                                                Jonathan E. Jason
                                                10 Grand Central, Suite 2101
                                                New York, NY  10017
                                                (212) 303-3314

                                                *Attorneys for Defendant*
                                                *Steven Schwartz*