October 30, 2024

**BY ECF AND EMAIL**

The Honorable Michael E. Farbiarz
United States District Judge
District of New Jersey
Martin Luther King Building & U.S. Courthouse
50 Walnut Street
Newark, NJ 07102

Re:    *USA v. Coburn & Schwartz*, No. 19-cr-120 (MEF)

Dear Judge Farbiarz:

Our firms represent non-party Cognizant Technology Solutions Corporation. ("Cognizant"). We write pursuant to the proposal set forth in the Government's letter dated October 23, 2024 (ECF 777, the "Government's Letter"), to summarize the Court's prior rulings in this matter concerning Cognizant's corporate privilege and to delineate the scope of Cognizant's privilege in light the prior rulings. We also write in response to Defendants' letter dated October 30, 2024 (ECF 778, "Defendants' Letter" or "Def. Ltr."), in which Defendants, among other things, oppose the Government's proposal.

Cognizant agrees with the Government that—in view of the facts that one of the Defendants is Cognizant's former Chief Legal Officer and, as Cognizant understands, the parties are likely to call other current and former Cognizant employees and in-house and outside counsel to testify at trial—issues concerning Cognizant's privilege are not "remote" as Defendants contend, but are undoubtedly likely to arise during trial. For example, although Defendants assert that their inquiry into Cognizant's privileged internal investigation that preceded Defendants' indictment "will be constrained by bounds of relevance" at trial (Def. Ltr. at 3), Cognizant's in-house and outside counsel who oversaw and conducted the investigation are on the witness list, and Defendants never state that they will not examine those witnesses as to (presumptively privileged) issues related to the investigation. Procedures should be in place to allow Cognizant to protect its privileges without unduly interrupting the presentation of evidence. To that end, Cognizant provides the below summary of the Court's prior rulings and opinions regarding Cognizant's privilege.[1]

Before turning to that summary, however, Cognizant notes that Defendants' Letter only underscores the need for a pre-trial mechanism to address potential disputes concerning Cognizant's privileges. The summary of the Court's prior rulings concerning Cognizant's privilege set forth in Defendants' Letter is a materially incomplete, one-sided, and, frankly, misleading portrayal of the Court's prior rulings. While Defendants profess to oppose "relitigation" of the Court's privilege rulings (Def. Ltr. at 1), their letter is plainly an attempt

---

[1] Cognizant expressly reserves the right to assert privilege over any information or documents not expressly determined to be waived or outside the scope of privilege as a result of the rulings summarized in this submission.

to recast the Court's prior rulings. Defendants' Letter selectively references a handful of prior Court rulings in their favor and entirely ignores other key orders and rulings upholding Cognizant's privilege—including, most glaringly, the Court's express rejection of Defendants' repeated assertions that Cognizant effected a subject matter waiver. *See infra* at 3-7, 9. Defendants' Letter, like the prior years of litigation over the scope of Cognizant's privilege, gives ample reason for concern that Defendants intend to probe at trial into areas protected by Cognizant's privileges notwithstanding the Court's prior rulings.

Defendants' alternative proposal—*i.e.*, that the Court enter an Order under Federal Rule of Evidence 502 "providing that any information revealed by any Cognizant . . . witnesses during the pretrial hearing or trial in this matter would not constitute a further waiver of Cognizant's privilege (Def. Ltr. at 5)—does nothing to alleviate Cognizant's concerns. To the contrary, it exacerbates them. The history of this litigation and Defendants' Letter evidence their steadfast refusal to acknowledge those aspects of the Court's rulings that upheld Cognizant's privilege. If armed with a Rule 502 Order, Cognizant is gravely concerned that Defendants will use that as a license to ask questions designed to invade Cognizant's privilege, all while contending that Cognizant should be stripped of its right to object because there will be no further waiver. But the trial in this matter will be in open court, attended by the press, other members of the public, and potentially, Cognizant's adversaries in other litigation. Once privileged information is adduced, the bell simply cannot be un-rung, irrespective of whatever limited protections Rule 502 might provide. This concern is only magnified by Judge McNulty's observation that Defendants have used litigation against Cognizant in this case as a vehicle for airing "their grievances against their former employer." (*See* ECF 380 at 4.) For these reasons, any disputes concerning the Court's privilege rulings must be addressed in advance of trial and we respectfully request the Court's guidance and direction as to the appropriate procedure to govern necessary objections to protect Cognizant's privilege.

### A.  January 24, 2022 Opinion (ECF 268) and Order (ECF 264)

In April 2021, Defendants jointly filed a motion to compel in connection with Rule 17 subpoenas issued to Cognizant, seeking (among other things) documents to support their anticipated *Garrity* motion.[2]  In that motion, Defendants asserted that, by providing the Government with summaries of certain interviews conducted by DLA, Cognizant (through DLA) effected a subject matter waiver of its corporate privilege with respect to "the conduct alleged in the Indictment and Cognizant's internal investigation, including, without limitation, Cognizant employees' interviews with DLA, [and] emails relating to Cognizant's internal investigation," among other topics. (ECF 158 at 83.)

---

[2] In July 2022, Defendants moved for suppression of statements that they made during interviews conducted by Cognizant's outside counsel, DLA Piper ("DLA"), in the course of DLA's internal investigation of Cognizant concerning the subject matter of this action (the "*Garrity* motion"). Prior to July 2022, in anticipation of making their *Garrity* motion, Defendants issued various Rule 17 subpoena requests to Cognizant seeking "information relevant to the Government's [alleged] outsourcing of key aspects of its investigation to Cognizant," including materials prepared by DLA attorneys. (ECF 158 at 16, 19.) Defendants' *Garrity* motion was ultimately denied following an evidentiary hearing. (*See* ECF 495.)

- 3 -

Judge McNulty ruled on Defendants' motion to compel in an Order and Opinion dated January 24, 2022 (ECF No. 268, the "January 2022 Opinion"). The Court's Order and Opinion addressed, among other things, (a) whether Cognizant had appropriately designated certain categories of documents as privileged, and (b) whether Cognizant had effected a subject matter waiver and waived privilege over other, otherwise privileged materials in the course of disclosures made by DLA to the Government in connection with its investigation into the conduct at issue in this matter (the "Investigation").

With respect to part (a), the Court found that Cognizant had properly designated as privileged, and therefore withheld from production, the following categories of documents:

i.  *Documents concerning the formulation of, and advice concerning, document retention and collection policies.* Judge McNulty held that "[d]ocuments relating to legal advice concerning the formulation of [document retention and collection] policies are facially privileged," and that Cognizant therefore need not produce them. (January 2022 Opinion at 12.)

ii. *Communications and litigation hold memoranda made in anticipation of litigation.* Judge McNulty held that "(1) communications among Cognizant's executives, in-house counsel, and outside counsel [made when Cognizant was facing criminal and civil liability in connection with the allegations against Defendants]; and (2) litigation hold memoranda and other documents that relate to the areas to be investigated and the custodians and document sources to be searched . . . clearly pertain to litigation strategy and the provision of legal advice in advance of litigation, and were created at a time when litigation was reasonably anticipated[,]" and, "[t]hus, Cognizant's assertion of attorney client and work product privilege over them [wa]s proper." (*Id.*)

iii. *Communications with E&Y concerning Cognizant's internal investigation.* The Court held that Cognizant "appropriately asserted" privilege over "Cognizant's communications with the accounting firm [Ernst & Young ('E&Y')] concerning Cognizant's internal investigation and related updates given to the Board of Directors, DOJ, and SEC," because "the nature of the allegations against Defendants and the scope of Cognizant's internal investigation would understandably make accounting expertise vital to any law firm representing Cognizant." (*Id.* at 12-13.)

Conversely, with respect to the following three categories of documents, Judge McNulty found that the connection to legal advice was too attenuated to support the application of privilege and ordered that Cognizant produce: (i) "Cognizant's draft press releases and public disclosures"; (ii) "Cognizant's communications with public relations firms Finsbury and CLS Strategies concerning 'public disclosure, communications, potential litigation and related

- 4 -

legal strategy' relevant to Cognizant's internal investigation";[3] and (iii) "document retention and collection policies themselves, and the dates of their promulgation." (*Id.* at 11-12).

With respect to part (b), Defendants' assertion of subject matter waiver, Judge McNulty found that, while Cognizant did effect "a significant waiver" in the course of DLA's presentations and disclosures to the Government in connection with its Investigation (*id.* at 13), it did not effect a subject matter waiver. Specifically, the Court ruled that "Defendants characterize this waiver too expansively" in arguing that "Cognizant effected a subject matter waiver over broad categories of documents—namely, any communications regarding conduct alleged in the indictment and any materials related to Cognizant's internal investigation—by disclosing a summary of its investigation's findings to DOJ." (*Id.*) Instead, Judge McNulty found a limited waiver encompassing only three categories of documents:

- "First, to the extent that summaries of interviews were conveyed to the government, whether orally or in writing, the privilege is waived as to all memoranda, notes, summaries, or other records of the interviews themselves";

- "Second, to the extent the summaries directly conveyed the contents of documents or communications, those underlying documents or communications themselves are within the scope of the waiver"; and

- "Third, the waiver extends to documents and communications that were reviewed and formed any part of the basis of any presentation, oral or written, to the DOJ in connection with this investigation."

(*Id.* at 14.)

The January 2022 Opinion therefore makes clear that Cognizant's corporate privilege and work product protections continue to apply to investigation-related documents and communications, except where such materials were disclosed to—or "reviewed and formed any part of the basis" of a disclosure to—the Government.

Pursuant to this decision, Cognizant produced (i) all interview memoranda and notes of interviews that had been "downloaded" or summarized to the Government (with redactions over material that was not downloaded to the Government); (ii) documents, including documents previously withheld as privileged, referenced in those portions of the interview memoranda that were downloaded to the Government; (iii) attorney talking points used for meetings with or presentations to the Government; (iv) draft press releases; (v) draft public disclosures; and (vi) DLA's communications with the public relations firms.

---

[3] As Judge McNulty clarified in a subsequent ruling, the communications the Court directed Cognizant to produced encompassed "communications between the law firm DLA Piper, representing Cognizant, and the PR firms . . . that it retained." (ECF 319 at 9.)

- 5 -

### B.  March 23, 2022 Opinion (ECF 319)

Cognizant sought reconsideration of the portion of Judge McNulty's January 2022 Opinion that concluded that (1) draft press releases and public disclosures and (2) communications between DLA and the public relations firms that it retained were not privileged.  (ECF 290.)  The Court denied reconsideration, finding that—even though the public relations firms were "clearly hired by DLA to provide advice and services regarding Cognizant's disclosures to the public, as is both appropriate and to be expected given these companies' expertise in public relations"—the materials that the Court reviewed *in camera* showed only that the public relations firms "provided advice on how to convey to the public facts about the case against Coburn and Schwartz and about Cognizant's response to their alleged misconduct," rather than to aid DLA in "formulat[ing] advice on the legal exposure facing Cognizant or potential future litigation."  (ECF 319 at 9-10.)

### C.  April 27, 2022 Memorandum & Order (ECF 339)

Following Cognizant's production of redacted versions of DLA interview memoranda and notes pursuant to the January 2022 Opinion, Defendants sought to compel production of entirely unredacted versions of such materials.  (ECF 332.)  Cognizant then sought clarification as to whether Judge McNulty had authorized Cognizant to redact those portions of interview memoranda and notes that DLA had not previously been downloaded to the Government. (ECF 333, 337.)

In his April 27, 2022 Order (ECF 339), Judge McNulty ordered Cognizant to produce the entirely unredacted versions of any interview memorandum that had been at least partially downloaded to the Government, as well as DLA's talking points for meetings with the Government in connection with its investigation.  Judge McNulty reasoned that Cognizant cannot "redact the documents based on this or that sentence or paragraph being privileged or nonprivileged, viewed in isolation" because "Cognizant's waiver . . . encompassed both the interview memoranda in their entirety and the notes used by Cognizant's attorneys in preparing for the DLA downloads" as these "materials were reviewed and formed part of the basis of Cognizant's presentations to the government, even if they were not conveyed to the government verbatim and in their entirety."  (*Id*. at 4-5.)

However, in response to Defendants' contention that Judge McNulty had found a subject matter waiver by Cognizant (*see, e.g.*, ECF 332 at 2-4), the April 27, 2022 Order reiterated that Judge McNulty "did not accept" the position, which "Defendants originally urged," *i.e.*, that Cognizant had effected "a very broad subject matter waiver," and noted that, instead, the January 2022 Opinion had "narrowed the scope of the waiver[.]"  (ECF 339 at 3.)

Cognizant then produced the unredacted versions of all interview memoranda and notes that had been downloaded, even partially, to the Government, as well as the underlying documents referenced in previously redacted portions of those materials.[4]

---

[4] Cognizant also later produced—pursuant to stipulations under Federal Rule of Evidence 502(d) which Judge McNulty so-ordered—two sets of interview notes that had not been

- 6 -

### D.  July 19, 2022 Memorandum & Order (ECF 380)

Following Cognizant's production of draft press releases, draft public disclosures, and DLA's communications with its public relations firms pursuant to the Court's January 24 and March 23, 2022 Orders, Defendants moved to compel the production of additional unproduced documents that were referenced in those documents and that Defendants argued would be relevant to their anticipated *Garrity* motion.  Specifically, Defendants asked the Court to direct Cognizant to produce:

> (1) any further draft press releases prepared between those two dates, i.e., September 23–September 30, 2016; (2) relevant documents held by DLA Piper attorneys who played a 'significant role' in preparing and editing the press releases; and (3) 'other relevant documents' such as a draft 'Questions and Answers' document and 'core messaging document' that ostensibly 'shed light' on the 'discrepancy' between Cognizant's draft and final press releases.

(*Id.* at 2-3.)  Cognizant opposed production, arguing that the documents were both privileged and outside the scope of the Rule 17 subpoena requests the Court had approved.  (ECF 370 at 8.)

In his July 19, 2022 Memorandum & Order (ECF 380), Judge McNulty agreed with both of Cognizant's arguments.  Judge McNulty held that "communications directly between Cognizant and its counsel (as opposed to Cognizant's or counsel's communications with PR firms or the press), not directly or derivatively shared with the government, are presumptively privileged, and Defendants do not really offer a substantial argument to the contrary." (*Id.* at 3.)  The Court also "agree[d] with Cognizant that Defendants' latest effort to expand the Category A subpoenas is neither authorized by [the Court's] prior orders nor by the principles governing subpoenas under Rule 17." (*Id.*)  Judge McNulty found that "Defendants neither need nor are entitled to the materials sought," and noted that he had already granted "very broad discovery" to Defendants and had given them "ample leeway to investigate and develop their case." (*Id.* at 5-6.)

---

downloaded to the Government or used in preparation for meetings with the Government and, thus, had appropriately been withheld on the basis of privilege.  Cognizant agreed to produce these notes to avoid wasteful litigation with Defendants, subject to Defendants' agreement that production of such notes did not constitute a waiver of anything beyond the notes produced. (*See* ECF 429 (502(d) stipulation concerning notes taken by Cognizant's former in-house counsel Dana Gilbert of an August 29, 2016 interview of Steven Schwartz); ECF 461 (502(d) stipulation concerning talking points prepared for Cognizant's former CEO Francisco D'Souza for communications with Schwartz in August 2016).)  Defendants' Letter inexplicably mentions only one of these 502(d) stipulations.  (Def. Ltr. at 5 n.6.)

- 7 -

### E.  April 17, 2023 Memorandum & Order (ECF 468)

On April 18 and 19, 2023, Judge McNulty presided over a hearing on Defendants' *Garrity* motions, at which Francisco D'Souza (Cognizant's former CEO) and outside counsel from DLA testified.  Prior to the hearing, Judge McNulty issued a Memorandum & Order dated April 17, 2023 (ECF 468)—a decision that, remarkably, Defendants' Letter entirely ignores—to clarify various issues concerning the scope of Cognizant's corporate privilege and, again, rejected Defendants' contention that Cognizant had effected a subject matter waiver of its privilege.

*First*, prior to the hearing, Defendants asserted that Cognizant should be ordered to produce DLA attorneys' contemporaneous and after-the-fact notes of their meetings with the Government in connection with the Investigation based on, among other things, renewed claims that Judge McNulty had found a subject matter waiver.  (ECF 451 at 13-17.)  Judge McNulty denied that request, finding that after-the-fact notes and summaries of meetings between Cognizant and the Government that were not themselves conveyed to the Government constituted protected attorney work product.  (ECF 468 at 3.)  Judge McNulty also rejected Defendants' argument such notes and summaries "fall within the scope of the privilege waiver . . . recognized in [the January 2022 Opinion]."  (*Id*.)  He noted that:

> [Defendants'] position is that "[n]otes and summaries of meetings between Cognizant and/or its agents and the Government prepared during or after those meetings will clearly contain information 'actually conveyed to the government' or, at the very least, material 'so related to that information that they 'ought in fairness be considered together."

(*Id*. at 4.)  But Judge McNulty made clear that "the 'so related' standard is not a free-floating entitlement that can be used to roll back the actual rulings of the Court.  (*Id*. at 4 n.3.)  Thus, Judge McNulty again confirmed Cognizant had not effected a subject matter waiver.

*Second*, Cognizant requested that the Court establish guidelines for the appropriate questioning of two of Defendants' witnesses—Karl Buch, the DLA attorney who led the Investigation, and Mr. D'Souza.  (*Id*. at 5.)  Judge McNulty advised that "Cognizant can only assert its privilege over communications involving in-house or outside counsel where the purpose of the communications was to secure legal advice," and that "the defendants are permitted to question the witnesses about otherwise privileged communications or work product to the extent that such communications or work product were either directly conveyed to the Government or fall into one of the three buckets outlined [in the January 2022 Opinion]."  (*Id*. at 5-6.)

*Third*, Cognizant sought confirmation that it need not produce a particular memorandum prepared by a DLA attorney that Cognizant had withheld on the basis of privilege. ████████████████████████████████████████████████████

- 8 -

███████████████████████████████████████████████
███████████████████████████████████████████████

### F. Privilege Rulings at the April 18-19, 2023 *Garrity* Hearing

During the *Garrity* hearing held on April 18 and 19, 2023, Cognizant made, and Judge McNulty ruled on, various objections based on privilege. Contrary to the depiction in Defendants' Letter, the majority of Cognizant's objections on the basis of privilege were *not* overruled, as Defendants suggest, but rather, prompted Judge McNulty to suggest to defense counsel areas in which they should not question witnesses, or caused defense counsel to voluntarily rephrase their questions. (*See* ECF No. 473, April 18, 2023 Hr'g Tr. at 238:6–23; ECF No. 476, April 19, 2023 Hr'g Tr. 302:9–25, 339:25-340:3, 343:18-344:8, 351:5-12.). Judge McNulty's rulings at the *Garrity* hearing adhered to his prior decisions that privilege over matters and documents that had been disclosed or conveyed to the Government had been waived (*see, e.g.,* ECF No. 473, April 18, 2023 Hr'g Tr. at 263:9-264:9; ECF No. 476, April 19, 2023 Hr'g Tr. at 310:21-311:12, 318:14-24), but that matters including DLA's "internal decision-making processes," "internal deliberations," and attorneys' "thought processes" remain privileged or subject to the work product protection. (Apr. 19 Hr'g Tr. 279:7-20, 301:17-302:25, 302:16-25, 307:19-25.)

### G. August 10, 2023 Report & Recommendation (ECF 505), and accompanying August 9, 2023 Transcript (ECF 511)

In March 2023, in advance of trial, which was then scheduled to begin in October 2023, Defendants objected to over 4,300 privilege log entries from four privilege logs associated with Cognizant's productions to the Government and to Defendants, both in connection with the Investigation and with Defendants' Rule 17 subpoenas. Judge McNulty referred the dispute concerning those objections to Magistrate Judge Hammer. (ECF 481.)[5] Magistrate Judge Hammer's rulings with respect to Defendants' objections were memorialized in a Report and Recommendation, dated August 10, 2023 (ECF 505) and in the transcript of oral rulings made on August 9, 2023 (ECF 511), and fall into four categories.

*First*, Defendants asserted that there were 1,375 entries on Cognizant's privilege logs that were not appropriately designated privileged because they (a) appeared to be communications that did not involve lawyers; (b) included lawyers who, Defendants contended, were acting in non-legal capacities; (c) had subject lines that did not indicate the provision or receipt of legal advice; or (d) included communications with a third party. (ECF 511 at 8-9.) Magistrate Judge Hammer denied Defendants' request for production of these documents in all respects, except that he ordered Cognizant to produce about 20 communications with L&T (a third-party) that were attached to privileged emails. Magistrate Judge Hammer did not order Cognizant to produce the privileged parent emails. (ECF 505; ECF 511 at 20-21.)

---

[5] Magistrate Judge Hammer agreed that Defendants had years to raise this issue and did not explain the reason for their delay. (ECF 511 at 12.)

- 9 -

In denying Defendants' request to order the production of the remaining 1,355 documents, Magistrate Judge Hammer recognized that "[t]he attorney-client privilege, and for that matter, the work product doctrine, can apply where a lawyer is neither a sender nor a recipient. (ECF 511 at 12). He noted that "[f]ederal courts have long recognized that corporate clients may require the assistance of nonattorneys to gather factual information necessary for the provision of legal advice and representation, and to execute the legal advice once it has been conveyed to the company," and that "the Supreme Court has recognized that in the corporate context, employees other than executives and counsel may have relevant information to assist in the application or formulation of legal advice. (*Id.* at 13-14.) Magistrate Judge Hammer reviewed several examples of redacted or withheld documents *in camera* and found that Cognizant had appropriately designated them all as privileged. (*Id.* at 16-20.)

*Second*, Defendants argued that there were certain topics—the "KITS planning permit, construction variations, and bribe demand"—that Cognizant disclosed to the Government in such detail that DLA must have reviewed the following withheld documents to prepare for its presentations to the Government: (i) "[a]n early 2015 email thread among Cognizant employees Biswajit Ghosh and P. Ganesh entitled "KITS variation,"; (ii) [m]id-October 2015 emails between Cognizant's in-house counsel and Cognizant employees concerning legal advice from in-house counsel about the process for obtaining the planning permit for the KITS facility; (iii) a March 20, 2015 email titled "KITS variation-Amendment to Construction Contract"; and (iv) "emails dated August 4, 2016 to August 9, 2016 between and among Srimanikandan Ramamoorthy, Dana Gilbert, and Karl Buch concerning payments to Larsen & Toubro Construction for the KITS facility." (*Id.* at 30-31.) Magistrate Judge Hammer found that these materials were "sufficiently aligned with the allegations of the indictment and Cognizant's disclosures and presentations to the Government, to warrant further scrutiny and consideration on the issue of waiver." (*Id.* at 48.) He provided Cognizant with the option of producing such documents or submitting them for *in camera* review. (*Id.* at 48-49.) Cognizant produced the documents rather than prolong the litigation over the issue.

*Third*, Magistrate Judge Hammer found that Cognizant "waived privilege concerning emails demonstrating that Defendants assisted in advancing the investigation" (ECF 505 at 3), because it had "produced to the Government communications that the Government may seek to introduce at trial to show that Defendant Coburn and/or Defendant Schwartz attempted to interfere with, or bring to a premature conclusion, the internal investigation" (ECF 511 at 76). Accordingly, the Court ordered Cognizant to produce emails "demonstrat[ing] either or both Defendants taking material measures to actively support or coordinate the activities of the internal investigation, or directing other officers or employees to do so." (ECF 505 at 3.)

*Fourth*, Judge Hammer denied Defendants' requests that the Court order Cognizant to produce documents concerning Cognizant's efforts to obtain the KITS planning permit alleged in the Indictment, documents concerning other bribes, and documents concerning Cognizant's FCPA policies. He reasoned:

> Defendants essentially contend that merely discussing a general topic with the Government constitutes a waiver of the privilege as to all materials and communications relating to that general topic. But that argument misapprehends the scope of the waiver

- 10 -

that Judge McNulty found. It is not nearly so broad. . . . A mere overlap of subject matter is insufficient for waiver.

(ECF 511 at 40-41.) For example, Judge Hammer found "Defendants' argument . . . that the Government's exhibit list somehow establishes that Cognizant waived privilege for the category 'FCPA policy development and enforcement, global risk assessments & corruption audits' . . . unpersuasive." (*Id*. at 41.) He found that "Defendants do not contend, nor is there any evidence to suggest, that Cognizant disclosed such a broad swath of material to the Government, much less during investigation into specific allegations of bribery such as to warrant wholesale, entirely subject matter-based waiver untethered to Cognizant's actual presentations to the Justice Department." (*Id*. at 43.)

\*\*\*

Cognizant believes that the Court's prior rulings provide clear guidance for the scope of permissible questioning of Cognizant's current and/or former employees and counsel at trial. However, to the extent potential privilege disputes become ripe pre-trial or arise during trial, Cognizant is entitled to object to protect its privileges and respectfully seeks the Court's direction as to the appropriate procedure or mechanism for it to do so.[6] We appreciate the Court's attention to this request and are available at the Court's convenience to answer any questions.

Respectfully submitted,

ALSTON & BIRD LLP

FRIEDMAN KAPLAN SEILER
ADELMAN & ROBBINS LLP

s/ *Jenny Kramer*
Jenny Kramer
Rachel Finkel (not admitted to USDC-NJ bar)
Scott O'Brien (not admitted to USDC-NJ bar)
90 Park Avenue, 12ᵗʰ Floor
New York, New York 10016
(212) 210-9400

s/ *Mala Ahuja Harker*
Mala Ahuja Harker (not admitted to USDC-NJ bar)
Michael S. Palmieri (not admitted to USDC-NJ bar)
7 Times Square
New York, New York 10036-6516
(212) 833-1100

cc:    All Counsel of Record

---

[6] To the extent Defendants dispute any of the descriptions of the Court's rulings summarized in this submission, Cognizant reserves the right to seek leave to respond to Defendants and/or supplement this submission.