

**U.S. Department of Justice**

*United States Attorney*
*District of New Jersey*

| | |
|---|---|
| 970 Broad Street<br>Newark, New Jersey 07102 | 973-645-2700 |

February 26, 2025

**VIA CM/ECF**

Honorable Michael E. Farbiarz
United States District Judge

      Re:    United States v. Gordon Coburn and Steven Schwartz
              Crim. No. 19-120 (MEF)

Dear Judge Farbiarz:

      The Government respectfully submits this letter in response to Defendants' letter seeking due process relief (ECF No. 856). The Government will not rehash the history of the letters rogatory and Mutual Legal Assistance Treaty ("MLAT") request given the significant developments since Defendants first sought relief in July 2024.[1] In the more than 13 months that have passed since the Government's January 11, 2024 transmittal of the MLAT request to Indian authorities to obtain depositions requested by Defendants, *see* ECF No. 609, the Government undertook extensive efforts to secure the execution of the MLAT. These efforts were detailed to the Court in a series of sealed and *ex parte* letters, *see* ECF Nos. 753, 787, 791, and 793, a detailed summary of which was disclosed to defense counsel on January 27, 2025.[2] Those updates included



[3]

[4]

      The Defendants' recent due process letter makes no mention of these efforts—likely because they undercut their due process claims. Indeed, given these developments, the factual

---

[1] Defendants incorporated by reference their July 15, 2024 brief (ECF No. 744). The Government did not have an opportunity to respond to that briefing, but can provide additional authority if the Court wishes.

[2] Specifically, the Government disclosed to defense counsel pursuant to the Sealed Protective Order the bulleted updates provided to the Court at pages 3-6 of the Government's January 9, 2025 *ex parte* and under seal letter. *See* ECF No. 793.

[3] The Government provided the text of the MHA decision to defense counsel on November 25, 2024.

[4] For the reasons set forth in its prior *ex parte* and under seal letters, the Government respectfully requests, consistent with the Court's January 24, 2025 Sealed Protective Order, that the redacted information be kept under seal (but provided to Defendants) to safeguard sensitive sovereign-to-sovereign communications.

landscape surrounding Defendants' due process claims has changed dramatically since last July, particularly given the Government's willingness to stipulate to much of the unavailable evidence. Defendants' due process arguments were weak then; they are even weaker now.

The parties have agreed to stipulate to the admission of (a) the FBI-302s documenting the Government's interviews of three employees of Larsen & Toubro Construction ("L&T")— Ramesh Vadivelu, Balaji Subramanian, and Sekharipuram Narayanan Subrahmanyan ("SNS")— with appropriate redactions of irrelevant information; (b) the documents referenced therein; and (c) certain contextual facts surrounding those interviews. *See* ECF No. 882. Even accepting Defendants' characterization that certain statements in these 302s are "clearly exculpatory" rather than self-serving denials of criminal wrongdoing (which the Government does not), Defendants will have an opportunity to present the statements at trial.[5]

In light of this context, Defendants have not been deprived of any due process rights, whether to a fair trial or to a complete defense, that might warrant the extraordinary relief of dismissal or wholesale suppression of "all evidence obtained from India." ECF No. 856 at 3. Such remedies have never been imposed under similar circumstances without regard to the Government's good faith efforts to secure the foreign evidence. As the Supreme Court has explained, to establish a due process claim in "the area of constitutionally guaranteed access to evidence," a defendant must make an initial showing of some governmental action or inaction in bad faith, before turning to whether the evidence would have been material and favorable to the defense. *United States v. Valenzuela-Bernal*, 458 U.S. 858, 869 (1982); *see also United States v. Santtini*, 963 F.2d 585, 596–97 (3d Cir. 1992); *United States v. Bianchi*, 386 F. App'x 156, 160 (3d Cir. 2010) (unpublished). Here, Defendants do not even allege bad faith, the absence of which should end the inquiry. *Santtini*, 963 F.2d at 596–97.

Even if Defendants had alleged bad faith, courts across the country have uniformly rejected due process claims premised on a defendant's frustration over his own inability to compel testimony of foreign witnesses or the government's inability to do so on his behalf. *See, e.g.*, *United States v. Epskamp*, No. 15-2028-CR, 2016 WL 4191126, at *2 (2d Cir. Aug. 5, 2016) (rejecting due process claim based on alleged failure of government to secure testimony of an individual incarcerated in Germany); *United States v. Beyle*, 782 F.3d 159, 170 (4th Cir. 2015) (rejecting due process claim based on defendant's inability to access or subpoena certain witnesses located in Somalia); *United States v. Yousef*, 327 F.3d 56, 114 n.48 (2d Cir. 2003) (noting that "the District Court's inability to subpoena witnesses from the Philippines deprived the defendants of

---

[5] Defendants continue to request other evidence with diminished probative value about the same subject matter, specifically testimony from a Debevoise attorney about the scope and results of the law firm's internal investigation of L&T. The Government anticipates making an oral application that this evidence be excluded under Fed. R. Evid. 403 because of its marginal probative value in light of the parties' stipulation and high risk of undue prejudice and, as the Court signaled preliminarily, because of obvious hearsay issues associated with such testimony. July 2, 2024 Hr'g Tr. at 39:15-19; 40:15-25; 47:15-19 ("[T]he question of a Debevoise witness saying, 'I spoke to two people and I didn't learn about a bribe from either one of them,' I think that is a much, much closer question. And my preliminary sense is that that's not gonna come in."). The Government also anticipates that Debevoise's likely testimony may be the subject of privilege litigation before Magistrate Judge Hammer; any findings that Debevoise's testimony is protected by privilege further weakens any probative value and may be another reason to exclude the Debevoise witness. *See, e.g.*, *United States v. Henry*, 472 F. Supp. 2d 649, 657 (E.D. Pa. 2007) ("[I]t is appropriate to exclude a defense witness's testimony when the witness has refused on cross-examination to respond to questions on non-collateral matters." (internal quotation marks omitted)).

no constitutional right"); *United States v. Sensi*, 879 F.2d 888, 899 (D.C. Cir. 1989) (rejecting due process, compulsory process, and confrontation claim related to witnesses in Kuwait because "[i]t is well settled that a defendant's inability to subpoena foreign witnesses is not a bar to criminal prosecution"); *United States v. Ng*, No. 18-CR-538 (MKB), 2021 WL 11723583, at *43 (E.D.N.Y. Sept. 3, 2021) (holding, in the context of an FCPA trial, that "the Court's inability to compel foreign nationals to testify at Ng's trial is not a violation of his constitutional rights"); *United States v. Ologeanu*, 2020 WL 1676802, at *3 (E.D. Ky. April 4, 2020) (rejecting Fifth and Sixth Amendment argument based on defendant's inability to compel overseas evidence, noting that "a trial absent such overseas proof" is not "constitutionally infirm"); *United States v. Jefferson*, 594 F. Supp. 2d 655, 673–75 (E.D. Va. 2009) (holding, in an FCPA prosecution, that "it is clear that defendant is not entitled to make use of the MLA Treaty and that this result does not violate defendant's constitutional right to compulsory process" or due process).[6]

Facing this robust body of precedent, Defendants resort to inapposite cases remedying due process violations that bear no relationship to the Government's ability to secure foreign evidence. *See* ECF No. 856 at 3-4 (citing *United States v. Wang*, No. 98-cr-199, 1999 WL 138930, at *52 (S.D.N.Y. Mar. 15, 1999) (dismissing indictment where the government failed to inform the defense until one week before trial that it would not be calling a domestic witness, whose credibility was newly in doubt by the government); *United States v. Cloud*, 102 F.4th 968, 971 (9th Cir. 2024) (affirming monetary sanctions and exclusion of a domestic witness where the government failed to turn over *Brady* material, including its "star witness['s]" text messages implicating her credibility); *United States v. Ray*, 578 F.3d 184, 186 (2d Cir. 2009) (where the due process violation was a sentence imposed 15 years after conviction)). And while Defendants cite to Your Honor's law review article, they fail to acknowledge what the article itself recognized—that a due process standard obligating the government to secure foreign evidence on behalf of defendants "is not currently the law," much less a basis for the extraordinary relief requested here. *See* Michael Farbiarz, *Accuracy and Adjudication: The Promise of Extraterritorial Due Process*, 116 Colum. L. Rev. 625, 677 nn. 292-94 (2016).

Defendants' due process claim is also premised on a mischaracterization of the facts. Specifically, Defendants' letter includes inaccurate and misleading descriptions of the nature of Mr. Ramamoorthy's petition to travel, as well as the nature of the L&T witnesses' unavailability. ██████████████████████████████████████████████████████████████ Although the Government discussed this petition with Mr. Ramamoorthy's counsel before and after he filed it and provided Mr. Ramamoorthy's counsel with information about the U.S. case, the nature of the Indian proceeding arising from that petition—a proceeding to which the U.S. is not a party—undermines any claim of unequal access to foreign witnesses warranting relief. In other words, the circumstances surrounding Mr. Ramamoorthy's efforts to travel to the

---

[6] Defendants suggest that FCPA cases in general, and this case specifically, present notable concerns with respect to "unequal access" to evidence. But as the cases cited above show, defendants raise (and courts reject) similar claims in all kinds of federal criminal cases, including ones that have far less of a connection to domestic conduct. *See, e.g., Beyle*, 782 F.3d 159 (hostage-taking, murder, and piracy charges related to conduct off the coast of Somalia). Here, Defendants are U.S. citizens who acted within the borders of the United States and on behalf of a corporation headquartered in New Jersey using U.S. wires to authorize a bribe in violation of federal law.

United States demonstrate the *exact opposite* of what Defendants claim—███████████████████████████████████████████████████████

>   Similarly, there is no basis to instruct the jury that:
>
>   [T]he government had the exclusive authority to seek to compel the missing L&T witnesses' testimony; that the witnesses' testimony would have been favorable to the defense and inconsistent with the government's theory of prosecution; and that the jury may draw an adverse inference from the government's unequal efforts to procure evidence from abroad.

ECF No. 856 at 4.  Indeed, such an instruction would be inaccurate.  The Government's extensive yet unsuccessful efforts over nearly a year to secure the foreign depositions—as described to Defendants but ignored in their letter—make clear that the L&T witnesses are equally available— and unavailable—to both parties.  In fact, Defendants are the only party who successfully conducted interviews in India of the four other witnesses who were the subject of the MLAT request.  The steps Mr. Ramamoorthy took in order to appear at trial and the Government's unsuccessful efforts to obtain the requested depositions make plain that the Government has no unilateral lever to pull to secure the appearance of foreign witnesses who are not willing to appear voluntarily.

With respect to the additional discovery requested by Defendants, the Government has recently disclosed all arguably discoverable information contained in the *ex parte* correspondence to the Court, which the Government will describe to the Court before the deadline regarding sealing of February 28, 2025, at noon. ███████████████████████████████████████████ ████████████████████████████████ In other words, Defendants have received much, if not all, of their request, with the Government having pursued the MLAT request and agreed to the above-described stipulation and discovery.  Given the Government's well-documented efforts to secure the execution of the MLAT request, ████████████████████████ ███, the difficulties in securing Mr. Ramamoorthy's presence at trial, the parties' agreement to stipulate to much of the unavailable evidence, and the lack of a legal basis for Defendants' claims, Defendants' motion should be denied.

|  |  |
|---|---|
|  | Respectfully submitted, |
| GLENN S. LEON<br>Chief | VIKAS KHANNA<br>Acting United States Attorney |
| */s/ Keith D. Edelman*<br>*/s/ Connor Mullin*<br>*/s/ Paul G. Ream* | */s/ Rachelle M. Navarro* |
| _____<br>KEITH D. EDELMAN<br>CONNOR MULLIN<br>PAUL G. REAM<br>Fraud Section, Criminal Division<br>U.S. Department of Justice | _____<br>RACHELLE M. NAVARRO<br>Assistant United States Attorney<br>District of New Jersey |

4